Trone et al v. Peanut Corporation of America Doc. 11

William N. Hebert (SBN 136099)
CALVO & CLARK, LLP
One Lombard Street
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

Charles L. Babcock, Texas SBN 01479500
*Pro Hac Vice Application Pending*
Amanda L. Bush, Texas SBN 24042161
*Pro Hac Vice Application Pending*
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221

ATTORNEYS FOR DEFENDANTS
MARK CUBAN AND DALLAS
BASKETBALL, LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD ROE, RICHARD ROE, II and DON A. NELSON, Individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN DOE, MARK CUBAN, an individual; and DALLAS BASKETBALL, LTD., a partnership, and DOES 1 through 10,<br><br>Defendants. | Civil Action No. 3:09-CV-682<br>ECF<br><br>Hearing: TBD<br>Time: TBD<br>Ctrm: TBD<br>*(Pending Assignment to U.S. District Judge)*<br><br>**DEFENDANTS MARK CUBAN AND DALLAS BASKETBALL, LTD.'S SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16; DECLARATION OF AMANDA L. BUSH AND EXHIBITS ATTACHED THERETO** |

**TO: CLERK OF THE ABOVE-ENTITLED COURT:**

**TO: PLAINTIFFS AND THEIR ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on ____________, 2009 at __:__ __.m.[1], or as soon

[1] On February 18, 2009, Defendants filed a Declination to Proceed Before a Magistrate Judge and Request for Reassignment to a United States District Judge. As of the date of this filing, this case has not been re-assigned. Therefore, a hearing date will be set on the motion calendar of the assigned District Judge upon re-assignment.



Dockets.Justia.com

thereafter as the matter may be heard, but no earlier than 35 days from filing pursuant to Local Rule 7-2(a), Defendants Mark Cuban and Dallas Basketball, Ltd. will move this Court for an Order striking the Complaint and dismissing this action on the grounds that it is a meritless Strategic Lawsuit Against Public Participation under California Code of Civil Procedure § 425.16 and awarding Defendants their attorneys' fees and costs.

This Motion is made and based upon the attached Memorandum of Points and Authorities, the Declaration of Amanda L. Bush, the exhibits attached to the Affidavit, and upon such oral and documentary evidence as may be considered by the Court at the hearing of this Motion.

Dated: February 23, 2009

By: /s/

William N. Hebert
**CALVO & CLARK, LLP**

Charles L. Babcock
Amanda L. Bush
**JACKSON WALKER L.L.P.**

ATTORNEYS FOR DEFENDANTS MARK CUBAN AND DALLAS BASKETBALL, LTD.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................3

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................6

I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ....................................................................6

II. STATEMENT OF FACTS ....................................................................7

III. ARGUMENT & AUTHORITY ....................................................................8

A. California's Anti-SLAPP Statute: Code of Civil Procedure § 425.16(a). ....................................................................8

B. Nelson's Claims Arise From an Act in Furtherance of Defendants' Right of Free Speech in Connection with a Public Issue. ....................................................................9

C. Nelson Cannot Demonstrate a Probability of Prevailing on the Merits of his Claim. ....................................................................11

1. The Challenged Statements are Literally or Substantially True or are Protected Rhetoric, Hyperbole, or Opinion. ....................................................................11

2. Nelson is a Public Figure and Therefore Must Prove that the Challenged Statements Were Published With Constitutional "Actual Malice." ....................................................................13

3. Nelson Cannot Establish "Actual Malice" with Clear and Convincing Evidence. ....................................................................16

IV. CONCLUSION ....................................................................17

## TABLE OF AUTHORITIES

### FEDERAL CASES


*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ....................9

*Bell v. Associated Press*,
584 F. Supp. 128 (D.D.C. 1984) ....................10

*Brewer v. Memphis Publ’g Co., Inc.*,
626 F.2d 1238 (5th Cir. 1980) ....................15

*Capeda v. Cowles Magazine & Broadcasting Co.*,
392 F.2d 417 (9th Cir. 1968) ....................15

*Chuy v. Philadelphia Eagles Football Club*,
431 F. Supp. 254 (E.D. Pa. 1977), aff’d, 595 F.2d 1265, 1280 (3d Cir. 1979) ....................10, 15

