Trone et al v. Peanut Corporation of America Doc. 24 Att. 5

# EXHIBIT 5
# TO DECLARATION OF O'CONNOR

Dockets.Justia.com

# EMPLOYMENT AGREEMENT

This Employment Agreement is made and entered into as of this 7th day of February, 1997 (the "Effective Date") between Dallas Basketball Limited, a Texas limited partnership (the "Club"), and Don Nelson ("Employee"), upon the following terms and conditions:

1. Employment. For the period commencing on the Effective Date and terminating on June 30, 2002 (the "Term"), the Club shall retain the services of Employee as General Manager of the Club's National Basketball Association (the "NBA") team (the "Team"), to perform such duties and services as may be assigned to him by senior management or ownership of the Club, including, without limitation, those duties set forth in Paragraph 5 hereof.

2. Compensation. As full and complete compensation for Employee's services to the Club to be rendered hereunder, the Club shall pay to Employee a salary as follows:

| For the Period: | Annual (except for the first designated period) Salary Amount |
|---|---|
| Effective Date through June 30, 1997 | $ 300,000 |
| July 1, 1997 through June 30, 1998 | $1,000,000 |
| July 1, 1998 through June 30, 1999 | $1,400,000 |
| July 1, 1999 through June 30, 2000 | $1,500,000 |
| July 1, 2000 through June 30, 2001 | $1,500,000 |
| July 1, 2001 through June 30, 2002 | $1,600,000 |

At the Club's election, the Club may defer payment of $200,000 in each of the last four 12-month periods of the Term as specified above (thereby reducing the salary amount in each of such periods to $1,200,000, $1,300,000, $1,300,000 and $1,400,000, respectively) to be paid, instead, in each of the four successive 12-month periods following the end of the Term, as follows:

DEPOSITION EXHIBIT 4 Cuban

PENGAD 800-631-6989



07650.0010:0231486.01

DN 0001

| For the Period: | Deferral Amount |
|---|---|
| July 1, 2002 through June 30, 2003 | $200,000 |
| July 1, 2003 through June 30, 2004 | $200,000 |
| July 1, 2004 through June 30, 2005 | $200,000 |
| July 1, 2005 through June 30, 2006 | $200,000 |

Such salary (and any such deferred payments, if so elected by the Club) shall be remitted to Employee in accordance with the regular payroll practices of the Club. The obligation of the Club to make any of such deferred payments that it elects shall survive the termination of this Agreement.

3. Benefits. During the Term, Employee and his family shall be included by the Club in all medical, dental and group insurance benefit plans which are made available to the Club's highest-tenure executive employees subject to the limitations, restrictions and terms of said policies. In addition, Employee shall be entitled to a physical examination in the same means or manner given to the Team's players. In addition, Employee shall be included in the pension plan which is customarily made available to the Club's highest-tenure executive employees, subject to the limitations, restrictions and terms of such plan.

4. General Expenses and Other Benefits.

A. The Club shall reimburse Employee during the Term for all appropriately documented expenses reasonably incurred by him in the performance of his duties for the Club hereunder which are approved in advance by the Club, except that, for out-of-town travel days, Employee shall be paid a flat sum of $100 per diem (exclusive of lodging and air/ground transportation) in lieu of making specific expense reimbursements;

B. Employee shall be entitled to vacation time as is customarily made available to the Club's highest-tenure executive employees. Employee's vacation shall be determined at such times as shall be reasonably agreed upon by Employee and the Club;

C. The Club shall, at its option, either provide Employee with a luxury automobile and shall pay all reasonable insurance and maintenance thereof, or pay to Employee a reasonable car allowance sufficient for a luxury automobile. In the event the Club obtains such automobile through a "trade deal", Employee agrees to cooperate in permitting the use of his name and likeness in connection with the endorsement of such automobile; and

D. The Club shall provide Employee four premium location seats for each home game of the Dallas Mavericks and shall use reasonable good faith efforts to accommodate Employee's reasonable requests for additional complimentary seats at such games if such additional seats are needed by Employee primarily for purposes of Employee performing his duties under this Agreement.

5. Responsibilities and Duties; Promotional Activities.

A. Employee shall be responsible for all basketball operations of the Club, including hiring, retention and ultimate supervision of all coaches, scouts, player personnel, player development and/or education personnel, trainers and training staff, exercise/strength specialists, equipment personnel and clerical staff related to the above; for scouting and personnel evaluation and supervision of same; for trading, drafting and other player personnel actions; and for otherwise directing the basketball operations of the Club; subject, however, to prior approval by representatives of the general partner of the Club of any action or matter that has a financial consequence to the Club or its operations. Employee shall have authority within the bounds of reasonable discretion and latitude for these basketball operations, subject to prior approval of the Club's general partner as provided above. Employee shall report directly to representatives of the Club's general partner.

