William N. Hebert (SBN 136099)
CALVO & CLARK, LLP
One Lombard Street
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

Charles L. Babcock (Texas SBN 01479500)
*Admitted Pro Hac Vice*
Amanda L. Bush (Texas SBN 24042161)
*Admitted Pro Hac Vice*
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221

ATTORNEYS FOR DEFENDANTS
MARK CUBAN AND DALLAS
BASKETBALL, LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD ROE, RICHARD ROE, II and DON A. NELSON, Individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN DOE, MARK CUBAN, an individual; and DALLAS BASKETBALL, LTD., a partnership, and DOES 1 through 10,<br><br>Defendants. | Civil Action No. 3:09-CV-682 PJH ECF<br><br>Hearing: April 22, 2009<br>Time: 9:00 a.m.<br>Courtroom: 5, 17th Floor<br><br>**DEFENDANTS MARK CUBAN AND DALLAS BASKETBALL, LTD.'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16** |

TO THE HONORABLE COURT:

Defendants MARK CUBAN and DALLAS BASKETBALL, LTD. hereby submit the following Reply to Plaintiff DON A. NELSON's Response in Opposition to Defendants' Special Motion to Strike Complaint Pursuant to California Code of Civil Procedure § 425.16 (the "Response").



Dockets.Justia.com

Dated: April 8, 2009

By: s/ Amanda L. Bush______________

William N. Hebert
**CALVO & CLARK, LLP**

Charles L. Babcock
Amanda L. Bush
**JACKSON WALKER L.L.P.**

ATTORNEYS FOR DEFENDANTS MARK CUBAN AND DALLAS BASKETBALL, LTD.

## TABLE OF CONTENTS

TABLE OF CONTENTS ..... iii

TABLE OF AUTHORITIES ..... iv

I. INTRODUCTION ..... 1

II. ARGUMENT & AUTHORITY ..... 3

A. Code of Civil Procedure § 425.16(a) Applies to This Case. ..... 3

B. Nelson Has Not Shown a Probability of Success of his Defamation Claim. ..... 6

1. Nelson Has Not Shown Falsity. (In Reply to Plaintiff's Response at pp. 13-16) ..... 6

2. Nelson is a Public Figure. (In Reply to Plaintiff's Response at pp. 16-19) ..... 9

3. Nelson Has Presented No Evidence of "Actual Malice." (In Reply to Plaintiff's Response at pp. 19-20) ..... 11

C. Defendants' Special Motion to Strike is Not Frivolous ..... 13

III. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

### FEDERAL CASES


*Bose Corp. v. Consumers Union of U.S., Inc.*,
466 U.S. 485 (1984) .......... 13

*Brewer v. Memphis Publ'g Co., Inc.*,
626 F.2d 1238 (5th Cir. 1980) .......... 2

*Cepeda v. Cowles Magazine & Broad. Co.*,
392 F.2d 417 (9th Cir. 1968) .......... 2, 10

*Chuy v. Philadelphia Eagles Football Club*,
431 F.Supp. 254 (E.D. Pa. 1977) .......... 2, 9

*Curtis Publ'g Co. v. Butts*,
388 U.S. 130 (1967) .......... 11

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) .......... 9

*New York Times v. Sullivan*,
376 U.S. 254 (1976) .......... 12

*St. Amant v. Thompson*,
390 U.S. 727 (1968) .......... 2, 12

*Time, Inc. v. Johnston*,
448 F.2d 378 (4th Cir. 1971) .......... 2


### STATE CASES


*Ampex Corp. v. Cargle*
(2005) 128 Cal.App.4th 1569 .......... 13

*Beilenson v. Superior Court*
(1996) 44 Cal.App.4th 944 .......... 12

*Decker v. U.D. Registry, Inc.*
(2003) 105 Cal.App.4th 1382 .......... 14

*Gilbert v. Sykes*
(2007) 147 Cal.App.4th 13 .......... 6

*Grayson v. Curtis Publ'g Co.*,
436 P.2d 756 (Wash. 1968) .......... 2

*Khawar v. Globe Int'l, Inc.*
(1998) 19 Cal.4th 254 .......... 2, 12

*McCoy v. Hearst Corp.*
(1986) 42 Cal.3d 835 .......... 13

*McGarry v. University of San Diego*
(2007) 154 Cal.App.4th 97 .......... 1, 2, 5, 6, 11, 12, 13

