William N. Hebert (SBN 136099)
CALVO & CLARK, LLP
One Lombard Street
San Francisco, California 94111

Charles L. Babcock (Admitted Pro Hac Vice)
Amanda L. Bush (Admitted Pro Hac Vice)
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221

ATTORNEYS FOR DEFENDANTS MARK CUBAN
AND DALLAS BASKETBALL, LTD.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD ROE, RICHARD ROE, II and DON A. NELSON, Individuals,<br>Plaintiffs,<br>vs.<br><br>JOHN DOE, MARK CUBAN, an individual; DALLAS BASKETBALL, LTD., a partnership, and DOES 1-10,<br>Defendants. | Civil Action No. 3:09-CV-682 PJH<br>ECF<br><br>**DEFENDANTS MARK CUBAN AND DALLAS BASKETBALL, LTD.'S SUPPLEMENTAL REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT** |

Defendants MARK CUBAN ("Cuban") and DALLAS BASKETBALL, LTD. hereby submit the following Supplemental Reply to Plaintiff DON A. NELSON's Response in Opposition to Defendants' Special Motion to Strike Complaint.

## I. INTRODUCTION
### (In Reply to Plaintiffs' Response at pp. 1-5)

Nelson's Supplemental Response presents no evidence, much less clear and convincing evidence, of "actual malice," and Nelson has therefore failed to show a probability of success on his defamation claim. In his Supplemental Response, Nelson relies upon two email strings between Cuban and the press, the deposition testimony of Dallas Basketball, Ltd. CFO Floyd Jahner, and the deposition testimony of Mark Cuban, none of which establishes "actual malice."

First, the two emails reflect the same beliefs that Cuban expressed in the radio broadcast ("Broadcast") a few months later and therefore unequivocally show that Cuban did ***not***, in fact, entertain serious doubt about the truth of the statements that he made in the Broadcast. To the contrary, these emails support Cuban's beliefs at the time of the Broadcast and refute actual malice. Nelson's citation of Jahner's deposition testimony is misplaced because it is the publisher of the



Dockets.Justia.com

statements at issue, Mark Cuban, whose state of mind the Court must consider in determining whether the statements were made with actual malice. Furthermore, Jahner's testimony does not amount to actual malice, and even if it did, Jahner's testimony cannot be attributed to Cuban. Finally, Nelson fails to point to a single statement in Cuban's May 20, 2009 deposition testimony that supports a finding of "actual malice." And Nelson's continued reliance upon Cuban's deposition testimony in the arbitration proceeding almost 6 months ***after*** the Broadcast is not evidence Cuban's state of mind at the time of the Broadcast. Indeed, Nelson previously relied upon this evidence, which the Court found insufficient to constitute actual malice and therefore allowed limited discovery on actual malice. Accordingly, Nelson has failed to present any evidence, much less clear and convincing evidence, of actual malice, and Nelson's Complaint should be dismissed.

## II. ARGUMENT & AUTHORITY

### A. Challenged Statements in the Radio Broadcast
### (In Reply to O'Connor Declaration's Characterization of Challenged Statements)

It is important to remind the Court of the statements Nelson challenges in the Broadcast given the blatant mischaracterization of the statements in the Supplemental Declaration of John D. O'Connor in support of Nelson's Supplemental Response. (Decl. of John D. O'Connor at ¶ 3). The challenged statements can be found in paragraph 29 of Nelson's First Amended Complaint and on pages 6-7 of Nelson's Response to Defendants' Special Motion to Strike, as reflected in the transcript of the Broadcast attached as Ex. "1" to Defendants' Special Motion to Strike.

### B. Cuban's July 2007 Emails Show a Lack of Actual Malice
### (In Reply to Plaintiff's Supplemental Response at pp. 1-2)

Nelson relies principally upon two email strings between Cuban and two reporters in an effort to show actual malice. (Supp. Response at pp. 1-2). However, as Nelson admits (Supp. Response at p. 2), Cuban's statements in the emails are virtually identical to the statements he made two months later in the Broadcast. Thus, the two emails do not show that Cuban made the challenged statements knowing them to be false or with reckless disregard of the truth. To the contrary, these emails show that Cuban had made similar statements prior to the Broadcast and that he did ***not*** entertain any doubt as to the truth of the statements at the time of the Broadcast. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984).

