Trone et al v. Peanut Corporation of America Doc. 84

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
DAVID L. ANDERSON #149604
JACOB R. SORENSEN #209134
MARC H. AXELBAUM #209855
BRIAN J. WONG #226940
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Email: bruce.ericson@pillsburylaw.com

SIDLEY AUSTIN LLP
DAVID W. CARPENTER (admitted *pro hac vice*)
BRADFORD A. BERENSON (admitted *pro hac vice*)
DAVID L. LAWSON (admitted *pro hac vice*)
EDWARD R. McNICHOLAS (admitted *pro hac vice*)
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8010
Facsimile: (202) 736-8711

Attorneys for Defendants
AT&T CORP. and AT&T INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AT&T CORP., AT&T INC. and DOES 1-20, inclusive,<br><br>Defendants. | No. C-06-0672-VRW<br><br>**DEFENDANT AT&T CORP.'S RESPONSE TO BRIEF OF AMICI CURIAE CENTER FOR CONSTITUTIONAL RIGHTS AND AMERICAN CIVIL LIBERTIES UNION IN OPPOSITION TO FILING DOCUMENTS UNDER SEAL [DKT. 30-32]**<br><br>**[Civ. L.R. 7-11, 79-5]**<br><br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker<br>Hearing: May 17, 2006<br>Time: 10:00 a.m. |


Dockets.Justia.com

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION. .......... 1

II. ARGUMENT. .......... 2

A. The Lodged Documents are not part of any deliberative process and may never become part of any deliberative process. .......... 2

B. It is not practical or necessary to redact the Lodged Documents. .......... 4

C. Plaintiffs' press campaign does not justify unsealing AT&T trade secrets. .......... 8

III. CONCLUSION. .......... 9

## TABLE OF AUTHORITIES

**Page**

**Cases**

Aloe Vera of America, Inc. v. United States,
376 F.3d 960 (9th Cir. 2004) .......... 7

Associated Press v. United States Dist. Ct.,
705 F.2d 1143 (9th Cir.1983) .......... 3

Chambers v. NASCO, Inc.,
501 U.S. 32 (1991) .......... 7

Diversified Group, Inc. v. Daugerdas,
217 F.R.D. 152 (S.D.N.Y. 2003) .......... 2

Foltz v. State Farm Mut. Auto. Ins.,
331 F.3d 1122 (9th Cir. 2003) .......... 2

FTC v. Productive Marketing, Inc.,
136 F. Supp. 2d 1096 (C.D. Cal. 2001) .......... 7

Gannett Co. v. DePasquale,
443 U.S. 368 (1979) .......... 7

Grove Fresh Distributors, Inc. v. John Labatt, Ltd.,
299 F.3d 635 (7th Cir. 2002) .......... 6

Hi-Tek Bags, Ltd. v. Bobtron International, Inc.,
144 F.R.D. 379 (C.D. Cal. 1993) .......... 7

IDX Systems Corp. v. Epic Systems Corp.,
285 F.3d 581 (7th Cir. 2002) .......... 5

Imax Corp. v. Cinema Technologies,
152 F.3d 1161 (9th Cir. 1998) .......... 5

In Re Adobe Systems, Inc. Securities Litigation,
141 F.R.D. 155 (N.D. Cal. 1992) .......... 3

In re San Juan Star,
662 F.2d 108 (1st Cir. 1981) .......... 7

Lyn-Lea Travel Corp. v. American Airlines, Inc.,
283 F.3d 282 (5th Cir. 2002) .......... 6

Nixon v. Warner Communications, Inc.,
435 U.S. 589 (1978) .......... 2, 3

Phillips v. General Motors Corp.,
307 F.3d 1206 (9th Cir. 2002) .......... 7

Religious Technology Center v. Netcom On-Line Communication Services, Inc., 923 F. Supp. 1231 (N.D. Cal. 1995) ........ 5

San Jose Mercury News v. United States District Court, 187 F.3d 1096 (9th Cir. 1999) ........ 3

Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984) ........ 6, 7

United States v. Amodeo, 44 F.3d 141 (2d Cir. 1995) ........ 2, 3

## Statutes and Codes

California Civil Code
- Section 47(b) ........ 8
- Section 3426.11 ........ 8
- Section 3426.5 ........ 5

