Trone et al v. Peanut Corporation of America Doc. 87 Att. 2

# Exhibit B

Dockets.Justia.com

JUDGE LYNCH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

06 CV 00313

| | |
|---|---|
| CENTER FOR CONSTITUTIONAL RIGHTS, TINA M. FOSTER, GITANJALI S. GUTIERREZ, SEEMA AHMAD, MARIA LAHOOD, RACHEL MEEROPOL,<br><br>Plaintiffs,<br><br>v.<br><br>GEORGE W. BUSH, President of the United States; NATIONAL SECURITY AGENCY, LTG Keith B. Alexander, Director; DEFENSE INTELLIGENCE AGENCY, LTG Michael D. Maples, Director; CENTRAL INTELLIGENCE AGENCY, Porter J. Goss, Director; DEPARTMENT OF HOMELAND SECURITY, Michael Chertoff, Secretary; FEDERAL BUREAU OF INVESTIGATION, Robert S. Mueller III, Director; JOHN D. NEGROPONTE, Director of National Intelligence,<br><br>Defendants. | RECEIVED JAN 17 2006 U.S.D.C. S.D. N.Y. CASHIERS<br><br>COMPLAINT<br><br>06 CV 00313 (GL)<br>ECF CASE |

**INTRODUCTION**

1. This is an action for injunctive relief, seeking an order that would require President George W. Bush and his agents to halt an illegal and unconstitutional program of electronic surveillance of American citizens and other residents of this country. The President recently admitted to the nation that, pursuant to a secretly issued executive order, the National Security Agency (NSA) has for over four years engaged in a program of widespread electronic surveillance of telephone calls and emails, without warrants from any court, in some cases

targeting persons within the United States and/or obtaining the contents of communications of persons within the United States (hereinafter, "NSA Surveillance Program").

2. Defendants' electronic surveillance without court orders is contrary to clear statutory mandates provided in the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. § 1801-62. Indeed, because the NSA Surveillance Program conducts electronic surveillance without statutory authorization, it constitutes a series of criminal acts under FISA. *See* 50 U.S.C. § 1809. The NSA Surveillance Program also violates the separation of powers, as it exceeds the constitutional powers of the President under Article II of the Constitution, and violates the First and Fourth Amendments to the Constitution. To the extent that electronic surveillance is essential to protect the national security of this country, Congress has provided a comprehensive set of procedures for such surveillance in FISA, which allows for court authorization of such surveillance upon individualized showings that the targets are agents of foreign powers or foreign terrorist groups. FISA includes provisions for short-term emergency surveillance while an application for a court order is being prepared, and for warrantless surveillance during the first fifteen days of a war. Congress has provided that FISA and specified provisions of the criminal code are the "*exclusive* means by which electronic surveillance ... and the interception of domestic wire, oral, and electronic communications may be conducted." 18 U.S.C. § 2511(2)(f) (emphasis added). Yet the President declined to pursue these "exclusive means," and instead unilaterally and secretly authorized electronic surveillance without judicial approval or Congressional authorization.

3. The Center for Constitutional Rights represents many persons whose rights have been violated by detention and intelligence gathering practices instituted in the wake of the terrorist attacks of September 11, 2001. Lawyers at the Center represent, among others: representatives of

a potential class of hundreds of Muslim foreign nationals detained in the wake of September 11 and labeled "of interest" to the investigation of the attacks; hundreds of men detained without charge as "enemy combatants" at the Guantánamo Bay Naval Station; and a Canadian citizen stopped while changing planes at JFK Airport in New York while on his way home to Canada, and sent to Syria, where he was tortured and detained without charges for nearly a year.

4. The vast majority of these clients are individuals whom the government has at some time suspected of a link, however attenuated and unsubstantiated, to al Qaeda, groups supportive of al Qaeda, or to terrorist activity generally. For this reason, Plaintiffs' clients are within the class of people the government has described as the targets of the warrantless NSA surveillance program challenged here.

5. Plaintiffs believe that their conversations and emails with these clients, and with other persons abroad with whom they have communicated in connection with these cases, have been subject to surveillance pursuant to the NSA Surveillance Program. It is likely that Plaintiffs' privileged attorney-client communications were and continue to be intercepted by Defendants.

6. The secretive nature of the NSA Surveillance Program, combined with Defendants' admission that it is targeted at persons alleged to have some connection to al Qaeda or groups that support it, has inhibited Plaintiffs' ability to represent their clients vigorously.

## PARTIES

7. Plaintiff the Center for Constitutional Rights, Inc. ("the Center" or "CCR") is a non-profit law firm maintaining its only office within this district at 666 Broadway, 7th Floor, New York, New York 10012. It sues in its own capacity and on behalf of its lawyers and legal staff.

8. Plaintiffs Tina M. Foster, Gitanjali S. Gutierrez, Maria LaHood, and Rachel Meeropol are attorneys at the Center for Constitutional Rights. Plaintiff Seema Ahmad is a legal worker at the Center. Plaintiff Foster resides in Queens, New York. Plaintiff Gutierrez resides in Ithaca, New York. Plaintiffs LaHood and Meeropol reside in Brooklyn, New York. Plaintiff Ahmad resides in Manhattan, New York. All work primarily out of the Center's Manhattan office, and all are United States citizens.

