Trone et al v. Peanut Corporation of America
Doc. 115 Att. 5

# Tab 6

Dockets.Justia.com

**Benjamin SPOCK, Plaintiff, v. UNITED STATES of America, Director of the National Security Agency, and Unknown Agents of the National Security Agency, Defendants**

**No. 76 Civ. 4457 (VLB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

***464 F. Supp. 510; 1978 U.S. Dist. LEXIS 7186***

**December 18, 1978**

**COUNSEL:** [**1]

Herbert Jordan, Rabinowitz, Boudin & Standard, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., by Gary Cooper, Asst. U. S. Atty., New York City, for defendants.

**OPINIONBY:**

BRODERICK

**OPINION:**

[*512] MEMORANDUM ORDER

I

Plaintiff seeks redress against the United States, the Director of the National Security Agency ("NSA"), and several unknown agents of NSA for the alleged interception of plaintiff's oral, wire, telephone and telegraph communications in violation of plaintiff's constitutional, statutory and common law rights. Plaintiff grounds his cause of action on the First and Fourth Amendments, *18 U.S.C. § 2510*-2520, *47 U.S.C. § 605*, and state law. He seeks 1) a declaratory judgment that the alleged interceptions were unlawful; 2) a permanent injunction restraining the Director of NSA and his agents from further interception of the plaintiff's communications and from the use or retention of any information obtained by previous interceptions; and 3) an award of compensatory damages against the United States and the unknown agents, and an award of punitive damages against the unknown agents.

The Government, on behalf of all defendants, has moved [**2] to dismiss the complaint. The Government asserts as bases for dismissal that the court lacks jurisdiction over the United States; that the complaint fails to state a claim against the Director of NSA; and that the complaint is improperly asserted against the unknown agents. It is also contended that the state secrets privilege requires dismissal of the complaint.

On the grounds set forth herein, defendants' motion is denied.

II

Jurisdiction over the United States

The Government argues that the court lacks jurisdiction over the United States because the United States has not waived sovereign immunity with respect to the claims asserted in the complaint. Whether there has or has not been such waiver is determined by reference to the Federal Tort Claims Act, *28 U.S.C. § 1346*(b) (1976) n1 and *28 U.S.C. § 2674* (1965).

n1. Plaintiff also refers, albeit in a different context, to a recent amendment to the Administrative Procedure Act, *5 U.S.C. § 702* (Supp.1977), effective October 21, 1976, relating to the waiver of immunity by the United States in injunction proceedings. Plaintiff seeks injunctive relief against the other defendants but not against the United States. Thus I do not consider the issue of whether or not, under the circumstances of this case, the United States may be sued for an injunction.

[**3]

The Federal Tort Claims Act requires, as a predicate for liability, the existence of a valid cause of action under the law of the forum state. See, e.g., *Richards v. United States, 369 U.S. 1, 82 S. Ct. 585, 7* [*513] *L. Ed. 2d 492*

*(1962).* Section 1346(b) provides in pertinent part as follows:

> (T)he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on (or) after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, Under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. (emphasis supplied).

*28 U.S.C. § 2674* provides in pertinent part:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, In the same manner and to the same extent as a private individual under like circumstances . . . . (emphasis supplied).

Plaintiff has categorized his cause [**4] of action as, among other things, one for invasion of privacy under New York law. n2 I find that today New York would recognize a cause of action for invasion of privacy as alleged in the instant complaint, either as "some facet of the common law right of privacy" or as a civil derivative of *New York Penal Law § 250.00* Et seq. (McKinney 1967). Since on the allegations of the complaint, if proved, "a private person" n3 would be liable to plaintiff under the law of New York, the Federal Tort Claims Act authorizes this court to exercise jurisdiction over the United States. n4

n2. Although at this stage of the proceedings it is not clear where, if at all, the alleged interceptions took place, it has been assumed by both parties for the purposes of this motion that the acts occurred in New York.

