Trone et al v. Peanut Corporation of America Doc. 115 Att. 6

# Tab 7

Dockets.Justia.com

**UNITED STATES v. REYNOLDS ET AL.**

**No. 21**

**SUPREME COURT OF THE UNITED STATES**

*345 U.S. 1; 73 S. Ct. 528; 97 L. Ed. 727; 1953 U.S. LEXIS 2329; 32 A.L.R.2d 382*

**October 21, 1952, Argued**
**March 9, 1953, Decided**

**SUBSEQUENT HISTORY:** Related proceeding at *Herring v. United States, 2004 U.S. Dist. LEXIS 18545* (E.D. Pa., Sept. 10, 2004)

**PRIOR HISTORY:**

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT.

In a suit under the Tort Claims Act, the District Court entered judgment against the Government. *10 F.R.D. 468.* The Court of Appeals affirmed. *192 F.2d 987.* This Court granted certiorari. *343 U.S. 918.* Reversed and remanded, p. 12. *Reynolds v. United States, 192 F.2d 987, 1951 U.S. App. LEXIS 3821* (3d Cir. Pa., 1951)

**DISPOSITION:**

*192 F.2d 987,* reversed.

**SUMMARY:**

Suits were brought against the government under the Tort Claims Act for the death of civilians killed in the crash of a military airplane. The civilians were aboard the plane as observers in the testing of secret electronic equipment. The plaintiffs moved, under *Rule 34 of the Federal Rules of Civil Procedure*, for the production by the government of the official accident report and other documents containing statements taken in connection with the official investigation of the crash. A formal claim of privilege was filed by the Secretary of the Air Force objecting to production of the documents on the ground that the plane had been engaged in a highly secret mission. An affidavit to the same effect was filed by the Judge Advocate General. This affidavit offered to produce the three surviving crew members for examination by the plaintiffs, allowing them to refresh their memories and testify as to all matters except those of a classified nature. The District Court ordered production of the documents, for examination by the judge so that he could determine the existence of the privilege, and, on the government's refusal, entered an order, in accordance with Rule 37(b) (2) (i), that the facts on the issue of negligence would be taken as established in the plaintiffs' favor. Judgment was accordingly entered for the plaintiffs and affirmed on appeal.

Six members of the Supreme Court, in an opinion by Vinson, Ch. J., reversed. They held that, in passing upon the government's claim of privilege against disclosure of military secrets, a court may not automatically insist upon an examination of the secret documents before accepting the claim, even though such disclosure be to the judge alone in chambers, and that it was error for the District Court, under the circumstances of the instant case, to insist upon examination of the documents. It was pointed out that there was reasonable danger that they would contain military secrets concerning electronic equipment, while, on the other hand, there was nothing to suggest that such equipment had anything to do with the accident, and the necessity for producing the documents was greatly minimized by the offer of the government to produce the surviving crew members and permit them to testify.

Black, Frankfurter, and Jackson, JJ., dissented for the reasons stated in the opinion of the Court of Appeals.

**LAWYERS' EDITION HEADNOTES:** [***HN1]

DISCOVERY AND INSPECTION § 15
production of documents by government -- military secrets -- effect of refusal to produce. --

Headnote: [1]
An order under *Rule 37(b) (2) (i) of the Federal Rules of Civil Procedure* in an action for negligence against the government under the Federal Tort Claims Act, to the

effect that, since the government had failed to produce documents as ordered under Rule 34, the facts on the issue of negligence would be taken as established in the plaintiffs' favor, is improper where the documents are privileged as containing military secrets, since Rule 34 compels production only of matters "not privileged".

