UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T CORP., AT&T INC. and DOES 1-20, inclusive,<br><br>Defendants. | Case No. C-06-0672-VRW<br><br>**DECLARATION OF JOHN D. NEGROPONTE, DIRECTOR OF NATIONAL INTELLIGENCE** |

I, John D. Negroponte, declare as follows:

## INTRODUCTION

1. I am the Director of National Intelligence (DNI) of the United States. I have held this position since April 21, 2005. From June 28, 2004, until appointed to be DNI, I served as United States Ambassador to Iraq. From September 18, 2001, until my appointment in Iraq, I served as the United States Permanent Representative to the United Nations. I have also served as Ambassador to Honduras (1981-1985), Mexico (1989-1993), the Philippines (1993-1996), and as Deputy Assistant to the President for National Security Affairs (1987-1989).

2. In the course of my official duties, I have been advised of this lawsuit and the allegations at issue in this case. The statements made herein are based on my personal knowledge, as well as on information provided to me in my official capacity as DNI, and on my personal evaluation of that information. In personally considering this matter, I have executed a separate classified declaration dated May 12, 2006, and filed *in camera* and *ex parte* in this case. Moreover, I have read and personally considered the information contained in the *In Camera, Ex Parte* Declaration of Lt. Gen. Keith B. Alexander filed in this case. General Alexander is the

Director of the National Security Agency ("NSA"), and is responsible for directing the NSA, overseeing the operations undertaken to carry out its mission, and by specific charge from the President and the DNI, protecting NSA activities and intelligence sources and methods.

3. The purpose of this declaration is to formally assert, in my capacity as DNI and head of the United States Intelligence Community, the military and state secrets privilege (hereafter "state secrets privilege"), as well as a statutory privilege under the National Security Act, *see* 50 U.S.C. § 403-1(i)(1), in order to protect intelligence information, sources and methods that are implicated by the allegations in this case. Disclosure of the information covered by these privilege assertions reasonably could be expected to cause exceptionally grave damage to the national security of the United States and, therefore, should be excluded from any use in this case. In addition, I concur with General Alexander's conclusion that the risk is great that further litigation will risk the disclosure of information harmful to the national security of the United States and, accordingly, this case should be dismissed. *See* Declaration of Lt. Gen. Keith B. Alexander, Director, National Security Agency.

**BACKGROUND ON DIRECTOR OF NATIONAL INTELLIGENCE**

4. The position of Director of National Intelligence was created by Congress in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending sections 102 through 104 of the Title I of the National Security Act of 1947). Subject to the authority, direction, and control of the President, the DNI serves as the head of the U.S. Intelligence Community and as the principal advisor to the President, the National Security Council, and the Homeland Security Council, for intelligence-related matters related to national security. *See* 50 U.S.C. § 403(b)(1), (2).

5. The "United States Intelligence Community" includes the Office of the Director of National Intelligence; the Central Intelligence Agency; the National Security Agency; the Defense Intelligence Agency; the National Geospatial-Intelligence Agency; the National Reconnaissance Office; other offices within the Department of Defense for the collection of

specialized national intelligence through reconnaissance programs; the intelligence elements of the military services, the Federal Bureau of Investigation, the Department of Treasury, the Department of Energy, Drug Enforcement Administration, and the Coast Guard; the Bureau of Intelligence and Research of the Department of State; the elements of the Department of Homeland Security concerned with the analysis of intelligence information; and such other elements of any other department or agency as may be designated by the President, or jointly designated by the DNI and heads of the department or agency concerned, as an element of the Intelligence Community. *See* 50 U.S.C. § 401a(4).

6. The responsibilities and authorities of the DNI are set forth in the National Security Act, as amended. *See* 50 U.S.C. § 403-1. These responsibilities include ensuring that national intelligence is provided to the President, the heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof. 50 U.S.C. § 403-1(a)(1). The DNI is also charged with establishing the objectives of, determining the requirements and priorities for, and managing and directing the tasking, collection, analysis, production, and dissemination of national intelligence by elements of the Intelligence Community. *Id.* § 403-1(f)(1)(A)(i) and (ii). The DNI is also responsible for developing and determining, based on proposals submitted by heads of agencies and departments within the Intelligence Community, an annual consolidated budget for the National Intelligence Program for presentation to the President, and for ensuring the effective execution of the annual budget for intelligence and intelligence-related activities, and for managing and allotting appropriations for the National Intelligence Program. *Id.* § 403-1(c)(1)-(5).

