Trone et al v. Peanut Corporation of America Doc. 150

DAVID L. ANDERSON #149604
JACOB R. SORENSEN #209134
BRIAN J. WONG #226940
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Email: bruce.ericson@pillsburylaw.com

SIDLEY AUSTIN LLP
DAVID W. CARPENTER (admitted *pro hac vice)*
DAVID L. LAWSON (admitted *pro hac vice)*
BRADFORD A. BERENSON (admitted *pro hac vice)*
EDWARD R. McNICHOLAS (admitted *pro hac vice)*
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8010
Facsimile: (202) 736-8711
Email: bberenson@sidley.com

Attorneys for Defendants
AT&T CORP. and AT&T INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AT&T CORP., AT&T INC. and DOES 1-20, inclusive,<br><br>Defendants. | No. C-06-0672-VRW<br><br>**REPLY MEMORANDUM OF DEFENDANT AT&T CORP. IN RESPONSE TO COURT'S MAY 17, 2006 MINUTE ORDER** |

**[REDACTED]**



Dockets.Justia.com

## TABLE OF CONTENTS


PAGE

I. INTRODUCTION. .......... 1

II. ARGUMENT. .......... 3

A. The Government's State Secrets Motion Cannot Properly Be Resolved Without Reviewing The Classified Submissions. .......... 3

1. Deciding A State Secrets Motion Routinely Entails Ex Parte Review Of Classified Submissions. .......... 4

2. Due Process Is Not Violated By Such Review. .......... 8

3. The Provisions Of FISA Governing Disclosure Of FISA Materials Have No Application Here. .......... 10

B. The Court Cannot Adjudicate Plaintiffs' Prima Facie Claims Until It Reviews The Classified Submissions. .......... 12

C. Plaintiffs Cannot Obtain Any Discovery Or Litigate Any Facts Relating To AT&T's Immunity Before This Court Has Resolved The Government's State Secrets Motion. .......... 15

III. CONCLUSION. .......... 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*ACLU Foundation of Southern California v. Barr*, 952 F.2d 457 (D.C. Cir. 1991) ..................... 11

*Azzouka v. Meese*, 820 F.2d 585 (2d Cir. 1987) ..................... 8

*Azzouka v. Sava*, 777 F.2d 68 (2d Cir. 1985) ..................... 8

*Black v. United States*, 62 F.3d 1115 (8th Cir. 1995) ..................... 6

*Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990) ..................... 6

*DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327 (4th 201) ..................... 11, 12

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983) ..................... 4, 6, 7

*Fitzgerald v. Penthouse International, Ltd.*, 776 F.2d 1236 (4th Cir. 1985) ..................... 5, 6

*Frost v. Perry*, 161 F.R.D. 434 (D. Nev. 1995) ..................... 17

*Global Relief Foundation v. O'Neill*, 315 F.3d 748 (7th Cir. 2002) ..................... 8

*In re Grand Jury Proceedings*, 867 F.2d 539 (9th Cir. 1988) ..................... 9

*Guenther v. Commissioner of Internal Rev. (Guenther I)*, 889 F.2d 882 (9th Cir. 1989) ..................... 9

*Guenther v. Commissioner of Internal Rev.(Guenther II)*, 939 F.2d 758 (9th Cir. 1989) ..................... 9

*Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978) ..................... 6, 14,15

*Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982) ..................... 5

*Halperin v. Kissinger*, 424 F. Supp. 838 (D.D.C. 1976), *rev'd on other grounds*, 606 F.2d 1192 (D.C. Cir. 1979) ..................... 18

*Holy Land Foundation for Relief & Development v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003) ..................... 8

*Jay v. Boyd*, 351 U.S. 345 (1956) ..................... 8

*Jifry v. Federal Aviation Admin.*, 370 F.3d 1174 (D.C. Cir. 2004) ..................... 8

*Joint Anti-Fascist Refugee Commission v. McGrath*, 341 U.S. 123 (1951) ..................... 9

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) ..................... 4-6, 16-17

*Lynn v. Regents of University Calif.*, 656 F.2d 1337 (9th Cir. 1981) ........ 9

*Meridian International Logistics, Inc. v. United States*, 939 F.2d 740 (9th Cir. 1991) ........ 9

*National Council of Resistance of Iran v. Department of State*, 251 F.3d 192 (D.C. Cir. 2001) ........ 8

*National Council of Resistance of Iran v. Department of State*, 373 F.3d 152 (D.C. Cir. 2004) ........ 8

*Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973) ........ 7

*People's Mojahedin Organization of Iran v. Department of State*, 327 F.3d 1238 (D.C. Cir. 2003) ........ 8

*Pollard v. Federal Bureau of Investigation*, 705 F.2d 1151 (9th Cir. 1983) ........ 9

*Shaughnessy v. United States ex rel. Mezel*, 345 U.S. 206 (1953) ........ 8

*Smith v. Nixon*, 606 F.2d 1183 (D.C. Cir. 1979) ........ 19

*Suciu v. Immig. and Naturalization Services*, 755 F.2d 127 (8th Cir. 1985) ........ 8

