PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
DAVID L. ANDERSON #149604
JACOB R. SORENSEN #209134
MARC H. AXELBAUM #209855
DANIEL J. RICHERT #232208
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Email: bruce.ericson@pillsburylaw.com

SIDLEY AUSTIN LLP
DAVID W. CARPENTER (admitted *pro hac vice*)
BRADFORD A. BERENSON (admitted *pro hac vice*)
DAVID L. LAWSON (admitted *pro hac vice*)
EDWARD R. McNICHOLAS (admitted *pro hac vice*)
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8010
Facsimile: (202) 736-8711

Attorneys for Defendants
AT&T CORP. and AT&T INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AT&T CORP., AT&T INC. and DOES 1-20, inclusive,<br><br>Defendants. | No. C-06-0672-VRW<br><br>**DEFENDANT AT&T CORP.'S MEMORANDUM IN OPPOSITION TO MOTION FOR LEAVE TO INTERVENE AND MOTION TO UNSEAL DOCUMENTS [DKT. 133]**<br><br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker<br>Hearing: June 23, 2006<br>Time: 9:30 a.m. |


Dockets.Justia.com

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION. .......... 1

II. FACTUAL AND PROCEDURAL BACKGROUND. .......... 2

III. ARGUMENT. .......... 3

A. The Press should not be granted leave to intervene. .......... 3

B. The Press has not provided any good reason why the Court should reverse its decision of May 17 and disclose AT&T's trade secrets. .......... 6

1. The Press seeks reconsideration of matters already argued and decided. .......... 6

2. The Press misconstrues the law applicable to sealing. .......... 8

3. The Press has not undermined AT&T's trade secrets or its interest in protecting the security of its network. .......... 11

C. AT&T's commercial interests merit continued sealing. .......... 12

IV. CONCLUSION. .......... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**


Andrews v. Norton,
385 F. Supp. 672 (D. Conn. 1974) .................... 4

Avirgan v. Hull,
118 F.R.D. 257 (D.D.C. 1987) .................... 4

Beverly Hills Fed. Savings and Loan Ass'n v. Fed. Home Loan Bank Board,
33 F.R.D. 292 (S.D. Cal. 1962) .................... 5

DVD Copy Control Ass'n, Inc. v. Bunner,
31 Cal. 4th 864 (2003) .................... 5

Edmonson v. State of Nebraska ex rel. Meyer,
383 F.2d 123 (8th Cir. 1967) .................... 5

Foltz v. State Farm Mut. Auto. Ins. Co.,
331 F.3d 1122 (9th Cir. 2003) .................... 9, 10

Harbor Insurance Co. v. Schnabel Foundation Co.,
946 F.2d 930 (D.C. Cir. 1991) .................... 11

Huffy Corp. v. Superior Court,
112 Cal. App. 4th 97 (2003) .................... 10

In re Providian Credit Card Cases,
96 Cal. App. 4th 292 (2002) .................... 11

Kamakana v. City and County of Honolulu,
No. 04-15241, 2006 U.S. App. LEXIS 12101, 2006 WL 1329926 (9th Cir. May 17, 2006) .................... 8, 9

Moten v. Bricklayers, Masons and Plasters Int'l Union of Am.,
543 F.2d 224 (D.C. Cir. 1976) .................... 6

Nixon v. Warner Communications, Inc.,
435 U.S. 589 (1978) .................... 8

People ex rel. Lockyer v. U.S. Dep't of Agr.,
No. 05-3508, 2006 U.S. Dist. LEXIS 20147, 2006 WL 889327 (N.D. Cal. Mar. 31, 2006) .................... 5

Phillips v. General Motors Corp.,
307 F.3d 1206 (9th Cir. 2002) .................... 9

San Jose Mercury News, Inc. v. United States District Court,
187 F.3d 1096 (9th Cir. 1999) .................... 4

State of California ex rel. Lockyer v. Safeway, Inc.,
355 F. Supp. 2d 1111 (C.D. Cal. 2004) .................... 10

