ELECTRONIC FRONTIER FOUNDATION
CINDY COHN (145997)
cindy@eff.org
LEE TIEN (148216)
tien@eff.org
KURT OPSAHL (191303)
kurt@eff.org
KEVIN S. BANKSTON (217026)
bankston@eff.org
CORYNNE MCSHERRY (221504)
corynne@eff.org
JAMES S. TYRE (083117)
jstyre@eff.org
454 Shotwell Street
San Francisco, CA 94110
Telephone: 415/436-9333
415/436-9993 (fax)

TRABER & VOORHEES
BERT VOORHEES (137623)
bv@tvlegal.com
THERESA M. TRABER (116305)
tmt@tvlegal.com
128 North Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: 626/585-9611
626/ 577-7079 (fax)

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AT&T CORP., et al.<br><br>Defendants. | No. C-06-00672-VRW<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT AT&T INC.'S MOTION TO DISMISS AMENDED COMPLAINT<br><br>DATE: June 23, 2006<br>TIME: 9:30 a.m.<br>COURTROOM: Hon. Vaughn Walker |

Dockets.Justia.com

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS RELATING TO JURISDICTION ..... 2

III. ARGUMENT ..... 2

A. Burden of Demonstrating Jurisdiction ..... 3

B. General Principles of Jurisdiction ..... 3

C. The Court Has General Jurisdiction Over AT&T ..... 5

1. AT&T Lobbies Extensively California State Legislators and Regulators ..... 5

2. AT&T's Press Releases Show that AT&T Does Substantial Telecommunications Business, and Does It in California ..... 8

3. AT&T Is Not a Pure Holding Company ..... 11

4. AT&T Has Conceded or Consented to Jurisdiction in California and the Ninth Circuit ..... 11

5. Many Courts, Including the Northern District of California, Have Exercised Jurisdiction Over AT&T ..... 12

6. General Jurisdiction Is Proper Under the Representative Services Doctrine Because AT&T's California Subsidiaries Offer Services that AT&T Would Have to Provide if the Subsidiaries Did Not Exist ..... 15

7. AT&T's Web Site Conducts Business Regularly with Californians ..... 16

D. AT&T Is Subject to Specific Jurisdiction of This Court ..... 16

1. AT&T's Web Site Is Additional Evidence that AT&T Purposefully Avails Itself of the Privilege of Conducting Activities in California ..... 17

2. Plaintiffs' Claim Arises out of AT&T's California Activities ..... 18

3. The Exercise of Specific Jurisdiction Is Reasonable ..... 20

IV. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

**Page**

**CASES**


*American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586 (9th Cir. 1996) .....3

*Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34 (D.D.C. 2003) .....7

*Autodesk, Inc. v. RK Mace Eng'g, Inc.,* No. C-03-5128, 2004 WL 603382 (N.D. Cal. Mar. 11, 2004) .....16, 17, 18, 20

*Ballard v. Savage,* 65 F.3d 1495 (9th Cir. 1995) .....3

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082 (9th Cir. 2000) .....3, 4, 16

*Brand X Internet Servs. v. FCC,* 345 F.3d 1120 (9th Cir. 2003), *rev'd on other grounds*, 125 S. Ct. 2688 (2005) .....11

*Brand X Internet Servs. v. FCC,* No. 02-70518, 2002 WL 32191903 (9th Cir. Dec. 9, 2002) .....12

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) .....20

*Calder v. Jones,* 465 U.S. 783 (1984) .....17

*Chamberlain v. Am. Tobacco Co.,* No. 1:96-CV-02005-PAG, 1999 WL 33994451, 1999 U.S. Dist. LEXIS 22636 (N.D. Ohio Nov. 19, 1999) .....7

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.,* 106 F.3d 284 (9th Cir. 1986 ) .....20

*Covad Commc'ns Co. v. Pac. Bell,* No. C 98-1887 SI, 1999 WL 33757058, 1999 U.S. Dist. LEXIS 22789 (N.D. Cal. Dec. 14, 1999) .....2, 4, 12

*Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir. 1997) .....17

*DVI, Inc. v. Superior Court,* 104 Cal. App. 4th 1080 (2002) .....4, 15

*Data Disc, Inc. v. Sys. Tech. Assocs. Inc.,* 557 F.2d 1280 (9th Cir. 1977) .....2, 3

**Page**

*Directory Dividends, Inc. v. SBC Commn'cs, Inc.*,
No. Civ.A. 01-CV-1974, 2003 WL 21961448, 2003 U.S. Dist. LEXIS 12214 (E.D. Pa. July 2, 2003) ........ 13

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ........ 2, 3

*F. Hoffman-La Roche, Ltd. v. Superior Court*,
130 Cal. App. 4th 782 (2005) ........ 15

*Gammino v. SBC Commn'cs. Inc.*,
No. 03-CV-6686, 2005 WL 724130, 2005 U.S. Dist. LEXIS 5077 (E.D. Pa. Mar. 29, 2005) ........ 13, 16

*Gointernet.Net, Inc. v. SBC Commn'cs, Inc.*,
No. 3348 March Term 2003, Control 090038, 2003 WL 22977523 (Pa. Com. Pl. Dec. 17, 2003) ........ 13, 14

*International Shoe Co. v. State of Washington*,
326 U.S. 310 (1945) ........ 3

*Jamba Juice Co. v. Jamba Group, Inc.*,
No. C-01-4846 VRW, 2002 WL 1034040, 2002 U.S. Dist. LEXIS 9459 (N.D. Cal. May 15, 2002) ........ 16, 17

*Newman v. Motorola, Inc.*,
125 F. Supp. 2d 717 (D. Md. 2000) ........ 14

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) ........ 17

*Phonetel Commn'cs, Inc. v. U.S. Robotics Corp.*,
Civil Action No. 4:00-CV-1750-R, 2001, U.S. Dist. LEXIS 7233 (N.D. Tex. June 1, 2001) ........ 14

*RLH Indus., Inc. v. SBC Commn'cs, Inc.*,
133 Cal. App. 4th 1277 (2005) ........ 11

*Shepherd Invs. Int'l, Ltd. v. Verizon Commn'cs Inc.*,
373 F. Supp. 2d 853 (E.D. Wis. 2005) ........ 6, 7, 11

*State of Maine v. Phillip Morris, Inc.*,
Docket No. CV-97-134, 1998 Me. Super. LEXIS 240 (Sept. 30, 1998) ........ 7

*Von Grabe v. Sprint PCS*,
312 F. Supp. 2d 1285 (S.D. Cal. 2003) ........ 14

**Page**

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006), *cert. denied*, No. 05-1302, 2006 WL 993483, 2006 U.S. LEXIS 4180 (May 30, 2006)....4

