Trone et al v. Peanut Corporation of America Doc. 182 Att. 3



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

------------------------------x

TASH HEPTING, *et al.*,

Plaintiffs,

v. 3:06-CV-0672-VRW

AT&T Corp., *et al.*,

Defendants.

------------------------------x

San Francisco, CA
May 17, 2006
10:05 a.m.
Pages 1 - 67

Before:

HON. VAUGHN R. WALKER,

District Judge

COPY

APPEARANCES

ELECTRONIC FRONTIER FOUNDATION
Attorneys for Plaintiffs
BY: CINDY COHN
KEVIN S. BANKSTON
KURT OPSAHL
LEE TIEN

LERACH, COUGHLIN, STOIA, GELLER,
RUDMAN & ROBBINS, LLP
Attorneys for Plaintiffs
BY: MARIA V. MORRIS
REED R. KATHREIN
ERIC ALAN ISAACSON
JEFF D. FRIEDMAN
SHANA E. SCARLETT

RICHARD R. WIEBE
Attorney for Plaintiffs

THE UNITED STATES OF AMERICA
The Office of the Attorney General
BY: CARL J. NICHOLS, Deputy Assistant A.G.



Dockets.Justia.com

APPEARANCES (Cont.)

PILLSBURY, WINTHROP, SHAW & PITTMAN, LLP
Attorneys for Defendants AT&T Corp.
BY: DAVID L. ANDERSON
BRUCE A. ERICSON
JACOB R. SORENSEN

SIDLEY, AUSTIN, LLP
Attorneys for Defendants AT&T Corp.
BY: BRADFORD A. BERENSON
EDWARD R. McNICHOLAS

LEVY, RAM & OLSON, LLP
Attorneys for non parties The San Francisco Chronicle, LA Times, San Jose Mercury News, Bloomberg News, Associated Press
BY: KARL OLSON

HOLME, ROBERTS & OWEN
Attorneys for non parties CNET News.com, Wired News and the California First Amendment Coalition
BY: ROGER MYERS

MOTIONS

Wednesday, May 17, 2006

10:05 a.m.

DEPUTY CLERK: Civil case 06-672, Tash Hepting, *et al.* versus AT&T Corporation, *et al.*

Counsel, state your appearances, please.

MR. ANDERSON: David Anderson of the Pillsbury, Winthrop firm for movant and defendant AT&T Corporation and AT&T, Inc.

THE COURT: Good morning, Mr. Anderson.

MR. BERENSON: Bradford Berenson, also for AT&T.

THE COURT: Mr. Berenson, good morning.

MR. BERENSON: Good morning.

MR. KATHREIN: Reid Kathrein with the Lerach, Coughlin firm, on behalf of plaintiffs. Along with me from the firm today is Jeff Friedman, Eric Isaacson, Maria Morris, and Shana Scarlett.

MR. FRIEDMAN: Good morning, your Honor.

MS. MORRIS: Good morning, your Honor.

MS. COHN: Cindy Cohn of the Electronic Frontier Foundation here representing plaintiffs. With me are Lee Tien, Kurt Opsahl, Kevin Bankston.

THE COURT: Good morning.

MR. WIEBE: Good morning, your Honor. Richard Wiebe of the law office of Richard Wiebe, representing plaintiffs.

THE COURT: Good morning.

MR. NICHOLS: Good morning, your Honor. Carl Nichols from the Department of Justice on behalf of intervenor United States of America.

THE COURT: Mr. Nichols, good morning.

MR. MYERS: Roger Myers of Holme, Roberts & Owen on behalf of the electronic media: CNET News.com, Wired News and the California First Amendment Coalition.

THE COURT: Good morning.

MR. OLSON: Karl Olson on behalf of the San Francisco Chronicle, the LA Times, the Associated Press, San Jose Mercury News, Bloomberg News.

THE COURT: You're not a party to this proceeding, are you, Mr. Olson?

MR. OLSON: We are prospective intervenors on the access issues.

THE COURT: The same, I believe, goes for Mr. Myers.

Mr. Meyers?

MR. MYERS: That's correct, your Honor. Roger Myers. We filed a letter in response to AT&T's request to close the hearing this morning. We'd like to appear only on that issue.

THE COURT: I see. Is that also your position, Mr. Olson?

MR. OLSON: We would like to be heard both on AT&T's request to close the courtroom and its request to seal documents.

THE COURT: All right. Well, let's proceed here, Counsel, and see if we can't make some progress and perhaps avoid some of the issues that have been averred to.

Seems to me there are four objectives we ought to try to achieve this morning: First, we ought to deal with AT&T's motion to compel a return of the documents attached to the Klein declaration. We ought to deal with the cross motions by plaintiff and AT&T to unseal, and to seal, respectively, the plaintiffs' preliminary injunction motion and the supporting papers.

Then I'd like to have some discussion -- and the government counsel will be most helpful in this regard -- of the appropriateness of the Court reviewing the classified versions of the government's motion to dismiss and the accompanying declarations of Messrs. Necroponte and Alexander.

And, finally, a discussion of the schedule that we're going to proceed on.

I think it probably makes most sense to take these issues up in that order, and I think we can at least begin the discussion without dealing with the motion to close the courtroom. Who's going to address the motion to compel the return of the documents, Mr. Anderson?

MR. ANDERSON: And we would like to proceed with our motion that the courtroom be closed to the extent we're discussing AT&T confidential and proprietary information. We

submit we have intellectual property rights in that information, and that just as documents are lodged under seal pending a determination by the Court as to the sealing or the handling of that information, we submit that the hearing itself should be handled in camera in that way. And the reason, your Honor, is that I don't see how I can fully and fairly represent AT&T before the Court without a fact-intensive discussion of the Klein declaration, of the Russell declaration and of the Banks declaration and of its shortcomings.

THE COURT: Well, dealing with trade secret documents are not unprecedented. We do that all the time, Mr. Anderson. You've done that, I'm sure, yourself in other contexts, and you've done that in an open courtroom.

MR. ANDERSON: I've done it in sealed proceedings, your Honor.

THE COURT: It's not necessary, is it, in connection with the issue of whether these documents should be or should not be under seal to have that discussion off the record or behind closed doors?

MR. ANDERSON: I feel like I'm coming into the argument with one hand tied behind my back if I cannot present to your Honor the facts, the content, the character of that information. Now, if plaintiffs are willing to concede that that information rises to the level sufficiently for the preliminary purposes of the trade secret; that that

information, if exposed, would compromise national security, well, then, all that I would submit would remain would be your Honor's determination as to whether those intellectual property rights should be respected in the face of the First Amendment argument.

THE COURT: Let's talk about the motion to return documents. Now the first question I have for you is, what legal authority do you have to support that motion?

MR. ANDERSON: Yes, your Honor. We have cited --

THE COURT: Your memorandum states you're not relying on Rules 26 through 37, of the Federal Rules of Civil Procedure.

MR. ANDERSON: Yes, your Honor.

THE COURT: You told me what you're not relying on. Now tell me what you are relying on.

MR. ANDERSON: We proceed on the inherent authority of the Court to control the conduct of the parties and also the declarant as to things occurring outside of Rule 26. We proceed on that basis. We proceed on the basis of the *Pillsbury* case, the *WPS* case, the ABA opinion concerning the conduct of counsel that appears in our reply brief, and we submit, your Honor, that those cases and the *Shell Oil* case stand for the proposition that when counsel receives information that on its face is confidential and proprietary and it is brought to them under circumstances that suggest that

they do not have right to review it, that the proper procedure in those circumstances is to notify their litigation adversary of their receipt of this information and proceed either by agreement or by judicial determination. And the whole course of this proceeding, we would submit, your Honor, is an effort to prejudice the Court's ability to decide how these documents are going to be handled, and the most recent occurrence of that, your Honor, was just eight hours ago when Klein's statement in greater factual detail than ever before was placed out on the worldwide web. And that's despite the reasonable precautions of AT&T to protect the confidentiality of this information.

THE COURT: The plaintiffs claim they received these documents quite innocently, that they had no contact with Klein until he walked in unsolicited into their offices and provided the documents.

MR. ANDERSON: We address that for the first time in our opposition papers. I think it's also cited in our opening memorandum, and that is to say that they do not have the right, as counsel appearing before this Court, to just handle those documents in any way that they please. That when they're put on notice, first by the circumstances of the documents coming to them. Second, by the character of the documents themselves. Third, your Honor, by the legends that appear on two of the three documents that state on their face these are AT&T

proprietary information. And then fourth, your Honor, on April 4th, Mr. Bruce Ericson sent a letter to plaintiffs' counsel saying these are proprietary; we demand that you return them; we demand that you give us a list of the names of the people who have seen these as we proceed to litigate this before the Court. And instead, what we have was self help if the form of filing these first and then asking questions later.

