# EXHIBIT A

Copyright 2006 The Chronicle Publishing Co.
All Rights Reserved
THE SAN FRANCISCO CHRONICLE (California)

May 23, 2006 Tuesday
FINAL Edition

**SECTION:** NEWS; Pg. A1

**LENGTH:** 1238 words

**HEADLINE:** CHAMPION OF CYBERSPACE FACES ITS BIGGEST CASE YET;
Documents posted: They describe technology allegedly used in surveillance by telecom giant

**BYLINE:** Matthew B. Stannard, Joe Garofoli, Chronicle Staff Writers

**BODY:**

Documents purportedly at the heart of a lawsuit accusing AT&T of collaborating with the National Security Agency to snoop on Americans appeared Monday on the Web, possibly shedding new light on surveillance techniques but also intensifying debate over the publication of leaked documents related to national security.

Wired News posted 29 pages that Editor in Chief Evan Hansen said were obtained from an unnamed source close to the lawsuit brought in January by the Electronic Frontier Foundation against AT&T. The foundation accuses AT&T of illegally turning over tens of millions of telephone and Internet records to the NSA in what it calls a "massive and illegal program to wiretap and data-mine Americans' communications."

At the heart of the foundation's suit are documents submitted by Mark Klein, an AT&T technician for 22 years until he left in 2004. Klein said he had seen equipment installed at AT&T's San Francisco headquarters that would allow the NSA to screen huge volumes of customers' data.

Experts who reviewed the Wired News documents posted Monday -- which include technical descriptions and depictions of equipment at the AT&T office -- said that they were consistent with such surveillance but that the material did not provide conclusive proof of actual surveillance.

"It may look like a duck and quack like a duck but not be a duck," said Steven Aftergood, director of the Federation of American Scientists' Project on Government Secrecy. "It would be a mistake to presume that we know more than we do ... (but) it's another piece of the puzzle."

Although the foundation submitted the documents under seal in April to support its case, their contents were described by the New York Times and other publications later that month. Last week, Chief U.S. District Judge Vaughn Walker continued the seal pending a June 23 hearing on a government motion seeking to have the suit dismissed in the interests of national security.

Hansen said that while Walker's order makes it impossible to compare the documents posted by Wired News with the sealed documents, he believes Wired News obtained about a third of the material filed by the foundation.

Hansen said that the documents were obtained legally from a source other than Klein and that Wired News will seek to have the seal lifted on all the documents filed with the court. As for criticism that publication of the documents could compromise security, Hansen argued that the court would not have declined AT&T's request that the foundation return its copies of the material if sensitive national security secrets were involved.

"This is an extremely important case for the public," Hansen said. "It speaks to the breadth of the surveillance of American citizens. For us, the public's right to know superseded AT&T's claims of secrecy."

Neither AT&T officials nor engineers cited in the documents returned calls seeking comment on the Wired News story.

The documents include reports bearing the AT&T logo, schematics, press releases and articles describing technology allegedly used in the surveillance as well as photos of a nondescript door that Klein maintains is a "secret room" inside AT&T's Folsom Street facility.

According to the documents' introduction, which Wired News reported was written by Klein, that door concealed "computer gear for a government spy operation ... only people with security clearance from the National Security Agency can enter this room."

Behind the door, according to the documents, was a 24-by-48-foot room containing servers, routers and an industrial-size air conditioner. High-speed fiber-optic circuits are routed from AT&T's backbone servers to the room, where the documents suggest a special "splitter" routes part of the light signal to a device designed to collect and analyze high-speed and high-volume data.

"These installations enable the government to look at every individual message on the Internet and analyze exactly what people are doing," Klein wrote, according to Wired News. "This is the infrastructure for an Orwellian police state. It must be shut down!"

It appears, at least in the documents posted by Wired News, that Klein was describing a system partly based on his own observations, partly on what the documents call "educated guesses," and partly on conclusions drawn from different sources.

That said, the highly detailed nature of the documents tends to support their veracity, Aftergood said.

"It's rather detailed, which I think lends it some credibility, because there are many ways it could be shown to be wrong or inauthentic, and no one has done so," he said.

On the other hand, the documents could accurately describe a system at AT&T but misstate the system's intent, said Steven Bellovin, a computer science professor at Columbia University who worked previously at AT&T Labs Research.

"There are all sorts of reasons for doing network monitoring," said Bellovin, citing as examples a company's desire to monitor network traffic to make sure that it is being routed efficiently and that other companies are adhering to their traffic-routing agreements.

Some of the document's claims don't stand up well technically, Bellovin said -- the claim that the entire Internet was being monitored, for example, was "quite an exaggeration ... there's no one place you can tap the Internet," he said.

On the other hand, Bellovin said, nothing in the document proves that the described network is not a surveillance system -- and the claim that only NSA-cleared personnel could go into the "secret room" supports the theory.

"Without more information, it's impossible to say just what's going on there," said Bellovin.

The Wired News story comes amid a controversy about government surveillance and the press' coverage of the programs.

Previous stories have alleged NSA surveillance of phone calls and data mining of Americans' phone records. The stories have been cheered by critics of expanded government surveillance and denounced by others who suggest such stories harm national security.

On Sunday, U.S. Attorney General Alberto Gonzales said he believes that the federal government has the power to prosecute journalists and news organizations that publish such material. "There are some statutes on the book, which, if you read the language carefully, would seem to indicate that that is a possibility," Gonzales told ABC's "This Week."

As of Monday afternoon, Wired News had not been contacted by any federal officials, AT&T or the court since publishing the story.

"Truly as a legal matter, they're on pretty solid legal grounds," said Peter Scheer, executive director of the California First Amendment Coalition.

Scheer's organization co-signed a letter with Wired News last week asking the court to keep the proceedings open to the press, but it has not taken a position on the merits of the case.

The Wired News documents seem to suggest business sensitivity but not enough to support a court sealing, Scheer said. To First Amendment guardians, he said, the greater concern is what reaction federal officials might have to the leak of classified documents.

"We are seeing an extraordinary degree of anxiety on the government's part about reporting based on leaks of confidential documents in the government's possession," Scheer said. "I think the Justice Department is about to take the gloves off in its pursuit of information the press has. And the press is about to lose its ability to use confidential sources."

**GRAPHIC:** PHOTO, GRAPHIC
A photo purportedly shows an entrance to a room used for spying at AT&T's Folsom Street office. / Wired News ,
GRAPHIC: Diverting data / John Blanchard / The Chronicle

**LOAD-DATE:** May 23, 2006