*Curtis Publ'g Co. v. Butts*,
388 U.S. 130 (1967) ....................15

*Don King Prods., Inc. v. Douglas*,
742 F. Supp. 778 (S.D.N.Y. 1990) ....................10

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ....................14

*Holt v. Cox Enters.*,
590 F. Supp. 408 (N.D. Ga. 1984) ....................10

*Manufactured Home Communities, Inc. v. County of San Diego*,
544 F.3d 959 (9th Cir. 2008) ....................17

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) ....................12

*Philadelphia Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986) ....................11, 16

*Rosenblatt v. Baer*,
383 U.S. 75 (1966) ....................14

*Thomas v. Los Angeles Times Communications, LLC*,
189 F. Supp. 2d 1005 (C.D. Cal. 2002) ....................14

*Time, Inc. v. Johnston*,
448 F.2d 378 (4th Cir. 1971) ....................15

*United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
190 F.3d 963 (9th Cir. 1999) ....................9

## STATE CASES

*Ampex Corp. v. Cargle* (2005)
128 Cal.App.4th 1569, 1578. ........................................................ 14, 17

*Baker v. Los Angeles Herald Exam'r* (1996)
42 Cal. 3d 254 ........................................................ 12

*Brown v. Kelly Broadcasting Co.* (1989)
48 Cal. 3d 711 ........................................................ 11

*Campanelli v. Regents of Univ. of California* (1996)
44 Cal. App. 4th 572 ........................................................ 12, 13

*Copp v. Paxton* (1996)
45 Cal. App. 4th 829 ........................................................ 14, 16

*Equilon Enters., LLC v. Consumer Cause, Inc.* (2002)
29 Cal.4th 53 ........................................................ 6, 8, 9, 11

*Ferlauto v. Hamsher* (1999)
74 Cal. App. 4th 1394 ........................................................ 12

*Fletcher v. San Jose Mercury News* (1989)
216 Cal. App. 3d 172 ........................................................ 12

*Grayson v. Curtis Publ'g Co.*,
436 P.2d 756 ( Wash. 1968) ........................................................ 15

*Hall v. Time Warner, Inc.* (2007)
153 Cal.App.4th 1337, 1345, ........................................................ 8, 9

*McGarry v. University of San Diego* (2007)
154 Cal.App.4th 97, 113 ........................................................ 15, 16

*Moyer v. Amador Valley Joint Union High School Dist.* (1990)
225 Cal.App.3d 720, 725 ........................................................ 12, 13

*Paterno v. Superior Court* (2008)
163 Cal. App. 4th 1342 ........................................................ 12

*Reader's Digest Ass'n v. Superior Court* (1984)
37 Cal. 3d 244 ........................................................ 11, 14

*Scholz v. RDV Sports, Inc.*,
710 So. 2d 618 (Fla. 1998) ........................................................ 15

*Wilbanks v. Wolk* (2004)
121 Cal. App. 4th 883 ........................................................ 9

## STATE STATUTES

Cal. Civ. Code § 48a(1) ........................................................ 11

Cal. Code of Civ. Proc. § 425.16 ........................................................ 3, 6, 8, 9, 11, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Plaintiff Don Nelson ("Nelson") filed this lawsuit against Defendants Mark Cuban ("Cuban") and Dallas Basketball, Ltd. (collectively, "Defendants") on September 17, 2008. Nelson filed his First Amended Complaint on September 19, 2008. Defendants were served with a copy of the First Amended Complaint and Citation on January 16, 2009 and filed a Notice of Removal within 30 days on February 17, 2009.[2] Defendants hereby timely file this Special Motion to Strike Pursuant to California Code of Civil Procedure § 425.16(a) within sixty days of service.

Nelson sues Defendants for defamation, asserting that Cuban published false statements about Nelson while a guest on a radio show and upon "information and belief" in various newspapers via the Internet. Defendants' acts were in "furtherance of (their) right . . . of free speech under the United States or California Constitution in connection with a public issue." *See* CAL. CODE OF CIV. PROC. § 425.16(b)(1); *see Equilon Enters., LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67. Therefore, pursuant to California Code of Civil Procedure 425.16, Nelson must demonstrate a probability of prevailing on the merits of his defamation claim in order to avoid dismissal. *See* CAL. CODE OF CIV. PROC. § 425.16(b)(1). However, Nelson cannot establish that the challenged statements are false statements of fact because they are either literally or substantially true or are protected rhetoric, hyperbole, or opinion. Further, Nelson, who is a public figure, is Constitutionally compelled to prove "actual malice" by clear and convincing evidence and cannot make that showing here. His chance of success is therefore unlikely and certainly not "probable" as California Code of Civil Procedure § 425.16 requires.