B. During the Term, Employee shall devote substantially all of his time, attention, skills and energy (vacation time and absence for sickness or similar disability

excepted) to the business and affairs of the Club. He shall function in such capacity to which he is assigned pursuant to Paragraph 1 hereof, and shall, on a first priority basis, perform any and all Club-related duties as may be assigned to him from time to time by the senior management or ownership of the Club.

C. Employee shall, as part of his duties, participate in those promotional activities of the Club and television and radio programs assigned to him by the Club's senior management, including, but not limited to, personal appearances on behalf of the Club whenever so requested. Employee agrees to permit the Club or the NBA to take pictures of him, alone or together with others, for still photographs, motion pictures or television, at such times as the Club or the NBA may designate, which pictures, no matter by whom taken, may be used in any reasonable manner desired by either of them for Club publicity or promotional purposes during the term of this Agreement. The rights in any such pictures taken by the Club or by the Association shall belong to the Club. Employee hereby grants to the Club and to the NBA the privilege and authority to use his name and/or likeness for publicity and advertising purposes in promoting the Club or the NBA, provided that such publicity and/or advertising does not in itself constitute an endorsement by Employee of any commercial product or service.

D. Employee shall not, to the detriment of the Club or in conflict or in competition with the Club or its personnel, make public appearances, participate in radio or television programs, permit his picture to be taken, write or sponsor newspaper or magazine articles, or sponsor commercial products or services without the prior consent of the Club, and such consent shall not be unreasonably withheld. The Club and Employee shall mutually cooperate in attempts to increase the exposure of and to promote (through media, radio and television, public relations and personal appearances) the Club. Employee will not promote products or services that compete with products or services of the Club's sponsors.

6. Representations and Warranties. Employee hereby represents, warrants and agrees that:

A. Employee has extraordinary and unique skill and ability with regard to the sport of professional basketball and his exclusive services rendered to the Club hereunder cannot be replaced or the loss thereof adequately compensated in money damages. Any breach by Employee of this Agreement will cause irreparable injury to the Club. Therefore, it is agreed that in the event Employee in any manner breaches or allegedly breaches this Agreement, the Club, in addition to any other remedies that may be available to it, shall have the right to obtain, from any court having jurisdiction, such equitable relief as may be appropriate, including, without limitation, a decree enjoining Employee from any further such breach of this Agreement.

B. Employee has the full right, title and authority to enter into this Agreement and perform his obligations hereunder.

C. Employee has not granted, nor will he grant, any right, do any act or enter into any agreement or understanding whatsoever which may or will prevent, impair or hinder Employee's full performance of his obligations hereunder; and

D. Employee shall not conduct himself in any manner whatsoever nor do any act, fail to do any act nor make any statement which may or will impair, impugn, denigrate, disparage, or reflect negatively upon the name, reputation or business interests of the Club or the Team, the owners of the Club or any officers, directors, employees, partners or affiliates of the Club or of direct or indirect owners of the Club.

7. Competition. During the Term, Employee shall not perform, directly or indirectly, any duties or provide any consultative or related services for any professional or amateur basketball organization or related entity, nor directly or indirectly, control or otherwise be involved in any business which is competitive with the Club or the Team.

8. Termination.

A. The Club shall have the right to terminate the employment of Employee under this Agreement for cause immediately upon written notice to Employee. For purposes of this Agreement, "cause" shall mean the occurrence of any of the following:

(i) Employee's failure to perform any of the material duties, obligations or responsibilities provided for in this Agreement, and such failure continues for 30 days after the Club gives written notice thereof to Employee; provided, however, no more than two such notices shall be required to be given for same or similar failures to perform during any 24-month period, so that any further same or similar failures to perform during any such 24-month period shall constitute "cause" without the availability to Employee of any further such notice and cure opportunities;

(ii) Employee's failure to comply with the Standards provision set forth in Paragraph 11 below;

(iii) Employee's material failure to comply with the Constitution, By-Laws, rules and regulations of the NBA or with the decisions of the Commissioner thereof as set forth in Paragraph 12 below;

(iv) Employee's material failure to comply with the confidentiality provisions of Paragraphs 10 and 14 below;