*Nygard, Inc. v. Uusi-Kerttula*
(2008) 159 Cal.App.4th 1027 .......... 4, 5, 6

*Rosenaur v. Scherer*
(2001) 88 Cal.App.4th 260 .......... 11, 12

*Scholz v. RDV Sports, Inc.*,
710 So.2d 618 (Fla. 1998) .......... 2

*Seelig v. Infinity Broad. Corp.*
(2002) 97 Cal.App.4th 798 .......... 5

*Wilibanks v. Wolk*
(2004) 121 Cal.App.4th 883 .......... 4, 5

*Zhao v. Wong*
(1996) 48 Cal.App.4th 1114 .......... 5

**STATE STATUTES**

CAL. CODE CIV. PROC. § 128.5(b) .......... 14

CAL. CODE. CIV. PROC. § 425.16 .......... 1, 2, 3, 4, 5, 6, 11, 13, 14

## I. INTRODUCTION
## (In Reply to Plaintiffs' Response at pp. 1-9)

Plaintiff Don A. Nelson ("Nelson") concedes that he is "well known as a head coach and general manager of professional basketball teams." (Response at p. 13). His separation from the Dallas Mavericks and subsequent employment as head coach of the Golden State Warriors basketball team received, as he says in his Complaint, "great national and worldwide attention and publicity" and was "a matter of heightened public scrutiny." (First Am. Complaint at ¶ 23). Nelson does not deny the substantial publicity generated by the feud with his former employer, Mavericks owner Mark Cuban ("Cuban"), some of which is attached to Defendants' Special Motion to Strike. Indeed, Nelson's evidence reveals that the dispute was instigated, at least in Cuban's mind, by "the fact that he (Nelson) bad-mouthed us every which way and I had to have him removed because he was bad-mouthing Avery (Johnson, Nelson's successor as Mavericks coach)." (Response at Ex. "1," p. 160).

This very public dispute was mentioned briefly during Cuban's guest appearance on the popular Bay Area radio sports talk program, the "Murph & Mac Show," which is broadcast on KNBR 680 (the "Radio Broadcast"). It should be noted that Cuban's appearance on the Radio Broadcast was at the height of the dispute (September 21, 2007), during which time both Nelson and Cuban were claiming in the media that the other was, in sports talk vernacular, "ripping them off." (Special Motion to Strike at Exs. "2" – "10"). The Radio Broadcast predated ***by almost a year*** the interim arbitration award of July 31, 2008, upon which Nelson's Response heavily relies.

What Nelson's Response does not discuss is a case (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97) cited in Defendants' Special Motion to Strike (pages 15-16) which, we think, disposes of Nelson's argument that California Code of Civil Procedure section 425.16 is not

applicable because its purpose is “limited.” (Response at p. 10). We note the statute’s express direction is that “this section shall be construed broadly.” CAL. CODE. CIV. PROC. § 425.16(a). Nelson’s argument that the contract dispute was a “private” matter concerning “non-basketball related conduct or activity” (Response at pp. 11-13) and thus outside the scope of the statute has likewise been rejected. As the Fourth District Court of Appeal noted in *McGarrry*, writing about a college football coach’s termination from his job and subsequent defamation action against his former employer, “his (Plaintiff’s) termination was of concern to a substantial number of people and it is difficult to imagine a greater ‘closeness’ between the topic of the public interest (the termination) and the challenged statements (the reasons for the termination). Indeed, the focus of the speakers’ statements were (sic) to respond to the public interest. . . .” *McGarry*, 154 Cal.App.4th at 110.

Nelson agrees that if the statute applies, the burden shifts to him to demonstrate with admissible evidence that he has a probability of success on his defamation claim. (Response at p. 13). As we discuss below in more detail, Nelson fails to meet his burden in several respects, but his argument that he is not a public figure bears special mention. A professional basketball coach (a former NBA player) such as Nelson is a quintessential public figure and many cases have so held.[1] His burden then is to show that the Challenged Statements were published with “actual malice,” that is, with knowledge of falsity or reckless disregard of the truth at the time of the publication. *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Khawar v. Globe Int’l, Inc.* (1998) 19 Cal.4th 254, 262. At the time of the Radio Broadcast, Cuban fervently ***believed*** that Nelson was “trying to rip him off” even though subsequent events, to date (the arbitrator’s