Further, the two emails are not evidence of any ill-will or spite against Nelson as he contends. Rather, Cuban was expressing his frustration and feelings based upon the situation as he

knew it, and as Cuban testified has both in the arbitration proceeding and in this case, Cuban has no ill-will against Nelson. (Ex. "11" at pp. 76-77, 122-124, 142-143). Moreover, even if the emails did present evidence of ill-will against Nelson (and they do not), ill-will, without anything more, is insufficient to constitute actual malice. *See Harte-Hanks Comm'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989); *Mattel, Inc. v. MCA Records, Inc.* 28 F. Supp. 2d 1120, 1164 (C.D. Cal. 1998); *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1579. Accordingly, the two email strings relied upon by Nelson do not present clear and convincing evidence of actual malice.

### C. <u>Jahner's Deposition Testimony Does Not Establish Mark Cuban's State of Mind at the Time of the Broadcast and is No Evidence of Actual Malice</u> (In Reply to Plaintiff's Supplemental Response at p. 2)

Nelson continues to rely upon the deposition testimony of Floyd Jahner to prove actual malice. However, the actual malice test is a subjective test under which the ***publisher's*** actual belief concerning the truthfulness of the publication is the crucial issue. *See McGarry*, 154 Cal.App.4th at 114. Thus, it is Cuban, as the publisher of the challenged statements, whose state of mind the Court must consider. *Id.*; *see also New York Times v. Sullivan*, 376 U.S. 254, 287 (1976). Moreover, Jahner's testimony does not relate in any way to Cuban's state of mind at the time of the Broadcast. Indeed, Jahner's opinion that Nelson did not commit a "fraud" does not reveal whether Cuban indeed felt like he had been "ripped off."

Nelson similarly claims that Cuban was "monitoring closely the negotiations,"[1] and that Cuban testified in his deposition in the arbitration proceeding that he knew Jahner had initiated the discussions with Nelson. (Supp. Response at p. 2). However, Cuban's testimony in the arbitration proceeding ***post-dates*** the Broadcast almost six months and was based upon an email shown to him during the deposition. (Ex. "11" at pp. 61-62). Thus, Cuban's testimony in the arbitration proceeding does not establish his state of mind at the time he made the statements in the Broadcast. *See St. Amant v. Thompson*, 390 U.S. 727-31; *Khawar v. Globe Int'l, Inc.* (1998) 19 Cal.4th 254, 262. Furthermore, Cuban has repeatedly testified that he was not actively involved in the negotiations with Nelson, that he was not even aware that a proposed amendment had been drafted, and that did not learn many of the details of the negotiations until after the depositions in the arbitration proceeding. (Ex. "11" at pp. 102-109, 113, 151, 153-154). Likewise, the fact that

---

[1] Nelson contradicts himself later in his Supplemental Response by stating that Cuban "had no involvement in the buyout negotiations." (Supp. Response at p. 3).

Jahner testified he later learned that Nelson wanted to terminate his contract is not evidence of actual malice because Cuban testified that he was not aware of that fact until after the depositions in arbitration proceeding, more than six months after the Broadcast. (*Id.*). Until that time, Cuban believed Nelson was seeking an advance. (Ex. "11" at p. 130). Accordingly, Nelson has failed to present any evidence of actual malice through Jahner's testimony.

**D. <u>Cuban's Deposition Testimony Does Not Establish Actual Malice, and Cuban Did Not Avoid the Truth</u>**
**(In Reply to Plaintiff's Supplemental Response at pp. 2-5)**

The testimony of Mark Cuban cited by Nelson also does not present any evidence of actual malice. Nelson's accusation that Cuban testified in "bad-faith" in his deposition on May 20, 2009 is unfounded. Moreover, Cuban's inability to recall the specific negotiations that occurred over three years earlier and Cuban's refusal to answer Nelson's counsel's vague, speculative, and hypothetical questions is not evidence of bad-faith and certainly not an "inference of malice" as Nelson asserts. (Supp. Response at pp. 3-4). *See Brueggemeyer v. ABC, Inc.*, 684 F. Supp. 452, 461 (N.D. Tex. 1988) (holding that the fact that a producer could not remember at his deposition, taken three years later, the specific content and circumstances surrounding an interview, did not satisfy the "onerous actual malice standard").