California Code of Civil Procedure
- Section 2019.210 ........ 5

California Evidence Code
- Sections 1060-62 ........ 6

## Rules and Regulations

Federal Rules of Civil Procedure
- Rules 26-37 ........ 6

## Other Authorities

Wright & Miller, Federal Practice & Procedure
- Section 2043 (2d ed. 1994) ........ 8

## I. INTRODUCTION.

Defendant **AT&T CORP.** ("AT&T") submits this response to the Brief of Amici Curiae Center for Constitutional Rights and the American Civil Liberties Union (Dkt. 77, "Amici Brief"). Amici wish to unseal three documents (the "Lodged Documents"): the declarations of former AT&T employee Mark Klein ("Confidential Klein Declaration," *see* Dkt. 31) and of plaintiffs' purported expert, J. Scott Marcus ("Confidential Marcus Declaration," *see* Dkt. 32), and the "Preliminary Injunction Memorandum" (*see* Dkt. 30).

Amici make three arguments for unsealing. None holds water:

First, Amici argue that the Lodged Documents are "presumptively public" because they "form part of the court's deliberative process." That argument is, at best, premature and ignores the strong legal and public policy argument in favor of protecting trade secrets of AT&T as well as the security of the AT&T network. If the Court some day rules on the motion for protective order, and if the Lodged Documents become part of the Court's deliberative process, there might arise a qualified common law (not First Amendment) presumption in favor of disclosure—a presumption that would be rebutted here because the Lodged Documents contain trade secrets and their disclosure would pose a security risk to AT&T's network. As it is, this argument does not even get to first base.

Second, Amici argue that any redactions to protect AT&T's trade secrets should be narrowly tailored. Unexceptionable in general, that principle has little practical application, as anyone who sees the documents will realize. The documents are highly technical. If one were to redact everything that might interest a would-be competitor or hacker or terrorist, what would remain, if anything, would be meaningless: neither probative nor interesting.

Third, Amici argue that there is "extensive" public interest in these documents. This surely is a bootstrap. These matters appear in the press largely because plaintiffs have orchestrated a press campaign to put them there. To be sure, the public may have an interest in what its government is doing, but to say that this interest extends to proprietary AT&T technical documents is stretching the point beyond recognition. In any event, AT&T's interest in preserving its trade secrets and the security of its network trump

whatever curiosity animates portions of the general public.

## II. ARGUMENT.

### A. The Lodged Documents are not part of any deliberative process and may never become part of any deliberative process.

Amici argue that "[w]here documents form a part of the court's deliberative process – that is, where they are essential to a decision the court has been called on to make – the courts have consistently found that the documents are subject to . . . [a] qualified First Amendment public right of access." Amici Br. at 5. But no such right of access exists here because the Lodged Documents have played no part in the Court's deliberative processes to date, and likely never will.

The Court has not taken up the merits of plaintiffs' motion for preliminary injunction and may never do so. Today AT&T is filing a motion to dismiss, in which AT&T argues that the allegations of the Amended Complaint ("FAC") give it immunity from suit and establish that plaintiffs lack standing to sue. If the Court agrees and grants the motion to dismiss on either ground, it will never reach the merits of the FAC, or plaintiffs' motion. And even if the Court reached the preliminary injunction motion, it could end up denying that motion as a matter of law without ever reaching the Lodged Documents.

None of the authorities cited by Amici stands for the proposition that documents that might play a role in the deliberative processes of a court should be unsealed *before* the determination of a dispositive motion. In each, the unsealing occurred (if at all) long after the rendering of a decision on the merits. *See Nixon v. Warner Communications, Inc*., 435 U.S. 589, 591 (1978) (seeking release of tapes after conclusion of criminal trial); *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1128 (9th Cir. 2003) (seeking to unseal documents after settlement of four year litigation); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (seeking disclosure of document relied upon by court in connection with previously issued order); *Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 155 (S.D.N.Y. 2003) (seeking to unseal documents submitted in connection with previously

decided summary judgment motion). Thus, neither logic not precedent makes Amici's argument ripe.