9. George W. Bush is President of the United States. He personally authorized the NSA Surveillance Program through a secret executive order after September 11, 2001, and has continued to reauthorize it since its inception. He is sued in his official capacity only.

10. Defendant National Security Agency (NSA) is an agency under the direction and control of the Department of Defense that collects, processes and disseminates foreign signals intelligence. It is responsible for carrying out the NSA Surveillance Program challenged herein.

11. Defendant Lieutenant General Keith B. Alexander is Director of the NSA and Chief of the Central Security Service. He is responsible for supervising the NSA Surveillance Program. He is sued only in his official capacity.

12. Defendant Defense Intelligence Agency (DIA), a branch of the Department of Defense headquartered at the Pentagon, provides military intelligence to the armed forces, defense policymakers and force planners, in both the Department of Defense and the intelligence community, in support of U.S. military planning and operations and weapon systems acquisition. Upon information and belief, intelligence information obtained from the NSA Surveillance Program was shared with the DIA.

13. Defendant Lieutenant General Michael D. Maples is the Director of the DIA, and is responsible for overseeing its activities, including its use and dissemination of information obtained from the NSA Surveillance Program. He is sued in his official capacity only.

14. Defendant Central Intelligence Agency (CIA) is an agency responsible for the collection and dissemination of intelligence concerning (primarily) foreign governments, individuals, and corporations. Upon information and belief, intelligence information obtained from the NSA Surveillance Program was shared with the CIA.

15. Defendant Porter J. Goss is Director of the CIA, and is responsible for overseeing its activities in connection with obtaining, using, and disseminating intelligence information from the NSA. He is sued in his official capacity only.

16. Defendant Department of Homeland Security (DHS) is a cabinet-level agency of the federal government responsible for prevention of threats to the homeland and response to domestic emergencies. Upon information and belief, intelligence information obtained from the NSA Surveillance Program was shared with the DHS.

17. Defendant Michael Chertoff is Secretary of DHS, and is responsible for overseeing its activities in connection with obtaining, using and disseminating intelligence information from the NSA. He is sued in his official capacity only.

18. Defendant Federal Bureau of Investigation (FBI) is a federal police and intelligence agency. The FBI is a division of the Department of Justice. Upon information and belief, intelligence information obtained from the NSA Surveillance Program was shared with the FBI.

19. Defendant Robert S. Mueller III is Director of the FBI, and is responsible for overseeing its activities in connection with obtaining, using and disseminating intelligence information from the NSA. He is sued in his official capacity only.

20. Defendant John D. Negroponte is Director of National Intelligence, the cabinet-level official coordinating all components of the federal intelligence community, and as such is the principal intelligence adviser to the President and the statutory intelligence advisor to the National Security Council. Upon information and belief, he has access to the intelligence information obtained from the NSA Surveillance Program, and is responsible for coordinating its use and dissemination. He is sued in his official capacity only.

## JURISDICTION AND VENUE

21. This court has jurisdiction under 28 U.S.C. § 1331.

22. The United States District Court for the Southern District of New York is a proper venue of this action pursuant to 28 U.S.C. § 1391(e) because defendants are officers and employees of the United States or its agencies operating under color of law, no real property is involved in this action, and a plaintiff resides in this district. In addition, Defendants' actions caused injury to Plaintiffs in this district, where their law office is located and from which they engaged in international communications.

## STATEMENT OF FACTS

### STATUTORY BACKGROUND

23. In 1978, after the disclosure of widespread spying on American citizens by various federal law enforcement and intelligence agencies, including the NSA, Congress enacted the Foreign Intelligence Surveillance Act of 1978 ("FISA"), Pub. L. 95-511, Title I, 92 Stat. 1796 (Oct. 25, 1978), *codified at* 50 U.S.C. § 1801-62, as amended. FISA provides a comprehensive statutory scheme for conducting electronic surveillance for foreign intelligence or national security purposes. FISA requires that such surveillance be conducted pursuant to orders from the statutorily created Foreign Intelligence Surveillance Court, with narrow exceptions that would

not authorize the surveillance that is the subject of this lawsuit. In enacting this statute, Congress provided that it and specified provisions of the criminal code are the "*exclusive* means by which electronic surveillance ... and the interception of domestic wire, oral, and electronic communications may be conducted." 18 U.S.C. § 2511(2)(f) (emphasis added). Congress further established that conducting electronic surveillance without such statutory authorization is a crime. 50 U.S.C. § 1809 (making it a crime to "(1) engage[] in electronic surveillance under color of law except as authorized by statute; or (2) disclose[] or use[] information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by statute").