n3. It is immaterial that the acts in issue were committed by government agents and not by private persons. It has long been settled that the wrongs which are covered by the Federal Tort Claims Act include wrongs which only government agents can commit. *Indian Towing Co., Inc. v. United States, 350 U.S. 61, 64-65, 76 S. Ct. 122, 100 L. Ed. 48 (1955).*

[**5]

n4. Plaintiff has asserted alternative theories of liability on the part of the United States. Those theories, and my reasons for rejecting them, follow:

1. Liability under the Fourth Amendment. Plaintiff contends that there has been a violation of the Fourth Amendment and that this violation creates a cause of action against the United States.

A cause of action under the Fourth Amendment, should one be found under federal or New York law, is not available to the plaintiff against the United States. It is barred by the specific exemption provision of the Tort Claims Act, *28 U.S.C. § 2680*(h) (1965), as that provision existed prior to 1974. Section 2680(h) provided that the Tort Claims Act did not apply to "(any) claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Essentially, this provision removed most law enforcement activities from the coverage of the Act. J. Moore, Federal Practice P 0.65(2.-4) at 700.124, including the types of activities involved in *Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).* See Regan v. United States, 75 Civ. 139 (E.D.N.Y. April 30, 1976) (Neaher, J.); *Norton v. Turner, 427 F. Supp. 138 (E.D.Va.1977).* Indeed, in Bivens, itself, Justice Harlan emphasized, in his concurring opinion, the inability of an individual to sue the government:

However desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit.

*403 U.S. at 410, 91 S. Ct. at 2012.* See also Chief Justice Burger's dissenting opinion, recommending the enactment of legislation which would, Inter alia, waive sovereign immunity as to the illegal acts of law enforcement officials committed in the performance of assigned duties. *403 U.S. at 422-423, 91 S. Ct. 1999.*

The conduct alleged by the plaintiff as violating his Fourth Amendment rights, and his analogous rights under Section 8 of the New York Civil Rights Law, are alleged to have oc-

curred during the years 1969-70. The alleged interceptions in general were terminated in 1973.

*28 U.S.C. § 2680*(h) was amended by Act of March 16, 1974. That Act added the following provision to the exception in subdivision (h).

Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

The legislative history of the 1974 amendment makes evident the fact that the United States prior to 1974 was immune from any Bivens -type claim. The amendment was proposed in reaction to the highly publicized narcotics raids in Collinsville, Illinois. See generally Boger, Gitenstein and Verkuil, The Federal Tort Claims Act Intentional Torts Amendment: An Interpretative Analysis, *54 N.C.L.Rev. 497* (1975-1976); 1 J. Moore, Federal Practice P 0.65(2.-4) at 700.125-126. The amendment was designed to prevent future abuses of this nature by permitting the injured party to bring a direct suit against the United States. Thus the above provision, which was not effective during the period covered by this action, deprived the United States of the sovereign immunity it clearly enjoyed during the period in suit in cases involving Bivens -type conduct.

Since the causes of action alleged herein are in the nature of a Bivens -type of action and since they arose prior to the 1974 amendments of the Tort Claims Act, the United States has not waived immunity with respect to these claims. See Regan v. United States, supra; cf. *Regan v. Sullivan, 557 F.2d 300, 303-04 (2d Cir. 1977)* (two year statute of limitations under Federal Tort Claims Act not applicable to Bivens -type claims against the United States since claims arose prior to the effective date of the amendment to *28 U.S.C. § 2680*(h)).

Consequently, jurisdiction over the United States cannot be premised on these Bivens claims.

2. Liability under *18 U.S.C. § 2520.* Plaintiff asserts that a private individual in New York would be liable under *18 U.S.C. § 2520.* Section 2520 creates a cause of action on the part of any person whose wire or oral communication is unlawfully intercepted, disclosed or used against Any person who, among other things, intercepts, discloses or uses such communications. Plaintiff contends that in interpreting the law of New York under the Federal Tort Claims Act, I am required to apply the whole law of *New York, Richards v. United States, 369 U.S. 1, 82 S. Ct. 585, 7 L. Ed. 2d 492 (1962),* which by virtue of the Supremacy Clause includes Section 2520.