[***HN2]

DISCOVERY AND INSPECTION § 15
action against government -- production of documents -- privilege -- military secrets -- air crash. --

Headnote: [2]
In an action against the government under the Federal Tort Claims Act for the death of civilians in the crash of a military plane in which secret electronic equipment was being tested, a claim of privilege by the government against the production of the official accident report and other documents containing statements taken in connection with the official investigation of the crash will be sustained, under the provision of *Rule 34 of the Federal Rules of Civil Procedure* compelling the production only of matters "not privileged," where a formal claim of privilege was filed by the Secretary of the Air Force and there was reasonable danger that the documents would contain military secrets, while on the other hand it was not shown that such equipment had any causal connection with the crash, and the government offered to produce the surviving crew members for examination by the plaintiffs, allowing them to refresh their memories and testify as to all matters except those of a classified nature.

[***HN3]

DISCOVERY AND INSPECTION § 12.5
privileged matter. --

Headnote: [3]
The term "not privileged" as used in *Rule 34 of the Federal Rules of Civil Procedure* refers to privileges as understood in the law of evidence.

[***HN4]

WITNESSES § 70.5
privilege -- military secrets. --

Headnote: [4]
The existence of the government's privilege against revealing military secrets is without question.

[***HN5]

WITNESSES § 70.5
privilege -- military secrets. --

Headnote: [5]
The privilege against revealing military secrets belongs to the government and must be asserted by it; it can neither be claimed nor waived by a private party. Also, it is not to be lightly invoked.

[***HN6]

WITNESSES § 70.5
privilege -- military secrets. --

Headnote: [6]
The government's claim of privilege against revealing military secrets must be supported by a formal claim of privilege lodged by the head of the department having control over the matter after actual personal consideration by that officer.

[***HN7]

WITNESSES § 70.5
privilege -- military secrets. --

Headnote: [7]
It is for the court to determine whether the circumstances are appropriate for the government's assertion of the privilege against revealing military secrets, but, in making this determination, the court must do so without forcing a disclosure of the very thing the privilege is designed to protect.

[***HN8]

WITNESSES § 78
self-incrimination -- investigation of claim of privilege. --

Headnote: [8]
In passing upon a claim of privilege against self-incrimination, the court must be satisfied, from all the evidence and circumstances, and from the implications of the question, and the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious exposure would result. If the court is so satisfied, the claim of privilege will be accepted without requiring further disclosure.

[***HN9]

WITNESSES § 70.5
privilege -- military secrets. --

Headnote: [9]
In passing upon the government's claim of privilege against revealing military secrets, the court may not automatically require a complete disclosure to the judge before the claim is accepted, even though such disclosure be to the judge alone in chambers, but it is enough that the court is satisfied, from all the circumstances of the case, that there is a reasonable danger that the evidence will expose military matters which, in the interest of national security, should not be divulged.

[***HN10]

EVIDENCE § 34
judicial notice -- national defense. --

Headnote: [10]
Judicial notice will be taken that the present is a time of vigorous preparation for national defense, that air power is one of the most potent weapons in such defense, that newly developed electronic devices have greatly enhanced the effective use of air power, and that these devices must be kept secret if their full military advantage is to be exploited in the national interests.

[***HN11]

WITNESSES § 70.5
privilege -- military secrets. --

Headnote: [11]
In passing upon the government's claim of privilege against revealing military secrets, the showing of necessity made by the other party will determine how far the court should go in its investigation. Where there is a strong showing of necessity, the claim of privilege will not be lightly accepted, but, where necessity is dubious, the formal claim of privilege will prevail.

**SYLLABUS:**

A military aircraft on a flight to test secret electronic equipment crashed and certain civilian observers aboard were killed. Their widows sued the United States under the Tort Claims Act and moved under *Rule 34 of the Federal Rules of Civil Procedure* for production of the Air Force's accident investigation report and statements made by surviving crew members during the investigation. The Secretary of the Air Force filed a formal claim of privilege, stating that the matters were privileged against disclosure under Air Force regulations issued under R. S. § 161 and that the aircraft and its personnel were "engaged in a highly secret mission." The Judge Advocate General filed an affidavit stating that the material could not be furnished "without seriously hampering national security"; but he offered to produce the surviving crew members for examination by plaintiffs and to permit them to testify as to all matters except those of a "classified nature." *Held*: In this case, there was a valid claim of privilege under Rule 34; and a judgment based under Rule 37 on refusal to produce the documents subjected the United States to liability to which Congress did not consent by the Tort Claims Act. Pp. 2-12.