7. In addition, the National Security Act of 1947, as amended, provides that "The Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). Consistent with this responsibility, the DNI establishes and implements guidelines for the Intelligence Community for the classification of

information under applicable law, Executive Orders, or other Presidential directives and access and dissemination of intelligence. *Id.* § 403-1(i)(2)(A), (B). In particular, the DNI is responsible for the establishment of uniform standards and procedures for the grant of access to Sensitive Compartmented Information ("SCI") to any officer or employee of any agency or department of the United States, and for ensuring consistent implementation of those standards throughout such departments and agencies. *Id.* § 403-1(j)(1), (2).

8. By virtue of my position as the DNI, and unless otherwise directed by the President, I have access to all intelligence related to the national security that is collected by any department, agency, or other entity of the United States. Pursuant to Executive Order No. 12958, 3 C.F.R. § 333 (1995), as amended by Executive Order 13292 (March 25, 2003), reprinted as amended in 50 U.S.C.A. § 435 at 93 (Supp. 2004), the President has authorized me to exercise original TOP SECRET classification authority. My classified declaration, as well as the classified declaration of General Alexander on which I relied in this case, are properly classified under § 1.3 of Executive Order 12958, as amended, because the public disclosure of the information contained in those declarations could reasonably be expected to cause serious damage to the foreign policy and national security of the United States.

## ASSERTION OF THE STATE SECRETS PRIVILEGE

9. After careful and actual personal consideration of the matter, I have determined that the disclosure of certain information implicated by Plaintiffs' claims—as set forth here and described in more detail in my classified declaration and in the classified declaration of General Alexander—could reasonably be expected to cause exceptionally grave damage to the national security of the United States and, thus, must be protected from disclosure and excluded from this case. Thus, as to this information, I formally invoke and assert the state secrets privilege. In addition, it is my judgment that any attempt to proceed in the case will substantially risk the disclosure of the privileged information described briefly herein, and in more detail in the classified declarations, and will cause exceptionally grave damage to the national security of the

United States.

10. Through this declaration, I also invoke and assert a statutory privilege held by the DNI under the National Security Act to protect intelligence sources and methods implicated by this case. *See* 50 U.S.C. § 403-1(i)(1). My assertion of this statutory privilege for intelligence information and sources and methods is coextensive with my state secrets privilege assertion.

## INFORMATION SUBJECT TO CLAIMS OF PRIVILEGE

11. In an effort to counter the al Qaeda threat, the President of United States authorized the NSA to utilize its SIGINT capabilities to collect certain "one-end foreign" communications where one party is associated with the al Qaeda terrorist organization for the purpose of detecting and preventing another terrorist attack on the United States. This activity is known as the Terrorist Surveillance Program ("TSP"). To discuss this activity in any greater detail, however, would disclose classified intelligence information and reveal intelligence sources and methods, which would enable adversaries of the United States to avoid detection by the U.S. Intelligence Community and/or take measures to defeat or neutralize U.S. intelligence collection, posing a serious threat of damage to the United States' national security interests. Thus, any further elaboration on the public record concerning the TSP would reveal information that could cause the very harms my assertion of the state secrets privilege is intended to prevent. The classified declaration of General Alexander that I considered in making this privilege assertion, as well as my own separate classified declaration, provide a more detailed explanation of the information at issue and the harms to national security that would result from its disclosure.

12. Plaintiffs also make allegations regarding other purported activities of the NSA, including allegations about NSA's purported involvement with AT&T. The United States can neither confirm nor deny allegations concerning intelligence activities, sources, methods, relationships, or targets. For example, disclosure of those who are targeted by such activities would compromise the collection of intelligence information just as disclosure of those who are

not targeted would reveal to adversaries that certain communications channels are secure or, more broadly, would tend to reveal the methods being used to conduct surveillance. The only recourse for the Intelligence Community and, in this case, for the NSA, is to neither confirm nor deny these sorts of allegations, regardless of whether they are true or false. To say otherwise when challenged in litigation would result in routine exposure of intelligence information, sources, and methods and would severely undermine surveillance activities in general. Thus, as with the other categories of information discussed in this declaration, any further elaboration on the public record concerning these matters would reveal information that could cause the very harms my assertion of the state secrets privilege is intended to prevent. The classified declaration of General Alexander that I considered in making this privilege assertion, as well as my own separate classified declaration, provide a more detailed explanation of the information at issue, the reasons why it is implicated by Plaintiffs' claims, and the harms to national security that would result from its disclosure.

## CONCLUSION

13. In sum, I formally invoke and assert the state secrets privilege, as well as a statutory privilege under the National Security Act, to prevent the disclosure of the information detailed in the two classified declarations that are available for the Court's *in camera* and *ex parte* review. Moreover, because proceedings in this case risk disclosure of privileged and classified intelligence-related information, I join with General Alexander in respectfully requesting that the Court dismiss this case to stem the harms to the national security of the United States that will occur if it is litigated.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: 5/12/2006

JOHN D. NEGROPONTE
Director of National Intelligence