*United States ex rel. Barbour v. District Director of the INS*, 491 F.2d 573 (5th Cir. 1974) ........ 8

*United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982) ........ 11

*United States v. Ott*, 637 F. Supp. 62 (E.D. Cal. 1986) ........ 11

*United States v. Ott*, 827 F.2d 473 (9th Cir. 1987) ........ 9

*United States v. Reynolds*, 345 U.S. 1 (1953) ........ 4-5

*United States v. Sarkissan*, 841 F.2d 959 (9th Cir. 1988) ........ 9

*United States v. Shaughnessy*, 338 U.S. 537 (1950) ........ 8

*United States v. Spanjol*, 720 F. Supp. 55 (E.D. Pa. 1989) ........ 11

*United States v. Thomson*, 752 F. Supp. 75 (W.D.N.Y. 1990) ........ 11

*Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544 (2d Cir. 1991) ........ 5

## FEDERAL STATUTES

50 U.S.C. § 1801 ........ 14

50 U.S.C. § 1806 ........ 2, 10, 11

50 U.S.C. § 1845 .......... 2, 10, 11
47 U.S.C. § 2511 .......... 3, 15, 17
18 U.S.C. § 2510 .......... 14
18 U.S.C. § 2702 .......... 14

Defendants AT&T Inc. and AT&T Corp. (collectively "AT&T") respectfully submit this reply memorandum addressing the two issues raised in the Court's Minute Order of May 17, 2006 ("Minute Order," Dkt. 130): (1) whether this case can be litigated without deciding the state secrets issue, thus obviating any need for the Court to review the government's classified submissions and (2) whether plaintiffs are entitled to discovery of any authorizations the government may have provided to AT&T notwithstanding the government's invocation of the state secrets privilege.

## I. INTRODUCTION.

In their Memorandum in Response to the Minute Order, plaintiffs maintain that this case can proceed without the Court deciding the state secrets issue and that, accordingly, the Court should not even *look at* the government's classified submissions in support of its assertion of the military and state secrets privilege in this case. Plaintiffs ignore that the classified portions of the government's Motion to Dismiss ("Government's Motion," Dkts. 124 – 125) are, as the Court recognized at the hearing on May 17, 2006, "the heart of [the government's] argument" in support of its Motion. Tr. of May 17th Hearing, at 33:11-12.

Plaintiffs advance a number of arguments in support of their claim that the Court should not review the government's classified submissions. First, they contend that due process "disfavors" the consideration of evidence in *ex parte*, *in camera* proceedings. Plaintiffs do not argue that such proceedings actually *violate* due process, and for good reason. Decades of decisions establish that *ex parte, in camera* review of classified submission is the standard and appropriate means of evaluating state secrets assertions and that the only course of action that would deny due process would be allowing plaintiffs to impose massive liabilities on AT&T when AT&T is barred by the government's assertion of the state secrets privilege from rebutting plaintiff's allegations.

Plaintiffs also contend that if the Court is going to review the government's *ex parte*, *in camera* submissions, two sections of the Foreign Intelligence Surveillance Act ("FISA") give plaintiffs the right to review them, too. This contention ignores that the provisions of FISA they cite – 50 U.S.C. § 1806(f); 50 U.S.C. § 1845(f) – are intended to

apply mainly when the government seeks to use evidence obtained through FISA warrants against individuals whose communications were intercepted pursuant to FISA. Because plaintiffs have specifically alleged that the purported surveillance they are challenging did not occur pursuant to FISA, *see* First Amended Complaint ("FAC") ¶¶ 2, 35, they cannot and have not alleged that they were subjected to government surveillance (pursuant to FISA or otherwise). As such, the FISA provisions they cite offer no support to their claim to review the government's classified submissions. Notably, however, those provisions provide that, even in an FISA case, courts may perform the sort of *ex parte* and *in camera* review of classified information that plaintiffs resist here.

Plaintiffs next assert that the Court can adjudicate plaintiffs' claims without resort to the classified information the government has submitted in support of its Motion to Dismiss. In its public filings, the United States explained in detail that no aspect of plaintiffs' cause of action – from plaintiffs' standing, to the elements of its statutory causes of action, to the elements of its Fourth Amendment claims – can be proven by plaintiffs or defended against by AT&T without invading the domain protected by the constitutionally-grounded state secrets doctrine.[1] *See* Gov't Mem. at 16 ("every step in this case . . . runs into privileged information"). Yet plaintiffs maintain that the Court need take no account of the underlying basis for this explanation before rejecting it. Plaintiffs, of course, cannot discern the specific relevance or significance of this information, and so they cannot say whether the information would in fact bear on the litigation of their claims. Only the Court can make that determination. It should go without saying that the Court can only do so after it has actually reviewed the information. If the information is in fact relevant to plaintiffs' claims, the Court cannot permit the case to proceed against AT&T. Because of

---

[1] Gov't Mem. at 16-23 (plaintiffs standing); at 21 (whether AT&T has intentionally intercepted or disclosed the contents of plaintiffs communications or calling record or related information); at 21-23, 28 (whether any interceptions or related activities were in accord with certifications of the Attorney General or other authorizations that confer immunity on carriers from *any* cause of action); at 23-28 (plaintiffs' Fourth Amendment claims).

the government's assertion of the state secrets privilege, AT&T cannot defend itself against plaintiffs' claims. Plaintiffs' argument that the Court could decide this case without examining the foundation for the government's state secrets assertion defies common sense.