Stringfellow v. Concerned Neighbors in Action,
480 U.S. 370 (1987) ........................................................................................ 5

United States v. State of Michigan,
940 F.2d 143 (6th Cir. 1991) ........................................................................... 6

United States v. Western Processing Co., Inc.,
133 F.R.D. 157 (W.D. Wash. 1990) ................................................................ 4

Universal City Studios, Inc. v. Superior Court,
110 Cal. App. 4th 1273 (2003) ...................................................................... 10

**Rules and Regulations**

Federal Rules of Civil Procedure
Rule 24(a) ...................................................................................................... 4
Rule 24(b) ................................................................................................... 4, 5

Local Rules of the United States District Court for the Northern District of California
Civil Local Rule 7-9 ........................................................................................ 8

## I. INTRODUCTION.

Defendant **AT&T CORP.** ("AT&T") hereby opposes the Motion for Leave to Intervene and Motion to Unseal Documents ("Motion to Unseal") (Dkt. 133) filed by the *San Francisco Chronicle*, the *Los Angeles Times*, the Associated Press, the *San Jose Mercury News*, Bloomberg News and *USA Today* (collectively, the "Press").

The Press should not be allowed to intervene. Its motion does not cite the standards for intervention or explain how the Press might meet those standards. There is no need for the Press to intervene. The Electronic Frontier Foundation, the Center for Constitutional Rights and the American Civil Liberties Union already champion its interests. The Press adds nothing to the mix. Its papers say nothing that the parties and the existing *amici* have not already said.

The Press asks the Court to reconsider the very issues it decided at the May 17 hearing. Without citing new facts or new law suggesting why that ruling should be overturned, the Press asserts that all sealed information, including classified submissions of the government, must be disclosed to the public. As the Court noted during the May 17 hearing, "the best course of action is to preserve the status quo." Yet, the Press summarily dismisses AT&T's property rights and the protection of national security, and improperly asks the Court to reconsider its well-reasoned ruling. In so doing, the Press acts as though this issue had not already been the subject of eight briefs by the parties and *amici*, and an order of the Court. Having followed the matter closely but stayed out of the fray until an hour before the May 17 hearing, the Press's insistence—in papers filed two days after that hearing—that the Court "promptly" unseal all documents rings hollow.

Long on platitudes and sound-bite jurisprudence, the Motion to Unseal brushes aside AT&T's legitimate interest in protecting its trade secrets and the security of its network—as if they were somehow unworthy of standing in the way of a scoop. But the case law takes the opposite attitude, recognizing that the protection of trade secrets is a "compelling reason" not to unseal court records.

The Motion to Unseal should be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND.

Plaintiffs filed this action on January 31, 2006. Dkt. 1. On April 5, 2006, plaintiffs filed under seal their Amended Motion for Preliminary Injunction ("Preliminary Injunction Motion," Dkt. 30). With it, plaintiffs filed, again under seal, the declarations of Mark Klein ("Klein Declaration," Dkt. 31) and J. Scott Marcus ("Marcus Declaration," Dkt. 32). Attached to the Klein Declaration were certain AT&T documents that contain proprietary and trade secret information (the "Klein Documents"). (Dkts. 30-32 and the Klein Documents are collectively referred to as the "Sealed Documents.").

Over the next several weeks, the parties and *amici* filed no fewer than eight briefs debating whether the Sealed Documents should remain under seal.[1] On May 17, 2006, the Court held a lengthy hearing on the Sealed Documents. An hour before the hearing began, the Press moved to have all sealed records unsealed. Dkt. 129. Counsel for the Press appeared at the May 17 hearing and attempted to argue the sealing issues. Transcript of May 17, 2006 Hearing ("Tr.," Dkt. 138), at 3. Coming even later to the party was Wired News, which appeared for the first time at the hearing, without filing a motion. *Id.*