**STATUTES, RULES AND REGULATIONS**

18 U.S.C.
§2511....1
§2702....1

47 U.S.C.
§605....1

50 U.S.C.
§1809....1

Federal Rules of Civil Procedure
Rule 12(b)(1)....1
Rule 12(b)(2)....1
Rule 12(b)(6)....1

Federal Rules of Evidence
§801(d)(2) ....8, 10

California Business & Professions Code
§17200....1

California Code of Civil Procedure
§410.10....3

California Government Code
§86109.5....5, 6

**SECONDARY AUTHORITIES**

Lea Brilmayer, *et al.*, *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 742 (1988)....7

Mary Twitchell, *Why We Keep Doing Business With Doing-Business Jurisdiction*, 2001 U. Chi. Legal F. 171....7

## ISSUE TO BE DECIDED

Whether this Court may assert personal jurisdiction over AT&T Inc., a foreign corporation that claims not to do business in California, but whose own public filings, press releases, and web site show that AT&T Inc. not only does substantial and continuous business in California, but with the state itself through its legislators and regulators.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is a class action brought on behalf of all residential customers and subscribers of defendants AT&T Corp. and AT&T Inc. alleging, among other things, that defendants are violating the Fourth Amendment of the United States Constitution and several federal statutes by conducting, on behalf of the government, warrantless, suspicionless searches and seizures of the domestic and international communications of millions of Americans, including plaintiffs. The case also alleges that defendants have opened key telecommunications databases to direct access by the government, disclosing detailed communications records about millions of their customers, again including plaintiffs.[1]

AT&T Inc. moved to dismiss plaintiffs' Amended Complaint for Damages, Declaratory and Injunctive Relief ("Complaint") on Fed. R. Civ. P. 12(b)(2) lack of personal jurisdiction grounds. Co-defendant AT&T Corp., a wholly owned subsidiary of AT&T Inc., made its own motion to dismiss, joined by AT&T Inc., on grounds distinct from those asserted by AT&T Inc.[2] Because this opposition concerns AT&T Inc., all references herein to "AT&T" are references only to AT&T Inc. Similarly, all references herein to "SBC" are references only to SBC Communications, Inc., the

---

[1] Plaintiffs allege statutory violations including without limitation: 50 U.S.C. §1809, 18 U.S.C. §2511, 47 U.S.C. §605 and 18 U.S.C. §2702 on behalf of a nationwide class and allege those plus a violation of Cal. Bus. & Prof. Code §17200 on behalf of the California sub-class.

[2] Plaintiffs separately respond to the Fed. R. Civ. P. 12(b)(1) and 12(b)(6) arguments raised by AT&T Corp. and joined by AT&T Inc. Plaintiffs' response to those arguments applies equally to both, and plaintiffs focus here only on the jurisdictional argument of AT&T Inc.

name by which AT&T was known prior to the November 2005 merger with AT&T Corp. and the ensuing corporate name change.

## II. STATEMENT OF FACTS RELATING TO JURISDICTION

AT&T's sole evidence in support of its motion is the Declaration of Starlene Meyerkord ("Meyerkord Decl."). For the purpose of this opposition (*cf*. n.3, *infra*), plaintiffs do not dispute much of what Ms. Meyerkord says. But, plaintiffs will show her statements are simply beside the point. Plaintiffs' argument is based largely on facts not addressed by Ms. Meyerkord; AT&T's contacts are significant in California, and are vastly greater than described in her declaration.

AT&T spends millions of dollars to influence California legislators in developing telecommunications policy and passing legislation favorable to AT&T. Although describing itself as a mere holding company, AT&T blurs the distinction between it and its subsidiaries in important respects pertinent to the exercise of personal jurisdiction. Its press releases repeatedly refer to AT&T doing business in California. It acts as an intermediary between California consumers and AT&T subsidiaries. AT&T maintains an interactive e-commerce web site that offers California-specific products and services to California residents. Typing "www.att.com" into a web browser directs a consumer to an SBC web site. On the web site, a California consumer can enter into a binding contract for services in California offered by AT&T or its subsidiaries, including for local and long distance telephone services and for Internet services.

## III. ARGUMENT

This Court has jurisdiction over AT&T based on its own contacts with California, whether under its current name or its former SBC name. In *Covad Commc'ns Co. v. Pac. Bell*, No. C 98-1887 SI, 1999 WL 33757058, 1999 U.S. Dist. LEXIS 22789 (N.D. Cal. Dec. 14, 1999),[3] Judge Illston so held, on a showing no greater than will be made here. This Court also has jurisdiction over AT&T based on AT&T's relationship with AT&T Corp. and other subsidiaries.

---

[3] Pursuant to the Court's Standing Orders, any unpublished opinions must include both the Westlaw and Lexis citation. Unless the parallel cite is unavailable, all pin cites are to the Westlaw citation unless only the Lexis citation is available.

### A. Burden of Demonstrating Jurisdiction

It is plaintiffs' burden to show that jurisdiction exists. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Where a motion such as this is decided solely on the written submissions and argument of counsel, plaintiffs need not prove their case to a preponderance of the evidence. *Data Disc, Inc. v. Sys. Tech. Assocs. Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Rather, plaintiffs need only make a *prima facie* showing – a showing that, if the facts presented by plaintiffs are proven to be true, then the exercise of jurisdiction over the defendant is appropriate. *Id.*; *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Uncontroverted allegations in the Complaint and factual conflicts between the parties' declarations must be resolved in favor of plaintiffs. *Unocal*, 248 F.3d at 922; *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588-89 (9th Cir. 1996).

While the Court may hold an evidentiary hearing, neither party has requested one. Plaintiffs do not believe such a hearing is necessary because, through the Complaint and these papers, they have demonstrated a *prima facie* showing that this Court has jurisdiction over AT&T.[4]

### B. General Principles of Jurisdiction

All jurisdictional jurisprudence stems from one basic notion: whether maintenance of an action against a foreign defendant does or does not offend "'traditional notions of fair play and substantial justice,"' based on whether the foreign defendant has "minimum contacts" with the forum state. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (citation omitted).[5]

---

4 If the Court should decide to hold an evidentiary hearing, then plaintiffs request the opportunity to do targeted jurisdictional discovery of AT&T in advance of that hearing on issues pertaining to both general and specific jurisdiction. *See Unocal*, 248 F.3d at 921.

5 Personal jurisdiction is a matter of state law, even in federal courts exercising federal question jurisdiction. *Unocal*, 248 F.3d at 921-22. However, the reach of the California long-arm statute, California Code of Civil Procedure §410.10, is the maximum permitted by the Constitutions of California and the United States. Thus, the analysis is one of due process. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Jurisdiction may be asserted in either or both of two manners: general jurisdiction and specific jurisdiction. General jurisdiction may be based on a defendant's actual or virtual presence in the forum. The basic standard for general jurisdiction is set forth in *Bancroft & Masters*:

> A defendant whose contacts with a state are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. This is known as general jurisdiction. The standard for establishing general jurisdiction is "fairly high," and requires that the defendant's contacts be of the sort that approximate physical presence. . . .