And we submit, your Honor, that that's entirely backwards and it's an effort to prejudice the Court's ability to determine the proper handling of this information.

THE COURT: Well, now, I can issue orders that bind the plaintiffs and bind their counsel, but Mr. Klein's not a party to this litigation, and Mr. Klein apparently has possession of these documents. So what I do with respect to plaintiffs and plaintiffs' counsel might very well be futile.

MR. ANDERSON: Your Honor, we are here on the motion we've brought against these plaintiffs. As your Honor knows from the proposed order that we submitted and the briefing we submitted in support of it, we believe that the Court has the authority also to bind the plaintiffs' declarant, just as your Honor would have the authority to control the conduct --

THE COURT: Is that part of my inherent authority again, Mr. Anderson? Oh, I'm liking this all the more. Proceed on, Counsel.

MR. ANDERSON: We want your Honor to be very powerful

this morning in response to these motions. We would analogize it, your Honor, to the situation of a witness in a case before your Honor -- not a party -- acting out in the course of proceedings. Whether that would occur up on this stand or in deposition, your Honor would surely have the authority to control the conduct of that witness. Your Honor would have the authority to control the conduct of that witness's counsel. And so we do submit, your Honor, you do have the authority, you do have the ability to issue the order that we have submitted.

Now, we have submitted an order, your Honor, that says, first of all, that the motion to compel return of documents should be granted and that the plaintiffs should bring these documents back to us.

In addition, as to the sealing motion that we've brought, we have asked your Honor to order these be filed under seal, and asked your Honor to issue an order that says that the parties shall not disclose the contents, nor shall any of the declarants disclose the contents of the documents that are filed under seal. In support of that proposition, your Honor, we have cited the Lynley Travel case, and in that case, what happened was that the documents were filed under seal, and so far so good, and then counsel for one of the parties went out and spoke to the press, by estimate, in that Court's opinion, 30 or 40 times, effectively disclosing the contents of the documents, effectively undermining the seal. And that, your

Honor, is what is occurring here.

THE COURT: Well, isn't the important thing for the Court to do under these circumstances when we have disputed issues about the handling of these documents and their possession and how they happen to come in the hands of the plaintiffs and plaintiffs' counsel, isn't the important thing to do at the present time is to maintain the status quo and to proceed then to sort these issues out in an orderly fashion?

MR. ANDERSON: We submit, your Honor, that the best way to preserve the status quo is to have these documents returned to AT&T. We will maintain them. Until your Honor rules on the other motions now pending before the Court, there is no further legitimate purpose that the plaintiffs can put to these documents.

Now, I don't suggest, your Honor, that the plaintiffs would act in violation of the Court's order. If your Honor were to issue a hold-fast order that says that they should maintain in a certain way, you have good counsel appearing before you and there's no doubt that they would abide by that. But we have had a number of instances of mishandling. And the most recent one occurred when the plaintiffs filed a portion of our confidential information on the public docket. That remained out there for 90 minutes.

So the way I would present that question, your Honor, as your Honor frames it, is who is the best party to hold these

documents during the pendency of this motion practice which will then determine the subsequent course of the matter? And I submit, your Honor, that AT&T is in the best position and most motivated to maintain the confidentiality of these documents, not plaintiffs' counsel.

THE COURT: There's no doubt about that latter statement.

MR. ANDERSON: Your Honor, if I could, too, I'd like to address the character of this information. You see, your Honor, in the Baxton declaration, there's plaintiffs' best effort to show that this information is already out in the public domain as a result of action taken by AT&T. And in our reply brief, your Honor, we have set forth in detailed fashion on Page 3 the kinds of things that appear in the Klein documents that do not appear in the public domain. Now, your Honor may hear argument this morning that these things are out already, that they've been published in a variety of ways as a result of the efforts of Klein and others to publish this information. We submit, your Honor, that that is an effort to prejudice this hearing before your Honor has an opportunity to rule.

When you look at this from a perspective of a trade secret, you look at the character of the information, its commercial value, and you look at the reasonable efforts of the owner of those trade secrets to maintain the secrecy of them.

THE COURT: Well, if this case proceeds, and obviously that's a hurdle that we have to overcome, but in the event that it does proceed, the plaintiffs would be entitled to seek these documents via discovery, wouldn't they?

MR. ANDERSON: I've little doubt that they will seek documents in discovery, and I have little doubt that that will be the subject of discovery battles yet to come.

THE COURT: Well, all right, under those circumstances, again, doesn't that lead to the conclusion that the logical thing for the court to do is to maintain the status quo?

MR. ANDERSON: Your Honor, I hope I'm following the train of thought. In a very short amount of time, the Court will be in a position of having either decided that this matter needs to be dismissed on the grounds proffered by the United States or that this matter will go forward in some form or fashion. That fork in the road will be before us in a very short amount of time.

Now, if your Honor holds that this matter is to be dismissed and that the documents are still held by plaintiffs, we'll be back before the Court talking again about how we're going to dispose of these documents.

THE COURT: Well, but we will be discussing that subject in an altogether different atmosphere from that which exists today.

MR. ANDERSON: I have every hope that it will be a different atmosphere on that day.

THE COURT: Well, but the legal landscape will be quite different.

MR. ANDERSON: Well, as far as our motion is concerned, the motion to compel return of documents, we proceed on the character of the information, the intellectual property rights that AT&T undeniably possesses in these documents. We proceed on the basis of the circumstances in which they were brought to the plaintiffs. There's a confidentiality agreement that protects these. There is the --

THE COURT: There are disputes of what those facts are.

MR. ANDERSON: And the facts that I rely upon, your Honor, and the thing that I find most instructive is the publicly-filed Baxton declaration in which he says that sometime after this lawsuit was filed on February 22nd, I do believe, he first received complete copies of the Klein documents. So the parties are in a litigation posture. They received these outside of discovery. They knew from the face of the documents the circumstances of their receiving them, and also from our response to their call to us, belatedly, a month after they received them, that these were our documents, our proprietary information, and we asked them to then proceed by way of judicial determination to give your Honor the first

opportunity to rule on what should happen with these documents. That is the proper procedure, and --

THE COURT: Well, this case is different from the usual situation that arises in a trade secret case where the party holding the documents is the party that is a party to a confidentiality agreement. The plaintiffs here are not a party to any confidentiality agreement with AT&T. Mr. Klein may be, but not the plaintiffs.

MR. ANDERSON: As your Honor well knows, trade secret rights rise to the level of property. They do not proceed simply by contract. The existence of that contract with Klein shows AT&T's reasonable efforts to maintain the secrecy of those documents. Those reasonable efforts and the commercial value of that information inure those documents with the value of intellectual property. And once they are intellectual property and once plaintiffs are on notice that they are intellectual property, they have certain obligations to respect that intellectual property. It not the finders-keepers, losers-weepers rule that applies to this case.

What applies to this case, your Honor, is the rule of law and your Honor's opportunity to determine the most correct position of these documents. Although they're not a party of the confidentiality agreement, they are on notice and they are bound to respect our intellectual property rights.

THE COURT: Very well. Thank you, Mr. Anderson.

Let's hear from the plaintiffs on this. Who's going to be addressing that?

MS. MORRIS: Maria Morris of Lerach, Coughlin, your Honor.

THE COURT: Miss Morris?

MS. MORRIS: Yes.

THE COURT: All right.

MS. MORRIS: Your Honor, as counsel said, what matters here is the rule of law.

THE COURT: Well, then let me ask this: Since you're going to be seeking, I assume, these documents in discovery, what's the harm of giving those documents back at this point in the litigation?

MS. MORRIS: Well, your Honor, there's a couple things. First is, we have we obtained these documents through our informal discovery -- our informal investigation process. And that is allowed to continue prior to and after discovery. There's nothing wrong with that under the Ninth Circuit's decision in LA News Service. These are the fruits of our labor that we have received them in our investigation.

Additionally, it is futile. The point -- the purpose of returning these documents to them so that we can then ask for them in discovery, when we've already seen what their arguments are regarding these documents -- and they're not arguments that would prevent the production of the documents.

They are arguments that, if they are correct and if they're proven, would have an impact on whether or not the documents should be sealed. But they have presented no reason why the documents would not be produced in discovery. There's no assertion and there's nothing on the face of the documents that suggests that they're in any way privileged.