---

[2] February 16, 2009 was President's Day, a court holiday. Therefore, the deadline for removal was the following day, February 17, 2009.

## II. STATEMENT OF FACTS

Nelson's defamation action arises from certain statements (the "Challenged Statements") made during a September 21, 2007 radio show called "The Murph & Mac Show," broadcast on KNBR, Channel 680 in San Francisco, California on which Defendant Cuban, majority owner of the Dallas Mavericks NBA basketball team, appeared as a guest (the "Radio Broadcast")[3] and in alleged newspaper publications published on the internet on or about July 31, 2008 and August 1, 2008 or the "days following" (the "Newspaper Publications"). (First Am. Complaint at ¶¶ 24-25, 32-33). Nelson does not identify the allegedly defamatory statements published in the Newspaper Publications, the precise dates of publication, or how the statements were false or defamatory. (First Am. Complaint at ¶¶ 32-33). Rather, Nelson merely states that "upon information and belief," defamatory statements were made to the Associated Press, the Fort Worth Star-Telegram, and to the Gannett newspapers. (First Am. Complaint at ¶ 33). Nelson also does not identify which of Gannett's 85 daily newspapers and nearly 900 non-daily publications made the statements that he is challenging.

The Challenged Statements concerned the parties' dispute over Nelson's salary and deferred compensation for coaching and consulting the Dallas Mavericks, a matter which Nelson states "received great national and worldwide attention and publicity, and as "a matter of heightened public scrutiny." (First Am. Complaint at ¶ 23). Nelson states in his Complaint that he was the General Manager, Head Coach, and a Consultant for the Dallas Mavericks from December 1997 until August 2006. (First Am. Complaint at ¶ 7). He further alleges that the parties agreed that he would step down as head coach in March 2005 and that he would remain a consultant for the Dallas Mavericks through 2011. (First Am. Complaint at ¶¶ 10-11). Nelson contends he was named the head coach of the Golden State Warriors on August 30, 2006 and that a dispute ensued

[3] A certified transcript of the radio interview is attached to the Affidavit of Amanda L. Bush as Exhibit "1."

between the parties regarding Nelson's 2005-2006 coaching salary as well as the non-compete clause in the parties' agreement. (First Am. Complaint at ¶¶ 19-23). On November 7, 2006, the Associated Press quoted Nelson as saying "That relationship is over. . . . I hope Mark will come to his senses and pay me the money he owes me. If not, we'll go to arbitration. It looks like we're headed down that road." (Exhibit "2"). Nelson states that he filed a claim in arbitration in April 2007 and that Defendants filed a counterclaim based upon Nelson's non-compete clause. (First. Am. Complaint at ¶¶ 22-23). In the months leading up to the Radio Broadcast in September 2007, Nelson made several comments to the media, including telling the Los Angeles Times, "You guys know Mark Cuban. He tries to crush everything in his path. . . ." (Exhibit "3"). When asked about the situation a few months later during the Radio Broadcast, Cuban gave his opinion on the dispute and Defendants' counterclaim under the non-compete clause. (Exhibit "1" at pp. 10-13).

## III. ARGUMENT & AUTHORITY

### A. California's Anti-SLAPP Statute: Code of Civil Procedure § 425.16(a).

The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. CAL. CODE OF CIV. PROC. § 425.16(a); *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1345. The Legislature has declared that the statute must be "construed broadly" to that end. *Id.* A defendant moving to strike a cause of action under the anti-SLAPP statute must show that the cause of action "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." CAL. CODE OF CIV. PROC. § 425.16(b)(1); *see Equilon Enters., LLC*, 29 Cal.4th at 67. If the defendant makes that showing, the burden shifts to the plaintiff, who must establish a probability of prevailing on the merits of the claim in order to avoid dismissal. *Id.*

California's anti-SLAPP law is substantive in nature, and therefore a federal court exercising diversity jurisdiction follows California's law and must consider such a motion. *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972-73 (9th Cir. 1999); *see also Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003) ("California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit; therefore, this Court, sitting in diversity, will do so as well.").