(v) Any other material breach of this Agreement by Employee, and such breach continues for 30 days after the Club gives written notice thereof to Employee; provided, however, no more than two such notices shall be required to be given for same or similar breaches during any 24-month period so, that any

further same or similar breaches during any such 24-month period shall constitute "cause" without the availability to Employee of any further such notice and cure opportunities;

(vi) The death of Employee;

(vii) The permanent disability of Employee (meaning the inability of Employee to perform the essential functions of his position, with or without reasonable accommodation, for a period of 90 consecutive days, as determined by a physician selected by the Club);

(viii) Employee intentionally and knowingly uses or possesses illegal drugs at any time, or intentionally and knowingly abuses alcohol while in the course and scope of his employment with the Club or is impaired by alcohol while driving any vehicle provided by the Club pursuant to this Agreement (except that the Club's remedy for the first conviction of Employee for a DWI/DUI offense shall be limited to assessing a fine against Employee not to exceed $250,000, which Employee shall pay to the Club within ten days after any such assessment); or

(ix) Employee's conviction or pleading nolo contendere to a felony or misdemeanor involving a crime of moral turpitude.

Upon termination of Employee's employment with the Club under this <u>Paragraph 8A</u>, the Term shall end, and the Club will have no obligation to provide or pay any compensation or other payments to Employee/hereunder accruing after such termination date.

B. The Club may also terminate this Agreement upon written notice to Employee on account of any reason other than as provided in <u>Paragraph 8A</u>. Upon such termination of Employee's employment with the Club under this <u>Paragraph 8B</u>, the Term

shall end, and the Club will have no obligation to provide or pay any compensation or other payments to Employee hereunder accruing after such termination date, except that such termination shall in no way affect Employee's right to receive the sums payable pursuant to Paragraph 2 for the entire term of this Agreement in the amounts and at the times called for by such paragraph, subject to the offset provisions of Paragraph 9 below.

This provision shall survive such termination.

9. Right of Offset. In the event Club shall terminate this Agreement other than for cause as defined by this Agreement, the Club shall be entitled to offset any remaining salary due to Employee pursuant to Paragraph 2 hereof against 50% of any basketball-related compensation received by Employee during the period the Club is required to continue payments to Employee hereunder. In the event the Club shall determine that the compensation received by Employee for such subsequent employment shall be below a rate reasonable for such employment, the Club shall instead be entitled to offset compensation still owing to Employee against 50% of such reasonable rate. This provision shall survive such termination.

10. Proprietary and Confidential Information. Upon termination of Employee's services with the Club, he shall promptly deliver to the Club all books, memoranda, plans, records and written data of every kind relating to the business of the Club which are in his possession. Further, the parties agree that all information pertaining to the Club obtained while Employee is employed by the Club and all records of the Club are the property of the Club.

"Confidential Information" includes ideas, data, information, marketing methods, marketing strategies, recruiting methods, recruiting strategies, business strategies, statistics, salary and/or compensation information developed, used, or employed by the Club or by any partner or direct or indirect owner of the Club or their family members that are disclosed to the Employee as a consequence of the employment, or through disclosures made by the Club or such other persons or entities and not generally known to the public. Employee hereby agrees that Confidential Information greatly affects the successful conduct of the business of the Club and of

such other persons or entities. Employee acknowledges and agrees that all items of Confidential Information are valuable, special, and unique assets of the Club or such other persons or entities, which are extremely important in a highly competitive business like that of the Club or such other persons or entities. Employee acknowledges that disclosure of any such Confidential Information may cause irreparable harm and loss of profits to the Club or the partners or direct or indirect owners of the Club or their family members. Employee acknowledges that preservation and protection of Confidential Information is an essential part of Employee's relationship with the Club, and that he has a duty of fidelity and trust to the Club in handling Confidential Information.

Employee agrees that Employee shall not during or following Employee's employment pursuant to this Agreement, use or disclose to any third party any Confidential Information. The fact that Employee had prior knowledge of a particular item of Confidential Information shall not permit the disclosure or use thereof by Employee. Further, Employee shall not write, or supply information to others for the purpose of writing, any books, periodicals or other publications (including fictional accounts) concerning any current or former employer, partner or indirect or direct owner of the Club or communicate with reporters or other members of the media concerning any such persons or any such Confidential Information. Employee acknowledges and agrees that any and all information and reports obtained or produced by Employee in the performance of his duties and responsibilities hereunder shall at all times remain the confidential property of the Club. This provision shall survive the termination or expiration of this Agreement.