[1] *See, e.g.*, *Brewer v. Memphis Publ’g Co., Inc.*, 626 F.2d 1238, 1254-55 (5th Cir. 1980); *Time, Inc. v. Johnston*, 448 F.2d 378, 380 (4th Cir. 1971); *Cepeda v. Cowles Magazine & Broad. Co.*, 392 F.2d 417, 419 (9th Cir. 1968); *McGarry*, 154 Cal.App.4th at 113; *Scholz v. RDV Sports, Inc.*, 710 So.2d 618, 626 (Fla. 1998); *Chuy v. Philadelphia Eagles Football Club*, 431 F. Supp. 254, 267 (E.D. Pa. 1977), *aff’d*, 595 F.2d 1265, 1280 (3d Cir. 1979); *Grayson v. Curtis Publ’g Co.*, 436 P.2d 756, 762 (Wash. 1968).

decision), have perhaps proved that belief to be unfounded. However, there must be a clear and convincing showing, at this stage, that there was "actual malice" ***at the time of publication*** and there is none.

Finally, we must point out that Nelson fails to address, much less show a probability of success, on his defamation claim with respect to the alleged newspaper publications published on the internet of which he complains in his First Amended Complaint. (First Am. Complaint at ¶¶ 24-25, 32-33). Any claims for defamation arising out of these alleged newspaper publications should therefore be dismissed.

## II. ARGUMENT & AUTHORITY

### A. Code of Civil Procedure § 425.16(a) Applies to This Case. (In Reply to Plaintiff's Response at pp. 11-12)

Nelson argues that § 425.16, which applies to speech "in connection with . . . an issue of public interest," does not apply here because, according to him: (1) there was no interest in Nelson's "personal life" or his and Cuban's "private business relationship" relating to "non-basketball related conduct or activity," and (2) the statements did not have an "impact" on society. (Response at pp. 11-13).

Nelson attempts to downplay the contractual dispute between he and Cuban as "a private matter" that did not relate to basketball. However, the contractual dispute between Nelson and Cuban was covered by the national news for over a year, and Nelson and his attorneys often contributed to the publicity.[2] (Special Motion to Strike at Exs. "2" – "10"). Indeed, in his

[2] The articles attached to Defendants' Special Motion to Strike (Exhibits "2" – "10") are just a ***few*** of the more than 100 articles concerning Nelson and Cuban's contractual dispute. *See also* ***Here is the Latest Texas Sports From the AP***, The Associated Press, June 30, 2007; ***This Legal Duel is Getting Ri-Dirk-ulous***, San Francisco Chronicle, June 30, 2007; Eddie Sefko, ***Cuban vs. Nelson: Full-Court Mess: Nelson's Attorney Says Playoff Loss had More to Do with Nash's Absence***, The Dallas Morning News, June 30, 2007; Star-Telegram, ***Toy Story***, Fort Worth Star-Telegram, June 30, 2007; The Associated Press, ***Cuban Makes Claims Against Former Mavs Coach***, Pittsburgh Tribune Review, June 30, 2007; Geoff Lepper, ***Warriors Remodel Done in a Blink*****, San Mateo County Times, June 30, 2007;** ***NBA-Mavs-Cuban-Nelson***, The Canadian Press, June 29, 2007; Eddie Sefko, ***Cuban-Nellie Feud Intensifies: Mavs Owner Sues Former Coach, Claims Inside Info Helped Warriors Pull Playoff Upset***, The Dallas

Complaint, Nelson refers to the dispute as receiving "great national and worldwide attention and publicity" and as "a matter of heightened public scrutiny." (First Am. Complaint at ¶ 23). Further, the contractual dispute unmistakably related to basketball as it involved Nelson's stepping down as head coach of the Dallas Mavericks basketball team, joining the Golden State Warriors, and the contractual dispute that ensued over Nelson's salary and deferred compensation.