Nelson's suggestion that Cuban testified deceptively by stating that he considered "Mark" and "Mavs" to be one and the same is similarly absurd and, in any event, does not present any evidence of actual malice. Cuban testified that his reference to "Mark" in the Broadcast referred to the negotiations Nelson had with the Mavericks, and its CEO Floyd Jahner. (Ex. "11" at pp. 125, 128, 130-132). Indeed, Cuban (the well-known owner of the Mavericks) often uses "Mark" and "Mavericks" interchangeably with respect to negotiations (*Id.*), and there is no evidence that Cuban used the term "Mark" knowing it to be false or with reckless disregard of the truth.

Nelson next argues that Cuban falsely testified that he did not prepare for questions concerning Nelson in the interview and that this is somehow evidence of actual malice. Cuban testified, and a review of the Broadcast shows, that he appeared on the Broadcast to discuss his upcoming appearance on Dancing with the Stars and that he did not anticipate any questions regarding Nelson. (Ex. "11" at pp. 129-130). Nelson has presented no evidence to the contrary. Nelson's assertion that the two July 2007 emails show Cuban "had a practiced defamation at the ready with which to smear Nelson" (Supp. Response at p. 3) is also belied by the record. In fact, as

explained above, the two emails exemplify Cuban's state of mind at the time and prove that he did not publish the challenged statements with knowledge of falsity or reckless disregard of the truth.

Nelson's further attempt to equate the fact that Cuban was not prepared to answer questions about Nelson on the Broadcast as an "avoidance of truth" under *Harte-Hanks* is meritless. There, the Supreme Court held that the newspaper's decision not to listen to tapes available to it or to interview a witness in preparation of an news article supported a finding of actual malice. *Hart-Hanks*, 491 U.S. at 682-83. Here, to the contrary, Cuban was not aware that he would be asked any questions regarding Nelson in a radio interview regarding his upcoming appearance on Dancing with the Stars and therefore did not "purposefully avoid the truth." (Ex. "11" at pp. 129-130). Moreover, Nelson mischaracterizes the only evidence he relies upon for his "avoidance of the truth" argument, claiming Cuban testified he had "no knowledge" that Nelson represented that he intended to perform consulting services for five years (Supp. Response at p. 4), when in fact, Cuban testified he did not recall whether Nelson had made such representations. (Ex. "11" at pp. 86-87). In any event, there is absolutely no evidence that Cuban purposefully avoided the truth.

Nelson's assertion that Cuban "should" have believed Nelson wanted a termination of the contract is equally without merit. Cuban testified in his deposition that, based upon his past experiences with Nelson wanting advances, he did not interpret the negotiations as a termination of the contract but as an acceleration or advance of Nelson's payments with the contract, based upon prior experience. (Ex. "11" at pp. 98-101, 106). Nelson's remark that the Court should not believe that Cuban understood the term that way and should instead imply that Cuban understood Nelson was instead seeking termination of the contract is contrary to Cuban's testimony and certainly not evidence of actual malice. Indeed, "difference of opinion as to the truth of the matter – even a difference of 11 to 1 – does not alone constitute clear and convincing evidence that the defendant acted with a knowledge of falsity or with a 'high degree of awareness . . . of probable falsity.'" *Harte Hanks*, 491 U.S. at 691.

## III. CONCLUSION

Nelson fails to present ***any*** specific evidence, much less clear and convincing evidence, that Cuban knew the challenged statements were false or that he made them with reckless disregard of their truth. Accordingly, Nelson cannot demonstrate a probability of success on his defamation claim, and his Complaint should be dismissed.

Dated: June 12, 2009

By: s/ Amanda L. Bush________________

William N. Hebert
**CALVO & CLARK, LLP**

Charles L. Babcock
Amanda L. Bush
**JACKSON WALKER L.L.P.**

ATTORNEYS FOR DEFENDANTS MARK CUBAN AND DALLAS BASKETBALL, LTD.