Even if Amici's argument were ripe, it would still be unavailing. While Amici attempt to wrap themselves in the First Amendment, it is far from clear that the right of access that Amici invoke is rooted in the First Amendment, as Amici contend, as opposed to the common law. It is striking that immediately following Amici's assertion that "the courts have consistently found that . . . documents [forming part of the court's deliberative process] are subject to this qualified First Amendment public right of access" (Amici Br. at 5), Amici offer no supporting case authority. Instead, they drop a footnote that says "[c]ourts have also recognized a common law right of access to public records generally, including judicial documents." *Id.* at 5 n.3. For *that* proposition, Amici do offer some citations, but the cases they cite[1] speak only to the common law right of access, which Amici candidly characterize as a "lesser" right of access "invoked primarily in the context of documents that become part of the court record through the discovery process." *Id.* at 5-6 n.3.[2] Amici do not even attempt to argue that AT&T's significant commercial and security interests in protecting the contents of these documents must be subordinated to the qualified common-law right of access – because they can't.

AT&T has compelling interests in keeping the Lodged Documents sealed. Because AT&T has already explained those interests in two previous filings made under seal, AT&T

---

[1] *Nixon*; *San Jose Mercury News v. United States District Court*, 187 F.3d 1096 (9th Cir. 1999); and *Amodeo*.

[2] Neither the Supreme Court nor the Ninth Circuit has ever held that a First Amendment right of access to documents filed in a civil action exists. *See In Re Adobe Systems, Inc. Securities Litigation*, 141 F.R.D. 155, 160 (N.D. Cal. 1992) ("A public right of access to judicial documents and proceedings exists under the First Amendment to the U.S. Constitution, but only in *criminal* proceedings.") (emphasis in original) (citing *Associated Press v. United States Dist. Ct.*, 705 F.2d 1143 (9th Cir.1983)). Amici dance around the tension in the authorities on this issue (and in particular, the dearth of binding precedent regarding it). Although there are cases from other jurisdictions that describe a qualified right of access rooted in the First Amendment, no case that binds this Court has established one, and there are authorities, as stated, to the contrary. *See In Re Adobe Systems*, 141 F.R.D. at 160. Even if such a right did exist, it is premature to invoke it with respect to the Lodged Documents, and it would in any event be trumped by AT&T's compelling interests in sealing its trade secrets.

will not reiterate them here but will instead incorporate them by reference. *See* Dkts. 51, 71. By way of a public summary, AT&T's papers show that public disclosure of the Lodged Documents, which were taken from AT&T without its permission, would destroy trade secrets of AT&T and could jeopardize the security and integrity of its network. Public disclosure could have severe consequences for AT&T and users of its services – consequences unrelated to the allegations in plaintiffs' Complaint. AT&T's interests in the Lodged Documents remaining under seal would therefore trump any purported right of access that might otherwise attach to documents lodged with the Court.[3]

**B. It is not practical or necessary to redact the Lodged Documents.**

Amici next argue that if the Lodged Documents contain trade secrets, then the trade secrets should simply be redacted from the documents, and the remaining contents should be publicly filed. This argument rests on speculation, as Amici (we trust) have not seen the Lodged Documents. Amici therefore cannot know that the documents are, as explained in detail in AT&T's previous submissions in support of sealing, replete not only with trade secrets, but also information that would, if disseminated, be of considerable utility to hackers or even terrorists who would like to compromise or destroy AT&T's network.

The only contents of the Lodged Documents that could be disclosed would be of no use or interest to anyone—for example, the *curriculum vitae* of Marcus, plaintiffs' purported expert. Redacting the rest, however, would leave nothing worth reading. That certainly is true of the Confidential Documents attached to the Klein Declaration. And the Klein and Marcus Declarations are entirely derivative of Confidential Documents.[4] It

---

[3] Amici concede that if the information contained in the Lodged Documents constitutes "full-blown trade secrets" (and they do), that AT&T would have a compelling interest in sealing them. Amici Br. at 9 n.7. Amici also agree that if the Court grants AT&T's Motion to Compel Return of Confidential Documents (*see* Dkt. 41), the public would not have any right of access to them. *Id.* at 6 ("Unless this Court finds that AT&T is entitled to their return, the public is entitled to see them so that it will know what went into the Court's adjudicative process on a matter that will result in a public outcome.").