24. FISA specifically addresses the issue of domestic electronic surveillance during wartime. In a provision entitled "Authorization during time of war," FISA dictates that "[n]otwithstanding any other law, the President, through the Attorney General, may authorize electronic surveillance without a court order under this subchapter to acquire foreign intelligence information *for a period not to exceed fifteen calendar days following a declaration of war by the Congress.*" 50 U.S.C. § 1811 (emphasis added). The FISA Conference Report states that "this [15-day] period will allow time for consideration of any amendment to this act that may be appropriate during a wartime emergency. ... The conferees expect that such amendment would be reported with recommendations within 7 days and that each House would vote on the amendment within 7 days thereafter." H.R. Conf. Rep. No. 95-1720, at 34 (1978).

25. Thus, existing law provides that the President may conduct electronic surveillance only pursuant to FISA and specified provisions of the criminal code, and that doing so outside of these "exclusive means" is a crime.

## THE NSA SURVEILLANCE PROGRAM

26. Since as early as September 2001, the National Security Agency, under authorization from President George W. Bush, has engaged in a systematic program of warrantless eavesdropping upon phone and email communications of thousands of individuals, including American citizens and permanent legal residents, both within and outside of the United States.

27. The government claims that the NSA Surveillance Program targets communications between a party outside the United States and a party inside the United States when one of the parties of the communication is believed to be "a member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Qaeda, or working in support of al Qaeda." Attorney General Alberto Gonzales, *Press Briefing by Attorney General Alberto Gonzales and General Michael Hayden, Principal Deputy Director for National Intelligence* (Dec. 19, 2005).

28. The decision that a person fits these criteria may be made by an operations staffer with approval of a shift supervisor within NSA. There is no review of the decision by other executive agencies prior to implementing the electronic surveillance. There is no review of the decision at any point by a court or by Congress.

29. The NSA Surveillance Program has intercepted both phone and email communications where both parties to the communications were located with the United States.

30. Defendants claim the NSA Surveillance Program is subjected to an internal review within the executive branch approximately every 45 days, and that the President has reauthorized the program over thirty times to date.

31. Upon information and belief, at some point between its inception and the present, the NSA Surveillance Program was suspended for several months due to concerns about its illegality. Nonetheless, Defendants have defended the legality of the NSA Surveillance Program

since its existence became public knowledge on or about December 15, 2005, and the President has stated that he intends to reauthorize the program "for as long as our nation faces a continuing threat from al Qaeda and related groups."

32. Upon information and belief, the NSA Surveillance Program collects not only the identities of persons communicating with targets of surveillance, but also the contents of those communications (*e.g.* recordings or transcripts of a phone call or the text of an email).

33. Upon information and belief, other government agencies and officials, including Defendants DIA, CIA, DHS, FBI, and Defendant Negroponte, have received from the NSA information obtained through the NSA Surveillance Program, without court approval or statutory authorization.

34. Upon information and belief, Defendant DIA has used information obtained from the NSA Surveillance Program as the basis for carrying out further surveillance of persons within the United States.

**THE EFFECT OF THE UNLAWFUL NSA SURVEILLANCE SCHEME ON PLAINTIFFS' COMMUNICATIONS WITH CLIENTS AND OTHERS**

35. Plaintiff the Center for Constitutional Rights is a non-profit legal and educational organization dedicated to protecting and advancing the rights guaranteed by the United States Constitution and the Universal Declaration of Human Rights. CCR uses litigation proactively to advance the law in a positive direction, to empower oppressed communities, to guarantee the rights of those with the fewest protections and least access to legal resources, and to strengthen the broader international movement for constitutional rights and human rights under international law. CCR and its attorneys consider their legal advocacy and public education work to be modes of political expression and association.

36. Plaintiffs Tina Foster and Gitanjali Gutierrez are attorneys at the Center whose primary job responsibilities involve managing the litigation of habeas petitions filed on behalf of foreign nationals detained at Guantánamo Bay Naval Station, Cuba, often through "next friends"—typically relatives of the detained—located overseas. The Center is lead counsel on some of these cases; on most, the Center serves as co-counsel with lead counsel outside the Center, who include lawyers at transnational law firms, located throughout the United States and overseas. In this capacity Plaintiffs Foster and Gutierrez communicate regularly with family members of the detainees, potential witnesses in the habeas cases, officials of foreign governments located in the detainees' home countries, former detainees who have been released and returned to their home countries, and cooperating counsel, located both inside and outside of the United States, who are litigating individual cases. Plaintiff Foster also routinely is required to communicate with translators and interpreters located overseas in the course of her work on these cases. Some of the people Plaintiffs Foster and Gutierrez communicate with in connection with their legal work either have officially been deemed by the United States as "enemy combatants," and therefore fit within the criteria articulated by Attorney General Gonzales, or are reasonably likely to be viewed by the United States as fitting within those criteria.

37. Plaintiff Seema Ahmad is a legal worker at the Center whose primary job responsibilities also involve coordination of the habeas petitions for Guantánamo detainees. Plaintiff Ahmad communicates regularly with family members of the detainees, cooperating counsel, human rights lawyers located overseas, former detainees, and other individuals in relation to these cases. Some of the people she communicates with in connection with her legal team duties either have officially been deemed by the United States as "enemy combatants," and therefore fit within the

criteria articulated by Attorney General Gonzales for targets of the NSA Surveillance Program, or are reasonably likely to be viewed by the United States as fitting within those criteria.