"Person" as used in Section 2520, is defined in *18 U.S.C. § 2510*(6) (1970), and as defined it excludes the United States:

(6) "person' means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation;

Since Congress excluded the United States as a "person" for purposes of Section 2520, it would be illogical to permit plaintiff to sue the United States simply on the theory that he could sue a private person under like circumstances in state court. Such a reading of the two statutes would frustrate the intent of Congress in enacting § 2510 by rendering the statutory definition of "person" in § 2510 meaningless. Cf. Hallinan v. Mitchell, Civil No. C-75-0558 (N.D.Cal. August 5, 1975) (holding that *18 U.S.C. § § 2510*(6) and 2520 do not constitute a waiver of sovereign immunity).

[**6]

[*514] a. Invasion of privacy n5

n5. The action for invasion of privacy does not fall within the intentional torts exception of *28 U.S.C. § 2680*(h) as do the Bivens claims. *Black v. Sheraton Corp. of America, 184 U.S. App. D.C. 46, 54, 564 F.2d 531, 539 (1977); Birnbaum v. United States, 436 F. Supp. 967, 974-76 (E.D.N.Y.1977).* See footnote 4, Supra.

The distinction between the invasion of privacy claim and the Bivens claim is warranted since the interests protected by state laws regulating invasion of privacy and those protected by the Fourth Amendment are not one and the same. Cf. *Regan v. Sullivan, 557 F.2d 300, 303-04 (2d Cir. 1977)* (holding that the statute of limitations applicable to an action for invasion of privacy differed from that applicable to a Bivens claim).

The Government insists that any common law cause of action for invasion of privacy in New York is precluded by the line of cases following *Roberson v. Rochester Folding-Box Co., 171 N.Y. 538, 64 N.E. 442 (1902).* Essentially, Roberson [**7] and its progeny held that causes of action for invasion of privacy in New York are statutorily limited to cases involving commercial exploitation. See *New York Civil Rights Law § § 50* and 51 (McKinney 1976). n6 The Government argues that in light of *Roberson, supra,* a determination by this court that New York would recognize the cause of action alleged in plaintiff's complaint would violate *Erie* [*515] *Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938):*

> n6. Sections 50 and 51 of the New York Civil Rights Law provide in relevant part:
>
> § 50. Right of privacy
>
> A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person . . . is guilty of a misdemeanor.
>
> § 51. Action for injunction and for damages
>
> Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof . . . .

[**8]

> Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or "general," be they commercial law or a part of the law of torts. And no clause in the constitution purports to confer such a power upon the federal courts. . . .

*304 U.S. at 78, 58 S. Ct. at 822.*

Conduct of the type alleged in plaintiff's complaint is generally regarded as falling within the rubric of "invasion of privacy." See, e.g., *Nader v. General Motors Corp., 25 N.Y.2d 560, 569-70, 307 N.Y.S.2d 647, 255 N.E.2d 765 (1970)* (applying District of Columbia law). Plaintiff cites *Galella v. Onassis, 487 F.2d 986, 995 n. 12 (2d Cir. 1973),* for the proposition that in New York State today invasion of privacy is actionable.

The relatively recent phenomenon of invasion of privacy by means of electronic surveillance [**9] has, in fact, received little attention from the highest New York State court. n7 Chief Judge Fuld, speaking for the New York Court of Appeals in *Nader v. General Motors Corp., supra, 25 N.Y.2d at 570 n. 3, 307 N.Y.S.2d at 655 n. 3, 255 N.E.2d at 771 n. 3,* pointed out that "the question whether wiretapping (and presumably other electronic surveillance) affords a predicate for an invasion of privacy action has not yet arisen in our own jurisdiction . . . "

> n7. But see *Birnbaum v. United States, 436 F. Supp. 967, 977-78 (E.D.N.Y.1977)* ("Lower courts in the state have generally continued to acknowledge Roberson while finding ways to avoid it and grant recovery.").