(a) As used in Rule 34, which compels production only of matters "not privileged," the term "not privileged" refers to "privileges" as that term is understood in the law of evidence. P. 6.

(b) When the Secretary lodged his formal claim of privilege, he invoked a privilege against revealing military secrets which is well established in the law of evidence. Pp. 6-7.

(c) When a claim of privilege against revealing military secrets is invoked, the courts must decide whether the occasion for invoking the privilege is appropriate, and yet do so without jeopardizing the security which the privilege was meant to protect. Pp. 7-8.

(d) When the formal claim of privilege was filed by the Secretary, under circumstances indicating a reasonable possibility that military secrets were involved, there was a sufficient showing of privilege to cut off further demand for the documents on the showing of necessity for its compulsion that had been made. P. 10.

(e) In this case, the showing of necessity was greatly minimized by plaintiffs' rejection of the Judge Advocate General's offer to make the surviving crew members available for examination. P. 11.

(f) The doctrine in the criminal field that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free has no application in a civil forum where the Government is not the moving party but is a defendant only on terms to which it has consented. P. 12.

**COUNSEL:**

Samuel D. Slade argued the cause for the United States. With him on the brief were Acting Solicitor General Stern and Assistant Attorney General Baldridge.

Charles J. Biddle argued the cause for respondents. With him on the brief was Francis Hopkinson.

**JUDGES:**

Vinson, Black, Reed, Frankfurter, Douglas, Jackson, Burton, Clark, Minton

**OPINIONBY:**

VINSON

**OPINION:**

[*2] [**529] [***730] MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

These suits under the Tort Claims Act n1 arise from the death of three civilians in the crash of a B-29 aircraft at [*3] Waycross, Georgia, on October 6, 1948. Because an important question of the Government's privilege to resist discovery n2 is involved, we granted certiorari. *343 U.S. 918.*

n1 *28 U. S. C. § § 1346,* 2674.

n2 *Federal Rules of Civil Procedure, Rule 34.*

The aircraft had taken flight for the purpose of testing secret electronic equipment, with four civilian observers aboard. While aloft, fire broke out in one of the bomber's engines. Six of the nine crew members and three of the four civilian observers were killed in the crash.

The widows of the three deceased civilian observers brought consolidated suits against the United States. In the pretrial stages the plaintiffs moved, under *Rule 34 of the Federal Rules of Civil Procedure*, n3 for [**530] production of the Air Force's official accident investigation [***731] report and the statements of the three surviving crew members, taken in connection with the official investigation. The Government moved to quash the motion, claiming that these matters were privileged against disclosure pursuant [*4] to Air Force regulations promulgated under R. S. § 161. n4 The District Judge sustained plaintiffs' motion, holding that good cause for production had been shown. n5 The claim of privilege under R. S. § 161 was rejected on the premise that the Tort Claims Act, in making the Government liable "in the same manner" as a private individual, n6 had waived any privilege based upon executive control over governmental documents.

n3 "Rule 34. *Discovery and Production of Documents and Things for Inspection, Copying, or Photographing.* Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30 (b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26 (b) and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon within the scope of the examination permitted by Rule 26 (b). The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

n4 *5 U. S. C. § 22:*

"The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

Air Force Regulation No. 62-7 (5)(b) provides:

"Reports of boards of officers, special accident reports, or extracts therefrom will not be furnished or made available to persons outside the authorized chain of command without the specific approval of the Secretary of the Air Force."