Finally, plaintiffs argue that the statute that would provide AT&T with immunity from plaintiffs' suit (18 U.S.C. § 2511(2)(a)(ii)) somehow mandates discovery of any authorization AT&T may have received from the government for assisting it with alleged surveillance activities. Section 2511(2)(a)(ii) says nothing of the sort. To the contrary, it prevents telecommunications providers such as AT&T from disclosing any such certifications "except as may otherwise be required by legal process." 47 U.S.C. § 2511(2)(a)(ii). Because there is no such "otherwise required" legal process at issue here, plaintiffs' claim to discovery of government certifications – the mere existence of which section 2511(2)(a)(ii) prevents AT&T from either confirming or denying – falls flat.

## II. ARGUMENT.

### A. The Government's State Secrets Motion Cannot Properly Be Resolved Without Reviewing The Classified Submissions.

Ensuring proper application of the state secrets doctrine is primarily the province and concern of the United States. AT&T offers its views on this subject in response to the Court's invitation in the Minute Order of May 17 to the extent that such views may be of assistance to the Court.

Contrary to plaintiffs' arguments, AT&T does not believe that an assertion of state secrets by the United States may blithely be dismissed without even considering the basis for it. Assertions of state secrets must be made personally by the nation's most senior intelligence officials, as they were here. To the extent courts can ever rule on state secrets assertions without examining the government's supporting submissions, it is only to accept such assertions where the potential for compromising state secrets is obvious. Where there is any doubt, *ex parte* and *in camera* review of classified submissions is the standard and accepted method for adjudicating state secrets issues. To render the rulings plaintiffs seek

without even reviewing the evidence tendered personally to this Court by the Director of National Intelligence and Director of the National Security Agency would be unprecedented and wrong. Regardless of what the government's classified submissions contain – something we do not know – the better course is to review those submissions before deciding whether this case may proceed.

**1. Deciding A State Secrets Motion Routinely Entails Ex Parte Review Of Classified Submissions.**

The state secrets privilege allows the government to prevent the unauthorized disclosure of information during litigation that might harm national security interests. *See, e.g., United States v. Reynolds*, 345 U.S. 1, 7-8 (1953); *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998); *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) ("the various harms against which protection is sought by invocation of the privilege, include[e] impairment of the nation's defense capabilities [and] disclosure of intelligence-gathering methods or capabilities"). The invocation of state secrets must be made formally through an affidavit by "the head of the department which has control over the matter, after actual personal consideration by the officer." *Reynolds*, 345 U.S. at 7-8. The judgment of such officers, who are constitutionally entrusted and empowered to protect the nation's security, is due the "utmost deference" by the courts, and the scope of a reviewing court's discretion to reject them is exceedingly narrow. *Id.* at 10; *see also Kasza*, 133 F.3d at 1166. A court that does not review the government's filing cannot be giving proper consideration or deference to the government's position. "Once the privilege is properly invoked and the court is satisfied as to the danger of divulging state secrets, the privilege is absolute," and "even the most compelling necessity cannot overcome the claim of privilege." *Kasza*, 133 F.3d at 1166-7 (quoting *Reynolds*, 345 U.S. at 11 n.26).

Where, as here, the government contends that "the 'very subject matter of the action' is a state secret," the Court must "dismiss the plaintiff's action based solely on the invocation of the state secrets privilege" as long as "'the court is ultimately satisfied that

there are military secrets at stake.'" *Kasza*, 133 F.3d at 1166 (quoting *Reynolds*, 345 U.S. at 11 n.26); *see also Black v. United States*, 62 F.3d 1115 (8th Cir. 1995); *Fitzgerald v. Penthouse Internat'l, Ltd.*, 776 F.2d 1236, 1239, 1241-42 (4th Cir. 1985); *Halkin v. Helms*, 690 F.2d 977, 999 (D.C. Cir. 1982). "While dismissal of an action based on the state secrets privilege is harsh, the results are harsh in either direction and the state secrets doctrine finds the greater public good – ultimately the less harsh remedy – to be dismissal." *Kasza.* at 1167 (*quoting Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1144 (5th Cir. 1992)).

In limited circumstances, state secrets assertions may be adjudicated without reviewing the underlying state secrets information – but only where the government's assertion is accepted. In *United States v. Reynolds*, 345 U.S. 1 (1953), the Supreme Court indicated that:

> It may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged. When this is the case, the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers.