At the hearing, the Court noted that "the best course of action is to preserve the status quo" and ordered that "plaintiffs, plaintiffs' counsel and their consultants not further disclose [the Klein] documents to anyone or any entity without further order of the Court." Tr. 27-28. Following the hearing the Court ordered that "[a]ll papers heretofore filed or lodged under seal shall remain under seal pending further order of court. Counsel for plaintiffs and AT&T are directed to confer and to submit by May 25, 2006, jointly agreed-upon redacted versions of the Preliminary Injunction Motion (Doc #30) and the Klein

---

[1] On April 10, AT&T filed its Motion to Compel Return of Confidential Documents. Dkt. 41. Plaintiffs filed their opposition on May 1 (Dkt. 99) and AT&T filed its reply on May 5 (Dkt. 117). On April 12, AT&T filed its Memorandum in Support of Filing Documents Under Seal. Dkt. 51. Plaintiffs filed their opposition on April 17 (Dkt. 61) and AT&T filed its reply on April 21 (Dkt. 71). In addition, the Center for Constitutional Rights and the American Civil Liberties Union filed a brief as *amici curiae* seeking to unseal the Klein Documents on April 24, 2006. Dkt. 77. AT&T filed a brief in response to *amici* on April 28, 2006. Dkt. 84. These matters were argued May 17.

Declaration (Doc #31)." Civil Minute Order dated May 17, 2006 (Dkt. 130; "Minute Order"). The Court declined to hear the Press at that time, ruling that "[t]he court will entertain motions to intervene only on written application therefor with appropriate notice and service on all parties . . . ." Dkt. 130, at 2 (emphasis added).

Two days later, on May 19, 2006, the Press filed the Motion to Unseal, Dkt. 133. The Press set this motion to be heard on June 23, the time the Court set for hearing Defendants' and the government's motions to dismiss.

On May 22, 2006, proposed intervenor *USA Today* published copies of materials that it claimed may be "the same as those at the heart of the lawsuit against AT&T." Declaration of Bruce A. Ericson filed herewith ("Ericson Decl."), ¶ 2, Ex. A. *USA Today* did so despite the Court's order that "[a]ll papers heretofore filed or lodged under seal shall remain under seal pending further order of court." Minute Order at 1.

Meanwhile, pursuant to the Minute Order, Plaintiffs and AT&T met and conferred, and reached agreement on redacting the text of the Klein Declaration and the Preliminary Injunction Memorandum. Accordingly, on May 25, plaintiffs filed lightly redacted versions of each (Dkt. 147, 149), mooting in some part the relief the Press seeks.

## III. ARGUMENT.

### A. The Press should not be granted leave to intervene.

Courts permit intervention by the press when nobody else has the interest or the means to speak against sealing court documents. But that is not the case here. Plaintiffs (represented by the Electronic Frontier Foundation, "EFF"), and the existing *amici* (the Center for Constitutional Rights and the American Civil Liberties Union, "Amici"), have already argued long and hard against sealing. Whatever else might be said about their arguments, they have not lacked for vigor. Nothing would be served by piling on new intervenors to argue against sealing—particularly when all they seek to do is reargue matters already decided, without even a pretense of offering a fresh point of view.

Perhaps because they have nothing new or different to say, the Press neither identifies the applicable standards for intervention, nor explains how it might satisfy those

standards. The Press does not even state whether intervention is sought as of right under Fed. R. Civ. P. 24(a) or by permission under Fed. R. Civ. P. 24(b). AT&T should not be required to guess at the basis—if any—for the Press's motion. Because the Press has not explained why it is entitled under Rule 24 to intervene, its motion for intervention should be denied. *See United States v. Western Processing Co., Inc.*, 133 F.R.D. 157, 158-59 (W.D. Wash. 1990), in which the court denied a newspaper's motion to intervene as of right and declined to grant permissive intervention because the newspaper "has not demonstrated any basis upon which intervention should be granted."