*Id*. (internal citations omitted).

When a "local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's ***own*** business," then, under the representative services doctrine, the non-resident parent is subject to the jurisdiction of courts where the local subsidiary operates. *DVI, Inc. v. Superior Court*, 104 Cal. App. 4th 1080, 1093 (2002) (emphasis in original) (citation omitted). Courts have held that simple holding companies are not subject to jurisdiction on account of the acts of their subsidiaries, but in *Covad*, the court found that plaintiffs made a *prima facie* showing that SBC –AT&T's former name – was "in fact, more than a simple holding company." 1999 WL 33757058, at *6. In light of the showing of AT&T's presence in California and its relationship with AT&T Corp. and other subsidiaries, this Court should find that plaintiffs have demonstrated that there is personal jurisdiction over AT&T.

Even if a foreign defendant's contacts with California are not sufficient for general jurisdiction, specific jurisdiction will exist if:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Bancroft & Masters*, 223 F.3d at 1086. Further, the Court "must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1207

(9th Cir. 2006)(*en banc*), *cert. denied*, No. 05-1302, 2006 WL 993483, 2006 U.S. LEXIS 4180 (May 30, 2006).[6]

Here, plaintiffs will show that AT&T is subject to both general jurisdiction and specific jurisdiction in California.

**C. The Court Has General Jurisdiction Over AT&T**

Despite AT&T's assertion that it is merely a passive holding company which acquires subsidiaries for investment purposes only (Meyerkord Decl., ¶4), the facts show that AT&T's activities and contacts are pervasive in California. Thus, AT&T is present in California for jurisdictional purposes even if, as AT&T contends (Meyerkord Decl., ¶11), it has no offices in California. Furthermore, contrary to AT&T's claim (Meyerkord Decl., ¶5), AT&T is a telecommunications company. Its purpose is to market itself and acquire customers who buy its products or subscribe to its services. If AT&T did not have subsidiaries to provide these services, it would have to undertake the work itself. Thus, AT&T should be considered present in California under the representative services doctrine.

**1. AT&T Lobbies Extensively California State Legislators and Regulators**

Public records disclose that, during the first five quarters of the 2005-2006 California legislative session (January 1, 2005 through March 31, 2006), AT&T and its affiliates spent a whopping $4,640,957.23 lobbying California State legislators and other government officials, plus $171,587.88 lobbying the California Public Utilities Commission. *See* Exhibit A to the accompanying Declaration of James S. Tyre ("Tyre Decl."). As required by California Government Code §86109.5, the records are available at Cal-Access <http://cal-access.ss.ca.gov/default.aspx>, a web site maintained by the California Secretary of State.[7] The "Lobbyist Employer" listing as

---

[6] *Yahoo!* also clarified that only a jurisdictionally sufficient amount of harm, not the "brunt" of the harm, need occur in the forum state. *Id.* at 1206.

[7] To get to the page represented by Tyre Decl. Ex. A, start at the Cal-Access default page, set forth in the text. On the left side, click on "Lobbying Activity," then "Lobbyist Employers." Scroll down to "AT&T Inc. and its Affiliates," click on that link. Towards the top of the page that will be displayed it says "View." Click the "Financial Activity/Filing History" button.

"AT&T Inc. and its Affiliates" is the direct result of repeated certifications, under penalty of perjury, that "AT&T Inc. and its Affiliates" is the Lobbyist Employer.

In the "Electronic Filings" section of Tyre Decl., Ex. A, the top listed document is AT&T's most recently amended "Lobbyist Employer Registration Statement," filed May 17, 2006 (Tyre Decl., Ex. B). Signed under penalty of perjury under the laws of the State of California, it lists the Lobbyist Employer as "AT&T Inc. and its Affiliates," and states that AT&T will attempt to influence the Governor's Office and all other Executive Branch agencies, the Fair Political Practices Commission, the California Public Utilities Commission and the State Board of Equalization (*id.* at 4) as well as the California State Legislature. *Id.* at 1. Candidly, AT&T states that the business entity is engaged in the "Telecommunications Industry." *Id.* at 2.

Nor is that an isolated filing. AT&T's second most recent filing, as listed on Tyre Decl., Ex. A, is its "Lobbying Firm Activity Authorization," filed May 9, 2006 (Tyre Decl., Ex. C). Again under penalty of perjury, the filer is "AT&T Inc. and its Affiliates," and the business entity is engaged in the telecommunications industry. To the same effect is the "Report of Lobbyist Employer," filed May 1, 2006 for the filing period January 1, 2006-March 31, 2006. Tyre Decl., Ex. D. That report shows the lobbying expenditures for the quarterly period. Adding those expenditures to those shown on the reports for the four previous quarters results in the totals shown on Tyre Decl., Ex. A.

Nor is the express inclusion of the corporate parent, supposedly just a passive holding company, a post-merger phenomenon. The second most recent "Report of Lobbyist Employer and Report of Lobbying Coalition," filed January 31, 2006 for the filing period October 1, 2005-December 31, 2005 (Tyre Decl., Ex. E) lists the name of the filer as "Pacific Telesis Group and its Subsidiaries, Affiliates of AT&T, Inc.*" Under penalty of perjury, on the last page of the report, AT&T explains the asterisk as follows:

> Effective November 18, 2005, SBC Communications, Inc. acquired AT&T Corporation. The surviving corporation, SBC Communications, Inc., – has since changed its name to AT&T Inc. This report discloses lobbying activities of Pacific Telesis Group and its subsidiaries, affiliates of – AT&T Inc., ***including the former SBC Communications, Inc.*** Lobbying activities of AT&T Corporation are separately disclosed on reports filed by that entity.

*Id.* (emphasis added).

No California court has addressed whether a non-resident's lobbying activities can form the basis for personal jurisdiction. However, courts outside California have addressed the issue, and have regularly asserted jurisdiction over non-resident defendants because of their lobbying activities. *E.g.*, *Shepherd Invs. Int'l, Ltd. v. Verizon Commc'ns Inc*., 373 F. Supp. 2d 853 (E.D. Wis. 2005); *Chamberlain v. Am. Tobacco Co*., No. 1:96-CV-02005-PAG, 1999 WL 33994451, 1999 U.S. Dist. LEXIS 22636, (N.D. Ohio Nov. 19, 1999); *State of Maine v. Phillip Morris, Inc*., Docket No. CV-97-134, 1998 Me. Super. LEXIS 240 (Sept. 30, 1998). That is because "when a defendant lobbies a state legislature which is charged with running the affairs of the state itself, the defendant necessarily intends to have an impact on the forum." *Chamberlain*, 1999 WL 33994451, at *22; *see* Mary Twitchell, *Why We Keep Doing Business with Doing-Business Jurisdiction*, 2001 U. Chi. Legal F. 171, 188 ("Lobbying activities within the forum should also be of some significance, since that is one way that a corporate insider can influence local lawmaking . . . ."). "[O]ne indicator of 'insiderness,' or, if you will, 'localness,' is participation in some fashion in the public affairs in the forum." *Shepherd Invs.*, 373 F. Supp. 2d at 862. AT&T seeks to influence California agencies and legislators in their policy making and in proposed legislation relating to telecommunications.[8]