THE COURT: Well, AT&T claims that these are proprietary documents, that they contain trade secrets. And AT&T certainly has a right to make that assertion, and you can challenge it.

MS. MORRIS: They certainly do. And we would like the opportunity to challenge it. But we haven't yet been given that opportunity because their entire factual showing of how these are trade secrets is a statement by their security person that he understands these are commercially sensitive documents. He doesn't explain what the trade secret is. And we have -- and because we understand that there could be, somewhere in these documents, there could be trade secrets, we have treated them with care. We did not publish the documents. We lodged them under seal with the Court.

THE COURT: There was a little mishap along the way, wasn't there?

MS. MORRIS: Yes, there was a little mishap, and that can happen in any case where there are sealed documents. But

additionally, we did not -- the mishap did not involve a sealed document. And all of the information contained in that 30(b)(6) notice that appeared on the website, everything in there is in the Mark Klein public statement that Mr. Ericson submitted to this Court publicly, and has been itself on the Internet.

Additionally -- it's on Exhibit J of Mr. Ericson's declaration. And if your Honor would like, I've got copies of that 30(b)(6), the document that was inadvertently posted on the --

THE COURT: All right.

MS. MORRIS: Okay.

Also, your Honor, we realized within about three or four minutes of the document being posted on the ECF website that we had made this error and we immediately called the Court. The reason it took an hour and a half was that it was lunchtime.

THE COURT: It was what?

MS. MORRIS: It was lunchtime, but we took the steps immediately and it was taken care of as quickly as was possible once the error had been made. And again, none of the information included within it is actually information beyond what was already publicly available.

THE COURT: All right.

MS. MORRIS: Your Honor, defendants are asking you to

return these documents under your inherent authority to control these proceedings. That is an authority that the Ninth Circuit says must be exercised with restraint. What defendants are in fact asking you to do here is something really very extraordinary, not at all restrained. They are asking this court to suppress evidence of AT&T's criminal activity on the basis of a contract with a non party witness that is -- that they say prevents that non party witness from disclosing evidence of their crimes. Such a contract isn't enforceable in most courts, and certainly would not be a proper and restrained use of your inherent authority to the extent that you have the authority to compel these documents to be returned.

Under the *Kirschner* decision, I think it is highly doubtful that you, in fact, have the authority to order these documents that were not obtained through discovery to be returned to AT&T. In *Kirschner*, the plaintiff had acquired a privileged document that had been inadvertently produced in separate litigation. Defendants asked for it to be returned and the District Court ordered that it be returned, and the District Court did not say whether it was acting under Rule 26 or under its inherent authority. The Ninth Circuit specifically noted that the District Court had not identified what authority it was acting under, and then the Ninth Circuit went on to say that the District Court lacked the power to order the return of these nondiscovery documents.

Additionally, these documents are in the heart of litigation that goes to the core of the First Amendment: We are investigating widespread wrongdoing and governmental intrusions on privacy rights.

THE COURT: Well, there's nothing inconsistent with trade secrets and the First Amendment.

MS. MORRIS: There certainly isn't, and your Honor, we will be happy to discuss whether or not there are trade secrets, and to the extent that they can prove to you that there are trade secrets, we understand that those need to be protected and that they should be probably kept from the public. But they haven't made that showing, and it -- and "trade secrets" do not justify keeping them out of litigation, which is what the return of the documents would do. At this point, anyway.

THE COURT: Who has possession of the documents now?

MS. MORRIS: Well, AT&T has the documents. Mark Klein, I assume, has the documents. We have copies of the documents.

THE COURT: Anybody else that you know of?

MS. MORRIS: The government.

THE COURT: Okay. The government's a party here. Anybody else that you know of?

MS. MORRIS: My understanding is that the New York Times probably has the same documents. We have not -- we're

treating the documents with care so we haven't gone to the New York Times and said, So, do we have the same documents? But Mr. Klein provided documents to us. Mr. Klein provided documents to the New York Times. From what we understand, Mr. Klein has an interest in this information being made public. I assume they're the same documents.

THE COURT: Have the plaintiffs or their counsel disclosed these documents to anyone other than the Court?

MS. MORRIS: We disclosed them to our expert that we retained for the litigation.

THE COURT: And who was that?

MS. MORRIS: Jay Scott Marcus.

THE COURT: Mr. Marcus. Anybody else besides Mr. Marcus?

MS. MORRIS: No.

(Pause)

MS. MORRIS: I just wasn't sure if there was another expert -- no, no.

THE COURT: That's what I like, a short answer. The answer is no.

And I gather that you don't, pending the resolution of the order to return and the order to seal, you don't intend to disclose these documents to anyone else; is that correct?

MS. MORRIS: We certainly don't, your Honor.

THE COURT: What's that?

MS. MORRIS: We certainly don't, and we have not thus far.

THE COURT: Anything else, Miss Morris?

MS. COHN: Excuse me.

THE COURT: I see reinforcement is coming to the fore here.

(Off the record)

MS. MORRIS: I've just had a little clarification. We disclosed to a confidential consultant, who is, again, part of our litigation team.

THE COURT: And who's that?

MS. MORRIS: He's a confidential consultant. He's someone that we are using to prepare ourselves for litigation, and if he becomes an expert to be used in court, we'll be happy to identify him.

THE COURT: Just one individual?

MS. COHN: Yes.

MS. MORRIS: Yes.

THE COURT: But other than that consultant, Mr. Marcus, and of course the filings that have been made here in court, you're not aware of and represent to the Court that these three documents -- and we're talking about the three documents that are attached to the Klein declaration?

MS. MORRIS: Yes, your Honor.

THE COURT: -- have not been disclosed to anyone or

anything else?

MS. MORRIS: Not by anyone in our team.

THE COURT: Okay. Nobody on the plaintiffs' side.

MS. MORRIS: Right.

THE COURT: That includes the plaintiffs and their counsel, correct?

MS. MORRIS: Yes, it does. And it doesn't -- I cannot make any representations for Mr. Klein.

THE COURT: I understand. But I'm talking about the parties that are before me.

MS. MORRIS: Yes.

THE COURT: Anything else, Miss Morris?

MS. MORRIS: Would you like to address the sealing issue now or --

THE COURT: Well, do we need to say much more about the sealing issue? I did try to separate out the return issue from the sealing issue, but I wonder whether we haven't kind of spilled one issue over into the other? What more needs to be said on the sealing question?

MS. MORRIS: The main thing that we think is that they need to present what really are the security concerns, what particular parts of those documents are the security concerns and the trade secrets, and make a good faith attempt to narrowly redact the documents so that the public understands what the documents are. And the rule requires that, Local Rule

79.5, and the First Amendment requires it. We are perfectly willing, if they make reasonable redactions, to say, Okay, those are reasonable redactions needed to protect trade secrets and security. But we don't think that they have made that -- made any attempt to narrow down what needs to be kept from the public.

THE COURT: All right.

MS. MORRIS: If you'd like to hear any more on this, Mr. Wiebe would --

THE COURT: I'm sorry?

MS. MORRIS: If you'd like to hear any more on this, Mr. Wiebe has prepared a discussion.

THE COURT: No, just one lawyer on an issue.

Anything further on this, Mr. Anderson, before we move on?

MR. ANDERSON: If I may, your Honor, briefly reply.

THE COURT: All right.

MR. ANDERSON: New information spills out into the courtroom even this morning about the extent of the disclosure of AT&T's confidential documents. We hear not only that these documents are held by plaintiffs and their previously disclosed expert but also to an expert that, as I interpreted the sequence of events, now plaintiffs refuse to disclose. There's no way in my experience, your Honor, in a trade secret case that a party would be able to hold and to use the trade secrets

of the litigation adversary without disclosing where they go, who sees them. It's a terribly compromising situation to allow this to occur, and without a court order that, as your Honor says, preserves the status quo, AT&T is threatened with the loss of valuable intellectual property rights, a fact that does not seem to be meaningfully in dispute.

Now, I thought it was unfortunate that counsel chose to use words like "criminal activity" and "crimes", and unless your Honor's inclined to suggest otherwise, I will not respond to that. Those are based on plaintiffs' allegations. We, of course, completely deny that sort of allegation. What we're talking about here, your Honor, is one of the great companies of the United States, and to just attach those kinds of labels indiscriminately is reckless at best.

Now, your Honor, counsel spoke to the *Kirschner* case, and we submitted that the that case is easily distinguishable, and the better controlling authority is the *Shell Oil* case, and that's the one to which the Court should look for instruction as to how to proceed here.