**B. <u>Nelson's Claims Arise From an Act in Furtherance of Defendants' Right of Free Speech in Connection with a Public Issue.</u>**

California Code of Civil Procedure § 425.16(d)(4) protects speech and other conduct in connection with a public issue or an issue of public interest. CAL. CODE OF CIV. PROC. § 425.16(d)(4). These requirements are satisfied if the statement or conduct concerns a topic of widespread public interest and contributes in some manner to a public discussion of the topic. *Hall*, 153 Cal.App.4th at 1347; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898.

Each of the Challenged Statements and Defendants' conduct arose from protected activity for purposes of the anti-SLAPP statute because each of the acts was in furtherance of Defendants' right of free speech in connection with a public issue. There is no doubt, and Nelson readily admits, that Nelson's departing the Dallas Mavericks and the subsequent contractual dispute and arbitration of the dispute between Nelson and Defendants captivated the public's attention, particularly in the sports world, for over a year before the Radio Broadcast and Newspaper Publications. (Exhibits "2" – "10"). In his Complaint, Nelson referred to the dispute as receiving "great national and worldwide attention and publicity," and as "a matter of heightened public scrutiny." (First Am. Complaint at ¶ 23). Indeed, the media, including the Associated Press, the Los Angeles Times, the Dallas Morning News, and the Fort-Worth Star Telegram, among others, extensively covered the story. (Exhibits "2" – "10"). As is reflective of the Nielson ratings, the American public is fascinated by professional sports. *Chuy v. Philadelphia Eagles Football Club*,

431 F. Supp. 254, 267 (E.D. Pa. 1977), *aff'd*, 595 F.2d 1265, 1280 (3d Cir. 1979) ("Professional athletes, at least as to their playing careers, generally assume a position of public prominence.").

As several Courts have pointed out, although a professional sport may not grab the attention of everyone in the general population, sports fans are a sufficiently large and devoted segment of the public to warrant finding a public interest in comments made by athletes and coaches as well as the contractual disputes among them. *See, e.g., Don King Prods., Inc. v. Douglas*, 742 F. Supp. 778, 783 (S.D.N.Y. 1990) (holding that sports-minded boxing fans are a large enough segment of the public to find a public interest in the comments of a leading boxing promoter addressing the outcome of a world heavy weight championship title fight); *Chuy*, 431 F. Supp. at 267 (holding that although the public's interest in professional football is not important to the operation of a democratic society in the same sense as political and ideological matters, the fabric of our society is rich and variegated and professional football must be deemed an important public interest in a society founded upon a high regard for free expression); *Holt v. Cox Enters.*, 590 F. Supp. 408, 411 (N.D. Ga. 1984) (noting in context of defamation action brought by ex-football player the public's long-standing interest in the rivalry between Alabama's and Georgia Tech's football teams); *Bell v. Associated Press*, 584 F. Supp. 128, 131-32 (D.D.C. 1984) (holding that there was considerable public interest, concern, and controversy with respect to professional athletes, including their off-the-field conduct). Thus, the Radio Broadcast and alleged Newspaper Publications, and any statements made by Cuban therein, contributed to the public discussion of the dispute between Nelson and Defendants and therefore constituted conduct in furtherance of Defendants' right of free speech "in connection with a public issue or an issue of public interest."

C. **<u>Nelson Cannot Demonstrate a Probability of Prevailing on the Merits of his Claim.</u>**

Having shown that Nelson's claims involve a protected activity within the meaning of California Code of Civil Procedure § 425.16(b)(1), the burden shifts to Nelson, who must establish a <u>probability</u> of prevailing on the merits of his defamation claim in order to avoid dismissal. *See* CAL. CODE OF CIV. PROC. § 425.16(b)(1); *Equilon Enters., LLC*, 29 Cal.4th at 63.

In order to succeed on his defamation claim, Nelson must prove that Defendants made: (1) a false statement of fact as opposed to rhetoric, hyperbole, or opinion; (2) of and concerning him; (3) that was defamatory; (4) with Constitutional "actual malice" because Nelson is a public figure; (5) that caused Nelson to incur damages. *See Reader's Digest Ass'n*, 37 Cal.3d at 256-57; CAL. CIV. CODE § 48a(1). Nelson cannot demonstrate a probability of success on his defamation claim for several reasons as demonstrated below.