11. Standards. Employee shall comply with the Club's policies for its employees as adopted from time to time and shall act at all times with due regard to public convention and morals, and shall refrain from engaging in conduct, committing any act or becoming involved in any situation or occurrence which will bring Employee into public disrepute, scandal, contempt or ridicule or which prejudices or is detrimental to the Club, its owners or employees, the NBA and/or professional basketball.

12. Compliance with NBA Rules, Etc. Employee agrees to abide by and be legally bound by the Constitution (including without limitation, Section 35A of such Constitution), By-Laws, and rules and regulations of the NBA, as well as by the decisions of the Commissioner thereof, which decisions shall be final, conclusive and binding.

13. Attorneys' Fees. If either party hereto commences any action or proceeding in connection with or to enforce or interpret any term or provision of this Agreement, the prevailing party shall be entitled to receive from the losing party such prevailing party's actual attorneys' fees and costs incurred in connection therewith.

14. Confidentiality. Employee and the Club agree and promise that none of the contents of this Agreement shall be published, displayed, discussed, disclosed, revealed or characterized (directly or indirectly by innuendo or other means) in any way to anyone under any circumstances other than those required by law and by the Constitution, By-Laws, rules or regulations of the NBA, except that, if asked, the Club and Employee may state that Employee has signed a contract with the Club to serve as General Manager. This provision shall survive the termination or expiration of this Agreement.

15. Limit of Liability. No liability or obligation of any sort to Employee shall exist until Employee gives the Club written notice of his claim and the Club fails to cure or remedy the claim within 30 days of Employee's written notice. Any such liability or obligation shall come solely from the assets of the Club, and no owner, partner, shareholder, officer, employee or director of the Club shall be individually or personally liable for any claim, liability or obligations arising under this Agreement or arising out of Employee's employment. This provision shall survive the termination or expiration of this Agreement.

16. Headings. Paragraph headings in this Agreement shall not affect in any way the meaning or interpretation of any provisions of this Agreement.

17. Severability. The illegality, invalidity or unenforceability of a provision herein shall not affect the legality, validity or enforceability of any other provision herein.

18. Notices. All notices or communications to either party hereunder shall be in writing and shall be deemed given when personally delivered, or when mailed by certified mail, return receipt requested, postage prepaid, addressed as follows:

| | |
|---|---|
| If to Club: | Frank Zaccanelli<br>Dallas Basketball Limited<br>12377 Merit Drive, Suite 1700<br>Dallas, Texas 75251 |
| with a copy to: | David Newsom<br>Hughes & Luce, L.L.P.<br>1717 Main Street, Suite 2800<br>Dallas, Texas 75201 |
| If to Employee: | Don Nelson<br>c/o John D. O'Connor<br>Tarkington, O'Connor & O'Neill<br>Three Embarcadero Center, 28th Floor<br>San Francisco, California 94111 |

19. Applicable Law. This Agreement shall be governed and construed in accordance with the laws of the State of Texas relating to Agreements executed and entirely performed in such state, and Employee hereby consents to the jurisdiction of the courts of such state. In the event that any judicial proceedings are instituted concerning the interpretation or enforcement of this Agreement, exclusive venue over such proceedings shall be vested in courts sitting in Dallas County, Texas.

20. Assignment. This Agreement, and the rights, benefits and interests hereunder, may not be assigned, transferred or pledged by Employee in any way. The rights of the Club hereunder may be assigned to any entity which succeeds to substantially all of the professional basketball operations of the Club through asset, stock or other transfer, provided that any assignee agrees, in writing, to perform all of the Club's obligations hereunder.

21. Entire Agreement. This Agreement sets forth the entire understanding between the parties with respect to its matter and supersedes and replaces all prior and contemporaneous warranties, representations and agreement, whether written or oral. This Agreement may not be amended or modified except by written agreement executed by Employee and the Club.

22. Counterparts. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so extended and delivered shall be an original, but all such counterparts shall together constitute one and the same instrument.

23. Certain Payments. In the event that Employee is obligated, under contractual arrangements in effect on the Effective Date, to make payments to the New York Knickerbockers ("New York") due to compensation paid by the Club to Employee under this Agreement, the Club shall make such payments on behalf of Employee directly to New York up to, but not exceeding, the amount of $150,000 for the period of the Effective Date to June 30, 1997, and $500,000 for the period of July 1, 1997 to June 30, 1998.

EMPLOYEE:

Don Nelson

THE CLUB:

DALLAS BASKETBALL LIMITED

By: Hillwood DBL, Ltd., General Partner

By: Hillwood DBL Management, Inc., General Partner

By: ______________________
Frank Zaccanelli, Vice President