Moreover, Nelson's argument that the Radio Broadcast must have an "impact on a significant segment of society or affect[] the rights and obligations of persons other than the disputants" (Response at p. 13) in order to fall under the SLAPP statute has been specifically rejected by California courts. While recognizing that a SLAPP suit is "generally" brought by a large private interest against common citizens, California Courts have held that § 425.16 must be construed "broadly." *See, e.g.*, *Wilibanks v. Wolk* (2004) 121 Cal.App.4th 883, 891. As the Second District Court of Appeal in *Nygard, Inc. v. Uusi-Kerttula* held, "an issue of public interest" within the meaning of § 425.16 is "***any*** issue in which the public is interested." *Nygard,*

Morning News, June 29, 2007; Janny Hu, ***Nelson-Cuban Dispute Seems to be Worsening***, San Francisco Chronicle, June 29, 2007; Peter May, ***Upset a Golden Achievement: For Nelson, Series Win Was Sweet Vindication***, Boston Globe, May 6, 2007; Benjamin Hochman, ***Warriors Were in Right Place, Right Time, Golden State Capitalizes on Mavs' Miscues***, New Orleans Times Picayune, May 6, 2007; Steve Inskeep, ***Dallas Maverick Upset by Oakland Upstarts***, NPR Day to Day, May 4, 2007; Ivan Carter, ***In a Historic Upset, Warriors Stun Mavs; Warriors 111, Mavericks 86***, Washington Post Newsweek Interactive, May 4, 2007; Mercedes Mayer, ***Mavericks Notes Diop, Croshere are Role Models for Mavs***, Fort Worth Star-Telegram, May 3, 2007; Janny Hu, ***Dispute on Court, and in it,*** San Francisco Chronicle, May 2, 2007; Mercury News Wire Services, ***When Nellie Said No***, San Jose Mercury News, May 2, 2007; ***Mavs-Warriors Pits Coach Against Ex-Boss***, Newser.com (citing source: The Wall Street Journal), http://www.newser.com/story/1822/mavs-warriors-pits-coach-against-ex-boss.html, May 1, 2007; Wall Street Journal Digest, ***AP DataStream***, The Associated Press, May 1, 2007; Mark Heisler, ***Mavericks, Warriors Battle on Many Fronts the Cuban-Nelson Saga is One Thing, But Now the Teams are Locked in a Spirited Playoff Series***, Los Angeles Times, April 27, 2007; Randy Galloway, ***It's Happy Returns for Nellie***, Fort Worth Star-Telegram, April 22, 2007; David Moore, ***Mavericks' Opponents Still Up for Grabs***, The Dallas Morning News, April 6, 2007; Janny Hu, ***Stopping Streak, Show: Warriors Pummel Dallas***, San Francisco Chronicle, March 13, 2007; Mark Heisler, ***COAST TO COAST Nelson and Cuban, the Long-Awaited Reunion***, Los Angeles Times, November 12, 2006; Mark Heisler, ***It's `T' and No Sympathy in NBA's New Era***, Los Angeles Times, November 12, 2006; Anthony L. Cuaycong, ***COURTSIDE,*** Business World (Philippines), November 9, 2006; Janny Hu, ***WARRIORS NOTEBOOK: Nelson, Cuban are at Odds***, San Francisco Chronicle, November 7, 2006; Marc Stein, ***Nellie's Return Accentuates Frosty Feelings for Cuban***, Espn.com, http://sports.espn.go.com/nba/news/story?id=2652144, Nov. 7, 2006; Kevin Sherrington, ***Cuban-Nelson: From Business to Personal***, The Dallas Morning News, http://www.dallasnews.com/sharedcontent/dws/dn/latestnews/stories/103106dnsposherrington.22f8fa8.html, Oct. 31, 2006; Espn.com News Services, ***Report: Nelson Battling Mavs Owner Over $6 Million***, Espn.com, http://sports.espn.go.com/nba/news/story?id=2643251, Oct. 29, 2006.

*Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1042 (emphasis added) (explaining that the issue need not be "significant" to be protected by the anti-SLAPP statute). In that case, the Court specifically rejected the argument made by Nelson here: The "suggestion that only a 'political or community issue in which public opinion and input is inherent and desirable' can be an issue of public interest echoes the analysis of *Zhao v. Wong* [(1996) 48 Cal.App.4th 1114], that issues of public interest are limited to matters . . . pertaining to the exercise of democratic self-government" [which] was expressly rejected by the California legislature when it amended § 425.16 in 1997. *Id.* at 1044 (citations omitted). The Court concluded that the public's interest in a prominent Finnish businessman and celebrity constituted a "public interest" under § 425.16. *Id.* at 1042-44.

The Court in *Seelig v. Infinity Broad. Corp.* similarly construed the standard for "public interest" and held that statements made by radio personalities concerning a contestant's refusal to participate in the radio show after being a contestant on the reality show, "Who Wants to Marry a Millionaire" were made in connection with "an issue of public interest." *Seelig v. Infinity Broad. Corp.* (2002) 97 Cal.App.4th 798, 807-08.