[4] The Preliminary Injunction Memo presents different issues. Portions of it—summaries of newspapers articles and discussions of basic legal principles—probably could be made public so long as such public portions of the filings contain no reference to

(continued…)

would therefore be impossible to redact them in a way that would leave any meaningful text un-redacted. It would also be difficult for the parties or the Court to divine precisely what would be of value or assistance to competitors and hackers, and therefore what could or could not be released to the public without causing substantial harm to AT&T and its customers. No tailoring could reasonably ensure that those harms would not ensue. Given the potential risk of disclosure here, AT&T should not be forced to discern precisely what information would be useful to competitors or hackers – a judgment call in which neither AT&T nor its customers could have any real confidence.

Plaintiffs cite several cases in support of their argument that the Lodged Documents should be narrowly redacted. Notably, all of them deal with civil actions alleging the misappropriation of trade secrets, where the plaintiffs are required to identify with particularity the alleged trade secrets at issue. *See Imax Corp. v. Cinema Technologies,* 152 F.3d 1161, 1162 (9th Cir. 1998); *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 583 (7th Cir. 2002); *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 923 F. Supp. 1231, 1252 (N.D. Cal. 1995).[5] By law, a party seeking damages for misappropriation of trade secrets must identify with particularity the information the party contends constituted trade secrets. Cal. Civ. Proc. Code § 2019.210. But that principle does not detract from the fact that the law protects trade secrets from public disclosure incidental to litigation. Cal. Civ. Code § 3426.5 (allowing protective

---

(…continued)
or content from the AT&T Confidential documents. *See, e.g.*, Preliminary Injunction Memo at 1:1-24, 2:9-21, 3:11-6:19, 10:10-14:23 (these examples are meant to be illustrative, not exhaustive). But it seems odd to ask defense counsel to perform that sort of surgery on plaintiffs' memo. Perhaps the more sensible approach is to instruct plaintiffs to file two memos—one under seal addressing the Klein and Marcus Declarations and the Confidential Documents they discuss, and another not under seal addressing other matters, such as newspaper articles, basic legal principles, etc.

[5] *Religious Technology Center*, if anything, actually supports *AT&T's* position on sealing the Lodged Documents. In that case, the court (Whyte, J.) indicated that trade secrets must remain sealed unless and until it is proven that the information is no longer secret. The court thus rejected the claim that information had lost its trade secret status because it was allegedly available in another court file, noting that the other court had "issued an order sealing the file pending a decision on whether the documents are trade secrets." 923 F. Supp. at 1254-55.

orders, sealing, in-camera hearings and gag orders to protect trade secrets); Cal. Evid. Code §§ 1060-62 (creating more protections for trade secrets, including excluding the public from criminal cases dealing with trade secrets). Nothing in the law supports the notion that non-parties have any common-law right to possess, review or utilize other peoples' trade secrets.

In making their argument for narrow redaction, Amici contend that because the Confidential Documents attached to the Klein Declaration "were not acquired through the discovery process, this Court's broad powers to seal documents in the course of supervising the discovery process do not apply." Amici Br. at 7. That misses the point and stands the judicial process on its head. Here, plaintiffs submitted trade secrets that belong to AT&T to the Court—under seal. By doing so, plaintiffs and their declarants submitted themselves to the jurisdiction of the Court and to the power the Court has over information filed in actions over which it presides. To allow these documents to be unsealed because they were obtained outside the discovery process would subvert the Court's inherent authority to protect the integrity of its process and the Court's statutory authority to protect trade secret and other property rights. Those powers exist independently of the Court's other powers under Fed. R. Civ. P. 26-37. District courts are vested with the power to prevent litigants and witnesses who file papers with it from nullifying its orders by disseminating the sealed information to the public. *See Grove Fresh Distributors, Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 642 (7th Cir. 2002) (upholding contempt sanctions against counsel who disclosed information in violation of protective order); *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 290-91 (5th Cir. 2002) (affirming order sanctioning party and its counsel for violating protective orders by disclosing the contents of confidential documents to the press and rejecting argument that disclosing the contents of the documents rather than the documents itself was permissible).