38. Plaintiffs Gutierrez, Foster and Ahmad participate in frequent training and joint strategy sessions with other counsel on the Guantánamo cases. These meetings generally involve some lawyers attending in person, and others conferencing in via videoconference technology or telephonic conference calls. Co-counsel or other participants frequently use such means to call into these meetings from overseas. Counsel on the Guantánamo cases also rely heavily on an email listserv and a private extranet site (accessible via the Internet) to coordinate their efforts in the cases.

39. Plaintiff Maria LaHood is a staff attorney at the Center for Constitutional Rights responsible for litigating a number of cases in CCR's International Human Rights docket, including *Arar v. Ashcroft*, 04-CV-0249 (E.D.N.Y.), a case on behalf of a Syrian-born Canadian citizen detained in New York while changing flights at JFK Airport and sent by United States officials to Syria to be tortured. In the course of her work on that case she communicates frequently by phone and e-mail with the plaintiff, Maher Arar, who lives in Canada, as well as with others abroad. The United States government continues to assert, incorrectly, that Mr. Arar is a member of al Qaeda, and therefore Mr. Arar fits within the criteria for targets of the NSA Surveillance Program described by Attorney General Gonzales.

40. Plaintiff Rachel Meeropol is a staff attorney at the Center for Constitutional Rights responsible for litigating cases in the Center's prisoners' rights docket, and serves as lead counsel in *Turkmen v. Ashcroft*, 02-CV-2307 (E.D.N.Y.). The *Turkmen* case involves the detention and abuse of so-called "special interest" immigration detainees swept up in the immediate aftermath of 9/11 and held long after their final deportation orders so that they could

be investigated for links to terrorism. In her capacity as an attorney at the Center, Ms. Meeropol routinely discusses matters by telephone or email with potential clients overseas. In the course of her work on the *Turkmen* case she communicates with the named plaintiffs and potential class members, all of whom now live overseas, via both e-mail and telephone calls. Some of the individuals outside the United States Ms. Meeropol communicates with are likely to be viewed by the United States as fitting within the broad criteria for NSA surveillance outlined by Attorney General Gonzales.

41. All of the individual Plaintiffs above have traveled internationally in the course of their work with the Center. During these trips, other attorneys and employees of the Center routinely need to communicate with these Plaintiffs concerning work-related matters via email or telephone.

42. The revelation that the government has been carrying on widespread warrantless interception of electronic communications, especially of international communications, has impaired Plaintiffs' ability to communicate via telephone and email with their overseas clients, witnesses, and other persons, out of fear that their privileged communications are being and will be overheard by the NSA Surveillance Program. As a matter of professional ethics in their role as attorneys, Plaintiffs are obligated to take reasonable and appropriate measures to reduce the risk of disclosure of certain client confidences, once they have been apprised that a program of unlawful electronic surveillance by the government exists. The risk that their conversations are being overheard has forced Plaintiffs to institute protective measures to reduce the potential impact of such surveillance on their representation of their clients, including not communicating with certain individuals at all by phone or email, and avoiding subjects central to the attorney-client relationship and work product in electronic communications with others. Plaintiffs are

compelled to undertake international travel to avoid the risk of jeopardizing the confidentiality of privileged communications. As a result, Plaintiffs are suffering irreparable harm to their ability to advocate vigorously on their clients' behalf.

43. Upon information and belief, Plaintiffs' communications, including attorney-client privileged communications and attorney work product, have been and continue to be intercepted by the NSA Surveillance Program.

44. The NSA Surveillance Program permits the surveillance of conversations of people for whom the government would not be able to establish probable cause that the subject of the surveillance is an agent of a foreign power. Knowledge that their conversations may be overheard chills persons outside the United States who are not agents of foreign powers from contacting the Plaintiffs through electronic means to seek their legal advice and/or to provide information in connection with legal matters pursued by Plaintiffs. The unlawful NSA Surveillance Program has negatively affected Plaintiffs' ability to communicate with clients, co-counsel, witnesses, and other relevant individuals in the course of carrying out their role as advocates for their clients and others, and has thus done irreparable harm to their ability to effectively advocate for these individuals, and will continue to inflict such harm until it is stopped.

## FIRST CLAIM FOR RELIEF
## (Administrative Procedure Act and Foreign Intelligence Surveillance Act)

45. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

46. The NSA Surveillance Program is not authorized by the statutes that Congress has mandated shall be the "exclusive means by which electronic surveillance ... and the interception

of domestic wire, oral, and electronic communications may be conducted," 18 U.S.C. § 2511(2)(f), namely FISA, 50 U.S.C. § 1801-62, and the specific criminal code provisions listed in 18 U.S.C. § 2511(2)(f). FISA makes it a crime to obtain electronic surveillance without statutory authorization, and also makes it a crime to disclose or use information obtained through such surveillance. 50 U.S.C. § 1809. Defendants engaged in electronic surveillance, and disclosed and used information obtained therefrom, without statutory authorization. Defendants' actions are therefore contrary to law and subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 702.