Such conduct is quite obviously not encompassed by Sections 50 and 51 of the Civil Rights Law, which regulates commercial exploitation of one's name or likeness. The right sought to be vindicated in the action before me is, in the broader sense, a right to be let alone, and in the narrower sense, a right to protect oneself from having one's private affairs [**10] known to others. See *Nader, supra, 25 N.Y.2d at 566, 307 N.Y.S.2d 647, 255 N.E.2d 765.* In either sense the right sought to be vindicated extends well beyond the traditional parameters of invasion of privacy as defined in statutes protecting an individual from a wrongful appropriation of his name or likeness.

Rights comparable to that asserted by plaintiff have come to be recognized in the majority of the states as being entitled to protection. See *Galella v. Onassis, supra, 487 F.2d at 995 n. 12; Birnbaum v. United States, 436 F. Supp. 967, 976-77 (E.D.N.Y.1977).*

A determination that the New York Court of Appeals would recognize an invasion of privacy cause of action beyond the parameters of *Roberson, supra,* is not without precedent. In Galella v. Onassis, infra, *353 F. Supp. at 229-231,* the district court reached such a conclusion. The court of appeals, while not specifically reaching this issue, noted that if required to reach the

question, it would be inclined to agree with the determination of the court below. *487 F.2d at 995 n. 12.* See also *Birnbaum v. United States, supra, 436 F. Supp. 976-78;* Greenawalt, New York's Right of Privacy The Need for Change, *42 Brooklyn L.Rev.* [**11] *159, 162 n. 13 (1975).*

In fact Nader v. General Motors Corp., supra, foreshadows such a resolution of the issue by the Court of Appeals. While the lower court in that case did not rest its decision on the existence in New York of a common law action for invasion of privacy, the lower court recognized that it was entirely possible that the New York Court of Appeals would find that "some facet of the common law right of privacy" was invaded by such conduct as unprivileged wiretapping. *57 Misc.2d 301, 292 N.Y.S.2d 514, 517-518 (Sup.Ct.N.Y.Co.1968).*

[*516] Although District of Columbia law was applied in Nader, n8 the discussion in Chief Judge Fuld's opinion for the Court of Appeals took note of the general trend in other jurisdictions to recognize causes of action for invasion of privacy. In determining what constituted an intrusion which would ground a cause of action for invasion of privacy, the New York Court of Appeals had no hesitancy in deciding that allegations of illegal wiretapping and eavesdropping were sufficient to sustain the complaint under the law of the District of Columbia. Judge Fuld ventured into a detailed analysis of this "untried and developing area of [**12] tort law," an analysis which was not essential to the resolution of the issue before the court. See *Nader, 25 N.Y.2d at 574, 307 N.Y.S.2d at 658, 255 N.E.2d at 773* (Breitel, J., concurring opinion), Quoting *Pearson v. Dodd, 133 U.S. App. D.C. 279, 283, 410 F.2d 701, 705,* Cert. denied, *395 U.S. 947, 89 S. Ct. 2021, 23 L. Ed. 2d 465 (1969).* In his concurring opinion, Judge Breitel implied, by references to the law in New York State "thus far" and "at present," *25 N.Y.2d at 573, 307 N.Y.S.2d 647, 255 N.E.2d 765,* that there was a strong possibility of a change or modification in the New York law with respect to the cause of action for invasion of privacy.

n8. In Nader the parties agreed by stipulation that the sufficiency of the allegations was to be determined under the laws of the District of Columbia. *25 N.Y.2d at 565, 307 N.Y.S.2d 647, 255 N.E.2d 765.*