n5 *10 F.R.D. 468.*

n6 *28 U. S. C. § 2674:*

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

Shortly after this decision, the District Court received a letter from the Secretary of the Air Force, stating that "it has been determined that it would not be in the public interest to furnish this report. . . ." The court allowed a rehearing on its earlier order, and at the rehearing the Secretary of the Air Force filed a formal "Claim of Privilege." This document repeated the prior claim based generally on R. S. § 161, and then stated that the Government further objected to production of the docu-

ments "for the reason that the aircraft in question, together with the personnel on board, were engaged in a highly secret mission of the Air Force." An affidavit of the Judge Advocate General, United States Air Force, was also filed [*5] with the court, which asserted that the demanded material could not be furnished "without seriously hampering national security, flying safety and the development of highly technical and secret military equipment." The same affidavit offered to produce the three surviving crew members, without cost, for examination by the plaintiffs. The witnesses would be allowed to refresh their memories from any statement made by them to the Air Force, and authorized to testify as to all matters except those of a "classified nature."

The District Court ordered the Government to produce the documents in order that the court might determine whether they contained privileged matter. The Government declined, so the court entered an order, under Rule 37 (b)(2)(i), n7 [***732] that the facts on the issue of negligence would be taken as established in plaintiffs' favor. [**531] After a hearing to determine damages, final judgment was entered for the plaintiffs. The Court of Appeals affirmed, n8 both as to the showing of good cause for production of the documents, and as to the ultimate disposition of the case as a consequence of the Government's refusal to produce the documents.

n7 "Rule 37. *Refusal to Make Discovery: Consequences.*

. . . .

"(b) Failure to Comply With Order.

. . . .

"(2) *Other Consequences.* If any party or an officer or managing agent of a party refuses to obey . . . an order made under Rule 34 to produce any document . . . , the court may make such orders in regard to the refusal as are just, and among others the following:

"(i) An order that the matters regarding which the questions were asked, or the character or description of the thing or land, or the contents of the paper, or the physical or mental condition of the party, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; . . . ."

n8 *192 F.2d 987.*

[*6] We have had broad propositions pressed upon us for decision. On behalf of the Government it has been urged that the executive department heads have power to withhold any documents in their custody from judicial view if they deem it to be in the public interest. n9 Respondents have asserted that the executive's power to withhold documents was waived by the Tort Claims Act. Both positions have constitutional overtones which we find it unnecessary to pass upon, there being a narrower ground for decision. *Touhy v. Ragen, 340 U.S. 462 (1951); Rescue Army v. Municipal Court of Los Angeles, 331 U.S. 549, 574-585 (1947).*

n9 While claim of executive power to suppress documents is based more immediately upon R. S. § 161 (see *supra*, note 4), the roots go much deeper. It is said that R. S. § 161 is only a legislative recognition of an inherent executive power which is protected in the constitutional system of separation of power.

The Tort Claims Act expressly makes the Federal Rules of Civil Procedure applicable to suits against the United States. n10 The judgment in this case imposed liability upon the Government by operation of Rule 37, for refusal to produce documents under Rule 34. Since Rule 34 compels production only of matters "not privileged," the essential question is whether there was a valid claim of privilege under the Rule. We hold that there was, and that, therefore, the judgment below subjected the United States to liability on terms to which Congress did not consent by the Tort Claims Act.

n10 *28 U. S. C. (1946 ed.) § 932; United States v. Yellow Cab Co., 340 U.S. 543, 553 (1951).*

We think it should be clear that the term "not privileged," as used in Rule 34, refers to "privileges" as that term is understood in the law of evidence. When the Secretary of the Air Force lodged his formal "Claim of Privilege," he attempted therein to invoke the privilege against revealing military secrets, a privilege which is well [*7] established in the law of evidence. n11 The

existence of the privilege is conceded by the court below, n12 and, indeed, by the [***733] most outspoken critics of governmental claims to privilege. n13