*Id.* at 10; *see also Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544 (2d Cir. 1991) (accepting privilege assertion without *in camera* review). Short of such a situation, however, a reviewing court is obliged to satisfy itself that the threshold for proper invocation of the privilege has been met – *i.e.,* "that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." *Kasza*, 133 F.3d at 1166 (internal quotations omitted). Once such a determination is made, the court's job is at an end; the privilege is absolute and cannot be overcome by any countervailing considerations. *See id.*

The standard and accepted means for a court to satisfy itself that the threshold has been met is through *ex parte* and *in camera* review of privileged and/or classified submissions by the government. *See, e.g., Kasza*, 133 F.3d at 1169; *Black v. United States*, 62 F.3d 1115, 1119 (8th Cir. 1995); *Fitzgerald v. Penthouse Internat'l, Ltd.*, 776 F.2d 1236 (4th Cir. 1985); *Halkin v. Helms*, 598 F.2d 1, 3 (D.C. Cir. 1978) ("It is settled that in camera proceedings are an appropriate means to resolve disputed issues of privilege"). As a practical matter, how else can the Court determine whether the privilege has been properly invoked? The clear is answer is the Court cannot. Neither plaintiff nor defendant is empowered or entrusted to review or comment on the privileged submission; both are equally disabled from having access to national security secrets that, by definition, they are not authorized to possess. *C.f., e.g., Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990) (courts lack jurisdiction to interfere in security clearance determinations). Instead, only the court is constitutionally entrusted with the responsibility to verify the bona fides of the executive's assertion of state secrets. Such verification necessarily entails review of the government's *ex parte, in camera* submission. Not surprisingly, plaintiffs are unable to cite even a single case in which a reviewing court has rejected a state secrets submission without reviewing it.

Nor is plaintiffs' effort to convince this Court that review of the classified submission is a last resort—to be undertaken only if the government makes a "particularized showing" of state secrets and the court determines "what information properly falls within and without the state secrets privilege"—any more availing. The whole purpose of the classified submission is to make the "particularized showing" plaintiffs seek, such that the court can make the determination they request. To ask that the government make public more of the information it is trying to keep secret or that the court evaluate privilege claims and resolve discovery requests without access to the privileged information is unreasonable and incorrect.

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983), and *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973) (en banc), mandate no such result. *Ellsberg* rejected "a strict rule that the trial judge must compel the government to defend its claim publicly before submitting materials *in camera*," *id.* at 63, holding only that "the trial judge should insist (1) that the formal claim of privilege be made on the public record and (2) that the government either (a) publicly explain in detail the kinds of injury to national security it seeks to avoid and the reason those harms would result from revelation of the requested information or (b) indicate why such an explanation would itself endanger national security," *id.* at 63-64. The government's extensive submissions in this case easily satisfy this standard.

The *Ellsberg* court went out of its way "to make clear the limitations of our ruling: The government's public statement need be no more (and no less) specific than is practicable under the circumstances." *Id.* at 64. And even this rule only applied in a limited class of cases, totally unlike this one, where "the surrounding circumstances did not make apparent the likelihood that disclosure would lead to serious injury," *id.* at 61 – there, because the surveillance at issue had admittedly stopped more than five years earlier. And *Nixon* involved the wholly different context of a criminal prosecution of executive branch officials, in which, in effect, the executive branch was on both sides of the case. The court there rejected the notion that any public explanation had to be given regarding materials that "relate[] to national defense or foreign relations." 487 F.2d at 721.

If the state secrets assertion in this case could be decided without recourse to the government's classified submission, it could only be decided in favor of the government: the threat to national security is obvious from permitting litigation of claims that, on their face, place in issue the details of a highly classified intelligence program and almost nothing else. But, unless this Court grants AT&T's motion to dismiss on non-state secrets grounds, thereby avoiding the need to confront this issue at all, the better course of action is for this Court to review the classified information the government has made available to it for *ex parte* and *in camera* review.

2. **Due Process Is Not Violated By Such Review.**

Although plaintiffs do not directly contend that due process would be violated by *in camera, ex parte* review of the government's classified submissions in this case, they nevertheless attempt to bolster their arguments by vague allusions to due process: its general requirements, its "very spirit," and its "disfavor" for "secret evidence [and] arguments." Plaintiffs' Memorandum ("Pltfs. Mem.") at 2-3. Plaintiffs' due process concerns are misplaced in the context of this case. As detailed above, numerous courts, including the Ninth Circuit, have found that review of *in camera, ex parte* classified submissions is an appropriate procedure for determining whether a case can proceed after invocation of the state secrets privilege. *See supra* Section II.A.1. Moreover, due process claims have been consistently rejected in analogous contexts involving *in camera, ex parte* review of classified submissions, including cases reviewing blocking orders issued under the International Emergency Economic Powers Act ("IEEPA"),[2] designations of "foreign terrorist organizations" under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"),[3] and immigration deportation proceedings.[4]

---

[2] *See, e.g., Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003), cert. denied 540 U.S. 1218 (2004); *Global Relief Found. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002).

[3] *See, e.g., National Council of Resistance of Iran v. Dep't of State*, 373 F.3d 152, 158 (D.C. Cir. 2004); *People's Mojahedin Organization of Iran v. Dep't of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003); *National Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208 (D.C. Cir. 2001); *see also Jifry v. Fed. Aviation Admin.*, 370 F.3d 1174, 1184 (D.C. Cir. 2004) (holding that the same due process protections that apply to terrorism listing cases under AEDPA also apply to FAA revocation of airmen certificates based on finding that pilots posed a security risk and rejecting argument that pilots' due process rights were violated because they did not have access to the specific, classified evidence on which the agency relied in making its determination), cert. denied 543 U.s. 1146 (2005).