Where intervention is allowed, typically it is because the existing parties do not adequately represent the proposed intervenor's interests. Inadequate representation of the proposed intervenor's interests is one of the essential elements of intervention of right, and a relevant consideration in permissive intervention. Fed. R. Civ. P. 24(a)(2), (b)(2). Of all the cases cited by the Press in their discussion of intervention, only one case actually discusses intervention. That case is *San Jose Mercury News, Inc. v. United States District Court*, 187 F.3d 1096 (9th Cir. 1999). It held that permissive intervention was appropriate where neither party would adequately protect the interests of the intervening newspaper. *Id.* at 1101. But such is not the case here. EFF and Amici continue to oppose AT&T's efforts to keep the Sealed Documents under seal. Like the Press, EFF's goals include "defending free speech, privacy . . . . on behalf of consumers and the general public." Ericson Decl. ¶ 3, Ex. B ("About EFF," *available at* http://www.eff.org/about/). Thus, intervention of right is unavailable because the Press has failed to show it has a sufficiently independent interest; and permissive intervention would unduly burden the proceedings because the Press is merely rearguing points previously raised by EFF and Amici.[2]

If the Press were to be permitted to intervene, it would become a party to this case.

---

[2] *Cf. Avirgan v. Hull*, 118 F.R.D. 257, 258 n.2 (D.D.C. 1987) (permitting intervention where the intervenor "articulated . . . interests of the press . . . sufficiently independent of plaintiff"); *Andrews v. Norton*, 385 F. Supp. 672, 681 n.4 (D. Conn. 1974) (denying motions for intervention because "[n]one of the proposed intervenors present factual or legal issues different from those of the named plaintiffs").

As such, it would be expected to obey this Court's orders. That is a duty the Press seems unwilling to assume. The Court, on May 17, ordered the parties not to disclose matters under seal. Dkt. 130. Within a week, proposed intervenor *USA Today* published excerpts from confidential AT&T documents that it said might be "the same as those at the heart of the lawsuit against AT&T." Ericson Decl. ¶ 2, Ex. A. It did so despite knowing of this Court's order and of AT&T's contention that the Sealed Documents contain AT&T's trade secrets whose disclosure would jeopardize the security of its network.

Even if the requirements of Rule 24(b) are satisfied, the Court has discretion to deny permissive intervention.[3] Where, as here, proposed intervenors are manifestly unwilling to abide by the Court's orders and maintain documents under seal, the Court should deny the Press's motion to intervene.[4]

"[T]he First Amendment does not prohibit courts from incidentally enjoining speech in order to protect a legitimate property right." *DVD Copy Control Ass'n, Inc. v. Bunner,* 31 Cal. 4th 864, 881 (2003). "[T]he protection of trade secrets and the benefits to research and development derived from the government's recognition of this property right *depend* on the judiciary's power to enjoin disclosures by those who know or have reason to know of their misappropriation." *Id.* (emphasis in original). The Press's disregard for AT&T's property rights justifies denial of permissive intervention.

A better solution here than intervention would be to allow the Press to participate as *amici*.[5] On this record, the Press has not made out a case for intervention, and there is

---

[3] *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 n.1 (1987).(Brennan, J. concurring).

[4] *Cf. Edmonson v. State of Nebraska ex rel. Meyer*, 383 F.2d 123, 128 (8th Cir. 1967) (affirming discretionary denial of permissive intervention in part because the intervention "had the earmarks of a sham" and holding that "[w]hen improper motive in seeking intervention appears, the trial court should be wary to grant the request").

[5] *See, e.g., People ex rel. Lockyer v. U.S. Dep't of Agr.*, No. 05-3508, 2006 U.S. Dist. LEXIS 20147, 2006 WL 889327, at *4 (N.D. Cal. Mar. 31, 2006); *Beverly Hills Fed. Savings and Loan Ass'n v. Fed. Home Loan Bank Board*, 33 F.R.D. 292, 294 (S.D. Cal. 1962) (denying a motion to intervene for failure to show that the proposed intervenor's interests will not be adequately represented, but granting *amicus* status to proposed

(continued…)

much mischief that intervention could cause. If the Court allows intervention, the Press will be given a number of means of protracting this litigation, including "initiating legal proceedings, filing pleadings, [and] otherwise participating and assuming control of the controversy in a total adversarial fashion."[6] Affording the Press the right to intervene, even if limited to the sealing of documents, may unnecessarily protract these proceedings by forcing the parties to respond, as AT&T is here, to additional motions and perhaps future interlocutory appeals.[7] The case for intervention here is undermined by this potential for delay on matters unrelated to the merits of this case. The Press's motion to intervene should therefore be denied.