---

[8] Courts in the District of Columbia have developed a "government contacts" exception so that non-resident entities do not have to be concerned that lobbying the federal government would subject them to jurisdiction. *See Atlantigas Corp. v. Nisource, Inc*., 290 F. Supp. 2d 34, 44 (D.D.C. 2003); *Chamberlain*, 1999 WL 33994451, at *22. Although other courts have also adopted a government contacts exception, the better view is that it should be applicable only in the District of Columbia since lobbying there may be seeking to influence the federal government, whereas lobbying in a state is seeking to influence that state's policies and legislation. *See, e.g., Shepherd Invs.*, 373 F. Supp. 2d at 865-66.

Because AT&T participates in the public affairs in California, to protect and expand its business here, AT&T should be subject to the jurisdiction of this Court.[9]

### 2. AT&T's Press Releases Show that AT&T Does Substantial Telecommunications Business, and Does It in California

AT&T's own press releases, available on AT&T's web site, disclose a wide variety of business activities being engaged in by AT&T, much of them in California. AT&T asserts that the web site is maintained by an unnamed subsidiary of AT&T, not by AT&T itself. Meyerkord Decl., ¶15. But Ms. Meyerkord does not speak to whether the press releases were penned by AT&T or by another, nor whether a consumer, visiting the site, would reasonably believe it to be an AT&T web site. At the very least, statements on the site listed below are adoptive admissions by AT&T under Fed. R. Evid. §801(d)(2)(B), (C) or (D).[10]

By way of example only are some of AT&T's recent press releases:

- January 5, 2006 Press Release (Tyre Decl., Ex. F): "***AT&T Inc***. (NYSE: T) today announced the appointment of Kenneth Mcneely as president, external affairs, for AT&T's operations in California. . . ."
- March 6, 2006 Press Release (Tyre Decl., Ex. G): "Some people may call in sick; others may say that the dog ate their keys, but whatever the excuse, AT&T is challenging Los Angeles Angels of Anaheim fans to come up with their best excuse for attending opening-day activities at Angel Stadium of Anaheim. ***AT&T Inc***. (NYSE: T) today announced a four-week Opening Day Off program, which enables

---

[9] *See also* Lea Brilmayer, *et al.*, *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 742 (1988):

> [A] corporate defendant cannot exert political influence by the right to vote. Instead, they may lobby, advertise, make campaign contributions, and exert other types of political pressure where they have a substantial enough stake in the political process to justify such activity. This decision to exert political influence, however, does not depend on whether the corporation has its greatest attachment to that state, but rather on whether the level of attachment in that state exceeds the threshold beyond which exerting political influence is profitable.

[10] Section 801 reads, in relevant part:

> (d) Statements which are not hearsay. A statement is not hearsay if . . . (2) [a]dmission [is] by party-opponent. The statement is offered against a party and is . . . (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . .

fans to register online for tickets to the Angels home-opener against the New York Yankees."

- March 9, 2006 Press Release (Tyre Decl., Ex. H): "***AT&T Inc***. (NYSE: T) announced today a new optical and data-networking services contract with the city of Folsom, Calif."

- March 15, 2006 Press Release (Tyre Decl., Ex. I): "***AT&T Inc***. (NYSE: T) today announced a new contract with the Daughters of Charity Health System (DCHS), a regional health care system of six hospitals and medical centers located in Northern and Southern California."

- April 3, 2006 Press Release (Tyre Decl., Ex. J): "***AT&T Inc***. (NYSE: T) announced a new optical networking contract with Irvine Unified School District (USD), a public school district . . . serving Irvine, Calif."

- April 10, 2006 Press Release (Tyre Decl., Ex. K): "Imagine buying high speed Internet service and home networking equipment that includes a visit by a technology expert who comes to your house, sets up your services, and charges you little to nothing.

  It's not a broadband pipe dream. ***AT&T Inc***. (NYSE: T) today announced that very offer to help customers enjoy today's digital lifestyle."

- April 12, 2006 Press Release (Tyre Decl., Ex. L): "***AT&T Inc***. (NYSE: T) today announced a new optical services contract with Pajaro Valley Unified School District (USD), a California school district. . . ."

- April 21, 2006 Press Release (Tyre Decl., Ex. M): "***AT&T Inc***. (NYSE: T) today announced that it will be providing optical network services to Los Angeles County. . . ."

- April 26, 2006 Press Release (Tyre Decl., Ex. N): "***AT&T Inc***. (NYSE: T) today announced a new, higher-speed tier for its AT&T Yahoo!® High Speed Internet service that meets consumers' growing demand for greater bandwidth, while delivering a market-leading price.

  Beginning Monday, May 1, new residential customers who order AT&T Yahoo! High Speed Internet service online through <u>www.att.com</u> can purchase the Elite service. . . ."

- April 28, 2006 Press Release (Tyre Decl., Ex. O): "***AT&T Inc***. (NYSE: T) today announced a new voice and data services contract with East West Bank, the second-largest Los Angeles-based independent commercial bank."

These press releases, just a sampling of AT&T's press releases in January through April of this year, show two things: (1) that AT&T is in the business of telecommunications, not just the business of owning other businesses; and (2) that AT&T does substantial, systematic and continuous telecommunications business in California. This is not a case where affiliated entities simply share a common brand name. Plaintiffs do not dispute that "AT&T" is a brand name, but each press release

names specifically "AT&T Inc.," and includes the New York Stock Exchange symbol ("T") for that company alone. "AT&T Inc." is a single corporation, not a family of affiliates and subsidiaries that share the "AT&T" brand.

Nor can AT&T be heard to say that, simply as a matter of uniform style, its press releases always refer to AT&T Inc. rather than to the supposedly appropriate subsidiaries or affiliates.[11] To the contrary, when AT&T wants to name a subsidiary or affiliate, it knows perfectly well how to do so. Again, by way of example only:

- January 26, 2006 Press Release (Tyre Decl., Ex. P): "The AT&T Foundation – the philanthropic arm of AT&T Inc. – today announced that it awarded. . . ."
- March 14, 2006 Press Release (Tyre Decl., Ex. Q): "Statement of AT&T Indiana Regarding HB 1279 Being Signed into Law. . . ."
- March 29, 2006 Press Release (Tyre Decl., Ex. R), "AT&T California today announced its financial commitment to bring next-generation interactive television and video services to the state. . . ."
- April 12, 2006 Press Release (Tyre Decl., Ex. S): "When ABC's reality series 'Extreme Makeover: Home Edition' selected the hurricane-damaged fire station of the southeast Texas coastal community Sabine Pass for its trademark seven-day transformation, AT&T Texas . . . pitched in to deliver a state-of-the-art communications system for the rebuilt fire station."
- April 18, 2006 Press Release (Tyre Decl., Ex. T): "AT&T Government Solutions has been awarded a contract . . . ."