In *Kirschner*, there were two proceedings, and you had a crossover of documents from one proceeding to the other. And all the Ninth Circuit held in *Kirschner* was the judge in the one case could not use Rule 26 to direct discovery, in essence, in the other case. And that is not remotely analogous to our situation here.

The situation here is very much like the *Shell Oil* case, which is featured prominently in our brief, and in that case, the litigant took the documents, provided them -- took the documents, provided them to a litigant, and the litigant then chose to use them. And what the Court held in *Shell Oil* is go back to the start line, return the documents, proceed through normal discovery. This is no way to conduct affairs.

And we ask your Honor to issue the order as we have submitted returning these to AT&T. If discovery is later to proceed, well, then, that's something that can be taken up at that time.

Thank you, your Honor.

THE COURT: Very well. Here's what I think counsel should do with respect to these first two motions, the motion to return, and respective motions to seal and unseal these documents:

First of all, despite the rather encouraging view of federal judicial authority expounded by Mr. Anderson, I'm inclined to think the Court's authority is not quite that expansive. I have no doubt that the Court has the authority to issues orders that bind the parties before it, including the plaintiffs and their counsel, and this order will therefore be directed to them.

The documents that we are dealing with are the three documents that are attached to the Klein declaration. It

appears that it is quite possible that those documents contain significant trade secret or proprietary information properly belonging to one or the other of the AT&T entities. Certainly AT&T has so asserted, and the Court, without obviously having had the opportunity to review that contention in any detail, believes that there is a strong possibility that those claims are legitimate claims of trade secret and proprietary information.

Similarly, there are issues before the Court that the plaintiffs have raised. Plaintiffs' counsel contend they received these documents innocently from Mr. Klein, that they are part of the normal fact background information that able counsel do, and therefore their possession of these documents is in no way improper much less illegal.

Further, the documents have been treated with I think a degree of discretion on the part of plaintiffs, and plaintiffs' counsel has assured the Court that, to date, they have not been disclosed to anyone other than counsel for the plaintiffs and the two experts that have been mentioned, Mr. Marcus and the consultant. Under those circumstances, I think the best course of action is to preserve the status quo, and the Court will attempt to do that by fashioning the following order:

The motion to compel the return of these documents by AT&T will be denied without prejudice to that being renewed at

a later time in the litigation should other circumstances arise that would warrant that matter being revisited. The Court will, however, order that plaintiffs, plaintiffs' counsel and their consultants not further disclose these documents to anyone or any entity without further order of the Court. And that they be maintained in a secure location and their confidentiality protected until this matter can be further reviewed.

I would suggest that AT&T counsel and plaintiffs' counsel see if they can work out the terms of a protective order concerning the possession of these documents and their handling during the pendency of this litigation in accordance with the usual procedures that apply to documents of this nature. In the event that counsel are unable do this, I'll be happy to take up the matter and fashion a more detailed order. But the essence of the order is that the documents will remain under seal pending further order of the Court; that plaintiffs and their counsel and their consultants will not be permitted to disclose the documents any further until further review of the situation and further order of the Court.

All right? Now --

MS. MORRIS: Your Honor.

THE COURT: Yes, Miss Morris?

MS. MORRIS: Just for clarification, we need to know about how you want the brief and the declarations themselves

treated, and I think we'll probably need to get more clarification from defendants as to what exactly is the information that they're concerned about because, for example, in their declaration from Mr. Russell, they don't actually cite to any concerns within the preliminary injunction motion, which is currently under seal, and we would like that motion to be unsealed as well.

THE COURT: Well, I think that preliminary injunction motion paper should remain under seal at the present time until we can further review what it is in that motion and the supporting memorandum that is properly subject to a claim of confidentiality. It seems to me, having reviewed that motion, that there is a great deal of information in it that is not confidential and that can probably be unsealed but I'm not sure we can sort that page and line at the present time.

MS. MORRIS: I would ask that when we're discussing scheduling that we would have a schedule for some showing on their part as to what in there really needs to be kept under seal so we can move that along and get that out to the public as soon as possible.

THE COURT: Well, you know, be a little less concerned about getting things out to the public than getting things to court, Miss Morris. This is a judicial proceeding. I understand there's a great deal of public interest in this matter, but you're not running a public relations operation. I

hope you understand that.

MS. MORRIS: I do certainly understand that, your Honor.

THE COURT: All right.

MS. MORRIS: And we got it to the Court and we know the Court has it and will be considering it.

THE COURT: All right.

MR. ANDERSON: Your Honor, I'm sorry, we do have -- I have one item of clarification. Your Honor addressed the subject -- I wrote the phrase down, I hope, accurately -- that plaintiffs' counsel and consultants will not disclose these documents without further order of the Court. And the point of clarification we seek, your Honor, is as to plaintiffs' declarants, which we would submit, your Honor, are also within the authority of the Court.

THE COURT: You're talking about Mr. Klein.

MR. ANDERSON: Mr. Klein, your Honor.

THE COURT: Well, you have remedies against Mr. Klein, do you not?

MR. ANDERSON: We do, your Honor. We intend to pursue those.

THE COURT: Apart from the confidentiality agreement he signed -- Mr. Klein's not a party before the Court at the present time.

MR. ANDERSON: But he has injected himself into the

proceedings as a witness, and your Honor has control over him as a witness. That would be our position, your Honor.

THE COURT: I understand your position, but in view of the fact that you have available remedies that may reach Mr. Klein, I don't believe you've made an adequate showing that the Court should take any action vis-a-vis Mr. Klein at the present time.

MR. ANDERSON: Thank you, your Honor.

THE COURT: All right. Now, government counsel, I'm sure, wants to discuss the issue of the classified version of the government's motion to dismiss and the two declarations.

MR. NICHOLS: Yes, your Honor. Carl Nichols on behalf of the government.

THE COURT: Mr. Nichols.

MR. NICHOLS: I'm happy to proceed however you'd like, your Honor. I think your question was: Can you review and how you review the materials, ex parte in camera.

THE COURT: Yes.

MR. NICHOLS: If you look at our public brief, your Honor, at Page 11, we cite a number of cases that establish the proposition: A, that the Court does have inherent authority to review state secrets materials ex parte in camera; B, that to do so does not violate another party's constitutional rights; and, C, as a result, a number of courts of appeals, beginning with the Ninth Circuit in *Kasza*, which itself cites other

Courts of Appeals decisions, those courts have in fact reviewed state secrets declarations and briefs ex parte in camera precisely because to disclose the materials contained within those declarations and briefs to the public and on the public record would cause the very harm that the state secret privilege is designed to protect. So it is a regular thing for courts to review such materials ex parte in camera.

We, of course, have filed a public brief which is a redacted version of the classified brief. Only those portions of the classified brief that are in fact classified have not been put in the public domain. The classified brief and the classified declarations on which it relies are available, they are in the possession of a group called the Litigation Security Section of the Department of Justice, which is a subgroup of something called the Security and Emergency Program Staff. The brief, those materials, are in their possession. And when your Honor would like to look at those materials, you just call them up and they fly them out to San Francisco, allow you to take a look at them. When you're done with them, they take the materials back. They're maintained in a secure facility, just like all other documents relating to these materials would be.

So that is our view as to both your authority to do this -- the propriety, frankly, of your doing so -- and the mechanics of doing so.

THE COURT: What about the propriety of doing so? Is

it necessary for the Court to deal with the motion you filed, for example?

MR. NICHOLS: To deal with our motion to dismiss?

THE COURT: Yes.

MR. NICHOLS: It's very difficult to explain to you on the public record why it is this case cannot be litigated as a result of state secrets.

THE COURT: I'm not asking that question. But reviewing your motion papers, the public version of your motion papers, which is all that I have done, it appears that the heart of your argument, or at least many parts of the heart of your argument, have been redacted, and can I therefore test the propositions that you're contending for here without looking at those classified documents?

MR. NICHOLS: I think it depends. I think --

THE COURT: Let me give you another way of answering the question. Is there any way that I can grant your motion without looking at those classified motions -- classified documents?

MR. NICHOLS: Your Honor, maybe I can step back a little bit and talk about two different kinds of state secrets cases. And I believe the answer is going to be no for the most part, but --

THE COURT: No, I cannot?

MR. NICHOLS: No you cannot. Here's the reason:

There are state secrets cases where the government can disclose on the public record the general issues subject to the privilege. Imagine there was a case about a -- how a weapons system for a fighter jet was designed. The whole case was about how that weapons system was designed. That was the secret. Well, the government could come in and say, Your Honor, there's a fighter jet, it has a weapons system, and this is a case about the design of the weapons system, and as a result, you would know, as a result of that disclosure, those facts, what it is that we would be asserting the states secrets privilege over, and you could decide as a result of that the case couldn't be litigated because it was about the design of that system without disclosing the design of the system.