**1. The Challenged Statements are Literally or Substantially True or are Protected Rhetoric, Hyperbole, or Opinion.**

Nelson cannot establish the element of falsity, *i.e.*, a false statement of fact because each of the Challenged Statements in the Radio Broadcast is literally or substantially true or non-actionable rhetoric, hyperbole, or opinion, and Nelson fails to identify the Challenged Statements in the Newspaper Publications, much less explain how the statements were false. At trial, Nelson would bear the burden of proving material falsity with respect to each of the Challenged Statements. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 771-78 (1986); *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 747. Thus, if the Court finds that the Challenged Statements are literally or substantially true or protected rhetoric, hyperbole, or opinion, Nelson cannot prevail on his defamation claim.

Nelson cannot establish the essential element of falsity with respect to the Newspaper Publications because Nelson failed to identify the Challenged Statements or the publications in which they were made, much less how the statements were false. Nelson also cannot establish that

the Challenged Statements in the Radio Broadcast were false because many of the statements are literally or substantially true. Substantial truth is a threshold determination made by the Court as a matter of law, and in making this determination, courts must not engage in hyper-technical parsing of the speech at issue. *See, e.g., Campanelli v. Regents of Univ. of California* (1996) 44 Cal.App.4th 572, 578 ("The Court must put itself in the place of the 'average reader' and decide the 'natural and probable effect' of the statement.") (citations omitted). "[W]hen analyzing the statements in question, courts do so from the perspective of the average reader, not a person trained in the technicalities of the law." *Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1404.

Further, Nelson cannot prove his defamation claim because only false statements of <u>fact</u> – not rhetoric, hyperbole, or opinion – are actionable as defamatory, and the remaining Challenged Statements are protected rhetoric, hyperbole, or opinion. California has adopted the "totality of circumstances" test to distinguish actionable defamatory statements of fact from non-actionable opinion, rhetoric, or hyperbole. *Baker v. Los Angeles Herald Exam'r* (1996) 42 Cal.3d 254, 260-61; *Fletcher v. San Jose Mercury News* (1989) 216 Cal.App.3d 172, 190. The test requires the Court to review the meaning of the statements in context and evaluate their susceptibility to being proved true or false. *Moyer v. Amador Valley Joint Union High School Dist.* (1990) 225 Cal.App.3d 720, 725.

A review of the Radio Broadcast shows that the Challenged Statements are protected rhetoric, hyperbole, or opinion and do not imply provable false assertions of fact. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990); *Paterno v. Superior Court* (2008) 163 Cal.App.4th 1342, 1356-57. For example, Cuban stated that he <u>believed</u> that Nelson had ripped him off and that he <u>felt</u> like he had been deceived. (Exhibit "1" at p. 13) (emphasis added). Cuban further opined that he "didn't like the way that was handled, and [he] <u>thought</u> he tried to rip [him] off." (Exhibit "1" at p. 13) (emphasis added). Further, when asked what he thought of "the deal

[Nelson] just cut with [Chris] Cohan," owner of the Golden State Warriors, Cuban said that he agreed with Chris for "sticking to his guns" and then asked a rhetorical question, "you would think you could stick to a three-year deal within a year of signing it, right?" (Exhibit "1" at p. 13) (emphasis added). Cuban's statement during the Radio Broadcast that "renegotiating your contract at year end" is "just not good business," and "to [him] that's just wrong" (Exhibit "1" at p. 14) (emphasis added) is also non-actionable rhetoric, hyperbole, or opinion. In fact, even the radio show hosts, Brian Murphy and Paul McCaffrey, understood Cuban to be giving his opinion regarding the salary dispute with Nelson throughout the Radio Broadcast. As Brian Murphy stated at the end of the interview, "Listen, we are all on Nellie's side always, but nice to get his side of the story." (Exhibit "1" at p. 16).

The California Fourth District Court of Appeal reached a similar conclusion in *Campanelli v. Regents of Univ. of California*, where the Court held that a father's statement that he "felt that [the coach] was putting so much pressure on his son that he was making physically ill" could not be characterized as a statement of fact because the father made it clear that it was his sentiment and opinion and words such as "felt" inherently connote a subjective judgment, particularly in light of the highly charged atmosphere surrounding the coach's termination. *Campanelli*, 44 Cal.App.4th at 579. Here, like in *Campanelli,* Cuban's statements constitute rhetoric, hyperbole, or opinion as opposed to verifiably false statements of fact. Nelson therefore cannot demonstrate a probability of success on his defamation claim. *See Moyer*, 225 Cal.App.3d at 725.