This case fits squarely within the holding of *McGarry v. University of San Diego*, which we relied upon in our Special Motion to Strike and which Nelson specifically fails to address in his Response. There, the Court held that the termination of head football coach Kevin McGarry was a matter of "public interest" within the meaning of § 425.16. *McGarry*, 154 Cal.App.4th at 109. McGarry made the same argument that Nelson attempts to make here (Response at pp. 11-13), *i.e.*, that his termination was a "private and confidential matter" that did not constitute a public interest merely because the public was curious about it. *Id.* at 109-10. The Court rejected the argument, stating:

> McGarry occupied a high-profile position in San Diego's athletic community and the abrupt termination of his employment, coming in the middle of a successful season and on the eve of an important

> game, was an issue of import to a substantial segment of the public. It was important to those immediately affected by the change in leadership, including the players, the players' parents, and the staff connected to University football team. Moreover, it was of import to those who follow the team's fortunes, including University's current students, University's alumni and boosters, potential recruits to the football team, and peripheral fans of the team.

*Id.* at 109. The statements concerning McGarry's termination therefore qualified as a matter of public interest under § 425.16. *Id.* at 109-10.

Like *McGarry*, the Challenged Statements here involved an "issue in which the public was interested." *See id.* at 109-10; *Nygard, Inc.*, 159 Cal.App.4th at 1042. Nelson was the head coach of the Dallas Mavericks for six seasons and is the second-winningest coach in NBA history. (*See* http://www.nba.com/coachfile/don_nelson/). His departure from the Mavericks in 2006 and the contractual dispute that ensued between he and Cuban were certainly within the public interest and important not only to the Mavericks' staff and players but also to Mavericks fans, sports fans, and commentators across the nation. Accordingly, the Radio Broadcast concerned a matter of public interest, and CAL. CODE OF CIV. PROC. § 425.16 applies to this case.

**B. <u>Nelson Has Not Shown a Probability of Success of his Defamation Claim.</u>**
**(In Reply to Plaintiff's Response at pp. 13-20)**

Since CAL. CODE OF CIV. PROC. § 425.16 applies here, Nelson has the burden to establish with competent and admissible evidence that there is a probability that he will prevail on his defamation claim. *See Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26. Nelson fails to show a probability of success as to falsity and "actual malice," two essential elements of his defamation claim, and his Complaint should therefore be dismissed.

***1. Nelson Has Not Shown Falsity. (In Reply to Plaintiff's Response at pp. 13-16)***

Nelson mischaracterizes the Radio Broadcast throughout his Response, particularly on pages 14-15, where he insinuates that Cuban made certain factual statements in the broadcast

when, as a review of the broadcast shows, he did not. "The relevant portions" of the Radio Broadcast about which Nelson complains are set out on pages 6 and 7 of his Response (the "Challenged Statements"). (Response at pp. 6-7). Essentially, Nelson argues that the Challenged Statements are false and defamatory in four ways: (1) "it was defendants who attempted to defraud Nelson, not vice versa;" (2) "it was defendants who initiated negotiations to resolve the dispute over the consultancy agreement, not vice versa;" (3) "the oral agreement reached in the telephone conversation between Nelson and the CFO was for a $500,000 walk away *settlement*, not an agreement for Nelson to accept half the money but remain obligated for the entire five-year period;" and (4) "Nelson always intended to honor his Consulting agreement with the Mavericks, but thereafter the Mavericks breached the agreement. . . ." (Response at pp. 7-8).

Nelson fails to show a probability of success on his defamation claim because there is no evidence of falsity as to each of the Challenged Statements, and each of Nelson's arguments can be refuted. In fact, a review of the Radio Broadcast reveals that the Challenged Statements are substantially true or are non-actionable rhetoric, hyperbole, or opinion. The Challenged Statements not only express his opinion and rhetoric that he "felt deceived" by Nelson and that he thought Nelson tried to rip him off (Cuban: "He tried to rip me off." M&M: Like you felt like you were being deceived?" Cuban: "Oh yeah."), but are substantially true because, as Cuban said in the Radio Broadcast, he did, in fact, feel deceived. (Special Motion to Strike at Ex. "1," p. 11). With respect to Nelson's argument that "he" was the one deceived instead of Cuban, the Radio Broadcast does discuss whether Nelson felt deceived, and the fact that Nelson may have felt deceived does not take away from the substantially true statement that Cuban felt deceived.