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), cited by Amici, does not undercut this modest proposition. The portion of the case from which Amici quotes states: "[A] party may disseminate the identical information covered by the protective order as

long as the information is gained through means independent of the court's processes." *Id.* at 33-34 (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 399 (1979) (Powell, J., concurring)). This language is dicta (dissemination of independently acquired information was not at issue in the case). It does not stand for the broad proposition for which Amici cite it, namely, that a sealing order surrounding such information "should be analyzed as a prior restraint." Amici Br. at 8. *Seattle Times* did not pose the question presented here, namely, whether a court is permitted to seal trade secrets acquired by a litigant from a third party who took them from their rightful owner, which the litigant then submits to the Court in support of a motion, along with a declaration from the third party. AT&T is not seeking the drastic remedy that courts regularly reject, enjoining a newspaper or other media outlet from publishing information that it lawfully acquires. The relief AT&T seeks is modest, reasonable and does not implicate the First Amendment. *See Aloe Vera of America, Inc. v. United States*, 376 F.3d 960, 965-66 (9th Cir. 2004) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)); *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002); *FTC v. Productive Marketing, Inc.*, 136 F. Supp. 2d 1096, 1106 (C.D. Cal. 2001); *Hi-Tek Bags, Ltd. v. Bobtron International, Inc.*, 144 F.R.D. 379, 384 (C.D. Cal. 1993)).

Amici's reliance on *In re San Juan Star*, 662 F.2d 108, 118-19 (1st Cir. 1981) also is misplaced. *San Juan Star* presented the question of whether a court could quash legislative subpoenas seeking certain documents related to the investigation of two high-profile killings. *Id.* at 111, 118-19. The court's passing mention of Rule 26's applicability to documents obtained outside of discovery does not mean this Court lacks the power to seal such documents. Amici overlook the holding in *San Juan Star* that certain sensitive information should not be disclosed to the public. *See id*. at 118 ("Accordingly, the district court's order prohibiting disclosure of deposition contents to the press or public is affirmed"). AT&T is not arguing that Plaintiffs could never obtain the Klein documents through proper means or file them under seal, but rather that such documents should not be

disclosed to the public.[6]

The fact that Mr. Klein has "published and widely disseminated a statement describing the contents of the Documents" does not, as Amici contend, "limit the extent to which the contents of the Documents will constitute trade secrets under the applicable law," and does not therefore support Amici's argument for narrow redaction. *Cf.* Cal. Civ. Code § 3426.11 (removing the privilege otherwise created by Cal. Civ. Code § 47(b) from certain unauthorized disclosures of another's trade secrets). What is in the public domain at this point is much less detailed than what is not. Much by way of actual trade secrets and vulnerable network security information has not been revealed.

**C. Plaintiffs' press campaign does not justify unsealing AT&T trade secrets.**

Amici devote several pages to describing the "extraordinary public interest" in the alleged government program described in plaintiffs' complaint. They spend very little time describing how the technical details actually contained in the Lodged Documents are or would be of any interest to the public (other than that portion of the public that is keen on stealing trade secrets, hacking or sabotage).

One can and must distinguish between public debate over the Bush Administration's Terrorist Surveillance Program and mere curiosity over the contents of AT&T's trade secrets. The argument that there is "extensive" public interest in the latter surely is a bootstrap. These matters appeared in the press largely because plaintiffs have orchestrated a press campaign to put them there. *E.g.*, Dkt. 43, ¶¶ 22-26 & Exs. G-K. In any event, AT&T's interest in preserving its trade secrets and the security of its network trump whatever curiosity animates the newspaper-reading public.

---

[6] Amici's citation to Wright & Miller is also inapposite. The quoted section of Wright & Miller (which Amici mis-cite – the correct citation is Federal Practice & Procedure § 2043, at 572 (2d ed. 1994)) merely states that a party may use confidential information obtained outside discovery. It does not state that confidential information obtained outside discovery but then lodged with a court cannot be sealed.

## III. CONCLUSION.

For the foregoing reasons, AT&T asks the Court to seal the Lodged Documents on the terms set forth in AT&T's proposed order (Dkt. 50).

Dated: April 28, 2006.

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
DAVID L. ANDERSON
JACOB R. SORENSEN
MARC H. AXELBAUM
BRIAN J. WONG
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

SIDLEY AUSTIN LLP
DAVID W. CARPENTER
BRADFORD A. BERENSON
DAVID L. LAWSON
EDWARD R. McNICHOLAS
1501 K Street, N.W.
Washington, D.C. 20005

By /s/ Bruce A. Ericson
Bruce A. Ericson

Attorneys for Defendants
AT&T CORP. and AT&T INC.