## SECOND CLAIM FOR RELIEF
## (Separation of Powers)

47. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

48. Defendants, by carrying out their program of unlawful warrantless surveillance, have acted in excess of the President's Article II authority by failing to take care to execute the laws, and instead violating those laws, and by acting in contravention of clear statutory dictates in an area in which Congress has Article I authority to regulate, and where Congress has specifically prohibited the President from engaging in the conduct at issue here.

## THIRD CLAIM FOR RELIEF
## (Fourth Amendment violations)

49. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

50. Defendants have carried out unreasonable surveillance of Plaintiffs' private telephone and email communications without probable cause or warrants, in violation of the Fourth Amendment of the United States Constitution.

## FOURTH CLAIM FOR RELIEF
## (First Amendment Violations)

51. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

52. Defendants, by carrying out and/or asserting the right to carry out their program of unlawful warrantless surveillance, have impaired Plaintiffs' ability to freely provide legal advice, to join together in an association for the purpose of legal advocacy, to freely form attorney-client relationships, to vigorously advocate for clients and to petition the government for redress of grievances all of which are modes of expression and association protected under the First Amendment to the United States Constitution.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

(a.) Declare that Defendants' program of warrantless surveillance is unlawful, and enjoin any further such warrantless surveillance;

(b.) Order that Defendants disclose to Plaintiffs all unlawful surveillance of Plaintiffs' communications carried out pursuant to the program;

(c.) Order that all Defendants turn over to Plaintiffs all information and records in their possession relating to Plaintiffs that were acquired through the warrantless surveillance

program or were the fruit of surveillance under the program, and subsequently destroy any such information and records in Defendants' possession;

(d.) Award costs, including an award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A);

(e.) Award such other relief as the Court may deem just and proper.

Respectfully submitted,

William Goodman [WG-1241]
Shayana Kadidal [SK-1278]
Michael Ratner [MR-3357]
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012-2317
(212) 614-6427

CCR Cooperating Counsel:
David Cole
c/o Georgetown University Law Center
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
(202) 662-9078

Michael Avery
NATIONAL LAWYERS GUILD
c/o Suffolk Law School
120 Tremont Street
Boston, MA 92108
(617) 573-8551

*counsel for Plaintiffs*

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER**<br>1718 Connecticut Avenue, N.W.<br>Suite 200<br>Washington, DC 20009,<br><br>Plaintiff,<br><br>v.<br><br>**DEPARTMENT OF JUSTICE**<br>950 Pennsylvania Avenue, N.W.<br>Washington DC 20530,<br><br>Defendant. | C. A. No. ____________ |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks injunctive and other appropriate relief for the expedited processing and release of agency records requested by plaintiff from the Office of the Attorney General and several other components of defendant Department of Justice.

**Jurisdiction and Venue**

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

3. Plaintiff Electronic Privacy Information Center ("EPIC") is a public interest research organization incorporated as a not-for-profit corporation in Washington, DC.

EPIC's activities include the review of federal law enforcement activities and policies to determine their possible impacts on civil liberties and privacy interests. Among its other activities, EPIC publishes books, reports and a bi-weekly electronic newsletter. EPIC also maintains a heavily-visited site on the World Wide Web (www.epic.org) containing extensive information on privacy issues, including information EPIC has obtained from federal agencies under the FOIA.

4. Defendant Department of Justice ("DOJ") is a Department of the Executive Branch of the United States Government. DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f). The Office of the Attorney General ("Attorney General"), Office of Intelligence Policy and Review, Office of Legal Counsel, Office of Legal Policy and Office of Public Affairs are all components within defendant DOJ.

**The Revelation of Warrantless Electronic Surveillance Conducted by the National Security Agency Within the United States and DOJ's Role in That Activity**

5. On December 16, 2005, the *New York Times* reported on its front page that "after the Sept. 11 attacks, President Bush secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying." The *Times* further reported that the purported legal justification for the warrantless surveillance had been developed by DOJ attorneys and officials, and that DOJ "audited the N.S.A. program" and "expanded and refined a checklist to follow in deciding whether probable cause existed to start monitoring someone's communications."

6. In response to the revelation of warrantless domestic surveillance, Senator Arlen Specter, Chairman of the Senate Judiciary Committee, said within hours of the *New York Times* report that such surveillance is "wrong, clearly and categorically wrong

. . . This will be a matter for oversight by the Judiciary Committee as soon as we can get to it in the new year — a very, very high priority item."