Federal courts are not obliged automatically to apply the last highest state court determination. See *Warner v. Gregory, 415 F.2d 1345, 1346 (7th Cir. 1969),* [**13] Cert. denied *397 U.S. 930, 90 S. Ct. 817, 25 L. Ed. 2d 112 (1970); Calvert v. Katy Taxi, Inc., 413 F.2d 841, 846 (2d Cir. 1969); Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 851 (2d Cir. 1967).* If "a district court, applying state law, concludes that the state's highest court would not adhere to its earlier statement of the law, the district court must hold as it believes the state court would hold today." *Galella v. Onassis, 353 F. Supp. 196, 229 n. 45 (S.D.N.Y.1972),* Aff'd as modified, *487 F.2d 986 (2d Cir. 1973).* See also *Birnbaum v. United States, supra, 436 F. Supp. at 978;* C. Wright, Federal Courts § 58 at 268-270 (3d ed. 1976).

b. The New York Penal Law

Plaintiff contends that even if New York would not recognize a common law cause of action for invasion of privacy under the circumstances of this case, New York courts would recognize a cause of action for invasion of privacy predicated upon violation of New York Penal Law § § 250.00-250.35 (McKinney 1967). These sections of the Penal Law afford statutory protection to the right of privacy through imposition of criminal sanctions for invasion of privacy if such invasion occurs through the use of mechanical devices for [**14] wiretapping and eavesdropping. The sections also impose sanctions for tampering with certain private communications. See *Nader v. General Motors Corp., supra, 25 N.Y.2d at 570 n. 3, 307 N.Y.S.2d 647, 255 N.E.2d 765.*

New York is among those states whose courts recognize a private right of action by a member of a class which is protected by a penal statute. For example, the courts have implied a right of action from a violation of the New York criminal statute which proscribes harassment. See *N.Y.Penal Law § 240.25* (McKinney 1967); *Galella v. Onassis, supra, 487 F.2d at 994-95;* Cf. *Long v. Beneficial Finance Co. of New York, 39 A.D.2d 11, 330 N.Y.S.2d 664 (4th Dept. 1972).* See also *Schmidt v. Merchants Despatch Trans. Co., 270 N.Y. 287, 304-06, 200 N.E. 824 (1936).*

Although plaintiff has cited no New York cases which predicate a cause of action upon the wiretapping and eavesdropping provisions of the Penal Law, these provisions were clearly designed to protect individuals such as the plaintiff from illegal intrusions. Absence of precise judicial precedent "is no reason for turning the plaintiff out of court when receiving his action will further the bringing of the law into harmony [**15] with the known practices of our modern society." *Nader v. General Motors* [*517] *Corp., 31 A.D.2d 392, 298 N.Y.S.2d 137, 140 (1st Dept. 1969), Aff'd, 25 N.Y.2d 560, 307 N.Y.S.2d 647, 255 N.E.2d 765 (1970).*

Claim against the Director

The Government asserts a two-pronged challenge to the complaint against the Director. First, it contends that the complaint fails to state a claim against the Director. Secondly, the Government contends that the need for an

injunction against the Director is moot since the cable interception program in issue terminated in 1973.

The contention that the complaint fails to state a claim against the Director is based on the assertion that the Director is authorized by statute to intercept wire and oral communications. My attention has not been directed to any such statute. Plaintiff contends that even if there were such a statute, he would still have a valid cause of action to restrain the Director from administering the statute in violation of plaintiff's constitutional rights.

I agree. Even if the Director had the statutory authority to intercept wire and oral communications, this would not deprive the plaintiff of a cause of action for the alleged [**16] violation of his constitutional rights. The relevance of the fact that the acts are within the Director's authority is that that fact might draw the constitutionality of the statute itself into question. Cf. *Lamont v. Postmaster General, 381 U.S. 301, 85 S. Ct. 1493, 14 L. Ed. 2d 398 (1965)* (striking down statute which authorized the Postmaster General to detain communist propaganda until request by recipient to deliver mail as violative of First Amendment rights). The first thrust of the Government's attack thus fails.