n11 *Totten v. United States, 92 U.S. 105, 107 (1875); Firth Sterling Steel Co.* v. *Bethlehem Steel Co., 199 F. 353 (D. C. E. D. Pa. 1912); Pollen v. Ford Instrument Co., 26 F.Supp. 583 (D. C. E. D. N. Y. 1939); Cresmer v. United States, 9 F.R.D. 203 (D. C. E. D. N. Y. 1949);* see *Bank Line v. United States, 68 F.Supp. 587 (D. C. S. D. N. Y. 1946), 163 F.2d 133 (C. A. 2d Cir. 1947).* 8 Wigmore on Evidence (3d ed.) § 2212*a*, p. 161, and § 2378 (g)(5), at pp. 785 *et seq.*; 1 Greenleaf on Evidence (16th ed.) § § 250-251; Sanford, Evidentiary Privileges Against the Production of Data Within the Control of Executive Departments, *3 Vanderbilt L. Rev. 73, 74-75 (1949).*

n12 *192 F.2d 987, 996.*

n13 See Wigmore, *op. cit. supra*, note 11.

Judicial experience with the privilege which protects military and state secrets has been limited in this country. n14 English experience has been more extensive, but still relatively slight compared [**532] with other evidentiary privileges. n15 Nevertheless, the principles which control the application of the privilege emerge quite clearly from the available precedents. The privilege belongs to the Government and must be asserted by it; it can neither be claimed n16 nor waived n17 by a private party. It is not to be lightly invoked. n18 There must be a formal claim [*8] of privilege, lodged by the head of the department which has control over the matter, n19 after actual personal consideration by that officer. n20 The court itself must determine whether the circumstances are appropriate for the claim of privilege, n21 and yet do so without forcing a disclosure of the very thing the privilege is designed to protect. n22 The latter requirement is the only one which presents real difficulty. As to it, we find it helpful to draw upon judicial experience in dealing with an analogous privilege, the privilege against self-incrimination.

n14 See cases cited *supra*, note 11.

n15 Most of the English precedents are reviewed in the recent case of *Duncan* v. *Cammell, Laird & Co.*, [1942] A. C. 624.

n16 *Firth Sterling Steel Co.* v. *Bethlehem Steel Co., 199 F. 353 (D. C. E. D. Pa. 1912).*

n17 *In re Grove, 180 F. 62 (C. A. 3d Cir. 1910).*

n18 Marshall, C. J., in the *Aaron Burr* trial, I Robertson's Reports 186: "That there may be matter, the production of which the court would not require, is certain . . . . What ought to be done, under such circumstances, presents a delicate question, the discussion of which, it is hoped, will never be rendered necessary in this country."

n19 *Firth* case, *supra*, note 16.

n20 "The essential matter is that the decision to object should be taken by the minister who is the political head of the department, and that he should have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced . . . ." *Duncan* v. *Cammell, Laird & Co.*, [1942] A. C. 624, 638.

n21 *Id.*, at p. 642:

"Although an objection validly taken to production, on the ground that this would be injurious to the public interest, is conclusive, it is important to remember that *the decision ruling out such documents is the decision of the judge. . . .* It is the judge who is in control of the trial, not the executive . . . ." (Emphasis supplied.)

n22 *Id.*, at pp. 638-642; cf. the language of this Court in *Hoffman v. United States, 341 U.S. 479, 486 (1951),* speaking of the analogous hazard of probing too far in derogation of the claim of privilege against self-incrimination:

"However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, *he would be compelled to surrender the very protection which the privilege is designed to guarantee.*" (Emphasis supplied.)