[4] *See, e.g., Suciu v. Immig. and Naturalization Servs.*, 755 F.2d 127, 128 (8th Cir. 1985); *United States ex rel. Barbour v. District Director of the INS*, 491 F.2d 573, 578 (5th Cir. 1974); *see also Jay v. Boyd*, 351 U.S. 345 (1956) (government may rely on classified information to deny discretionary immigration relief); *Shaughnessy v. United States ex rel. Mezel*, 345 U.S. 206 (1953) (government may rely on confidential information to exclude an alien from the United States); *United States v. Shaughnessy*, 338 U.S. 537 (1950) (same); *Azzouka v. Meese*, 820 F.2d 585, 587 (2d Cir. 1987) (same); *Azzouka v.*

(continued...)

Plaintiffs make no attempt to come to grips with any of this law. Instead, they rely on several due process cases from unrelated and inapposite contexts. In *Lynn v. Regents of Univ. Calif.*, 656 F.2d 1337 (9th Cir. 1981), for example, a garden-variety gender discrimination case, the court held that the district court's *in camera, ex parte* review of the tenure file of the plaintiff professor violated due process. Similarly, in *Guenther v. Comm'r of Internal Rev.(Guenther II)*, 939 F.2d 758 (9th Cir. 1991), an appeal by taxpayers of an IRS finding of tax deficiency, the court held that the district court's *ex parte* consideration of the agency's trial memorandum violated due process.[5] It should come as no surprise that neither *Lynn* nor *Guenther II* involved an assertion of the state secrets privilege or any analogous national security consideration of the kind that has consistently led courts, including the Ninth Circuit,[6] to approve *ex parte, in camera* review of classified information.[7]

---

(...continued)
*Sava*, 777 F.2d 68, 72 (2d Cir. 1985) (same).

[5] Plaintiffs also cite *Guenther v. Comm'r of Internal Rev. (Guenther I)*, 889 F.2d 882 (9th Cir. 1989), a prior ruling in the same case in which the Ninth Circuit remanded the case for an evidentiary hearing on the issue of the *ex parte* communication.

[6] *See, e.g., Meridian Internat'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991) (holding that ex parte review of declaration concerning whether employee was acting within the scope of his employment was proper and adequately balanced the rights of the interested parties); *In re Grand Jury Proceedings*, 867 F.2d 539, 541 (9th Cir. 1988) (holding that party was not denied due process by district court's *in camera* inspection of the materials upon which the government based its showing of the crime-fraud exception); *United States v. Sarkissan*, 841 F.2d 959, 965 (9th Cir. 1988) (stating that Classified Information Procedures Act permits *ex parte* submissions); *United States v. Ott*, 827 F.2d 473, 476-77 (9th Cir. 1987) (holding that due process was not violated by *ex parte, in camera* proceeding under Foreign Intelligence Surveillance Act); *Pollard v. Fed. Bureau of Investigation*, 705 F.2d 1151, 1153-54 (9th Cir. 1983) (stating that practice of *in camera, ex parte* review is appropriate in certain cases under the Freedom of Information Act).

[7] Plaintiffs' reference to the principle articulated by Justice Frankfurter in his concurring opinion in *Joint Anti-Fascist Refugee Comm'n v. McGrath*, 341 U.S. 123, 170 (1951), is just generalized flag-waving; it provides no more concrete support than *Lynn* or *Guenther II* for the proposition that due process concerns somehow alter the well-established procedure for evaluating state secrets assertions by the United States in national security-related litigation such as this.

**3. The Provisions Of FISA Governing Disclosure Of FISA Materials Have No Application Here.**

Plaintiffs point to two sections of FISA – 50 U.S.C. §§ 1806(f), 1845(f) – in arguing that if the Court is going to review the government's *ex parte*, *in camera* submissions, plaintiffs should also be able to do so. Pltfs. Mem.. at 4 ("[T]he Court should do so under conditions that provide for some form of appropriate access by plaintiffs' counsel."). These provisions of FISA are designed to apply primarily in circumstances in which the government seeks to use evidence obtained through FISA warrants against individuals whose communications were intercepted. Plaintiffs have specifically alleged that the purported surveillance they are challenging did not occur pursuant to FISA, *see* FAC ¶¶ 2, 35; they cannot and have not alleged that they themselves were subjected to government surveillance, pursuant to FISA or otherwise; and the government is not, in any event, attempting to use information derived from surveillance of plaintiffs against them in this or any other proceedings. *See* 50 U.S.C. § 1806(c) (1806(f) procedures apply, *inter alia*, "[w]henever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding . . . against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person"). Absent a broad expansion of the traditional understanding of the purpose of these provisions, they lend no support to plaintiffs' position.