**B. The Press has not provided any good reason why the Court should reverse its decision of May 17 and disclose AT&T's trade secrets.**

**1. The Press seeks reconsideration of matters already argued and decided.**

The Press devotes a mere footnote to the most important question raised by its belatedly filed Motion to Unseal: why should the Court reconsider the sealing order it rendered after careful consideration of eight briefs, extended oral argument, and its own review of the documents at issue? *See* Motion to Unseal at 6 n.4. The Press dodges this question by pretending that the Court never really ruled at the May 17 hearing:

> AT&T may argue that this Court has already made such findings in its May 17, 2006 Civil Minute Order. We respectfully disagree. This Court's comments at argument simply evinced a desire to preserve the *status quo* until a further hearing could be held, and the media had not yet had a chance to weigh in (its hastily-filed brief was E-filed an hour before the hearing). This Court's order simply said that papers previously lodged under seal "shall remain under seal *pending further order of court*."

*Id.* (emphasis in Motion to Unseal). Thus, according to the Press, the Court's ruling was mere "comments at argument . . . evince[ing] [the Court's] desire[s]." In fact, the Court

---

(…continued)
intervenor).

[6] *United States v. State of Michigan*, 940 F.2d 143, 165 (6th Cir. 1991) (distinguishing the rights of amici curiae from intervenors).

[7] See *Moten v. Bricklayers, Masons and Plasters Int'l Union of Am.*, 543 F.2d 224, 227 (D.C. Cir. 1976), cited in *State of Michigan*, 940 F.2d at 165.

issued a ruling—concluding that the documents at issue should remain under seal. To the extent that the Court couched its conclusions as to the trade secret or proprietary status of the Sealed Documents in qualified or tentative terms, it appeared to do so because it was about to tell the parties to meet and confer about redacting confidential material in the Klein Declaration and the Preliminary Injunction Motion and then publicly filing the remainder of their contents. Tr. 63:13-65:2; Minute Order (Dkt. 130) at 1.[8] As noted above, the parties met and conferred, reached agreement and recently filed lightly redacted versions of the Klein Declaration and the Preliminary Injunction Motion. In short, the process worked.

The Press has been covering this case with active interest at least since plaintiffs filed their Preliminary Injunction Motion.[9] Nonetheless, the Press did not move to intervene until an hour before the May 17 hearing on the sealing issues. Dkt. 129. This was well after the issues had been fully briefed by the parties and Amici. *See* fn. 1 above. Then, having been rebuffed by the Court at the hearing, the Press filed this motion (Dkt. 133), which is virtually identical to its previous motion (Dkt. 129), after the Court had already ruled on the sealing issues.

The Press offers no explanation for its dilatory conduct. Rather, it proclaims that as of the May 17 hearing, "the media had not yet had a chance to weigh in." Motion to Unseal

---

[8] *See* Tr. 27:1-8 ("[I]t is quite possible that those documents contain significant trade secret or proprietary information properly belonging to one or the other of the AT&T entities. . . . [The Court] believes that there is a strong possibility that those claims are legitimate claims of trade secret and proprietary information.").