AT&T tries to have it both ways: It tries to do business in and with California but to escape being subject to California jurisdiction, it cannot tout that "AT&T Inc." provides a wide variety of telecommunications services yet argue credibly that, for jurisdictional purposes, it is a mere holding company that does no business in California. It is that simple.

---

[11] Even if AT&T could say that, references to "AT&T Inc." and to doing business in California are admissions under Fed. R. Evid. §801(d)(2)(A), which reads:

> (d) Statements which are not hearsay. A statement is not hearsay if . . . (2) [a]dmission [is] by party-opponent. The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity . . . .

### 3. AT&T Is Not a Pure Holding Company

Additional documents available on AT&T's web site make clear the true nature of the company. Once again, by way of example only:

- AT&T Fact Sheet (Tyre Decl., Ex. U): "AT&T is the largest telecommunications company in the United States. . . ."
- AT&T Diversity and Inclusion (Tyre Decl., Ex. V): "Today, AT&T's 50-state workforce. . . ."
- AT&T Careers (Tyre Decl., Ex. W): "We're the new AT&T, one of the largest telecommunications companies in the world. We offer communications products and services. . . ."
- AT&T Career Locations (Tyre Decl., Ex. X): "Wherever you look for leadership in the world of telecommunications, you will find AT&T Inc. The new AT&T provides services to virtually every country and territory in the world. . . ."

AT&T also offers career opportunities through its web site. The Management Opportunities page (Tyre Decl., Ex. Y) begins "Welcome to AT&T's e-Recruiting System for Management Opportunities" and allows one to search for management positions by location, department, title and other criteria. A search for management opportunities in the San Francisco area (Tyre Decl., Ex. Z) shows, as of the date of the search, five open positions.

### 4. AT&T Has Conceded or Consented to Jurisdiction in California and the Ninth Circuit

A party's activities in the forum courts factor into the jurisdictional analysis, *e.g., Shepherd Invs.*, 373 F. Supp. 2d at 865, and weigh in favor of a court exercising jurisdiction over the non-resident defendant. SBC has recently either conceded or consented to California and Ninth Circuit jurisdiction.

In *RLH Indus., Inc. v. SBC Commc'ns, Inc.*, 133 Cal. App. 4th 1277, 1293 (2005), the court noted that SBC conceded the jurisdiction of the California court.

In *Brand X Internet Servs. v. FCC*, 345 F.3d 1120 (9th Cir. 2003), *rev'd on other grounds*, 125 S. Ct. 2688 (2005), SBC consented to the jurisdiction of the Ninth Circuit. In that case, the Federal Communications Commission ("FCC") issued a declaratory ruling that cable broadband Internet service was not cable service, but rather was, at least in part, a telecommunications service within the meaning of the Telecommunications Act. Petitions seeking review of the FCC ruling

were filed in various circuits, then consolidated in the Ninth Circuit. After that consolidation, and rather than limiting itself to expressing its views as an *amicus curiae*, SBC intervened. It thus made itself a party and subjected itself voluntarily to the jurisdiction of the Ninth Circuit.

SBC's brief, *Brand X Internet Servs. v. FCC*, No. 02-70518, 2002 WL 32191903 (9th Cir. Dec. 9, 2002), holds interest beyond the mere fact of SBC's intervention. Simply stated, the brief argues the merits of the controversy. If AT&T (then SBC) really is a pure holding company, as it claims in the pending motion, then AT&T should have had no interest in the merits. Plaintiffs understand fully why ***telecommunications*** companies had a significant interest in the FCC ruling and subsequent court proceedings. But if AT&T is not a telecommunications company, then the intervenors should have been, and the argument should have been made by, the allegedly appropriate subsidiaries of AT&T.

### 5. Many Courts, Including the Northern District of California, Have Exercised Jurisdiction Over AT&T

Distilled to its essence, AT&T's argument is this: AT&T is incorporated in Delaware with its sole place of business in Texas; AT&T is a pure holding company, not engaged in the telecommunications or any other business that provides goods or services to others; rather, according to AT&T, its sole business is to invest in other businesses, including various subsidiaries and affiliates that are in the telecommunications business. Thus, if one accepts AT&T's argument, Delaware and Texas would be the only forums in which AT&T is amenable to personal jurisdiction. However, as AT&T itself makes clear in the memorandum in support of its motion, many courts far from Texas and Delaware have held that AT&T is subject to personal jurisdiction.

AT&T (then known as SBC) has been found to be subject to jurisdiction in the Northern District of California. *Covad*, 1999 WL 33757058. The basis was general jurisdiction due to SBC's pervasive contacts with California, despite SBC's contention – as here – that it had no offices or employees in California and was not licensed to do business in California. *Id*. at *6. "Given the wide array of documents presented to the Court, representing either that SBC is present in California or is, in fact, more than a simple holding company, the Court finds that plaintiff has stated a prima facie case of personal jurisdiction over SBC." *Id*.

In *Gammino v. SBC Commn'cs, Inc.*, No. 03-CV-6686, 2005 WL 724130, 2005 U.S. Dist. LEXIS 5077 (E.D. Pa. Mar. 29, 2005), the court held that SBC (now AT&T) was amenable to jurisdiction in Pennsylvania primarily due to the content and interactivity of its web site.[12] *Id*. at *3 ("SBC's internet contacts are for the purposeful availment of conducting business with Pennsylvania residents. Such purposeful availment consequently subjects SBC to the general personal jurisdiction of this court."). SBC argued (as here), and the court accepted, that the services offered through the web site were those of various SBC subsidiaries, not of SBC itself. But because SBC was "acting in essence, as a solicitor and agent for its subsidiaries" and solicited "internet contacts for the benefit of SBC subsidiaries" jurisdiction was appropriate. *Id*. Pennsylvania obviously is not California, but the thrust of AT&T's argument here is that it should not be amenable to jurisdiction in any forum except Delaware or Texas. Further, as noted above, personal jurisdiction in California is as broad as constitutionally permissible.