This case is more difficult, because for us to disclose the sources and methods, the intelligence activities, etc., that could be brought into play by the allegations in plaintiffs' complaint, to tell you those things on the public record would be necessarily to disclose them.

So for you to know why it is that this case cannot be litigated on the public record really in our view requires you to look at our classified papers. And that is why we did not take the course as we sometimes do to say to the Court, You can grant our motion based on public facts. Stop. Full stop.

Here what we believed we needed to do was to disclose those facts to you that we believe are state secrets,

implicated potentially by the allegations in plaintiffs' complaint.

THE COURT: This may be getting ahead of where we are in this presents stage of the litigation. But what you are asserting is, in essence, a common-law privilege. And the plaintiffs are asserting what are in essence constitutional claims. How am I going to be able to weigh those?

MR. NICHOLS: Your Honor, it's a common-law privilege, but it's not as if it hasn't been recognized by the Supreme Court numerous times -- *United States versus Reynolds, Tenet, Totten* -- which are --

THE COURT: I'm not aware of common-law privileges that the Supreme Court has recognized contrary to constitution --

MR. NICHOLS: But they're not just common-law privileges. They have and they are derived from, and *Reynolds* recognizes this, they are derived from Article II, which is all about the President's ability to protect national security. It's clear that the President has inherent authority to conduct intelligence activities and to protect sources and methods and classified information. Those are undisputed and those are the part of the President's constitutional powers and duties.

So this is not as if it is a common-law privilege standing outside the Constitution. It is firmly constitutionally-based. Frankly, there are courts who have

said it is the most important privilege precisely because of those constitutional bases.

So we may be getting ahead of ourselves as to the merits, but I don't think this is going to be a situation in which you have an alleged constitutional right in violation and a mere common-law privilege. This is going to be an inherent Article II power and a privilege based on that power that the Court has said trumps -- unfortunately -- but trumps a private litigant's right to have his or her day in court. The Ninth Circuit said that, in fact, in *Kasza*, recognized that those are the two competing interests, but that the assertion of the state secrets privilege and the public interest that it is designed to protect trumps those private interests.

So -- and it is not as if this is a new thing. The government does this from time to time. An example that I've recently been involved in is the *Edmonds* case, which we cite in our brief, where the District Court -- it was a lawsuit against the FBI. And, in fact, the FBI could not disclose -- actually, the defendants were FBI and DOJ -- the defendants could not disclose what the state secrets were that they were asserting the privilege over. The District Court denied -- sorry, granted the motion to dismiss, and the Court of Appeals affirmed both courts having looked at ex parte in camera.

We believe it is fundamental, and frankly, to do otherwise here would risk harm to the national security the

state secrets act is designed to protect.

THE COURT: But with respect to what's before the Court this morning, and that is whether or not the Court should request the classified versions of the memorandum and declarations, the government believes that the Court should do so.

MR. NICHOLS: Yes, your Honor. First, we believe you should do so because it will be necessary to resolve our motion to dismiss. And second, I believe this will probably relate more to scheduling, but in thinking about the sequence of events in this case -- and I'm happy to talk about our view of scheduling if you'd like -- but it would make no sense, it wouldn't be logical or practical, to have a preliminary injunction hearing in advance of your reading those papers and in advance of deciding a motion to dismiss, because the state secrets privilege and its scope will determine the course of these proceedings. It would have it exactly backwards to litigate the preliminary injunction motion without knowing what is or is not at play with respect to state secrets.

THE COURT: All right. Well, you're perhaps getting a little ahead of where you want --

MR. NICHOLS: Understood. But I think there are two different reasons for you to read the papers, and one is because it's relevant to our motion to dismiss, which we think really takes precedence over everything.

But the corollary to that is in thinking about scheduling, what we say about our classified papers I believe will demonstrate to you why deciding the PI or holding a PI hearing in advance of deciding our motion would be wrong.

THE COURT: Before I let you go, Mr. Nichols, one other question: Let me ask you what the plaintiffs should do, if I look at these papers, and you know what's in those papers, those classified papers, and I will have by that time read them, I assume AT&T will not have read them, but the plaintiffs will not -- where does that leave the plaintiffs? How can they respond to your motion without seeing these papers?

MR. NICHOLS: Your Honor, I don't know how the plaintiffs will respond. It is the case that in order to protect national security, certain information cannot be disclosed to litigants. It's well-recognized. Courts have seen the fact that you have this tension between the private litigants' rights and the government's need to protect national security. Frankly --

THE COURT: I assume the plaintiffs are going to tell me that they think national security is not going to be endangered by proceeding with the lawsuit. And how are they in a position to make that argument if they're unable to see these documents?

MR. NICHOLS: They won't be, frankly, your Honor. They won't be in the sense that they will not be able to see

nor rebut our showing. And that is why we decided that we needed to make that showing to you ex parte in camera, and we've done it through declarations of high ranking officials and classified brief.

Unfortunately, or fortunately, that is the way it is done, and that is the way it has to be done. Because to do otherwise would be to disclose facts to a number of people, the result of which would be harm to national security.

THE COURT: All right. Yes, counsel for plaintiffs? This is Miss...?

MS. COHN: Miss Cohn.

THE COURT: Miss Cohn, yes.

MS. COHN: Thank you, your Honor. I guess I would like to respond to the government's arguments at least briefly about this, I think some of it flows into the scheduling discussion, but some of it is separate.

It's plaintiffs position first and foremost that this can be litigated without reference to any state secrets; that the burden of proof under the statutes that we have claimed, that we have raised here is very straightforward. The question is whether the information has been acquired by AT&T in order to give it to the government and whether it's been divulged to the government and what the government does with that information afterwards, which I think could implicate state secrets, is completely irrelevant, or not necessary, for us to

pursue this case. But -- so I think that that argues for a two-stage process in terms of the government's motion to dismiss or, in the alternative, for summary judgment. And the first step would be to review the public papers, and we'll do our best to try to respond to the public papers of how the government has failed to meet its burden to provide sufficient information about the source of state secrets to allow us a defense. I mean, there's nothing in the public document. We think that's consistent with the other state's secrets cases which require the government to do a little more than that in order to do that, in order to make their case, in the first instance, and put us into a position where we can even reasonably begin to respond.

But then we'd like the opportunity to demonstrate to you that the state secrets information is not important for us to win this case, it's not necessary for us to win this case, and that there is a path, I think a fairly clear path, that you can follow to decide this without implicating state secrets.

THE COURT: Can you strike that path for me?

MS. COHN: I sure can. I can start, your Honor. I sure would appreciate the opportunity to brief it to you rather than just give it, but in -- the statutes are -- the statutes are very clear, that merely disclosing this information to the government is illegal for AT&T. AT&T's liability is triggered by the mere divulging of customer information.

THE COURT: And we don't need to get into what the information is in order to determine that -- the legality or illegality.

MS. COHN: That's correct, and if you believe the Klein information and other information is, as opposed to wholesale or targeting of other information, I think that's all we need to demonstrate in order to prove violation of the statutes here. That doesn't implicate state secrets. In fact, the only -- I think the only possible argument that AT&T has in response to this is that they received some sort of -- the government's indicated there was no court order here. So I think that's an admission.

So there's two ways that AT&T can hand that information over to the government: One is with a court order. I think it's been indicated there is no court order here. And the second is through some sort of a certification under the statutes.

The question then becomes whether the mere existence of a certification and the legal sufficiency of that certification is itself a state secret. And we would argue that it's not. And it's not because Congress has clearly laid out in the statutes a process by which you can evaluate the sufficiency of the certification. If a common-law evidentiary privilege like the state secrets privilege exists, it's clearly been trumped by the Congressional assertion of a process by

which you can do this very thing, which is take a look at the certification and decide whether it's legal or not, whether it's legally sufficient or not.

And that process is laid out -- well, first, 18 USC 2511(a)(2) sets out the process by which AT&T can hand things over. If the government maintains that there is national security interest here, they then intervene and provide an affidavit for you. And then maybe you decide that you can look at things ex parte in camera, but there's an initial step that has to happen first. That process is laid out 50 USC 1806(f).

THE COURT: Would you have an objection of the Court looking at the classified version of the government's motion to dismiss, the two declarations involved?

MS. COHN: I think ultimately the Court may make a decision that it needs to take a look at them.

THE COURT: That's not quite an answer to my question. Miss Morris gave me a yes or no answer. How about you?

MS. COHN: She's better than me that way.