**2. Nelson is a Public Figure and Therefore Must Prove that the Challenged Statements Were Published With Constitutional "Actual Malice."**

The question of Nelson's status is pervasive and impacts his defamation claim because, in the context of an anti-SLAPP suit, a public figure plaintiff must establish a probability that he can produce clear and convincing evidence that the Challenged Statements were made with "actual

malice," *i.e.*, that the statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity. *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1578.

The characterization of "public figure" falls into two categories: the all-purpose public figure and the limited purpose or "vortex" public figure. *Ampex Corp.*, 128 Cal.App.4th at 1577. An all-purpose public figure is one who has achieved such pervasive fame or notoriety that he or she becomes a public figure for all purposes and contexts. *Id.* A limited purpose public figure is an individual who voluntarily injects himself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues. *Id.*; *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 253. California courts apply a three-prong test to determine whether a libel plaintiff is a limited purpose public figure: (1) whether there was a public controversy, *i.e.*, the issue was being debated publicly and had foreseeable and substantial ramifications for non-participants; (2) whether the plaintiff was involved in the particular controversy giving rise to the alleged defamation; and (3) whether the alleged defamation is germane to the controversy. *See id.*; *Ampex Corp.*, 128 Cal.App.4th at 1577-78; *Copp v. Paxton* (1996) 45 Cal.App.4th 829, 846-47. A plaintiff's status as a public figure is decided by the Court as a matter of law. *Rosenblatt v. Baer*, 383 U.S. 75, 88 (1966); *Thomas v. Los Angeles Times Communications, LLC*, 189 F.Supp.2d 1005, 1011 (C.D. Cal. 2002).

As he appears to concede in his Complaint ("Cuban and the Club acted . . . maliciously , . . .") (First Am. Complaint at ¶ 36), Nelson is an all-purpose public figure, or at the very least, a limited purpose public figure. Numerous courts, beginning with the Supreme Court's opinion in *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154 (1967), where the Court held that Wally Butts, the athletic director and former head coach of the University of Georgia was a public figure, have concluded that professional athletes and coaches are public figures. *See, e.g., Brewer v. Memphis*

*Publ'g Co., Inc.*, 626 F.2d 1238, 1254-55 (5th Cir. 1980) (holding that a former football player was a public figure not only because he was involved in a public controversy but because of his fame); *Time, Inc. v. Johnston*, 448 F.2d 378, 380 (4th Cir. 1971) (holding a retired professional basketball player to be a public figure); *Capeda v. Cowles Magazine & Broadcasting Co.*, 392 F.2d 417, 419 (9th Cir. 1968) (holding a professional baseball player to be a public figure); *Scholz v. RDV Sports, Inc.*, 710 So.2d 618, 626 (Fla. 1998); (holding that an assistant basketball coach for the Orlando Magic was a public figure); *Chuy*, 431 F. Supp. at 267 ("A common thread in these cases is that one's voluntary decision to pursue a career in sports, whether as an athlete or a coach, 'invites attention and comment' regarding his job performance and thus constitutes an assumption of the risk of negative publicity."); *Grayson v. Curtis Publ'g Co.*, 436 P.2d 756, 762 ( Wash. 1968) (determining that a basketball coach was a public figure). Professional athletes and coaches generally assume a position of public prominence, and their contractual disputes and transitions from one team to another certainly command the attention of sports fans. *See Chuy*, 595 F.2d at 1280.