Next, Nelson argues the Challenged Statements are false because Cuban (not Nelson) initiated the discussion over a lump sum payment. However, according to the deposition testimony attached to Nelson's Response, Nelson initiated the discussion regarding taking a lump

sum payment instead of taking a reduced payment under the contract, and the Challenged Statements are substantially true. The Mavericks' CFO, Floyd Janher, testified in the arbitration proceeding that, while he initiated the overall discussion regarding Nelson taking less than agreed to under the contract, Nelson offered to take a lesser lump sum instead of the payout: "I just wanted to ask if there was any room to take any less, make both sides happy. . . . And then Nellie offered, 'I wouldn't necessarily take less, but if I could get a lump sum, you know, cash versus payout, I might be interested in that.'" (Response at Ex. "2" - Jahner Dep. at p. 76). Cuban similarly testified that he understood from Janher that "Nelson said, I'll listen to what you got to say or we'll negotiate, I could do a lump sum payment if you want to. . . ." (Response at Ex. "1" - Cuban Dep. at p. 174). Cuban further testified that he "had a history of having these types of negotiations with Nellie. He – there are multiple time he would ask for acceleration of payments, and he had asked for prepayments of other things with us. So this wasn't unusual for us to be in this kind of conversation with him." (Response at Ex. "1" - Cuban Dep. at p. 174). Accordingly, the Challenged Statements are substantially true. Regardless, even if Cuban ***did*** initiate the discussions instead of Nelson, the question of who initiated the negotiations is not defamatory.

Nelson further argues that the Challenged Statements are false because the alleged agreement between he and the Mavericks' CFO was for a $500,000 "walk away" settlement instead of a consulting agreement with continuing obligations. However, Nelson offers no competent evidence that the alleged agreement was for a "walk away" settlement other than to say that Cuban and his CFO thought the lump sum payment was more advantageous, which is not evidence of falsity. Further, the evidence shows that Cuban expected Nelson to serve as a consultant and to be available as a resource when they had questions given the amount of experience and knowledge that he had. (Response at Ex. "1" - Cuban Dep. at p. 122). Further, the draft Sixth Amendment to Nelson's Employment Agreement, cited by Nelson in his Response,

provided that "the Club shall make a one time payment in the amount of $500,000" to Nelson and that Nelson shall continue "serving in the capacity of Consultant of the Team." (Response at Ex. "13," p. 2). Accordingly, the Challenged Statements are substantially true.

Finally, Nelson argues that the Challenged Statements are false because he intended to honor the agreement while the Mavericks breached the agreement first. However, the question of who breached the agreement first was not raised in the Radio Broadcast and is therefore not a published false statement of fact.

Since Nelson fails to establish the essential element of falsity as to each of the Challenged Statements, he cannot show a probability of a success on his defamation claim and his Complaint should be dismissed.

***2. Nelson is a Public Figure. (In Reply to Plaintiff's Response at pp. 16-19)***

Nelson argues that he is not an all-purpose public figure because he has not assumed a role of "special prominence in the affairs of society" nor does he have a position of "persuasive power and influence." (Response at p. 17). However, an all-purpose public figure is merely one who has "achieved such pervasive or notoriety that he becomes a public figure for all purposes and in all contexts." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). The person need not have a special prominence in neither society nor persuasive power and influence as Nelson suggests.

In fact, in *Chuy v. Philadelphia Eagles Football Club*, 431 F. Supp. 254, 268 (E.D. Pa. 1977), the Court stated, in finding a former football player to be a public figure, that it is "unacceptable for a court in determining whether a particular individual is a 'public figure' to pass qualitatively upon the 'affairs of society.'" Rather, the Court held, "where a person has . . . chosen to engage in a profession which draws him regularly into regional and national view and leads to 'fame and notoriety in the community,' even if he has no ideological thesis to promulgate, he invites general public discussion" and is a public figure. *Id.*

The Ninth Circuit Court of Appeals similarly determined that professional baseball player Orlando Cepeda was an all-purpose public figure and therefore must prove "actual malice" in his case against a magazine. *Cepeda*, 392 F.2d at 419. The Court explained that '"public figures' are those persons who, though not public officials, are 'involved in issues in which the public has a justified and important interest' [and] [s]uch figures are, of course, numerous and include artists, athletes, business people, dilettantes, [and] anyone else who is famous or infamous because of who he is or what he has done." *Id.*