**Plaintiff's FOIA Requests and Request for Expedited Processing**

7. By four letters dated December 16, 2005, to the Attorney General, Office of Intelligence Policy and Review, Office of Legal Counsel, and Office of Legal Policy, plaintiff requested under the FOIA agency records "concerning a presidential order or directive authorizing the National Security Agency ('NSA'), or any other component of the intelligence community, to conduct domestic surveillance without the prior authorization of the Foreign Intelligence Surveillance Court ('FISC')." Plaintiff stated that the records it sought included (but were not limited to) the following items:

a. an audit of NSA domestic surveillance activities;

b. guidance or a "checklist" to help decide whether probable cause exists to monitor an individual's communications;

c. communications concerning the use of information obtained through NSA domestic surveillance as the basis for DOJ surveillance applications to the FISC; and

d. legal memoranda, opinions or statements concerning increased domestic surveillance, including one authored by John C. Yoo shortly after September 11, 2001 discussing the potential for warrantless use of enhanced electronic surveillance techniques.

8. In its letters to the Attorney General, Office of Intelligence Policy and Review, Office of Legal Counsel, and Office of Legal Policy, plaintiff asked that the processing of its FOIA requests be expedited because they 1) involve a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 28 C.F.R. § 16.5(d)(1)(iv); and 2) pertain to a matter about which there is an "urgency to inform the public about an actual or alleged

Federal government activity," and the requests were made by "a person primarily engaged in disseminating information," 5 U.S.C. § 552(a)(6)(E)(v)(II).

9. By letter dated December 16, 2005, plaintiff provided copies of its four request letters to DOJ's Director of Public Affairs, who, pursuant to 28 C.F.R. § 16.5(d)(2), is responsible for making expedition determinations under the standard set forth at 28 C.F.R. § 16.5(d)(1)(iv).

10. In support of its requests for expedited processing, plaintiff noted the pendency of Congressional hearings on NSA's warrantless domestic surveillance and stated that, "[i]t is critical for Congress and the public to have as much information as possible about the DOJ's role in this surveillance to fully consider and determine its propriety."

11. Plaintiff transmitted its letters to the Attorney General, Office of Intelligence Policy and Review, Office of Legal Counsel, Office of Legal Policy and Director of Public Affairs, referenced in ¶¶ 7-9, by facsimile on December 16, 2005. On information and belief, copies of all of the referenced letters were received by the designated recipients on that day.

**<u>DOJ's Responses to Plaintiff's Request for Expedited Processing and Subsequent Failure to Timely Comply With Plaintiff's FOIA Requests</u>**

12. By letter dated December 21, 2005, DOJ's Office of Information and Privacy ("OIP") responded to plaintiff's December 16 letters "on behalf of the Offices of the Attorney General and Legal Policy." In its letter, OIP advised plaintiff of its determination that "your request for expedited processing under [28 C.F.R. § 16.5(d)(1)(ii)] should be granted." Notwithstanding that determination, OIP further stated that "we will be unable to comply with the [statutory] twenty-working-day time

limit in this case, as well as the ten additional days provided in the statute." OIP did not inform plaintiff of an anticipated date for the completion of the processing of plaintiff's FOIA requests.

13. By letter dated January 6, 2006, the Office of Intelligence Policy and Review ("OIPR") responded to plaintiff's December 16 letter and stated that "the Office of Public Affairs granted your request for expedited treatment." OIPR further stated that "your request will be reviewed ahead of others routinely processed on a first-in, first-out basis," but did not inform plaintiff of an anticipated date for the completion of the processing of plaintiff's FOIA request.

14. To date, plaintiff has received no communications concerning its requests directly from the Office of Legal Counsel or the Director of Public Affairs.

15. Notwithstanding defendant DOJ's purported decision to expedite the processing of plaintiff's FOIA requests, to date, none of the DOJ components to whom the requests were directed has completed the processing of plaintiff's FOIA requests or informed plaintiff of an anticipated date for the completion of the processing of plaintiff's FOIA requests.

16. Notwithstanding defendant DOJ's purported decision to expedite the processing of plaintiff's FOIA requests, all of the DOJ components to whom the requests were directed have violated the generally applicable statutory time limit for the processing of any FOIA request.

17. Plaintiff has exhausted the applicable administrative remedies.

18. Defendant DOJ and its components have wrongfully withheld the requested records from plaintiff.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records

19. Plaintiff repeats and realleges paragraphs 1-18.

20. The Office of the Attorney General, Office of Intelligence Policy and Review, Office of Legal Counsel, and Office of Legal Policy have wrongfully withheld agency records requested by plaintiff by failing to comply with the statutory time limit for the processing of FOIA requests.

21. Plaintiff has exhausted the applicable administrative remedies with respect to defendant DOJ's components' wrongful withholding of the requested records.

22. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

### Requested Relief

WHEREFORE, plaintiff prays that this Court:

A. order defendant DOJ and its components to process immediately the requested records in their entirety;

B. order defendant DOJ and its components, upon completion of such expedited processing, to disclose the requested records in their entirety and make copies available to plaintiff;

C. provide for expeditious proceedings in this action;

D. award plaintiff its costs and reasonable attorneys fees incurred in this action; and

E. grant such other relief as the Court may deem just and proper.

Respectfully submitted,

DAVID L. SOBEL
D.C. Bar No. 360418

MARCIA HOFMANN
D.C. Bar. No. 484136

MARC ROTENBERG
D.C. Bar. No. 422825

ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff

# Exhibit D

Steven Goldberg, OSB 75134 (goldberg@goldbergmechanic.com)
621 SW Morrison, Suite 1450
Portland, OR 97205
503.224.2372 – Fax 503 224-1123