The second part of the Government's challenge to this portion of the complaint fares no better. This part relies on the premise that since any interception of plaintiff's communications terminated in 1973, the necessity for an injunction has been rendered moot. Plaintiff correctly points out that a possibility that the practice of interception will be resumed negates any argument of mootness:

> It is settled that an action for an injunction does not become moot merely because the incident complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants "would be free to return to "(their) old ways'."

*Allee v. Medrano,* [**17] *416 U.S. 802, 810-811, 94 S. Ct. 2191, 2198, 40 L. Ed. 2d 566 (1974)* (quoting *United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S. Ct. 894, 97 L. Ed. 1303 (1953).* n9

> n9. *DeFunis v. Odegaard, 416 U.S. 312, 94 S. Ct. 1704, 40 L. Ed. 2d 164 (1974)* (Per curiam ), relied on by the defendant, does not require a different result. That case involved an action by an applicant who claimed that he had been denied admission to law school in violation of his constitutional rights. The state trial court directed his admission, and he was admitted. By the time petitioner's case reached the Supreme Court, he had entered his final term of law school, and it was represented to the Supreme Court that petitioner's status as a law student about to be graduated would not be affected by the Court's decision. The Supreme Court held that the action was moot because the petitioner "will never again be required to run the gantlet of the Law School's admission process, and so the question is certainly not "capable of repetition' so far as he is concerned." *Id. at 319, 94 S. Ct. at 1707.* The Court differentiated that situation from one wherein the issue of mootness arises from a unilateral change in the admission procedures of the law school. In the latter situation, the "voluntary cessation of the admission practices complained of could make (that) case moot only if it could be said with assurance "that "there is no reasonable expectation that the wrong will be repeated".' " *DeFunis v. Odegaard, supra, 416 U.S. at 318, 94 S. Ct. at 1707* (Citing *United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S. Ct. 894, 97 L. Ed. 1303 (1953)).*

[**18]

In this case, the plaintiff has no guarantees that the alleged wrongs committed against him will not be repeated. Indeed, under the factual allegations in the complaint at bar, the arguments against a finding of mootness are compelling since the Government is alleged to have kept on file all of the information with respect to plaintiff. So long as the Government has access to the information which was alleged to [*518] have been illegally obtained, the controversy here cannot be considered moot.

Claims Against the Unknown Agents

I was next invited to dismiss the claims against the defendants described in the complaint as "unknown agents of the National Security Agency." Relying on *Sigurdson v. Del Guercio, 241 F.2d 480 (9th Cir. 1956),* and *Connors v. Kramer, 19 Fed.Rules Serv.2d 461 (S.D.N.Y.1974),* the Government urges dismissal of the claims against these unknown agents on the grounds that the claims are without support in federal practice. Plaintiff cites *Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971),* and *Lowenstein v. Rooney, 401 F. Supp. 952 (E.D.N.Y.1975)* as authority for the proposition that this type of designation, [**19] for real persons whose names are not yet known to the plaintiff, is an appropriate one. I agree.

*Bivens v. Six Unknown Agents, supra,* provides ample authority for the initiation of such an action against unknown defendants. In Bivens, none of the courts which considered the case expressed any doubt as to the propriety of this practice. *Sigurdson v. Del Guercio, supra,* relied on by the Government, does not survive the approval of this practice in Bivens.

The only post-Bivens case cited by the defendant, *Connors v. Kramer, supra,* is distinguishable. There the plaintiff named 100 John Doe defendants. The basis of the court's decision was that there was no justification in federal practice for designation of John Doe defendants simply because of inability to give a true name or description. In contrast, the unknown defendants in this case are real persons who have been specifically described in the complaint as those agents who intercepted the plaintiff's communications.