The privilege against self-incrimination presented the courts with a similar sort of problem. Too much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect, while a complete abandonment of judicial control would lead to intolerable abuses. Indeed, in the earlier stages [*9] of judicial experience with the problem, both extremes were advocated, some saying that the bare assertion by the witness must be taken as conclusive, and others saying that the witness should be required to reveal the matter behind his claim of privilege to the judge for verification. n23 Neither extreme prevailed, and a sound formula of compromise was developed. This formula received authoritative [***734] expression in this country as early as the *Burr* trial. n24 There are differences in phraseology, but in substance it is agreed that the court must be satisfied from all [**533] the evidence and circumstances, and "from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States, 341 U.S. 479, 486-487 (1951).* n25 If the court is so satisfied, the claim of the privilege will be accepted without requiring further disclosure.

n23 Compare the expressions of Rolfe, B. and Wilde, C. J. in *Regina v. Garbett, 2 Car. & K. 474, 492 (1847);* see 8 Wigmore on Evidence (3d ed.) § 2271.

n24 I Robertson's Reports 244:

"When a question is propounded, it belongs to the court to consider and to decide, whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it *may* criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims."

n25 *Brown v. United States, 276 U.S. 134 (1928); Mason v. United States, 244 U.S. 362 (1917).*

Regardless of how it is articulated, some like formula of compromise must be applied here. Judicial control over the evidence in a case cannot be abdicated to the [*10] caprice of executive officers. Yet we will not go so far as to say that the court may automatically require a complete disclosure to the judge before the claim of privilege will be accepted in any case. It may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged. When this is the case, the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers.

In the instant case we cannot escape judicial notice that this is a time of vigorous preparation for national defense. Experience in the past war has made it common knowledge that air power is one of the most potent weapons in our scheme of defense, and that newly developing electronic devices have greatly enhanced the effective use of air power. It is equally apparent that these electronic devices must be kept secret if their full military advantage is to be exploited in the national interests. On the record before the trial court it appeared that this accident occurred to a military plane which had gone aloft to test secret electronic equipment. Certainly there was a reasonable danger that the accident investigation report would contain references to the secret electronic equipment which was the primary concern of the mission.

Of course, even with this information before him, the trial judge was in no position to decide that the report was privileged until there had been a formal claim of privilege. Thus it was entirely proper to rule initially that petitioner had shown probable cause for discovery of the documents. Thereafter, when the formal claim of privilege was filed by the Secretary of the Air Force, under [*11] circumstances indicating a reasonable possibility that military secrets were involved, there was certainly a sufficient showing of privilege to cut off further demand for the documents on the showing of necessity for its compulsion that had then been made.

[***735]

In each case, the showing of necessity which is made will determine how far the court should probe in satisfy-

ing itself that the occasion for invoking the privilege is appropriate. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake. n26 *A fortiori*, where necessity is dubious, a formal claim of privilege, made [**534] under the circumstances of this case, will have to prevail. Here, necessity was greatly minimized by an available alternative, which might have given respondents the evidence to make out their case without forcing a showdown on the claim of privilege. By their failure to pursue that alternative, respondents have posed the privilege question for decision with the formal claim of privilege set against a dubious showing of necessity.

> n26 See *Totten v. United States, 92 U.S. 105 (1875),* where the very subject matter of the action, a contract to perform espionage, was a matter of state secret. The action was dismissed on the pleadings without ever reaching the question of evidence, since it was so obvious that the action should never prevail over the privilege.

There is nothing to suggest that the electronic equipment, in this case, had any causal connection with the accident. Therefore, it should be possible for respondents to adduce the essential facts as to causation without resort to material touching upon military secrets. Respondents were given a reasonable opportunity to do just that, when petitioner formally offered to make the surviving crew members available for examination. We think that offer should have been accepted.

[*12] Respondents have cited us to those cases in the criminal field, where it has been held that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free. n27 The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense. Such rationale has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented.

> n27 *United States v. Andolschek, 142 F.2d 503 (C. A. 2d Cir. 1944); United States v. Beekman, 155 F.2d 580 (C. A. 2d Cir. 1946).*

The decision of the Court of Appeals is reversed and the case will be remanded to the District Court for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK, MR. JUSTICE FRANKFURTER, and MR. JUSTICE JACKSON dissent, substantially for the reasons set forth in the opinion of Judge Maris below. *192 F.2d 987.*

**REFERENCES:** Return To Full Text Opinion