Moreover, these FISA provisions specifically mandate the very thing plaintiffs are attempting to resist: *ex parte* and *in camera* review. At most, Sections 1806(f) and 1845(f) provide a court with some discretion to disclose to litigants certain evidence gathered pursuant to FISA, but only after it first reviews the purported evidence *in camera* and *ex parte*. *See* 50 U.S.C. § 1806(f) (District Court "*shall ... review in camera and ex parte the application, order, and such other materials* relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted") (emphasis added); 50 U.S.C. § 1845. Thus, plaintiffs'

threshold argument that the Court should not be able to review the government's submissions flies in the face of the very statutes they cite.

Further, even if these provisions were applicable – which they are not – sections 1806(f) and 1845(f) provide only that a court *may* disclose the secret material. *See* 50 U.S.C. § 1806(f); 50 U.S.C. § 1845(f). Such disclosure is not mandatory, and plaintiffs cite no case in which those provisions have been held to permit or require disclosure of state secrets. Indeed, the great weight of authority interpreting the FISA sections plaintiffs cite mandates that even ordinary FISA surveillance information over which no formal state secrets claim has been asserted should not be disclosed. *See ACLU Foundation of Southern California v. Barr*, 952 F.2d 457, 469 (D.C. Cir. 1991) (noting that 50 U.S.C. § 1806(f) "is designed to prevent disclosure of information relating to FISA surveillance in adversary proceedings"); *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982) (rejecting argument that disclosure was necessary and holding that under 1806(f) "[d]isclosure and an adversary hearing are the exception, occurring *only* when necessary") (emphasis in original); *United States v. Thomson*, 752 F. Supp. 75, 79 (W.D.N.Y. 1990) ("No court that has been required to determine the legality of a FISA surveillance has found disclosure or an adversary hearing necessary"); *United States v. Spanjol*, 720 F. Supp. 55, 59 (E.D. Pa. 1989) (refusing to disclose information where "discovery would reveal the targets of electronic surveillance, thereby compromising intelligence sources and methods"); *United States v. Ott*, 637 F. Supp. 62, 65-66 (E.D. Cal. 1986) (noting that "[i]n the sensitive area of foreign intelligence gathering, the need for extreme caution and sometimes even secrecy may not be overemphasized" and holding that "there is no need for disclosure to protect the respondent's legitimate interests"), aff'd 827 F.2d 473 (9th Cir. 1987).

In support of the argument that they should be able to review the government's submissions, plaintiffs cite a case where the Court declined to disclose the state secrets at issue. Pltfs. Mem. at 4 (citing *DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327 (4th Cir. 2001)). In *DTM Research*, the government invoked the state secrets privilege in

support of its motion to quash third-party subpoenas. The district court granted the motion to quash, and the Court of Appeals affirmed. Despite having protected the state secrets information, the *DTM Research* court declined to dismiss the case because, unlike here, that case was not one in which "the very question upon which the case turns is itself a state secret, or the circumstances make clear that sensitive military secrets will be so central to the subject matter of the litigation that any attempt to proceed will threaten disclosure of the privileged matters." 245 F.3d at 334 (internal quotations omitted). Instead, the state secrets in that case were "not central" to the question of liability and could be excluded from trial without fundamentally impairing the litigation. *Id.* Here, plaintiffs have alleged in their complaint that AT&T has been authorized by the government to assist it with a secret surveillance program. *Ipso facto*, then, "the very question upon which the case turns is itself a state secret," *id.*, and the government has accordingly sought dismissal of the entire action. *DTM Research* is irrelevant.

### B. The Court Cannot Adjudicate Plaintiffs' Prima Facie Claims Until It Reviews The Classified Submissions.

Plaintiffs claim that their *prima facie* case can be fully presented and litigated based solely on their existing evidence and that, therefore, this Court need not review any classified materials to assess those claims. This argument fundamentally misconstrues the state secrets doctrine, the significance of the Klein evidence, the law that would govern any litigation of the merits of plaintiffs' claims, and, most importantly, the effect the government's assertion of the state secrets privilege has on AT&T's ability to defend itself in this action.

Plaintiffs contend that the Klein Declaration is itself sufficient to make out a prima facie case on their statutory claims. But even if one focused only on the two claims as to which plaintiffs make any argument, the Court could not determine the validity of those claims without first evaluating information covered by the government's state secrets assertion. [redacted]

[redacted]

AT&T cannot confirm or deny any of the facts on which plaintiffs' complaint is based. But it is certain that the Klein Declaration and its associated exhibits are insufficient to demonstrate any illegal conduct by AT&T. [redacted] Plaintiff's purported expert, of course, has no knowledge whether this is true or not.

Even accepting their allegations as true, plaintiffs' declarations fail to establish their claims. Key factual issues that bear directly on the viability of their legal claims and AT&T's defenses are subject to the Government's state secrets assertion and are unavailable. Without either confirming or denying the plaintiffs' assertions, [redacted]

[redacted]

Accordingly, without admitting or denying any factual assertions by the plaintiffs, it is clear they lack even prima facie evidence of any governmental interception or electronic surveillance of any communications – much less any illegal activity. No such evidence could possibly be developed without delving deeply into matters covered by the government's existing state secrets assertion.