[9] *See, e.g.*, Declaration of Bruce A. Ericson in Support of Motion of Defendant AT&T Corp. to Compel Return of Confidential Documents (Dkt. 43-1; "Ericson Sealing Decl."), ¶ 26, Ex. K (*San Francisco Chronicle*, "Court Filings May Reveal Role of AT&T in Federal Net Spying," April 8, 2006); Ericson Decl. ¶ 4, Ex. C (*San Francisco Chronicle*, "U.S. Moves to Quash Privacy Suit Against AT&T," April 29, 2006); Ericson Decl. ¶ 5, Ex. D (*San Francisco Chronicle*, "U.S. Opens Assault on Wiretap Suit - AT&T Is Accused of Aiding Surveillance," May 16, 2006); Ericson Decl. ¶ 6, Ex. E (*San Francisco Chronicle*, "AT&T Loses Bid for a Closed Court - At Issue Are Papers the Company Calls Trade Secrets," May 17, 2006); Ericson Decl. ¶ 7, Ex. F (*San Francisco Chronicle*, "AT&T Documents to Stay Sealed," May 17, 2006); Ericson Decl. ¶ 8, Ex. G (*USA Today*, "Judge Issues Split Decision in AT&T Privacy Lawsuit," May 17, 2006); Ericson Decl. ¶ 9, Ex. H (*USA Today* (from Associated Press), "Judge Seals Documents in NSA Spying Suit," May 17, 2006); Ericson Sealing Declaration ¶ 24, Ex. I (*New York Times*, "Court Filings Tell of Internet Spying," April 7, 2006); Ericson Sealing Decl. ¶ 25, Ex. J (Wired News, "Ex-AT&T Worker Tells of NSA Op," April 7, 2006).

at 6. But between March 31 and May 17, the Press had had an opportunity to "weigh in"—it just didn't do so. Now it asks the Court to be heard, to reconsider the Court's ruling and to unseal the documents "promptly." Motion to Unseal at 6-7. But the Press does not explain why the Court should credit its current claims of urgency when it contentedly sat on the sidelines for over two months while the parties and Amici fought over, and the Court ruled on, the issues raised by plaintiffs' motion to unseal.

The Press attempts to put the burden once again on AT&T to explain why the Sealed Documents should remain sealed. Perhaps initially AT&T had the burden of establishing that its interests justified the sealing orders it sought. But AT&T met that burden, and the Court agreed to maintain the status quo by keeping the Sealed Documents under seal. The Press would require AT&T repeatedly to justify sealing the same set of documents, time after time. But the Press does not and cannot marshal legal authority for imposing the labor of Sisyphus on AT&T. It is the Press that must carry the burden of explaining why the Court should reconsider its rulings. *See* Civ. L.R. 7-9 (requiring for a motion for reconsideration both leave of court and a showing of either a material change of law or facts or a failure of the Court to consider facts or law that were presented to it). The Press makes no such showing.

**2. The Press misconstrues the law applicable to sealing.**

The Press repeatedly quotes from but misconstrues the Ninth Circuit's decision in *Kamakana v. City and County of Honolulu*, No. 04-15241, 2006 U.S. App. LEXIS 12101, 2006 WL 1329926 (9th Cir. May 17, 2006) . Far from helping the Press, that case confirms that the protection of trade secrets is a "compelling reason" to seal court records: "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the . . . release [of] trade secrets." 2006 WL .1329926, at *4 (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)). At issue in *Kamakana* were not trade secrets—let alone state secrets—but a policeman's claims of retaliation by a police department for his whistle-blowing with respect to municipal

corruption. The parties seeking to seal records there lost the appeal either because they made a wholly conclusory showing (City of Honolulu) or because the information they sought to seal was information that they themselves had already released to the public (United States). *Id.* at *6-*10.

The *Kamakana* court also drew a sharp distinction between papers filed in connection with dispositive motions and papers filed in connection with other motions, holding that a "compelling reasons" standard applies to dispositive motions, but only a "good cause" standard applies to other motions. *Id.* at *5. The Press asserts that this distinction helps them, but that puts the cart before the horse. The proceedings in *Kamakana* occurred *after* the district court had ruled on the dispositive motions—indeed, after the case had settled. (The same is true of *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) and *Phillips v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002).) In contrast, here we have no idea which motions the Court will reach, and which it will not. The Press, for example, is keen to see the papers filed under seal in support of the Preliminary Injunction Motion. But that motion has been put off indefinitely (Dkt. 130), and if the case goes away on a motion to dismiss, the Court will never reach it.[10] To label the Preliminary Injunction Motion "dispositive" and therefore subject to the "compelling interest" test is to engage in wishful thinking. Perhaps someday it will have that status; today it does not.