Also in Pennsylvania, jurisdiction over SBC was held proper in *Directory Dividends, Inc v. SBC Commn'cs, Inc*., No. Civ.A. 01-CV-1974, 2003 WL 21961448, 2003 U.S. Dist. LEXIS 12214, (E.D. Pa. July 2, 2003), even under a preponderance of the evidence standard not required by the Ninth Circuit. *Id*. at *2. As in *Gammino*, the court paid heed to SBC's web site. *Id*. at *5. AT&T baldly asserts in its memorandum (Motion of AT&T Inc. to Dismiss Plaintiffs' Amended Complaint at 9) that *Directory Dividends* was "wrongly decided," and further that it was distinguished in a later Pennsylvania state court case, *Gointernet.Net, Inc. v. SBC Commn'cs, Inc*., No. 3348 March Term 2003, Control 090038, 2003 WL 22977523 (Pa. Com. Pl. Dec. 17, 2003), a contract dispute between plaintiffs and subsidiaries of SBC that were supposed to provide billing services to plaintiffs, with a claim that SBC tortuously interfered with those contracts. Neither SBC nor the relevant subsidiaries were located in Pennsylvania. *Id*. at *2. Further, none of the disputed billing services was provided in Pennsylvania or to Pennsylvania customers of plaintiffs. Rather, the sole nexus of Pennsylvania to the action was that the plaintiffs were located in Pennsylvania. *Id.* at *4.

---

[12] The interactivity of AT&T's web site is discussed in §III.D., *infra*.

In that context, the court determined that SBC's web site was insufficient to confer jurisdiction over SBC. Though Pennsylvania residents could purchase "a limited number of goods and services from a few of SBC's subsidiaries" through the website, "it is targeted towards those states in which SBC's other subsidiaries conduct their business, rather than Pennsylvania." *Id*. at *3. The court noted that the SBC subsidiaries involved in the action "provide local telephone service in Texas, California . . . but not in Pennsylvania." *Id.* at *3 n.6.

AT&T cites to three cases in which the facts supporting jurisdiction were insufficient. All are distinguishable. In *Phonetel Commn'cs, Inc. v. U.S. Robotics Corp.*, Civil Action No. 4:00-CV-1750-R, 2001 U.S. Dist. LEXIS 7233 (N.D. Tex. June 1, 2001), the plaintiff apparently relied on defendant's web site to assert specific jurisdiction over Verizon Communications, Inc. and refused to meet the alter ego test required to attribute the conduct of a subsidiary to its parent. *Id.* at **10-14. The facts and arguments are different in *Phonetel* than in the present case, and thus *Phonetel* should be distinguished.

In *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003), the *pro se* plaintiff provided limited evidence that the court dismissed as unsupported or erroneous. *Id*. at 1297-98. For example, in attempting to show jurisdiction over the Sprint PCS parent, the plaintiff relied only on evidence pertaining to Sprint PCS subsidiaries. *Id*. The *Von Grabe* plaintiff also relied on an alter ego argument as a basis for personal jurisdiction, but was unable to provide the evidence necessary to meet the high standard for a finding of alter ego. *Id*. at 1299-1300. Plaintiffs do not make an alter ego argument here, and *Von Grabe* is distinguishable.

In the third, *Newman v. Motorola, Inc*., 125 F. Supp. 2d 717 (D. Md. 2000), SBC was a party. However, the court required proof to a preponderance of the evidence, and required proof of alter ego sufficient to pierce the corporate veil, *id*. at 722-23, neither of which is required by federal courts in California. Further, the evidence put forth by plaintiffs was neither quantitatively nor qualitatively akin to the evidence in this case. *Id*. AT&T undoubtedly is pleased with the decision in *Newman*, but it provides no comfort for AT&T here.

#### 6. General Jurisdiction Is Proper Under the Representative Services Doctrine Because AT&T's California Subsidiaries Offer Services that AT&T Would Have to Provide if the Subsidiaries Did Not Exist

AT&T is a well-known telecommunications giant which advertises and provides telecommunications services and products. AT&T's subsidiaries exist to help further AT&T's own business. If AT&T did not have subsidiaries to provide its products and services in California, AT&T would have to provide them itself. Thus, this Court has general jurisdiction over AT&T under the representative services doctrine.

A non-resident defendant is subject to general jurisdiction if a '"local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's ***own*** business."' *DVI*, 104 Cal. App. 4th at 1093 (emphasis in original) (citation omitted). As noted above, AT&T engages in widespread lobbying and uses its well-known name in California advertising and publicity to increase its customer base. Despite AT&T's claim that it is merely a passive holding company that acquires subsidiaries for investment purposes only, AT&T's active business is telecommunications and increasing the number of consumers for that business. With a broad customer base, someone – or some entity – has to provide services and products for those customers. Those entities are AT&T's subsidiaries that do business in California. They exist, or are acquired, to further AT&T's business. The use of representative services doctrine to obtain general jurisdiction is appropriate if "the parent uses a subsidiary to do what it otherwise would do itself in the operational sense." *F. Hoffman-La Roche, Ltd. v. Superior Court*, 130 Cal. App. 4th 782, 798 (2005). Because AT&T uses its subsidiaries that do business in California to provide products and services that it would have to provide in their absence, AT&T is subject to the jurisdiction of this Court. [13]

---

[13] As we noted earlier, the representative services doctrine has been held not to apply to a pure holding company. However, plaintiffs' evidence shows that AT&T is not just a holding company.

### 7. AT&T's Web Site Conducts Business Regularly with Californians

As discussed in §III.D., *infra*, AT&T offers numerous services and products via its web site, specifically targeting Californians to sign up for the services and products.[14] Plaintiffs do not argue that, by itself, the web site is sufficient to establish general jurisdiction. However, along with plaintiffs' other evidence, the web site is a factor to be weighed in determining whether this Court may assert general jurisdiction over AT&T.

## D. AT&T Is Subject to Specific Jurisdiction of This Court

Even if AT&T is not subject to general jurisdiction, this Court has specific jurisdiction over AT&T because the claims in this matter arise from AT&T's California activities. A court has jurisdiction over a non-resident defendant if (1) the defendant purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws, (2) the plaintiff's claim arises out of or results from defendant's forum-related activities, and (3) exercise of jurisdiction is reasonable. *Bancroft & Masters*, 223 F.3d at 1086; *Autodesk, Inc. v. RK Mace Eng'g, Inc.*, No. C-03-5128 VRW, 2004 WL 603382, at *3 (N.D. Cal. Mar. 11, 2004).

Much of the evidence plaintiffs point to in their discussion of general jurisdiction pertains equally to specific jurisdiction, particularly the first factor. By spending millions of dollars lobbying the California government; by stating repeatedly that it is in the telecommunications business, with a great deal of business activity in California; by stating that it has a "50-state workforce" (Tyre Decl., Ex. V) and that "[w]herever you look in the world of telecommunications, you will find AT&T Inc." (Tyre Decl., Ex. X); and by voluntarily subjecting itself to the jurisdiction of California courts, AT&T has purposely availed itself of the privilege of conducting business in California. Indeed, it

---

[14] As noted in *Gammino*, SBC was "acting in essence, as a solicitor" and agent for its subsidiaries" and solicited "internet contacts for the benefit of SBC subsidiaries." 2005 WL 724130, at *3.

not only has benefited from California law, but has lobbied actively to make the law even more to its liking.[15] Here, plaintiffs focus on additional factors.