THE COURT: What's that?

MS. COHN: She's better than me that way.

THE COURT: Let's see if you can match that statement.

MS. COHN: I think ultimately we do not have objection to the Court taking a look at the classified information, but we would ask the Court take a two-step process in this and

allow us to try to make the argument to you on the public record that state secrets aren't implemented here. Because I think you should only look at that information if you deem it necessary to do so, and I don't think we're at that point yet.

THE COURT: Well, what do we need to do to get to that point?

MS. COHN: I think we need to set up a briefing process that's reasonable that allows us sufficient time to make that showing to you.

THE COURT: When can you get that brief on file?

MS. COHN: Well, I think we could do it fairly quickly. It depends on the -- I think if the government's motion was actually scheduled according to the Court's ordinary processes, it would be set for hearing on July 6th, because that's the next open date, at least as of the last time I checked the Court's calendar.

THE COURT: We haven't checked on scheduling yet, but I'm giving you a little forwarning, I'm thinking about moving this case along pretty quickly.

MS. COHN: Your Honor, I think we're okay with that. The thing that I suspect makes me a little worried is the fact we have to respond to AT&T's motion to dismiss at the same time.

THE COURT: Well, you've got a lot of folks on that side of the room.

MS. COHN: We do, your Honor, and I'm very grateful for the support my little organization has from some very respected firms. However --

THE COURT: You've got some very able associates and colleagues.

MS. COHN: I still would like the opportunity -- we got the government's papers at 1:00 o'clock in the morning on Saturday. So the government's request to have this heard by July 21st would give us like two weeks to respond. I think that I don't need a lot more time than that, but I would like a little more, and I'd like the AT&T motions put off so that we can focus on this.

I also think, however, that our preliminary injunction motion can go forward at the same time. It's been briefed, largely, it won't be much more work for me, for our team to respond to it, and we think the preliminary injunction motion is going to be instructive for your Honor about the way -- this path that I'm telling you that I think I can lay out to you, because we've done it already in the preliminary injunction motion. There's no state secret information in it. The government admits that. They allowed us to file those documents and they have not claimed state secrets. And we think that that itself demonstrates it.

THE COURT: If you think you can submit your memorandum with respect to the issue of whether or not the

Court should look at the classified version of the government's motion to dismiss and the classified declarations not later than the close of business on Friday the 19th.

MS. COHN: Tomorrow?

THE COURT: Tomorrow's not Friday.

MS. COHN: I'm sorry. Two days from now.

THE COURT: Correct.

MS. COHN: Can we have until Monday, give us the weekend? I would appreciate it.

THE COURT: Well, let's see. That would be the 22nd. All right. I'll give you until that time.

MS. COHN: Just on the question of whether the Court should look at the classified information or not.

THE COURT: That's correct. That's all I want at this point.

MS. COHN: That's fine. We're up for moving this case quickly, your Honor. Our view is that there's an ongoing massive violation of law and we'd like to see it stopped.

THE COURT: Well, that's exactly why you should be interested in moving along quickly.

MS. COHN: I am, and that's why I didn't ask you for more than the weekend.

THE COURT: Mr. Nichols?

MR. NICHOLS: Just one clarification. I thought I heard plaintiff's counsel say they had no objection to your

looking at the brief ex parte and in camera, and the classified declarations. Maybe that's not what you're intending this brief to be. This is, instead, their view of...?

THE COURT: I must say, Miss Cohn was not very definitive in her answer.

MS. COHN: I think that the opportunity to brief to you about when you see the classified information and how you should see it is one we'd like to take, your Honor. So I'd like to -- I mean, as I said, I think it's appropriate for the Court to at least hear us out about the process by which the classified information should come in and if it should come in at all, and I'd like the opportunity to brief that for you, please.

THE COURT: Why shouldn't I give plaintiffs an opportunity to brief that, Mr. Nichols?

MR. NICHOLS: If the issue is when, you obviously haven't conceded that you should look at it now, so I think it's fine to give them an opportunity. If the question is whether, then I think that they've effectively said today they don't oppose your looking at it at some point. I think those are different questions. If we're limiting it to the first issue, that's fine.

THE COURT: Well, whether and when and under what circumstances and how may all kind of be mixed up together. It's an appropriate issue, and obviously it's your position,

Mr. Nichols, that you believe that when the Court has an opportunity to review these matters, that the Court will be persuaded that the state secrets privilege applies here. That's obviously a matter of enormous importance to the plaintiffs in their case, and I think it would be inappropriate to look at these documents and not give plaintiffs an opportunity to weigh in on the issues that we've described. So --

MR. NICHOLS: We don't mind briefing that issue, your Honor.

THE COURT: And if you need a reply, you can reply a couple of days later.

MR. NICHOLS: Sure.

THE COURT: All right.

MS. COHN: Thank you, your Honor.

THE COURT: I assume AT&T does not have a position on this? Mr. Berenson?

MR. BERENSON: Yes, your Honor. Thank you. On the question, whether you should examine the classified information or under what circumstances, we do not have a particular position. Our basic view in this case is that this fight is properly between people who share the views of the plaintiffs and the government; that AT&T is essentially an innocent bystander caught in the crossfire, and that these matters should be resolved, if they're to be resolved at all, in the

judicial process between private parties who object to these alleged surveillance programs and the government that itself initiated and ran them.

The only point that I would add here, for your Honor's benefit, is we do take very, very strong exception to the notion that the statutes at issue, the various aspects of the Electronic Communications Privacy Act, the Wiretap Act, the Stored Communications Act, the Foreign Intelligence Surveillance Act are crystal clear and make it obvious, based solely on the plaintiffs' allegations, that there are massive violations of law here going on. Indeed, many violations of law.

These statutes are extraordinarily complex. They do authorize and in many instances require telecommunications companies to furnish information of the kind that's been discussed publicly here in recent months under a variety of different rubrics. Every single one of those rubrics, not just the certifications that Miss Cohn alluded to but the use of subpoenas, of national security letters, of emergency authority -- all of them implicate facts that are not on the public record, and to the extent there were any such facts, they could not be put on the public record in the face of the government's state secrets assertion.

It's important to know that the prejudice here that arises, if you want to call it prejudice, from the inability to

expose classified information in the course of the judicial process exists on both sides, and the problem is not simply that the plaintiffs can't make out their case or can't rebut the showing that national security's implicated by the subject matter of this suit, but in addition, the defendants can't defend themselves.

If there are facts out here that are relevant, it is equally likely, indeed, I would suggest far more likely, that those facts would be exculpatory and would show AT&T's conduct in the best possible light. And yet we ourselves are prevented from bringing any of that -- again, to the extent that it existed -- before the Court or relying on any of it, so we are precluded from defending ourselves just as much as they are precluded from making out their claims. And it's for that reason that the cases recognize that when the state secrets privilege is properly invoked, these cases have to be dismissed and they have to go away. And that happens without the participation of the private parties and the private interests on either side, the plaintiffs or the defendants.

You, your Honor, are the constitutional officer who's been vested in our -- by our system of government with the authority to make the necessary determination about whether a case is to proceed in the face of the submissions that the executive makes to you.

THE COURT: I gather the answer is, "No objection."

MR. BERENSON: No objection, your Honor.

THE COURT: Let's talk about scheduling.

MS. COHN: Yes, your Honor.

THE COURT: I am proposing counsel -- Mr. Anderson, I suspect you're going to join this discussion? Perhaps Mr. Nichols as well?

MR. ANDERSON: Actually, Mr. Berenson, your Honor.

MR. BERENSON: Yes, your Honor.

THE COURT: I propose that we hear the government's motion to dismiss and AT&T's motion to dismiss on June 8. And probably would be best advised to give you a special setting on that date, perhaps at 10:00 o'clock in the morning. Or even 9:30, if that -- maybe 9:30 would be even better. 9:30 a.m. on June 8. And we limit the hearing on that date to those two motions. That we at this point defer the issue of whether we hear the plaintiffs' motion for a preliminary injunction.

And before making that decision, finally, but that's my inclination, I want to give Miss Cohn or her colleagues an opportunity to persuade me why we should hear the preliminary injunction motion before we hear the motions to dismiss.

MS. COHN: I'd like to start with persuading you of something else first. As much as I am, as I said, very interested in moving this case along, a June 8th hearing date would mean that our opposition papers are due tomorrow, I believe.

THE COURT: We can adjust the briefing schedule.

MS. COHN: Especially if you're going require us to respond to three substantive, and, I would argue, somewhat complex motions all on the same schedule, that we get some additional time to be able to do that. For instance, as I said, we got the government's motion on Saturday morning at 1:00 a.m. I'm -- I think that it would be very unreasonable to force us to try to respond on that kind of a schedule.