Here, Nelson is an all-purpose public figure because he voluntarily entered the public arena as a professional basketball coach and is regularly in the public view, leading to his "fame and notoriety in the community." *See Chuy*, 431 F. Supp. at 267; *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 113. Alternatively, Nelson is, at the very least, a limited purpose public figure because he has voluntarily spoken to the news media about the contractual dispute with Defendants and the Challenged Statements concerned the dispute and his performance of the public role he voluntarily undertook. *See McGarry*, 154 Cal.App.4th at 113. Indeed, Nelson satisfies each of the prongs of the limited purpose public figure test set forth in *Copp v. Paxton*. The first prong is established by the publicity surrounding the dispute between the parties over Nelson's deferred compensation as coach of the Dallas Mavericks and the subsequent arbitration

of the dispute. The disagreement between the parties led to daily news reports from major newspapers and sports radio networks. (*See, e.g.*, Exhibits "1" – "10"). As one of the parties to the contractual dispute that was the subject of substantial publicity, the second prong, *i.e.*, that Nelson was involved in the particular controversy giving rise to the alleged defamation, is also satisfied. Indeed, Nelson and his lawyer, John O'Connor, often drew public attention to the ongoing dispute and arbitration, continuously giving quotes to the media throughout the dispute and subsequent arbitration of the dispute. (*See, e.g.*, Exhibit "10": O'Connor told the Dallas Morning News, "It was not so much a defeat of Cuban as it was an ass-whipping. . . . Cuban's lawyers did a good job of painting lips on a pig."). Finally, the third prong is also established because Nelson's claims are based upon alleged defamatory statements made on the Radio Broadcast and alleged Newspaper Publications concerning the parties' dispute over Nelson's deferred compensation. Accordingly, Nelson is an all-purpose, or at the very least, a limited purpose public figure.

**3. Nelson Cannot Establish "Actual Malice" with Clear and Convincing Evidence.**

As a public figure, Nelson bears the considerable burden of proving with clear and convincing evidence that Defendants made the Challenged Statements with "actual malice," *i.e.*, with knowledge that they were false or with reckless disregard of their truth or falsity. *See Hepps*, 475 U.S. at 788. To prevail in an action for defamation, a limited purpose public figure must show by clear and convincing evidence the statements were made with actual malice; further, to survive an anti-SLAPP challenge, there must be a probability that clear and convincing evidence of actual malice can be produced. *Ampex Corp.*, 128 Cal.App.4th at 1578; *Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959, 968 (9th Cir. 2008). "To meet the clear and convincing standard, the evidence must be such that it "command[s] the unhesitating assent of every reasonable mind." *Ampex Corp.*, 128 Cal.App.4th at 1579. Further, the actual malice

requirement is subjective; accordingly, the evidence must show "the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* Although actual malice can be established through circumstantial evidence, it cannot be inferred from evidence of ill will, personal spite or bad motive. *Id.*

Nelson cannot satisfy this heavy burden as a matter of law because there is no evidence that Defendants believed the Challenged Statements in the Radio Broadcast were false or that they entertained serious doubts as to their truth or falsity, particularly given that Cuban stated throughout the Radio Broadcast that he was giving his opinion. Further, with respect to the Newspaper Publications, Nelson fails to identify <u>any</u> false statements made by Defendants, the precise publications in which they were published, or the specific dates of the publications, much less that the statements were made with knowledge of their falsity or with reckless disregard of the truth. In fact, Nelson makes <u>no</u> specific factual allegations regarding the Newspaper Publications other than to claim "upon information and belief" on July 31, 2008, August 1, 2008, and "days following," Defendants made false and defamatory statements to various Newspaper Publications. (First Am. Complaint at ¶ 32-33). Thus, Nelson cannot show a probability that there is clear and convincing evidence that the Challenged Statements in the Radio Broadcast and alleged Newspaper Publications were published with Constitutional "actual malice."

## IV. <u>CONCLUSION</u>

California's Anti-SLAPP statute applies to the Challenged Statements here because they were made in furtherance of Defendants right of free speech concerning a matter of public interest, *i.e.*, the widely publicized dispute between the parties over Nelson's deferred compensation as a coach for the Dallas Mavericks. Nelson's Complaint is a "Strategic Lawsuit Against Public Participation," and Nelson cannot satisfy the high burden of proof required under California Code of Civil Procedure § 425.16 to show a probability of success on his defamation claim.

Accordingly, Nelson’s Complaint should be dismissed under California Code of Civil Procedure § 425.16, and Defendants should be awarded their attorneys’ fees and costs.

Dated: February 23, 2009

By: /s/

William N. Hebert
**CALVO & CLARK, LLP**

Charles L. Babcock
Amanda L. Bush
**JACKSON WALKER L.L.P.**

ATTORNEYS FOR DEFENDANTS MARK CUBAN AND DALLAS BASKETBALL, LTD.