Here, like in *Chuy* and *Cepeda*, Nelson chose to engage in a profession which naturally draws publicity, invokes the public's interest, and leads to fame and notoriety. Nelson is currently in his 30th season as an NBA head coach and is in his 45th year in the NBA as a player, coach, general manager, or consultant. (*See* http://www.nba.com/coachfile/don_nelson/). Nelson has coached for four NBA teams: Milwaukee (1976-1987), Golden State twice (1988-1995 and 2006-present), New York (1995-1996), and Dallas (1997-2005). *Id.* Before coaching, Nelson was a well-known NBA player. He was drafted by the Chicago Zephyrs in 1962 (19th overall) and then later played for the Los Angeles Lakers and the Boston Celtics. *Id.* He played in the NBA for 14 seasons and was a member of five NBA Championship teams in his 11 years with the Celtics. *Id.* His uniform (#19) was retired in 1978. *Id.* Thus, contrary to his assertion, Nelson need not be a diplomat or political figure in order to achieve public figure status. As a long-time NBA player and the second-winningest coach in NBA history, Nelson has willingly assumed the public spotlight and is an all-purpose public figure.

Alternatively, Nelson is a limited-purpose public figure. While Nelson concedes that he "might be considered a limited purpose public figure if his claims arose from statements related to his management of the team. . . ," he argues that the Radio Broadcast does not relate to a matter of public controversy because it was a "private contract dispute." (Response at p. 17). However, the

Fourth District Court of Appeal rejected a similar argument in *McGarry v. University of San Diego*, in which a college head football coach argued he was not a limited purpose public figure "because the position he held and the reasons for his employment termination did not involved a dispute affecting the general public or some segment of the general public in an appreciable way." *McGarry*, 154 Cal.App.4th at 115. In holding that McGarry was a limited purpose public figure, the Court cited numerous opinions (including the long list of cases cited by Defendants in their Special Motion to Strike), beginning with the Supreme Court's opinion in *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967), which have concluded that professional and collegiate athletes and coaches are "at least" limited purpose public figures. *Id.*

Like McGarry, Nelson voluntarily entered the public arena as a professional basketball coach. The statements in the Radio Broadcast concerned his departure as head coach of the Dallas Mavericks, his decision to join the Golden State Warriors, and the contractual dispute that ensued over his salary and deferred compensation. Nelson can hardly be permitted to seek publicity and publicly comment on the contractual dispute with Cuban (Special Motion to Strike at Exs. "2" – "10") while successfully arguing that the dispute was a "private matter." Accordingly, Nelson is a limited purpose public figure and must prove that the Challenged Statements were published with "actual malice."

### ***3. Nelson Has Presented No Evidence of "Actual Malice." (In Reply to Plaintiff's Response at pp. 19-20)***

Nelson has presented no evidence, much less clear and convincing evidence, of "actual malice" and therefore has not shown a probability of success on his defamation claim. Even at the special motion to strike stage under § 425.16, the clear and convincing evidence standard applies. *See Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 274. The clear and convincing standard requires that the evidence of actual knowledge of the falsity or reckless disregard for its falsity

must be of such a character "as to command the unhesitating assent of every reasonable mind." *Id.* "Actual malice cannot be implied and must be proven by direct evidence." *Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 950 (granting an extraordinary writ, reversing the trial judge, and ordering the libel case to be dismissed under § 425.16).

Nelson's reliance upon deposition testimony as well as the Arbitrator's interim award to establish "actual malice" is misplaced for two reasons. First, the "actual malice" test is "a subjective test, under which ***the defendant's actual belief*** concerning the truthfulness of the publication is the crucial issue." *McGarry*, 154 Cal.App.4th at 114 (emphasis added). Thus, it is ***Cuban***, the publisher of the statements, whose state of mind the Court must consider. *Id.*; *see also New York Times v. Sullivan*, 376 U.S. 254, 287 (1976) (holding that a culpable state of mind must be "brought home to the persons in the organization having responsibility for the publication."). Neither the deposition testimony of Nelson or his lawyer, John O'Connor, nor the Arbitrator's interim award establishes ***Cuban's*** state of mind in making the Challenged Statements.