Thomas H. Nelson, OSB 78315 (nelson@thnelson.com)
Zaha S. Hassan, OSB 97062 (hassan@thnelson.com)
Thomas H. Nelson & Associates
825 NE Multnomah, Suite 925
Portland, OR 97232
503.230.8311 – Fax 503.230.8313

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| AL-HARAMAIN ISLAMIC FOUNDATION, INC., an Oregon Nonprofit Corporation, WENDELL BELEW, a U.S. Citizen and Attorney at Law, and ASIM GHAFOOR, a U.S. Citizen and Attorney at Law, Plaintiffs, | CV '06 274 MO<br>No. ________________ |
| vs. | COMPLAINT |
| GEORGE W. BUSH, President of the United States; NATIONAL SECURITY AGENCY and KEITH B. ALEXANDER, its Director; OFFICE OF FOREIGN ASSETS CONTROL, an office of the United States Treasury and ROBERT W. WERNER, its Director; FEDERAL BUREAU OF INVESTIGATION and ROBERT S. MUELLER III, its Director, Defendants. | (Violations of Foreign Intelligence Surveillance Act, Separation of Powers, Fourth Amendment, First Amendment, Sixth Amendment, and International Covenant on Civil and Political Rights) |

## INTRODUCTION

1. This is an action for injunctive relief and for damages seeking an order that would require defendants and their agents to halt an illegal and unconstitutional program of electronic surveillance of United States citizens and entities. This action also seeks to enjoin the use of

evidence obtained through this surveillance in the proceeding in which defendant Office of Foreign Assets Control has designated plaintiff Al-Haramain Islamic Foundation, Inc. ("Al-Haramain Oregon"), as a terrorist organization.

2. Defendants have engaged in electronic surveillance of plaintiffs without court orders, which surveillance is contrary to clear statutory mandates provided in the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801-62 ("FISA"), and to provisions of the United States Constitution as well as a treaty entered into thereunder.

3. Defendants have used illegal surveillance to harm plaintiffs in manners set forth more specifically in the body of this Complaint.

**PARTIES**

4. Plaintiff Al-Haramain Oregon is an Oregon nonprofit corporation whose headquarters were established in Ashland, Oregon. Plaintiff currently owns real property in Ashland, Oregon, and in Springfield, Missouri.

5. Plaintiff Wendell Belew is a citizen of the United States and an attorney at law who has had business and other relationships with plaintiff Al-Haramain Oregon.

6. Plaintiff Asim Ghafoor is a citizen of the United States and an attorney at law who has had business and other relationships with plaintiff Al-Haramain Oregon.

7. Defendant George W. Bush is President of the United States.

8. Defendant National Security Agency is an agency of the United States.

9. Defendant Keith B. Alexander is Director of defendant National Security Agency.

10. Defendant Office of Foreign Assets Control is an office of the Department of the Treasury of the United States.

11. Defendant Robert W. Werner is Director of the Office of Foreign Assts Control.

12. Defendant Federal Bureau of Investigation is a federal police and intelligence agency.

13. Defendant Robert S. Mueller III is Director of the Federal Bureau of Investigation.

## JURISDICTION AND VENUE

14. This court has jurisdiction under 28 U.S.C. § 1331.

15. The United States District Court for the District of Oregon is a proper venue of this action insofar as one of the plaintiffs is an Oregon corporation that owns real property in this jurisdiction. In addition, defendants' actions caused harm in this District.

## STATEMENT OF FACTS

16. In February 2004, defendant Office of Foreign Assets Control froze the assets of plaintiff Al-Haramain Oregon pending an investigation into whether that plaintiff was engaged in activities related to terrorism.

17. At the time of the freezing of the assets, plaintiff Al-Haramain Oregon was affiliated with and supported by Al-Haramain Islamic Foundation (hereafter "Al-Haramain Saudi Arabia"), a charity located in, and controlled by individuals residing in, Saudi Arabia.

18. On information and belief, the decision to freeze plaintiff Al-Haramain Oregon's assets was based upon warrantless electronic surveillance of communications between a director or directors of Al-Haramain Oregon and plaintiffs Belew and Ghafoor.

19. In March and April, 2004, defendant National Security Agency targeted, and engaged in electronic surveillance of communications between, a director or directors of plaintiff Al-Haramain Oregon and plaintiffs Belew and Ghafoor. Defendant National Security Agency did not obtain a court order authorizing such electronic surveillance nor did it otherwise follow the procedures mandated by FISA.

20. In May 2004, defendant National Security Agency turned over to defendant United States Treasury Office of Foreign Assets Control logs of the conversations specified in the preceding paragraph.

21. Defendant Office of Foreign Assets Control relied upon the logs obtained without a warrant in designating plaintiff Al-Haramain Oregon as a "specially designated global terrorist" in September 2004. Al-Haramain Saudi Arabia was not and has never been designated as a terrorist organization.