The designations here are more like those in *Lowenstein v. Rooney, supra,* relied on by the plaintiff. There the court, denying a motion to dismiss, held that " "unknown employees of the F.B.I. and other agencies [**20] of the federal government'... (were) real persons whose names (were) not yet known to plaintiff." *401 F. Supp. at 960.*

IV

States Secrets Privilege

The defendants argue that the "state secrets privilege" requires dismissal of the complaint. The privilege is asserted in both a public affidavit of the Secretary of Defense and a sealed affidavit which was submitted pursuant to my direction for In camera review. n10 Having examined the Secretary's affidavits and having accorded the requisite degree of deference to the judgment of the Executive Branch in evaluating the privilege, Cf. *United States v. Nixon, 418 U.S. 683, 710, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974)* (noting that as to the areas of military or diplomatic secrets, the courts have shown the utmost deference to Presidential responsibilities), I conclude that the state secrets privilege has been sufficiently established. See Socialist Workers Party v. Attorney General of the United States, 73 Civ. 3160 (S.D.N.Y. June 10, 1977), in which Judge Griesa reached the same conclusion based on the same public affidavit of the Secretary of Defense filed in this case, as well as an additional In camera affidavit.

> n10. In camera review was ordered by me after I had determined that the privilege had been duly invoked in accordance with the requirements set forth in *United States v. Reynolds, 345 U.S. 1, 7-8, 73 S. Ct. 528, 532, 97 L. Ed. 727 (1953):*
>
> The privilege belongs to the Government and must be asserted by it .... There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. (footnotes omitted).
>
> The In camera affidavit was reviewed with respect to the Government's assertion that military or diplomatic secrets are involved herein.

[**21]

The question before me at this juncture is whether or not the existence of the state secrets privilege precludes this action from proceeding. The Government contends that the privilege is absolute and urges dismissal of the complaint on the ground that the [*519] defendants can neither admit nor deny the allegations of the complaint without disclosing state secrets.

Plaintiff counters, and the Government at oral argument conceded, that the only allegation in the complaint which is not already a matter of public knowledge is the allegation that plaintiff was one of the parties whose communications were intercepted. This one factual admission or denial, plaintiff points out, reveals no important state secret, particularly since the interception of Dr. Spock's communications was previously disclosed in an article in the Washington Post, dated October 13, 1975. Plaintiff argues that the Government's fear that the Government would be required to disclose additional information as the action progressed is somewhat premature since plaintiff might move for summary judgment if the Government admits the allegation in issue. Plaintiff asserts that his constitutional right to litigate [**22] his claim should not be rendered nugatory by an evidentiary privilege.

The countervailing interests in this matter are weighty ones which demand serious attention. I am cognizant of the petitioner's constitutional right to have access to the courts to redress violations of his constitutional and statutory rights. See *California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S. Ct. 609, 612, 30 L. Ed. 2d 642 (1972)* ("The right of access to the courts is indeed but one aspect of the right of petition."). An aggrieved party should not lightly be deprived of the constitutional right to petition the courts for relief. Cf. id. (noting that the court would not lightly impute to Congress an intent to evade the right of petition). But military and state secrets essential to the security of our country have been recognized as worthy of protection by the courts, See, e.g., *Loral Corp. v. McDonnell Douglas Corp., 558 F.2d 1130, 1132 (2d Cir. 1977);* Socialist Workers Party v. Attorney General of the United States, supra, and by the legislature, See *18*

*U.S.C. § 794*(a) (1976) (imposing criminal penalties for disclosure of classified information).