Plaintiffs' request that this Court nonetheless proceed based on their "evidence" – and only their evidence – is essentially a request that the Court presume guilt on the part of AT&T. This is precisely the approach attempted in and rejected by *Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978), in which the Court refused to assume from the mere fact that warrantless acquisitions of communications occurred that individuals on NSA watch lists were actually being surveilled by the government. *Id.* at 10. There, as here, plaintiffs attempted to circumvent the assertion of a state secrets privilege by asking the court to draw unsupported inferences against private defendants, but the Court of Appeals recognized that:

> The underlying premise of the argument is that the defendants should not be permitted to avoid liability for unconstitutional acts by asserting a privilege which would prevent plaintiffs

> from proving their case. The premise is faulty. The defendants are not asserting the privilege to shield allegedly unlawful actions; the state secrets privilege asserted here belongs to the United States and is asserted by the United States which is not a party to the action. It would be manifestly unfair to permit a presumption of acquisition of the watchlisted plaintiffs' international communications to run against these defendants.

598 F.2d. at 10. As that court concluded, "[n]ot only would such a presumption be unfair to the individual defendants who would have no way to rebut it, but it cannot be said that the conclusion reasonably follows from its premise." *Id.* Plaintiffs' suggestion that they have established a prima facie case requests exactly such a presumption and asks this Court to draw unsupported factual and legal inferences AT&T would have no fair opportunity to rebut in light the government's state secrets assertion.

### C. Plaintiffs Cannot Obtain Any Discovery Or Litigate Any Facts Relating To AT&T's Immunity Before This Court Has Resolved The Government's State Secrets Motion.

As Plaintiffs recognize, section 2511(2)(a)(ii) provides absolute statutory immunity "[n]otwithstanding any other law" to any provider of wire or electronic communications that provides the government with "information, facilities, or technical assistance" if such provider has been provided with appropriate governmental authorizations. 18 U.S.C. § 2511(2)(a)(ii) ("No cause of action shall lie in any court against any provider or wire or electronic communications . . . for providing information, facilities or assistance in accordance with the terms of a . . . certification under this chapter"). And, as AT&T Corp. has explained in its motion to dismiss, a provider of wire or electronic communications also enjoys both absolute and qualified common-law immunity for alleged assistance to the government that the government has assured the provider is lawful. *See* AT&T Motion at 13-19.

Plaintiffs are wrong in suggesting that the Court could adjudicate as a factual matter the question whether AT&T has immunity from suit or allow discovery of any government

authorizations or assurances AT&T may have received without reviewing the government's classified state secrets showing.[8] As the government explained in its motion to dismiss, its state secrets assertion "covers *any* information tending to confirm or deny" whether "AT&T was involved with any" of the "alleged intelligence activities." Motion to Dismiss of the United States at 17-18.

The existence or non-existence of any such government authorizations or assurances is quite obviously information that would tend to confirm or deny AT&T's involvement with the alleged government intelligence activities and is thus squarely within the government's state secrets assertion. Accordingly, the Court could not adjudicate, or allow discovery on, the alleged existence of any such authorizations or assurances without first considering and rejecting the government's state secrets assertion. *See* Motion to Dismiss of the United States at 23 ("even if Plaintiffs speculated and alleged the absence of section 2511(2)(a)(ii) authorization, they could not meet their burden of proof on the issue because information confirming or denying AT&T's involvement in the alleged intelligence activities is covered by the state secrets assertion"). And, as explained above, the Court could not do that without first considering and rejecting the government's classified state secrets submission.

Plaintiffs nonetheless contend that the existence of any such certifications "cannot be immunized from disclosure on the ground of the 'state secrets privilege.'" Pltfs. Mem. at 8. That is so, they claim, because "[d]iscovery of such certifications . . . is *required* by" section 2511(2)(a)(ii). *Id.* at 14 (emphasis added). Both the premise and the conclusion are wrong. Section 2511(2)(a)(ii) does not require discovery of anything. To the contrary, it *forbids* providers from disclosing any such certifications "except as may otherwise be required by legal process." 18 U.S.C. § 2511(2)(a)(ii).

---

[8] The Court is, however, free to resolve these issues based on the fatal defects in plaintiffs' pleadings, as we have contended it should in our motion to dismiss.

But even if § 2511(2)(a)(ii) did generally require or authorize discovery of certifications, that could not overcome the Executive's constitutionally-based privilege to protect from disclosure information about the existence or non-existence of *particular* certifications where it is necessary to protect military or state secrets – as the Ninth Circuit squarely held in *Kasza v. Browner*, 133 F.3d 1159, 1167-68 (9th Cir. 1998). In *Kasza*, the plaintiffs contended that a federal statute narrowly codified the scope of the President's privilege to exempt federal facilities from environmental information disclosure requirements and that no broader exemption could be asserted under the state secrets privilege. The Court rejected that argument, equating it to an assertion that Congress had "preempted" the President's federal common law state secrets privilege. *Id.* at 1167. The Court explained that any such argument must necessarily fail unless "the statute speaks directly to the question otherwise answered by the common law," *id.* (*quoting County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 236-37 (1985)), and it cautioned that statutes "are to be read with a presumption favoring the retention of long-established and familiar principles, except when a contrary statutory purpose to the contrary is evident." *Id.* at 1167 (*quoting United States v. Texas*, 507 U.S. 529, 434 (1993)). The Court then rejected the preemption claim, finding "no Congressional intent to replace the government's evidentiary privilege to withhold sensitive information in litigation by providing" a statutory exemption. *Id.* at 1168 ("At times the purposes of the privilege and the exemption may overlap, but that does not mean that [the statute] 'speaks directly' to the existence, or exercise, of the privilege in every RCRA action"; "if a facility hasn't been exempted . . . it might still be the case that disclosure of discrete items of relevant information would affect the national interest").