The Press cites several cases for the proposition that "[t]he Ninth Circuit and California courts have consistently rejected 'trade secret' and similar claims advanced by corporate defendants who sought to seal documents." Motion to Unseal at 4. But none of these cases holds, or even suggests, that there is not a "compelling interest" in protecting trade secrets, as the Press erroneously claims. Instead, all are distinguishable because the information sought to be sealed in those cases did not rise to the level of a trade secret and

---

[10] Most of the other papers the Press is keen to see were filed in connection with non-dispositive motions.

because the parties' other grounds for sealing were particularly weak.

In *Foltz*, 331 F.3d at 1127, 1137, for example, the issue was the use of fraudulent medical reviews to deny personal injury coverage under automobile insurance policies. "Most of the material in the sealed record [was] composed of depositions of doctors and [California Institute of Medical Research & Technology] employees regarding CMR's relationship with State Farm, CMR's boilerplate medical reports, and the forgery of doctors' signatures on the reports." *Id.* at 1137. State Farm had not identified where in the documents anything confidential could be found. The forging of doctor's signatures might have been embarrassing, but it is hardly a trade secret or a state secret.

In *State of California ex rel. Lockyer v. Safeway, Inc.*, 355 F. Supp. 2d 1111, 1125 (C.D. Cal. 2004), the material sought to be unsealed was a contract among several grocery store chains (the "Mutual Strike Assistance Agreement") detailing how they would work together to combat a strike by the grocery clerks' union. The district court found that "[a]ll of the provisions in the MSAA identified by Defendants as confidential, other than the revenue sharing formula, are either obvious, already disclosed by Defendants, or otherwise public knowledge." *Id.* at 1120. The court found no reason to seal the revenue sharing formula because defendants had made no showing that disclosure of it would harm them. An agreement about how to deal with a strike, itself long over, is not exactly a trade secret or a state secret.

The Press's other cases were decided under state law and have limited, if any, relevance here. In *Huffy Corp. v. Superior Court*, 112 Cal. App. 4th 97, 105-06 (2003), a party sought to seal a settlement agreement, its sources of payments and admissions that it may have violated federal and state pollution laws—hardly interests that the law protects; the court, in ruling against sealing, returned all the documents to the petitioner and gave it the option of not filing them at all rather than having them be unsealed. *Id.* at 109-10. In *Universal City Studios, Inc. v. Superior Court*, 110 Cal. App. 4th 1273, 1284 (2003), the effort to seal failed because the documents consisted of a settlement agreement and financial information, much of which the petitioner itself had publicly filed in another

lawsuit. And in *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 305, 309 (2002), the defendants sought to seal telemarketing scripts and a marketing memo. The court said: "The scripts are sales pitches, and once they have been used, sales pitches are not treated as trade secrets." *Id.* at 305. The court found that the memo was not confidential because the defendants had not marked it confidential.[11]

**3. The Press has not undermined AT&T's trade secrets or its interest in protecting the security of its network.**

The Press moves to unseal every document sealed in this case. The Press does not attempt to explain why any particular document should be unsealed. Indeed, it fails to mention by name most of the documents it sets its sights on.

Ignoring the Court's ruling that AT&T's interests in its trade secrets and the security of its network merited sealing (Tr. 27:1-8), the Press contends that the Sealed Documents do not contain trade secrets. Motion to Unseal at 7-8. The Press argues that AT&T has merely offered "conclusory" assertions that the Sealed Documents contain trade secrets. *Id.* at 7. The Press has not actually seen AT&T's submissions on sealing because they were also filed under seal. Therefore, the Press has no basis for asserting that these submissions were conclusory. As the Court is aware, AT&T's submissions were highly detailed.