### 1. AT&T's Web Site Is Additional Evidence that AT&T Purposefully Avails Itself of the Privilege of Conducting Activities in California

Case law supports specific jurisdiction based on a web site if the "defendant purposefully (albeit electronically) directed his activity [via the web site] in a substantial way to the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). "[T]he 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Cybersell*, 130 F.3d. at 417. Courts require "something more" than a passive web site to demonstrate defendant's purposeful availment. *Panavision*, 141 F.3d at 1321; *Jamba Juice Co. v. Jamba Group, Inc.*, No. C-01-4846 VRW, 2002 WL 1034040, at *3, 2002 U.S. Dist. LEXIS 9459 (N.D. Cal. May 15, 2002) ("a plaintiff must show 'something more' than the operation of a general access website, specifically, 'conduct directly targeting the forum"') (citations omitted).

AT&T's website, www.att.com, meets these criteria. The accompanying Declaration of Daniel O'Brien both states and demonstrates that, from San Francisco, Mr. O'Brien could and did enter into a contract for AT&T residential local and long distance telephone services in San Francisco, using nothing but the AT&T web site. The accompanying Declaration of Adam L. Rubinger both states and demonstrates that, from San Francisco, Mr. Rubinger could and did enter into a contract for AT&T residential Internet services in San Francisco, again, using nothing but that same web site.[16]

---

[15] In stark contrast, the sole jurisdictional action of the *Autodesk* defendant, a small Missouri company, was to willfully infringe, in Missouri, the copyright of the California plaintiff. This Court found purposeful availment under the effects test of *Calder v. Jones*, 465 U.S. 783 (1984). *Autodesk*, 2004 WL 603382, at *7.

Of course, AT&T has said that the web site is maintained by an unnamed subsidiary, but it cannot be disputed that the subsidiary maintains the web site for and on behalf of AT&T itself as well as many other subsidiaries. All the press releases by AT&T referenced herein were obtained from that site, as were the AT&T Fact Sheet and all other exhibits to the Tyre Decl., except the Cal-Access lobbying filings. Investors and others can obtain through that web site AT&T's annual report, Securities and Exchange Commission filings and other pertinent information. On the AT&T website, a Californian, in California, can contract local and long distance telephone service and Internet service, without any indication that the customer is contracting with any entity other than AT&T.

In short, for the *prima facie* showing that plaintiffs must make to establish jurisdiction, the web site is equally that of AT&T itself and many of its subsidiaries, known and unknown.

**2. Plaintiffs' Claim Arises out of AT&T's California Activities**

The second specific jurisdiction factor is that plaintiffs' claim must arise out of or result from AT&T's California-related activities. "This inquiry requires that plaintiff establish that its injury would not have occurred 'but for' defendant's conduct directed toward plaintiff in California." *Autodesk*, 2004 WL 603382, at *7. Plaintiffs' claim arises out of AT&T's California activities. AT&T is active in California for one purpose – to further its telecommunications business. While AT&T sought to maintain and increase its subscriber base, it and/or its subsidiaries were and still are handing over these subscribers' private and sensitive information to the U.S. government. But for AT&T's actions in seeking and contracting with California consumers, plaintiffs, California residents all, would not have suffered and would not continue to suffer an invasion of their privacy.

---

[16] In order to accomplish those tasks, Messrs. O'Brien and Rubinger had to input personal information to the web site, such as credit card numbers, social security numbers and home addresses. To protect their privacy, and because such information has no relevance to the case, plaintiffs' counsel have redacted that information from the printouts of the web pages that are exhibits to the respective declarations being filed and served, in accordance with Northern District of California General Order No. 53. Counsel has possession of the unredacted pages, and will make them available for inspection upon request by the Court or defense counsel.

Thus, plaintiffs' claim arises from AT&T conduct which led to handing over California consumers' customer information to the U.S. government.

More specifically, plaintiffs refer to the Complaint and to the Declaration of Mark Klein that was filed in support of plaintiffs' Motion for Preliminary Injunction. Paragraph 62 of the Complaint alleges in part that:

> AT&T Inc. has begun a transition process designed to integrate the former SBC's telecommunications network with AT&T Corp.'s network, ultimately leading into unified IP-based networks. AT&T Inc. intends to use AT&T Corp.'s IP network in place of the fee-based transiting and backbone access arrangements it currently has with third parties. . . .

Then, ¶63 alleges that:

> On information and belief, the facilities and technologies of AT&T Corp., including without limitation the Daytona system and those transmission facilities to which the government has been given direct access as alleged above, are being or will imminently be used by AT&T Inc. to transmit the communications of its customers and to store DRAS information and other records pertaining to those communications. Similarly, the facilities and technologies of the former SBC are being or will imminently be used to transmit the communications of AT&T Corp. customers including Plaintiffs and class members.

Such allegations go directly to the involvement of AT&T, and are unrebutted by the terse and general statements by AT&T's declarant.

Additionally, ¶11 of the redacted and publicly filed version of Mr. Klein's declaration states the following (using underscoring to indicate redacted language):

> In January 2003, I, along with others, toured the ______ Facility. The ______ Facility consists of ____ floors of a building that was then operated by SBC Communications, Inc. (now known as AT&T Inc.).

The facility described is located in California. His specific statement stands unrebutted by AT&T; and in any event, must be accepted as true at this stage of the proceedings.[17]

---

[17] The unredacted version of Mr. Klein's declaration was filed under temporary seal three weeks before AT&T filed the instant motion.

### 3. The Exercise of Specific Jurisdiction Is Reasonable

If AT&T has been shown to have purposefully directed its activities toward California, then reasonableness is presumed, and AT&T must make "a compelling case that the presence of some other considerations would render jurisdiction would be unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985); *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc*., 106 F.3d 284, 289 (9th Cir. 1997). This Court assesses seven factors:

> 1. The extent of defendant's purposeful interjection into the forum state's affairs;
> 2. The burden on defendant of litigating in the forum;
> 3. The extent of conflict with the sovereignty of defendant's home state;
> 4. The forum state's interest in adjudicating the dispute;
> 5. The most efficient judicial resolution of the controversy;
> 6. The importance of the forum to plaintiff's interest in convenient and fair relief; and
> 7. The existence of an alternate forum.

*Autodesk*, 2004 WL 603382, at *7.

AT&T cannot make a compelling case. On the first factor, the evidence shows that AT&T's purposeful interjection is sufficient to sustain general jurisdiction over it, let alone specific jurisdiction. On the second, there is little burden traveling interstate even where, as in *Autodesk*, the defendant is a considerably smaller company than AT&T. As this Court noted, the factor applies more to international travel than to interstate travel. *Id.* Similarly, the third factor, sovereignty, applies more when the issue is international rather than interstate; particularly where most of plaintiffs' claims are based on federal law, *id*. at *8, and where the one state law claim is based on California law, not either Texas or Delaware law.