THE COURT: The alternative is to defer that to later in June. Perhaps as late as the 28th.

MS. COHN: Your Honor, I mean, I would also like to make my pitch about the PI motion coming first, but certainly I would ask that, at a minimum, that the 28th be the date, if we're going to have to respond. While I do have a lot of bodies, there are a lot of issues here, and we want to give you the best briefing possible on this.

THE COURT: The --

MR. BERENSON: Your Honor? Before Miss Cohn goes on to argue about sequencing, may I beg you for a slight compromise as between the 28th that she has proposed and the 8th, which would be fine with us? Really any date before the 24th of June would be acceptable for AT&T. But a number of counsel who intend to present argument to you on these motions have serious scheduling conflicts that arise on the 24th. So if there were any way to have a date --

THE COURT: The 24th of June?

MR. BERENSON: The 24th.

THE COURT: The 24th of June is a Saturday.

MR. BERENSON: Right. These are vacation plans of the kind that I know you've heard about often: Long-planned, nonrefundable, extended families and the like. So if there were any way to hear this prior to the 24th, I know counsel on our side would very much appreciate it.

MS. COHN: Your Honor, if I may, we have vacations on our side -- in fact, I apologize for actually having to mention this, but I'm actually getting married on May 27th, and I would really appreciate the opportunity to attend my own wedding. And so I would prefer that we move it -- I'm happy to defer this until after their schedules, but moving it up, I'm afraid, will cause a pretty significant hardship.

MR. BERENSON: I was just running interference for Cindy here.

MS. COHN: I was hoping not to raise this.

THE COURT: How does Friday the 23rd sound to everybody?

MR. BERENSON: We love the redeye, your Honor. That's fine for us.

MS. COHN: Thank you, your Honor. I appreciate the accommodation.

THE COURT: Friday the 23rd at 9:30 a.m. We may have

some other scheduling difficulties, but we'll make that time available for you all.

MS. COHN: If I could, your Honor, can I make my pitch for the preliminary injunction motion being heard at the same time?

THE COURT: Sure. As long as we are agreed upon Friday the 23rd at 9:30 a.m. as the date for at least these two motions, the AT&T motion to dismiss and the government's motion to dismiss.

All right? Yes?

MS. COHN: So, your Honor, I would like to request that the preliminary injunction motion be set I think concurrently. I don't think I want to force my friends from D.C. to come out twice in the same week. But we think that the preliminary injunction motion will actually help you -- help us demonstrate to you why there is a clear path for moving forward in this case that does not implicate state secrets, and that the briefing is kind of all of a piece, and -- if you look at their arguments that they've raised.

THE COURT: One other thing. We haven't specifically mentioned Mr. Nichols' motion to intervene, which I believe is scheduled for the 21st.

MR. NICHOLS: We certainly noticed it for the 21st, your Honor.

THE COURT: Why don't we set that hearing date for the

23rd?

MR. NICHOLS: Frankly, was hoping we wouldn't have an opposition to that from the plaintiffs, but one never knows.

MS. COHN: It's fine with us to set it together, your Honor.

THE COURT: We'll move the hearing on all of these motions to the 23rd. The question now is whether or not we should also hear the plaintiffs motion for a preliminary injunction at that time.

Here's the problem I have with that notion, Miss Cohn. We have the government and AT&T coming in and telling me that they have serious motions that essentially would end the case on the 23rd of June, or whenever the Court makes a decision. Doesn't that suggest that the Court ought to hear those motions and decide those before proceeding to a preliminary injunction motion which, in the context of a case like this, is nigh onto a consideration of the merits of your case?

MS. COHN: I think your Honor it is a bit of a piece. Because I think our arguments about state secrets are going to be about why it is your Honor can decide this case without implicating state secrets. I think Exhibit A in that regard is our motion for preliminary injunction where we have made the case of a violation of the wiretap act and the Fourth Amendment without reference to state secrets whatsoever. I think that the only real issue that will be raised by this is whether

there's a certification or not. And the only real defense I think that AT&T has --

THE COURT: A certification?

MS. COHN: A certification from the Attorney General, under the statutory scheme, as said the two ways that AT&T can legally hand this information over, and I think that doesn't implicate state secrets for the reasons I've laid out and I'm happy to lay out further.

THE COURT: There's another aspect to this, too. Given the magnitude of the claims being asserted by the government here, I would not be surprised if the government, if I ruled against it, would decide to appeal, and similarly, you may seek interlocutory appeal if I rule in favor of the government. And so isn't deciding a preliminary injunction kind of rushing things when we've got very substantial issues to deal with first that are threshold?

MS. COHN: Well, I mean, I would agree with you to a point, that I think that there are -- obviously, the motions to dismiss are going to be substantial, I think it's highly likely that your Honor is correct that we'll at least see a Ninth Circuit appeal out of your Honor's decision one way or the other. I have my hopes about which way that goes.

But I think that the question then becomes, What should the status quo be for the millions of AT&T customers pending this? And should the status quo be that the millions

of AT&T customers have their information continually handed over to the government in the meantime? Or should your Honor have the opportunity to decide that while we consider the important Constitutional and evidentiary issues that are being raised by the government, that the flow of data should stop, and that I think is the fundamental reason why we'd like to see the preliminary injunction go forward, because if your Honor doesn't go forward with this, the government has given all indications, and I don't think AT&T has indicated any differently, that the massive flow of information about millions of customers private phone calls will continue during the pendency of this appeal -- this decision, and then this appeal.

So for me, I look at this and I ask, What's the status quo going to be pending all of this litigation?

THE COURT: That all suggests that we ought to hear these motions sooner rather than later, and you're the one that's been pushing them back.

MS. COHN: But I'm only pushing them back a couple of weeks, and I apologize that occasionally we must do that, but I'm not asking for August and I'm not asking for next year. I think this is an important issue. I also think it's important that it be briefed fully and properly, so in an effort to represent my clients as best I can, I asked for a small continuance, but not a large one.

But I think that that's why the PI motion ought to be in the mix here, because I think it really did go to the question about what's going to happen to the millions of customer records in the meantime while we're sorting out these issues, and we think the Court ought to at least take the opportunity to decide that the information ought to stop flowing in the meantime.

THE COURT: Well, anything further on this scheduling issue, Mr. Nichols?

MR. NICHOLS: If I may, your Honor, I think what plaintiffs' counsel was just talking about is to be the subject of their brief that's coming in a few days. I thought that brief was supposed to be about sequencing, so in some respects I take this as a bit of a preview. It's very difficult for me --

THE COURT: It's not unusual for lawyers to preview their arguments, Mr. Nichols.

MR. NICHOLS: Absolutely, but she already asked to file a brief on these exact issues. But what I wanted to say was it's very difficult for me to say why it is that they are wrong that the preliminary injunction motion cannot be decided absent state secrets, but I can say the following:

The Court could not grant a preliminary injunction in this context without state secrets. As you will see when you read our papers, plaintiffs could not establish a likelihood of

success on their claims absent state secrets. AT&T could not present its defense with respect to the preliminary injunction absent state secrets. We cannot defend as an intervenor defendant against the PI absent state secrets. The plaintiffs and we could not adjudicate or litigate the issue of the harm to the public that a preliminary injunction would present absent stated secrets.

So I think in many ways, a preliminary injunction that is decided before we know what is or is not a state secret and what the effect of our assertion is makes absolutely no sense. What I assume the plaintiffs want to do is put on evidence in a preliminary injunction motion where they have people testifying in open court about certain facts. That is exactly what our state secrets privilege assertion is designed to prevent, assuming that the result of that would be the disclosure of facts that will harm national security, including, as Mr. Berenson said, facts that AT&T might want to present in its defense of the preliminary injunction.

So we will respond to this issue in our brief, but I didn't want to leave unanswered the notion that this is a simple prima facie case question that all you have to do is look at the preliminary injunction motion and, Snap, you can tell you don't need state secrets. It is clearly not that simple.

MS. COHN: Your Honor, if I may, two quick points in

response to that. The first is that the government actually proposed that their motion to dismiss be heard concurrent with our motion for preliminary injunction in their papers. So I'm not sure where Mr. Nichols is coming from now, but that's not what they asked the Court to do in the first instance. So I find it hard to believe that he's really -- that this is -- he's as sure about this state secrets issue as he was because I think they would have briefed it if that's what they really wanted.