Moreover, the evidence cited by Nelson in support of "actual malice" – deposition testimony taken between January and June 2008 and the Arbitrator's July 31, 2008 interim award – ***post-date*** the September 21, 2007 Radio Broadcast at issue and therefore cannot be evidence of Cuban's state of mind at the time of the broadcast. "[T]he publisher of a defamatory statement acts with reckless disregard amounting to actual malice if, ***at the time of publication***, the publisher 'in fact entertained serious doubts as to the truth of his publication.'" *St. Amant*, 390 U.S. at 731; *Khawar*, 19 Cal.4th at 262. Any conclusions or testimony made ***after*** the Radio Broadcast in question are not evidence of Cuban's state of mind at the time he made the statements.

Further, the email correspondence cited by Nelson (the only evidence that occurred prior to the Radio Broadcast) does not speak to Cuban's state of mind at the time he made the statements nor does it show that he knew the Challenged Statements were false or that he made them with

reckless disregard of the truth. Nelson's mere allegations of "actual malice" in his Response are insufficient to establish clear and convincing evidence. Rather, it must be shown "that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511, n.30 (1984); *see also McCoy v. Hearst Corp.* (1986) 42 Cal.3d 835, 860. Nelson fails to meet that burden here because he does not present ***any*** specific evidence that Cuban knew the statements were false or that he made them with reckless disregard of their truth or falsity.

Finally, Nelson's argument that Defendants' alleged "prior ill will" toward Nelson "on contract related matters" is evidence of falsity and "actual malice" (Response at p. 20) fails because "actual malice" cannot be inferred from evidence of ill will, personal spite, or bad motive. *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1579. The "actual malice" test directs attention to the "defendant's attitude toward the truth or falsity of the material published, . . ***not*** the defendant's attitude toward the plaintiff." *McGarry*, 154 Cal.App.4th at 114 (emphasis added). Thus, Nelson fails to establish a probability of success on the essential element of "actual malice" and his Complaint should be dismissed.

### C. Defendants' Special Motion to Strike is Not Frivolous (In Reply to Plaintiff's Response at pp. 20-21)

Nelson contends that Defendants should be sanctioned for filing a frivolous Special Motion to Strike. The SLAPP statute permits an award of attorneys' fees and costs to a prevailing plaintiff "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay. . . ." CAL. CODE CIV. PROC. § 425.16(c).

Nelson's only basis for his argument is that the "testimony and documents clearly show the falsity of the factual statements made during the Radio Broadcast and defendants' knowledge of the falsity as the time they were made. . . ." (Response at pp. 20-21), which is precisely the matter

to be decided by the Court. As demonstrated above, contrary to Nelson's assertion, the testimony and documents do not show falsity or "actual malice," two elements on which Nelson has the burden here, and for this reason, Defendants request that Nelson's Complaint be dismissed.

Further, Nelson provides no basis for why Defendants' Special Motion to Strike is frivolous, which it is not. A determination of frivolousness requires a finding the motion is either "totally and completely without merit" or "for the sole purpose of harassing an opposing party." CAL. CODE CIV. PROC. § 128.5(b)(2); *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1392-93. Nelson fails to show that Defendants' Special Motion to Strike is totally and completely without merit or that it is for the sole purpose of harassment. Accordingly, Nelson's request for sanctions should be denied.

## III. CONCLUSION

California's anti-SLAPP statute applies to the Challenged Statements in the Radio Broadcast because they were made in furtherance of Defendants' right of free speech concerning a matter of public interest. Nelson fails to address his defamation claim as to the alleged newspaper articles, and his claims arising out of said articles should be dismissed. Further, with respect to the Radio Broadcast, Nelson fails to satisfy his high burden of proof required under California Code of Civil Procedure § 425.16 to show a probability of success as to falsity or "actual malice," two essential elements of his defamation claim. Accordingly, Nelson's Complaint should be dismissed, and Defendants should be awarded their attorneys' fees and costs. Finally, Nelson's request for sanctions should be denied because he fails to show that Defendants' Special Motion to Strike is frivolous, *i.e.*, totally and completely without merit or for the sole purpose of harassment.

Dated: April 8, 2009

By: s/ Amanda L. Bush

William N. Hebert
**CALVO & CLARK, LLP**

Charles L. Babcock
Amanda L. Bush
**JACKSON WALKER L.L.P.**

ATTORNEYS FOR DEFENDANTS MARK CUBAN AND DALLAS BASKETBALL, LTD.