22. Designation of plaintiff Al-Haramain Oregon as a "specially designated global terrorist" has resulted in severe financial hardship and other harms being visited upon plaintiff.

23. Al-Haramain Saudi Arabia was dissolved by order of the Kingdom of Saudi Arabia in the winter or spring of 2004 and has not carried out activities since that date.

24. As a result of defendants' actions, plaintiff Al-Haramain Oregon has been irreparably damaged insofar as its assets have been frozen, preventing it from engaging in the charitable and humanitarian efforts for which it was organized.

25. As a result of defendants' actions, plaintiffs Belew and Ghafoor have been irreparably damaged insofar as their abilities to represent their clients have been hindered and interfered with, and have been chilled, by defendants' illegal and unconstitutional actions.

**FIRST CLAIM FOR RELIEF**

**(Foreign Intelligence Surveillance Act)**

26. Plaintiffs incorporate by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

27. Defendants' engagement in electronic surveillance to monitor conversations between and among plaintiffs as targeted persons without obtaining prior court authorization, and defendants' subsequent use of the information obtained against plaintiffs, is in violation of

the civil and criminal provisions of FISA. As a result, all evidence obtained by this illegal surveillance must be suppressed pursuant to 50 USC § 1806(g). Further, plaintiffs are entitled to liquidated and punitive damages pursuant to 50 USC § 1810.

## SECOND CLAIM FOR RELIEF

## (Separation of Powers)

28. Plaintiffs incorporate by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

29. By carrying out their program of unlawful warrantless surveillance, defendants have acted in excess of the President's Article II authority (i) by failing to take care to execute the laws, and instead have violated those laws, (ii) by acting in contravention of clear statutory dictates in an area in which Congress has Article I authority to regulate, and (iii) by engaging in the conduct described above where Congress has specifically prohibited the President and other defendants from engaging in such conduct.

## THIRD CLAIM FOR RELIEF

## (Fourth Amendment Violations)

30. Plaintiffs incorporate by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

31. Defendants have carried out unreasonable surveillance of plaintiffs' private telephone, email, and other electronic communications without probable cause or warrants in violation of the Fourth Amendment to the United States Constitution.

## FOURTH CLAIM FOR RELIEF

### (First Amendment Violations)

32. Plaintiffs incorporate by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

33. Defendants, by carrying out and/or asserting the right to carry out their program of unlawful warrantless surveillance, have impaired plaintiff Al-Haramain Oregon's ability to obtain legal advice, to join together for the purpose of legal and religious activity, to freely form attorney-client relationships, and to petition the government of the United States for redress of grievances, all of which are modes of expression and association protected under the First Amendment of the United States Constitution.

## FIFTH CLAIM FOR RELIEF

### (Sixth Amendment Violations)

34. Plaintiffs incorporate by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

35. Defendants have impaired plaintiffs' ability to obtain and provide legal advice by carrying out unreasonable surveillance of plaintiffs' private telephone, email, and other electronic communications without probable cause or warrants in violation of the Sixth Amendment to the United States Constitution.

## SIXTH CLAIM FOR RELIEF

### (Violation of International Covenant on Civil and Political Rights)

36. Plaintiffs incorporate by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

37. On June 25, 2002, the United States Congress ratified the International Convention for the Suppression of the Financing of Terrorism ("Convention"). Article 17 of the

Convention requires the United States to comply with international human rights law in "any measures" taken pursuant to the Convention. One of the measures pursuant to the Convention is the International Covenant on Civil and Political Rights ("International Covenant") which guarantees the right to privacy. Article 17 of the International Covenant provides:

> 1. No one shall be subjected to arbitrary or unlawful interference with his privacy, family, home or correspondence, nor to unlawful attacks on his honour and reputation.
>
> 2. Everyone has the right to the protection of the law against such interference or attacks.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court:

1. Declare that defendants' warrantless surveillance of plaintiffs is unlawful and unconstitutional, and enjoin any such warrantless surveillance;

2. Order defendants to disclose to plaintiffs all unlawful surveillance of plaintiffs' communications carried out pursuant to the illegal program;

3. Order defendants to turn over to plaintiffs all information and records in their possession relating to plaintiffs that were acquired through the warrantless surveillance program or were the fruit of surveillance under the program, and subsequently destroy and make no further use of any such information and records in defendants' possession;

4. Order defendant Office of Foreign Assets Control to purge all information acquired from such program from its files, as well as all fruits of such information and make no further use of any such information;

5. Award plaintiffs individually liquidated damages of $1,000 or $100 per day for each violation as specified in the Foreign Intelligence Surveillance Act;

6. Award plaintiffs individually punitive damages of $1,000,000;

7. Award costs, including an award of attorneys' fees under the Foreign Intelligence Surveillance Act;

8. Award costs, including an award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A);

9. Award such other relief as the Court may deem just and proper.

DATED: February 28, 2006

Respectfully submitted,

Steven Goldberg by THN

Steven Goldberg, OSB 75134

Thomas H. Nelson

Thomas H. Nelson, OSB 78315
Zaha S. Hassan, OSB 97032