On the one hand, as plaintiff [**23] correctly points out, the states secrets privilege is only an evidentiary privilege, *United States v. Reynolds, 345 U.S. 1, 6-7, 73 S. Ct. 528, 97 L. Ed. 727 (1953),* which privilege should be "construed narrowly, to permit the broadest possible discovery consistent with the purposes of the privilege." *Kinoy v. Mitchell, 67 F.R.D. 1, 14 (S.D.N.Y.1975).* See *United States v. Nixon, supra, 418 U.S. at 709-710, 94 S. Ct. 3090.* On the other hand, the privilege has underpinnings in the Article II powers of the executive and thus is rooted in the constitutional system of separation of powers. See *United States v. Nixon, supra, 418 U.S. at 705-710, 94 S. Ct. 3090; United States v. Reynolds, supra, 345 U.S. at 6 n. 9, 73 S. Ct. 528.*

The relief sought by the Government goes beyond the traditional remedies fashioned by the courts in order to protect state secrets or other classified information. For example, in *Loral Corp. v. McDonnell Douglas Corp., supra,* the Court of Appeals agreed with Judge Frankel that classified material which was essential to the development of the issues for trial would be protected by the simple denial of the parties' right to a jury trial and the designation of a [**24] Special Master. Similarly, in *Halpern v. United States, 258 F.2d 36 (2d Cir. 1958),* the Court of Appeals directed that the trial be held In camera in order to reconcile the conflict between an inventor's right to sue the United States for damages and the need to preserve the secrecy of the patent which was subject to a secrecy order under the Invention Secrecy Act of 1951.

The Government cites *Totten v. United States, 92 U.S. (2 Otto) 105, 23 L. Ed. 605 (1875),* wherein the action was dismissed on the pleadings, as authority for the drastic relief of dismissal on the theory that the privilege is absolute. That case is inapposite. It involved a suit brought against the United States by a secret agent who had been employed by President Lincoln to enter rebel lines and gain strategic information. The Supreme Court held that a covenant of secrecy was implicit in the contract of employment, the very existence of which was "itself a fact not to be disclosed." *Totten* [*520] *v. United States, supra, 92 U.S. at 107.* See also *Zweibon v. Mitchell, 170 U.S. App. D.C. 1, 32 n. 80, 516 F.2d 594, 625 n. 80 (1975),* Cert. denied, *425 U.S. 944, 96 S. Ct. 1685, 48 L. Ed. 2d 187, 96 S. Ct. 1684* [**25] *(1976).* n11

n11. Also inapposite are *Tucker v. United States, 118 F. Supp. 371, 127 Ct.Cl. 477 (1954); Allen v. United States, 27 Ct.Cl. 89 (1892);* and *DeArnaud v. United States, 26 Ct.Cl. 370 (1891),* all cited by the Government. All of these were contract actions which the Court of Claims held could not be maintained because the contracts contained covenants of secrecy as in *Totten v. United States, 92 U.S. (2 Otto) 105, 23 L. Ed. 605 (1875).*

The Government also relies on *Kinoy v. Mitchell, supra, 67 F.R.D. at 9,* as support for the proposition that disclosure of privileged material requires dismissal of the complaint. What the court actually decided in Kinoy, was that the Government had failed properly to invoke the claim of privilege. The court in Dicta noted that if "material is a secret of state or a military secret, whose disclosure would threaten the national security, the material is absolutely privileged from discovery." It further noted that if "simply to maintain the suit requires disclosure of military [**26] or state secrets," dismissal would be required.

In this case, the Government seeks to foreclose the plaintiff at the pleading stage. Such a result would be unfair and not in keeping with the basic constitutional tenets of this country. Here, where the only disclosure in issue is the admission or denial of the allegation that interception of communications occurred an allegation which has already received widespread publicity the abrogation of the plaintiffs right of access to the courts would undermine our country's historic commitment to the rule of law.

A conference for the purpose of considering procedures to safeguard state secrets during this litigation will be held on January 19, 1979 at 10 a.m. n12

n12. Subsequent to the filing of the motion to dismiss the complaint, the Government also moved for a protective order with respect to the interrogatories filed by the plaintiff. In light of plaintiffs representation to the court that once the complaint is answered, there may be no need for further discovery, the motion for a protective order will be held in abeyance.

[**27]

SO ORDERED.