The same conclusion is compelled here. Nothing in section 2511(2)(a)(ii) remotely suggests that Congress intended to deprive the Executive Branch of the ability to assert its privilege to deny discovery that would risk harm to national security – even assuming that Congress could do so consistent with core constitutional separation of powers principles.

*See, e.g.*, *Frost v. Perry*, 161 F.R.D. 434, 439 (D. Nev. 1995) ("the Court finds it implausible that Congress, without 'more explicit statutory language and legislative comment,' intended to preempt or supersede a common law privilege with constitutional underpinnings) (*quoting Fogerty v. Fantasy, Inc.*, 510 U.s. 517, 534 (1994)). Indeed, § 2511 evinces precisely the opposite intent: its principal thrust is to *forbid* any disclosure of a certification until after the Attorney General has been notified and thereby given an opportunity to interpose the kinds of privileges or objections he has asserted in this case. In other words, the statute is, on its face, designed to *preserve* the very privilege the plaintiffs claim it overrides. *See* H.R. Rep. No. 95-1283, at 99 n.53 (1978) ("The notice provision is intended to provide sufficient time for the Government to intervene to quash a subpoena or otherwise take legal action to prevent disclosure if it so desires.").

Here, of course, the government already has exercised its discretion to invoke the state secrets privilege to deny discovery of any information that would confirm or deny AT&T's participation in the alleged government intelligence activities or any certifications or other authorizations that AT&T may or may not have received. The Court accordingly cannot adjudicate the question whether AT&T has section 2511(2)(a)(ii) immunity from plaintiffs' claims or allow discovery of the existence or non-existence of any certifications AT&T may have received without reviewing the government's classified state secrets showing. Because plaintiffs acknowledge that the existence of a certification could provide AT&T with complete immunity from suit or, alternatively, a good-faith defense to all their claims, it is apparent that, for this reason alone, plaintiffs' claim that they "can make their case based on the public record," Pltfs. Mem. at 5, is flat wrong.

In all events, AT&T has numerous other legal and factual defenses that would be implicated by litigation of this case, regardless of whether or not certifications exist. To take just one example already cited in AT&T's motion to dismiss, even if one assumes that AT&T participated in the terrorist surveillance program as alleged and that it did not enjoy statutory immunity, AT&T would still be entitled to assert the common law immunities

from suit that are available to telecommunications carriers who are alleged to be cooperating with surveillance activities that the government has assured the carrier are lawful. *See, e.g.*, *Smith v. Nixon*, 606 F.2d 1183, 1191 (D.C. Cir. 1979); *Halperin v. Kissinger*, 424 F. Supp. 838, 846 (D.D.C. 1976), *rev'd on other grounds*, 606 F.2d 1192 (D.C. Cir. 1979). Consideration of absolute or qualified common law immunity, to the extent they did not provide a basis for dismissal on the pleadings, would entail detailed consideration of the facts and circumstances of the carrier's cooperation, including the representations made to the carrier, what specific actions were taken by the carrier's employees, what role the carrier had in the surveillance, and what, if any, use was made of any data. All of this is within the scope of the United States' existing claim of privilege, and evaluation of these issues could not possibly occur without first confronting that claim.

* * * *

The appropriate way to resolve the state secrets issue in this case is the normal and accepted way: this Court should review the classified submission of the United States, decide whether it satisfies the legal criteria for invoking the state secrets privilege and supports the government's request for dismissal of this case, and rule accordingly. There is no reason to deviate from this established procedure or to accept plaintiffs' invitation to engage in legal contortions in an attempt to avoid confronting the threshold question on which most other questions in this case depend. Until that question is resolved, no discovery of information covered by the government's assertion of privilege, including the existence *vel non* of certifications, should be ordered.

## III. CONCLUSION.

For the foregoing reasons, the Court should adhere to its current plan and review the government's classified submissions prior to argument on the pending motions to dismiss on June 23, 2006. No discovery should be ordered unless and until those motions are denied.

Dated: May 24, 2006.

PILLSBURY WINTHROP
SHAW PITTMAN LLP
BRUCE A. ERICSON
DAVID L. ANDERSON
JACOB R. SORENSEN
BRIAN J. WONG
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

By /s/ Bruce A. Ericson
Bruce A. Ericson

SIDLEY AUSTIN LLP
DAVID W. CARPENTER
DAVID L. LAWSON
BRADFORD A. BERENSON
EDWARD R. MCNICHOLAS
1501 K Street, N.W.
Washington, D.C. 20005

By /s/ Bradford A. Berenson
Bradford A. Berenson

*Attorneys for Defendants AT&T CORP. and AT&T INC.*