It has been said that the "legal definition of chutzpah . . . is a young man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan."[12] In an argument of this sort, the Press argues that the Sealed Documents do not contain trade secrets because "the general contents of the Klein Declaration and exhibits have been

---

[11] Despite having never seen AT&T's submissions, the Press compares AT&T's submissions in support of sealing to those at issue in *Providian*, which had no "helpful specifics" other than a "single paragraph of [their] declaration[s] devoted to the scripts [which states] that 'no customer' on whom a given script was used 'would hear more than a fragment of the script based on that individual's characteristics and responses.'" 96 Cal. App. 4th at 305. Unlike the declarations at issue in *Providian*, the sealed declaration of James W. Russell in Support of AT&T's Motion to Compel Return of Confidential Documents (Dkt. 42) ("Confidential Russell Declaration") provides pages of specific information as to why AT&T's confidential documents must remain sealed.

[12] *Harbor Insurance Co. v. Schnabel Foundation Co.*, 946 F.2d 930, 937 n.5 (D.C. Cir. 1991).

publicly disclosed"—namely, by leaks in the press. Motion to Unseal at 8.

Chutzpah aside, the Press is in no position to make such a claim because it does not know what it has not seen, or whether what it has seen is accurate. The isolated pieces of information that the Press and other members of the media have leaked to the public are not the same as the material that remains under seal.[13] Despite the leaks, the information contained in the Sealed Documents remains valuable trade secrets. The information also would jeopardize the security of AT&T's network if disclosed.

Because the Press does not and cannot offer a good reason why the Court should reconsider and reverse its May 17 ruling, the motion to unseal should be denied.

**C. AT&T's commercial interests merit continued sealing.**

The Press devotes the last third of its motion to arguing that it should be able to see the government's *ex parte, in camera* submission. Motion to Unseal at 11-16. That is the government's fight rather than AT&T's fight. First, and as all parties agree, only the government can invoke the military and state secrets privilege. Second, counsel for AT&T (like counsel for plaintiffs and counsel for the Press) have not seen the *ex parte, in camera* submission and therefore can say nothing useful about what that submission does or does not contain. Thus, we leave it to the government to defend its privilege.

AT&T understands the interest of the press in learning more about the functioning of the federal government and, in particular, what the government allegedly is doing, or not doing, in the area of foreign surveillance. But quite separate and apart from that subject matter, AT&T has at stake here its own commercial interests—however prosaic and un-newsworthy. AT&T has a genuine interest in protecting its network from disruption—and so too do the millions of Americans who use that network daily. AT&T also has a genuine

---

[13] Although the Press may claim that public disclosure of statements attributed to Mark Klein and of isolated pages that the media believe to be excerpts from the exhibits of his Declaration constitute changed factual circumstances justifying reconsideration of the Court's ruling on May 17, the fact of the matter is that plaintiffs and Amici have been making the same "horse already out of the barn" claim throughout the litigation on sealing. There is nothing new here.

interest in protecting its trade secrets. AT&T has developed technology for splitting and cross-cutting fiber optics. While not the sort of stuff that sells mass-circulation newspapers, that technology has commercial value, and it is technology in which AT&T believes that it has a substantial lead over its competitors. The Press should not confuse the two sets of interests: the United States' interest in protecting its foreign surveillance activities, whatever they might be; and AT&T's interest in protecting its network and its commercially valuable trade secrets. The interests that AT&T seeks to protect are at most of tangential interest to the press or the public, but those interests are important to AT&T, and they are interests that the law protects. This Court should protect them too.

## IV. CONCLUSION.

AT&T respectfully submits that the Court should deny the Press's motion to intervene and not reconsider its previous order continuing the seal as to documents other than those the parties have agreed to unseal in part (namely, Dkts. 147, 149).

Dated: June 2, 2006.

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
DAVID L. ANDERSON
JACOB R. SORENSEN
MARC H. AXELBAUM
DANIEL J. RICHERT
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

SIDLEY AUSTIN LLP
DAVID W. CARPENTER
BRADFORD A. BERENSON
DAVID L. LAWSON
EDWARD R. McNICHOLAS
1501 K Street, N.W.
Washington, D.C. 20005

By /s/ Bruce A. Ericson
Bruce A. Ericson

Attorneys for Defendants
AT&T CORP. and AT&T INC.