On the fourth factor, there can be no doubt that California has a strong interest in adjudicating the dispute. All the named plaintiffs are Californians and the injuries to them occurred, and are occurring, in California. The one state law claim alleged by plaintiffs is a claim under California law, and a federal court sitting in California is better equipped to adjudicate that claim than federal courts in other states. The fifth factor, efficient judicial resolution, focuses on where the witnesses and evidence are likely to be located. *Id*. Due to the rather special nature of this case, and without regard to whether it may be certified as a class action, it cannot yet be known where many

witnesses and much evidence may be located. What is known, however, is that the plaintiffs are in California, that plaintiffs' key non-party witness, Mark Klein, is in California, and that Mr. Klein's documents are in California. Further, the Court is aware of the locations of the facilities described by Mr. Klein in his declaration. Without showing far more than it has, AT&T cannot even make a weak case, let alone a compelling one, on this factor.

The sixth factor concerns convenient and effective relief for plaintiffs. All the named plaintiffs being individuals residing in California, and the one state claim being under California law, every jurisdiction outside of California would be less convenient and effective for plaintiffs. Finally, as to the existence of an alternative forum, Delaware and Texas would qualify. Thus, that one factor weighs in favor of AT&T, but it becomes significant "only if other factors weighed against jurisdiction." *Id.* Here, all of the other factors either weigh in favor of jurisdiction or are neutral. Thus, the edge to AT&T on this factor is not nearly enough for AT&T to make a compelling case that jurisdiction in California is unreasonable.

In short, AT&T is subject to this Court's specific jurisdiction as well as its general jurisdiction.

## IV. CONCLUSION

On evidence no greater than presented here, Judge Illston has found already that AT&T is subject to personal jurisdiction in California. Her decision was correct, and there is no reason for this Court to decide otherwise. Indeed, Judge Illston did not have the benefit of evidence of AT&T's massive California lobbying, but that activity, without more, is amply sufficient to find personal jurisdiction over AT&T.

Of course, however, there is more. AT&T's own press releases and other documents tout that it is a huge telecommunications company that does a great deal of telecommunications business in California. AT&T has conceded and consented to the jurisdiction of California courts and the Ninth Circuit. Courts in other jurisdictions have sustained personal jurisdiction over AT&T, even though the essence of AT&T's argument is that it is amenable to jurisdiction only in Texas and Delaware. AT&T is the conduit through which its subsidiaries offer goods and services that otherwise would be offered directly by AT&T. AT&T purposely avails itself of California

privileges far more than do many Californians, and this action arises from AT&T's California activities.

AT&T's contacts with California are more than adequate to sustain both general and specific personal jurisdiction over it. AT&T's motion to dismiss should be denied.

DATED: June 6, 2006

Respectfully submitted,


ELECTRONIC FRONTIER FOUNDATION
CINDY COHN
LEE TIEN
KURT OPSAHL
KEVIN S. BANKSTON
CORYNNE MCSHERRY
JAMES S. TYRE

/s/
CINDY COHN

454 Shotwell Street
San Francisco, CA 94110
Telephone: 415/436-9333
415/436-9993 (fax)

TRABER & VOORHEES
BERT VOORHEES
THERESA M. TRABER
128 North Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: 626/585-9611
626/577-7079 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
REED R. KATHREIN
JEFF D. FRIEDMAN
SHANA E. SCARLETT
MARIA V. MORRIS
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
ERIC ALAN ISAACSON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LAW OFFICE OF RICHARD R. WIEBE
RICHARD R. WIEBE
425 California Street, Suite 2025
San Francisco, CA 94104
Telephone: 415/433-3200
415/433-6382 (fax)

Attorneys for Plaintiffs

W:\AT&T Privacy\OMD00031565.doc

# CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/
MARIA V. MORRIS

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
E-mail:mariam@lerachlaw.com

I, Maria V. Morris, am the ECF User whose ID and password are being used to file this PLAINTIFFS' OPPOSITION TO DEFENDANT AT&T INC.'S MOTION TO DISMISS AMENDED COMPLAINT. In compliance with General Order 45, X.B., I hereby attest that Cindy Cohn has concurred in this filing.

June 6, 2006

/s/
MARIA V. MORRIS

W:\AT&T Privacy\OMD00031565.doc

# Mailing Information for a Case 3:06-cv-00672-VRW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Timothy L. Alger**
  timalger@quinnemanuel.com albertvillamil@quinnemanuel.com
- **Kevin Stuart Bankston**
  bankston@eff.org
- **Bradford Allan Berenson**
  bberenson@sidley.com vshort@sidley.com
- **James J. Brosnahan**
  jbrosnahan@mofo.com bkeaton@mofo.com
- **Cindy Ann Cohn**
  cindy@eff.org wendy@eff.org;barak@eff.org
- **Anthony Joseph Coppolino**
  tony.coppolino@usdoj.gov
- **Bruce A. Ericson**
  bruce.ericson@pillsburylaw.com
- **Jeff D Friedman**
  JFriedman@lerachlaw.com RebeccaG@lerachlaw.com
- **Barry R. Himmelstein**
  bhimmelstein@lchb.com
- **Eric A. Isaacson**
  erici@lerachlaw.com
- **Reed R. Kathrein**
  reedk@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com
- **Michael M. Markman**
  mmarkman@hewm.com
- **Brian Martinez**
  brianmartinez@mofo.com
- **Edward Robert McNicholas**
  emcnicholas@sidley.com vshort@sidley.com
- **Corynne McSherry**
  corynne@eff.org
- **Maria V. Morris**
  mariam@lerachlaw.com e_file_sf@lerachlaw.com
- **Karl Olson**
  ko@lrolaw.com amw@lrolaw.com,slighthill@gmail.com

- **Kurt Opsahl**
  kurt@eff.org

- **Renee Sharon Orleans**
  renee.orleans@usdoj.gov

- **Shana Eve Scarlett**
  shanas@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Jacob R. Sorensen**
  jake.sorensen@pillsburylaw.com

- **Andrew H Tannenbaum**
  andrew.tannenbaum@usdoj.gov

- **Tze Lee Tien**
  tien@eff.org aram@eff.org

- **Theresa M. Traber, Esq**
  tmt@tvlegal.com

- **James Samuel Tyre**
  jstyre@jstyre.com jstyre@eff.org

- **Marc Van Der Hout**
  ndca@vblaw.com

- **Bert Voorhees**
  bv@tvlegal.com

- **Richard Roy Wiebe**
  wiebe@pacbell.net

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**David W. Carpenter**
Sidley Austin Brown & Wood LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60600

**David L. Lawson**
Sidley Austin Brown & Wood
172 Eye Street, N.W.
Washington, DC 20006