I also would point out that our motion for preliminary injunction's already been filed. You have the evidence that we've relied on. You have the argument. I think it can be decided on the papers. We may submit some additional reply evidence, but I think his picture of what this hearing is going to look like is certainly not what we had envisioned.

Thank you.

MR. BERENSON: Your Honor, just for the record, I need to rise to say that the suggestion that issuing the requested injunction is going to stop, you know, some massive flow of data from AT&T to the National Security Agency cannot be taken as a given by any of us or by this court at this point. And indeed, issues like the balance of the hardships, the threat to public interest and the national security of the United States depend critically on whether there is nothing that is being transferred from AT&T to the NSA, whether there is something

but that it is being transferred pursuant perfectly in accordance with the processes of law, whether there's a moderate amount of information that pertains specifically to people who are suspected of affiliation with al Qaeda, or whether it's an omnibus dragnet the way the plaintiffs suggest. All that indicates underlying evidence that neither of us on either side have, and that to the extent it exists in this preceding at all, it exists only in those classified documents that have now been filed with you and that are the subject of the state secrets motion.

So I think Miss Cohn's very argument illustrates exactly why it makes no sense to try to address a PI in advance of hearing the dispositive motions to dismiss.

THE COURT: All right. Mr. Olson, you're back.

MR. OLSON: Yes, your Honor. In connection with scheduling, we would like to address the propriety of sealing both the Klein documents and any other documents which may be filed under seal at the time that the motions to dismiss are heard, and I guess you haven't talked about a briefing schedule yet.

THE COURT: Well, I'm always happy to hear you, Mr. Olson. It's been a couple of years since you've been here.

MR. OLSON: Yes.

THE COURT: I gather you're telling me you're going to file some kind of an amicus.

MR. OLSON: We e-filed this morning a motion to intervene and also a brief in connection with these. And we would anticipate --

THE COURT: When did you notice that motion?

MR. OLSON: For this morning in connection with their --

THE COURT: You filed it this morning. But when did you notice it to be heard?

MR. OLSON: This morning in connection with what we heard about yesterday, which is that they wanted to close this morning's hearing. So it was partially in connection with that. And to the extent that it addressed sealing --

THE COURT: I thought you said you filed a motion to intervene under Rule 24? Did I mis-hear you?

MR. OLSON: That was part of our opposition to the motion to disclose the hearing, and there's case law that we cited in that that certainly addresses the ability of the media to intervene both on sealing issues and on requests to close hearings.

So we will be happy to file a new version of that and the motion to intervene, and also to address the sealing issues in connection with the hearing that your Honor has set for June 23rd.

THE COURT: All right. You can proceed as you are advised and as your clients address you to proceed, Mr. Olson.

Now, I believe we have only one remaining matter.

MS. COHN: Your Honor, did you decide that the PI could be heard?

THE COURT: I beg your pardon?

MS. COHN: Did you decide the PI could be heard on the 23rd or not?

THE COURT: No, I'm afraid you've not persuaded me, Miss Cohn, that we should hear the preliminary injunction first. It does seem to me that both government counsel and AT&T are correct that that really would put the cart before the horse here. We have motions that may very well terminate the litigation at the early stage and completely moot any question of a preliminary injunction.

So what we will be hearing on the 23rd is the government's motion to dismiss, AT&T's motion to dismiss, and if you want to talk about a briefing schedule with reference to that date, I'll be happy to work with you on those dates. But I would think counsel should be able to work out briefing schedules.

Let me simply ask that the last brief, that is, the reply brief, be submitted not later than the 16th of May.

MR. NICHOLS: Of June, your Honor.

THE COURT: I'm sorry, 16th of June. I beg your pardon. Mr. Nichols is correct.

MR. BERENSON: That's fine with us, your Honor. And

we think we can probably work that out with plaintiffs' counsel.

There is one housekeeping matter, though, that I do need to address because there is an existing deadline set for our opposition to the preliminary injunction motion. It is tomorrow. And in light of that motion being put off beyond the motions to dismiss, we would ask your Honor to allow us more time.

THE COURT: I think under the circumstances we should vacate the hearing on the preliminary injunction motion pending the determination of the motions to dismiss.

MR. BERENSON: Thank you.

THE COURT: Now, one other issue that we haven't completely resolved, and that is the status of the preliminary injunction motion papers, including the declaration. Having reviewed those, it does appear to me that most of the material that is submitted in those papers which have been filed under seal is information which does not implicated a state secret and does not implicate any proprietary information of AT&T. Now, I can understand that you may disagree with respect to certain particulars, but I wonder if it wouldn't be possible for you to take a look at these papers and to give me some guidance to see what it is you think does involve either a claim of confidentiality by AT&T or perhaps the government will have some claim of state secrets with respect to these

materials. I think most of this information probably involves AT&T information.

MR. ANDERSON: Yes, your Honor. We will be happy to work with plaintiffs' counsel to negotiate, if it's possible, for us between the parties to negotiate a partially redacted version of that document. If we have a dispute, we'll bring it to the Court. And as I understand your Honor's ruling, in the meantime, that motion papers in support of preliminary injunction will remain under seal pending our resolution of this.

THE COURT: Can I set a deadline for you to do that? Let's see, this is the 17th. Can you submit either a proposed, jointly agreed upon, redacted version; or, if not, your respective positions, by sometime next week?

MS. COHN: Yes, your Honor.

THE COURT: Is that agreeable, Miss Cohn?

MS. COHN: It is, your Honor.

THE COURT: Thank you.

MR. ANDERSON: Thursday of next week?

MS. COHN: The 25th?

MR. ANDERSON: Correct.

MS. COHN: I think that would work.

THE COURT: All right. The 25th.

MR. ANDERSON: Thank you, your Honor.

THE COURT: If need be, we can either convene a

telephone conference or you can submit your respective positions in writing.

MS. COHN: Your Honor, there is one other issue -- there's always one other issue -- and that is the matter of our 30(b)(6) notice to AT&T. We are, in light of the Court's rulings, willing to hold in abeyance the vast majority of that 30(b)(6) notice, but there is one item that we've requested, the single document request that we have at the end that we think would actually be very helpful to the Court and the parties in terms of framing these issues, and that is the request for any certification from the Attorney General that AT&T may be relying on in claiming its immunity and its motion to dismiss, and that's why I think it's relevant to -- even if the PI motion doesn't go forward.

THE COURT: Am I looking at the right document here?

MS. COHN: You have the 30(b)(6) notice in front of you.

THE COURT: It's numbered Paragraph 7, but 7 resides between 16 and 18. So I assume that's a --

MS. COHN: It's actually on Page 5 of the 30(b)(6) notice itself. And it's in Lines 5 to 9.

THE COURT: Oh, I see.

MS. COHN: I would love a 30(b)(6) on this, but I will, at least for these purposes, I think, at least having certification itself would allow us to make -- I mean, AT&T's

motion to dismiss relies on an argument that they have an immunity, and their immunity is dependent on whether they have certification or not. So we think this is specifically at issue, and it's plainly not a state secret since the statute has a whole process by which you can evaluate whether these certifications are legal or not already built into it.

MR. ANDERSON: Your Honor, we don't see any way in which the Court could evaluate Miss Cohn's request without first reviewing the state secret notification by Mr. Nichols and the Department of Justice. As Miss Cohn knows even the existence of these certifications goes right to the heart of that state secrets indication. So this like the other requests for discovery, your Honor. We submit it should await the determination of the legal issues in the case, which your Honor has set as a threshold in this matter and will be resolved promptly.

THE COURT: Can you give me a very short briefing on this issue together with your other submission on the 25th?

MS. COHN: Yes, your Honor.

MR. ANDERSON: Yes, your Honor.

THE COURT: Briefing focusing very narrowly on this issue.

MS. COHN: Yes, your Honor.

MR. NICHOLS: As I understand this, your Honor, this is the propriety of discovery at this time into this issue.

THE COURT: Correct. Correct.

MS. COHN: The one specific request -- if you don't have the 30(b)(6), I can provide it to you (to Mr. Nichols).

THE COURT: Anything further? Very well. Thank you, Cohn, Mr. Anderson and Mr. Nichols. Thank you, Counsel.

MR. NICHOLS: Thank you, your Honor.

MR. ANDERSON: Thank you, your Honor.

MR. OLSON: Thank you, your Honor.

MS. COHN: Thank you, your Honor.

(Adjourned)

oOo

**CERTIFICATE OF REPORTER**

I, CONNIE KUHL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in Case No. C 06-0672 VRW, Tash Hepting, et al. v. AT&T Corp., et al., were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

Connie Kuhl, RMR, CRR

Friday, May 19, 2006