PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
DAVID L. ANDERSON #149604
JACOB R. SORENSEN #209134
MARC H. AXELBAUM #209855
BRIAN J. WONG #226940
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Email: bruce.ericson@pillsburylaw.com

SIDLEY AUSTIN LLP
DAVID W. CARPENTER (admitted *pro hac vice*)
DAVID L. LAWSON (admitted *pro hac vice*)
BRADFORD A. BERENSON (admitted *pro hac vice*)
EDWARD R. McNICHOLAS (admitted *pro hac vice*)
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8010
Facsimile: (202) 736-8711

Attorneys for Defendants
AT&T CORP. and AT&T INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AT&T CORP., AT&T INC. and DOES 1-20, inclusive,<br><br>Defendants. | No. C-06-0672-VRW<br><br>**REPLY IN SUPPORT OF MOTION OF DEFENDANT AT&T INC. TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 12(b)(2), 12(b)(6)]<br><br>Date: June 23, 2006<br>Time: 9:30 a.m.<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker<br><br>Filed concurrently:<br>1. Reply Decl. of Starlene Meyerkord<br>2. Reply Decl. of Joseph Tocco<br>3. Request for Judicial Notice |



Dockets.Justia.com

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION. .... 1

II. ARGUMENT. .... 2

A. Plaintiffs cannot establish general jurisdiction over AT&T Inc. .... 2

1. AT&T Inc. is a holding company. .... 2

a. The press releases do not establish jurisdiction. .... 3

b. The website is not operated by AT&T Inc. and does not establish jurisdiction. .... 4

c. The case law about SBC and other holding companies does not help Plaintiffs. .... 5

d. The representative services doctrine does not help Plaintiffs. .... 6

2. AT&T Inc. does not lobby in California and, in any event, lobbying cannot create jurisdiction. .... 7

3. AT&T Inc. has not consented to the Court's jurisdiction. .... 9

B. Plaintiffs cannot establish specific jurisdiction over AT&T Inc. .... 10

1. The website does not show AT&T Inc. purposefully availed itself of the privilege of conducting business in California. .... 11

2. The supposedly "unrebutted" allegations have been rebutted. .... 12

3. Exercise of jurisdiction over AT&T Inc. is not reasonable. .... 13

III. CONCLUSION. .... 15

## TABLE OF AUTHORITIES

**Page**

### Cases

Autodesk, Inc. v. RK Mace Engineering, Inc.,
No. C-03-5128 VRW, 2004 WL 603382 (N.D. Cal. Mar. 11, 2004) ....................... 10

Bancroft & Masters Inc. v. Augusta Nat'l Inc.,
223 F.3d 1082 (9th Cir. 2000) ..................................................................... 11

Brand X Internet Servs. v. FCC,
345 F.3d 1120 (9th Cir. 2003) ..................................................................... 10

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985) .................................................................................... 13

Chamberlain v. Am. Tobacco Co.,
No. 1:96-CV-02005-PAG, 199 WL 33994451, 1999 U.S. Dist. Lexis 22636 (N.D. Ohio Nov. 19, 1999) ..................................................................... 8

Covad Communications Co. v. Pacific Bell,
No. C 98-1887 SI, 1999 WL 33757058, 1999 U.S. Dist. LEXIS 22789 (N.D. Cal. Dec. 14, 1999) ..................................................................... 5

Cybersell, Inc. v. Cybersell, Inc.,
130 F.3d 414 (1997) ............................................................................... 11, 12

Directory Dividends, Inc. v. SBC Communications, Inc.,
No. 01-CV-1974, 2003 WL 21961448, 2003 U.S. Dist. LEXIS 12214 (E.D. Pa. July 2, 2003) ..................................................................... 5

Doe v. Unocal Corp.,
248 F.3d 915 (9th Cir. 2001) ............................................................... 3, 5, 11

DVI, Inc. v. Superior Court,
104 Cal. App. 4th 1080 (2002) .................................................................. 6, 7

F. Hoffman-La Roche v. Superior Court,
130 Cal. App. 4th 782 (2005) ....................................................................... 7

Gammino v. SBC Communications, Inc.,
2005 WL 724130, 2005 U.S. Dist. LEXIS 5077 (E.D. Pa. Mar. 29, 2005) ..................................................................................................... 5

GoInternet.net, Inc. v. SBC Communications, Inc.,
No. 3348, 2003 WL 22977523 (Pa. Com. Pl. Dec. 17, 2003) ............................... 5, 6

Gordy v. Daily News, L.P.,
95 F.3d 829 (9th Cir. 1996) ......................................................................... 11

Graziose v. American Home Products Corp.,
161 F. Supp. 2d 1149 (D. Nev. 2001) ................................................... 7, 8, 9

Jamba Juice Co. v. Jamba Group, Inc., No. C-01-4846 VRW, 2002 WL 1034040, 2002 U.S. Dist. LEXIS 9459 (N.D. Cal. May 15, 2002) ........ 11, 12

Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44 (2d Cir. 1991) ........ 8

Lamb v. Turbine Designs, Inc., 240 F.3d 1316 (11th Cir. 2001) ........ 8

Mgmnt. Insights, Inc. v. CIC Enterprises, Inc., 194 F. Supp. 2d 520 (D. Tex. 2001) ........ 8

Newman v. Motorola, Inc., 125 F. Supp. 2d 717 (D. Md. 2000) ........ 3, 6

Panavision International, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998) ........ 11, 12, 13, 14

Phonetel Communications, Inc. v. U.S. Robotics Corp., No. 4:00-CV-1750-R, 2001 U.S. Dist. LEXIS 7233 (N.D. Tex. June 1, 2001) ........ 3

RLH Indus., Inc. v. SBC Communications, Inc., 133 Cal. App. 4th 1277 (2005) ........ 9

Rose v. Continental Aktiengesellschaft, No. Civ. A. 99-3794, 2001 WL 236738 (E.D. Pa. Mar. 2, 2001) ........ 5

Shepherd Invs. Int'l, Ltd. v. Verizon Communications Inc., 373 F. Supp. 2d 853 (E.D. Wis. 2005) ........ 9

Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523 (2000) ........ 7

State of Maine v. Phillip Morris, Inc., No. CV-97-134, 1998 Me. Super. LEXIS 240 (Sept. 30, 1998) ........ 8

Sullivan v. Tagliabue, 785 F. Supp. 1076 (D.R.I. 1992) ........ 8

Von Grabe v. Sprint PCS, 312 F. Supp. 2d 1285 (S.D. Cal. 2003) ........ 3, 4, 6

**Constitutional Provisions**

United States Constitution
First Amendment ........ 1, 7, 8, 9

**Statutes**

California Business and Professions Code
Section 17200 ........ 13

## Rules

Federal Rules of Evidence
Rule 801 ........ 7
Rule 802 ........ 7

## I. INTRODUCTION.

Plaintiffs' opposition (Dkt. 174, "Opposition" or "Opp.") makes the mistake of assuming that use of a brand name such as "AT&T" (or McDonald's, Coca Cola or Verizon) by a family of companies means that the parent company is subject to jurisdiction wherever a subsidiary does business using that brand name. That is wrong.

Plaintiffs have assembled various exhibits bearing the AT&T brand name and having something to do with California (press releases, lobbying certifications and job postings for AT&T Inc. subsidiaries in California). But these exhibits do not change the fact that AT&T Inc. is a pure holding company that does not do business in California. Most make clear on their face that AT&T products and services are sold by subsidiaries—not by AT&T Inc. itself. That many of those subsidiaries bear the family name "AT&T" does not confer jurisdiction over AT&T Inc.

Plaintiffs argue that the AT&T family website confers jurisdiction over AT&T Inc. But the website is not operated by AT&T Inc. and offers no goods or services from AT&T Inc. AT&T Inc. sells no goods or services; it is only a holding company.

Plaintiffs argue that AT&T Inc. lobbies in California. It does not. The forms Plaintiffs cite merely list AT&T Inc. as the corporate parent, as required by law. Besides, arguments basing jurisdiction on lobbying violate the First Amendment.

Plaintiffs argue that the "representative services doctrine" gives jurisdiction, but they admit that "the representative services doctrine has been held not to apply to a pure holding company." Because AT&T Inc. is a pure holding company, this argument fails too.

Plaintiffs argue that a few isolated allegations in their complaint and the declaration of Mark Klein are "unrebutted" and establish jurisdiction over AT&T Inc. That is false. These allegations are wrong and have been rebutted.

Plaintiffs concede that they have the burden on this motion. Opp. 3:2. Loose inferences from brand names, websites, and protected lobbying activity cannot change the fact that AT&T Inc. is a pure holding company lacking minimum contacts with California. The Court lacks personal jurisdiction over AT&T Inc. and should dismiss it from this case.

## II. ARGUMENT.

Plaintiffs' three declarations—the O'Brien Decl. (Dkt. 178), the Tyre Decl. (Dkt. 179) and the Rubinger Decl. (Dkt. 180)—cannot and do not rebut the basic facts set forth in the Meyerkord Decl. (Dkt. 80). Plaintiffs concede that they "do not dispute much of what Ms. Meyerkord says." Opp. 2:5-6. These facts are undisputed: AT&T Inc. is incorporated in Delaware and has its principal place of business in Texas. Meyerkord Decl. ¶¶ 2-3; FAC (Dkt. 8) ¶ 18. AT&T Inc. has no employees or distributors resident in California. It does not have an office or mailing address in California, and it does not own or lease any real property in California. Meyerkord Decl. ¶ 11. AT&T Inc. has never been registered or otherwise qualified to do business in the State of California, and did not appoint an agent for service of process in California for such purpose. *Id.* ¶ 12. AT&T Inc. does not pay income, property, or use taxes to the State of California. *Id.* ¶ 13.

In an attempt to conflate AT&T Inc. and the AT&T family brand, Plaintiffs misleadingly refer to AT&T Inc. as "AT&T" throughout their papers, thus confusing references to the AT&T family brand with references to AT&T Inc. But the documents on which Plaintiffs rely show that the distinctions between AT&T Inc. and its subsidiaries that provide goods and services are strictly maintained and readily apparent.

### A. Plaintiffs cannot establish general jurisdiction over AT&T Inc.

Plaintiffs rely on activities of AT&T subsidiaries and the use of the AT&T family brand. That reliance is contrary to federal law. The activities of the subsidiaries cannot establish general jurisdiction over the parent, a separate and distinct entity.

#### 1. AT&T Inc. is a holding company.

Plaintiffs' one-paragraph argument that "AT&T [Inc.] Is Not a Pure Holding Company" is unsupported by any evidence, including the web pages Plaintiffs assembled. Opp. 11:1-15, Tyre Decl. Exs. U-X. The generic references to the AT&T family brand in the four web pages that Plaintiffs collected do not establish that AT&T Inc. is anything more than a holding company.

AT&T Inc. is a Delaware holding company that has no operations and does not do

business in California. Meyerkord Decl. ¶¶ 2, 4, 11-14. It conducts no business itself and has no assets other than stock in its subsidiaries. *Id.* The telecommunications operations associated with the name AT&T are not conducted by AT&T Inc., but by its subsidiaries. *Id*. ¶¶ 5, 8.[1] "The existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Doe v. Unocal Corp.,* 248 F.3d 915, 925 (9th Cir. 2001). Courts routinely hold that non-resident holding companies are not subject to jurisdiction in states where they do not conduct business.[2] *Von Grabe*, 312 F. Supp. 2d at 1313; *Newman*, 125 F. Supp. 2d at 725; *Phonetel Communications,* 2001 U.S. Dist. LEXIS 7233, at *17.

**a. The press releases do not establish jurisdiction.**

Plaintiffs offer press releases that reference AT&T Inc. and note services offered by AT&T Inc. affiliates under the family name "AT&T." *See* Tyre Decl. Exs. F-T. Plaintiffs state that they "do not dispute that 'AT&T' is a brand name, but each press release names specifically 'AT&T Inc.'" Opp. 9:28-10:1. A plain reading of each release makes it obvious that the activities are those of subsidiaries operating under the AT&T brand, and not that of AT&T Inc.

Plaintiffs argue that the press releases they have collected demonstrate that "AT&T is in the business of telecommunications . . . and . . . does substantial, systematic and continuous telecommunications business in California." Opp. 9:25-27. But the press releases do not reference any business conducted in California by AT&T Inc. All say that "AT&T Inc. is one of the world's largest telecommunications *holding companies*." Tyre Decl. Exs. F-T (emphasis added). All but three say "Subsidiaries and affiliates of AT&T

[1] Such a structure is common in the telecommunications industry. *See e.g., Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003); *Newman v. Motorola, Inc.,* 125 F. Supp. 2d 717 (D. Md. 2000); *Phonetel Communications, Inc. v. U.S. Robotics Corp.,* No. 4:00-CV-1750-R, 2001 U.S. Dist. LEXIS 7233 (N.D. Tex. June 1, 2001).

[2] Defendant AT&T Corp., which does do business in California, is not challenging this Court's personal jurisdiction over it. Granting this motion will not leave Plaintiffs without someone to sue.

Inc. provide products and services under the AT&T brand." *Id*. Exs. G, H, I, J, L, M, N, O, P, Q, S and T. The other three don't help Plaintiffs either. All say AT&T Inc. is a holding company. Exhibit K says "AT&T products and services are provided in specific geographic areas by subsidiaries and affiliates of AT&T Inc." Exhibit F announces the appointment of a president of a subsidiary. Exhibit R says it was issued by a subsidiary. All 15 releases are copyrighted by AT&T Knowledge Ventures, an indirect subsidiary of AT&T Inc.[3]

The releases make clear that AT&T Inc. is a holding company and its subsidiaries do business under the AT&T brand in various areas, including California. The press releases do not evidence any business conducted in California by AT&T Inc. The fact that AT&T Inc. conducts no business in California (Meyerkord Decl. ¶ 11) is unrebutted except for illogical inferences that Plaintiffs have drawn from unambiguous press releases.

**b. The website is not operated by AT&T Inc. and does not establish jurisdiction.**

Plaintiffs argue that "a California consumer can enter into a binding contract for services in California offered by AT&T Inc. or its subsidiaries." Opp. at 2:16-18. This is wrong as to AT&T Inc. O'Brien ordered telephone service from *AT&T California*, not AT&T Inc. O'Brien Decl. Exs. C, D. Rubinger's exhibit is mostly illegible but suggests that he ordered DSL service from an AT&T affiliate, as indeed must be true since AT&T Inc. offers no services—DSL or otherwise—in California. *See* Rubinger Decl. Ex. A.

Plaintiffs concede that the website is not sufficient to establish general jurisdiction. Opp. 16:3-4. They offer no facts to refute Meyerkord's statement that the AT&T brand website is maintained by a subsidiary of AT&T Inc., not AT&T Inc. Meyercord Decl.

---

[3] Plaintiffs quibble that Ms. Meyerkord's declaration "does not speak to whether . . . a consumer, visiting the web site, would reasonably believe it to be an AT&T Inc. web site." Opp. 8:7-9. The declaration does not speak to this because subjective impressions have no legal relevance. *Von Grabe*, 312 F. Supp. 2d at 1301 ("As in similar cases involving use of a common trade name, Plaintiff's subjective interpretation and/or assumption or conclusion, without more, is not sufficient to establish personal jurisdiction over Sprint Corporation.").

¶ 17.[4] The webpages are copyrighted not by AT&T Inc. but by AT&T Knowledge Ventures (Tyre Decl. Exs. F-X) or SBC Knowledge Ventures, L.P. (*id.* Exs. Y, Z).

**c. The case law about SBC and other holding companies does not help Plaintiffs.**

Plaintiffs cite only a few anomalous cases about SBC Communications Inc. ("SBC") and fail to distinguish persuasively the cases recognizing that AT&T Inc. (or SBC) is a pure holding company and declining to exercise jurisdiction over it.

The anomalous cases rely principally on website exegesis. For example, *Covad Communications Co. v. Pacific Bell*, No. C 98-1887 SI, 1999 WL 33757058, 1999 U.S. Dist. LEXIS 22789 (N.D. Cal. Dec. 14, 1999), expresses uncertainty, stating only "that SBC *may* conduct a variety of activities" (emphasis added), and that SBC is *either* "present in California" *or* is "more than a simple holding company." *Id* at *20-*21. *Gammino v. SBC Communications, Inc.*, 2005 WL 724130, 2005 U.S. Dist. LEXIS 5077 (E.D. Pa. Mar. 29, 2005), holds without any evident basis that statements on the SBC brand website should be attributed to the holding company. *Directory Dividends, Inc. v. SBC Communications, Inc.*, No. 01-CV-1974, 2003 WL 21961448, 2003 U.S. Dist. LEXIS 12214 (E.D. Pa. July 2, 2003), found jurisdiction over SBC on the theory that the SBC brand name was "evidence that the subsidiaries are the alter ego of SBC." *Id.* at *5. But *GoInternet.net, Inc. v. SBC Communications, Inc.*, No. 3348, 2003 WL 22977523 (Pa. Com. Pl. Dec. 17, 2003), rejected the *Directory Dividends* theory: "That the companies may have a close relationship or may coordinate and cooperate is not sufficient to impute forum contacts." *Id.* at *7-*8 (quoting *Rose v. Continental Aktiengesellschaft*, No. Civ. A. 99-3794, 2001 WL 236738 (E.D. Pa. Mar. 2, 2001)).[5]

---

[4] The website's job listings (Tyre Decl. Exs. W, X, Y, Z) also prove nothing. AT&T has no operations or employees in California. Meyerkord Decl. ¶ 12. The job openings that Plaintiffs rely upon are for positions with subsidiaries, not AT&T Inc. A subsidiary's job offerings cannot confer jurisdiction over the parent. *See Doe*, 248 F.3d at 925.

[5] Plaintiffs distinguish *Gointernet.Net* on the grounds that "[n]either SBC nor the relevant subsidiaries were located in Pennsylvania" and "the sole nexus of Pennsylvania to the action was that plaintiffs were located in Pennsylvania." Opp. 13. But AT&T Inc. is not located in California. Meyerkord Decl. ¶¶ 2, 3, 12. Nor is AT&T Corp. *See* FAC ¶ 17.

(continued…)

Plaintiffs fail to distinguish the better-reasoned cases that have rejected jurisdiction over SBC and other telephone holding companies despite family brands, websites, or marketing activities undertaken by subsidiaries. Plaintiffs make no attempt to explain how *Newman* is different from this case; they just assert it, as if saying it makes it so. *See* Opp. 14:21-26. In *Newman,* the court found no personal jurisdiction over SBC Communications Inc. on facts very much like those here—no employees or offices, no property, no directly conducted business, no selling of goods or services, not registered or licensed, no evidence that the holding company acted directly in this forum. *Newman*, 125 F. Supp. 2d at 722.

Other federal courts reject jurisdiction over telephone holding companies as well. *See, e.g., Von Grabe*, 312 F. Supp. 2d at 1313 (holding that use of a common trade name did not provide jurisdiction over Sprint Corp.); *Phonetel*, 2001 U.S. Dist. LEXIS 7233, at *17 (holding that a "Verizon" website offering goods and services to customers in Texas did not suffice absent evidence that the holding company ran the site). Plaintiffs dismiss these cases as "distinguishable," but do not provide any significant facts or arguments to support that assertion. Opp. 14.

**d. The representative services doctrine does not help Plaintiffs.**

Plaintiffs invoke the "representative services doctrine," arguing that a "non-resident defendant is subject to general jurisdiction if a 'local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's own business.'" Opp. 15:8-10 (quoting *DVI, Inc. v. Superior Court*, 104 Cal. App. 4th 1080, 1093 (2002)) . (Plaintiffs' emphasis omitted). Plaintiffs admit, however, that "the representative services doctrine has been held not to apply to a pure holding company." Opp. 15 n.13. The very case they cite, *DVI*, states that, "the representative services theory is inapplicable to a

---

(…continued)
The *GoInternet.net* court rejected jurisdiction even though an SBC subsidiary "engages in continuous and systematic business in Pennsylvania," "Pennsylvania residents can purchase a limited number of goods and services from a few of SBC's subsidiaries through their connected websites" and "SBC has undertaken an advertising campaign to sell internet service nationwide, including in Pennsylvania." *Id.* at *2-3. The facts here are even weaker than those rejected as insufficient by *GoInternet.net.*

holding company because "[t]o find the holding company subject to jurisdiction simply because the holding company chose to invest rather than operate would swallow the distinction, made in the case law . . . between holding companies and operating companies . . . .'" 104 Cal. App. 4th at 1093 (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000)). The other case they cite, *F. Hoffman-La Roche v. Superior Court*, 130 Cal. App. 4th 782 (2005), similarly observed that, "jurisdiction will not lie where the parent is a true holding company the business of which is not operations but passive investment." *Id.* at 798. Here, AT&T Inc. is a true holding company. Meyerkord Decl. ¶¶ 4, 5, 15, 16.

**2. AT&T Inc. does not lobby in California and, in any event, lobbying cannot create jurisdiction.**

Plaintiffs cite a single inadmissible webpage from the California Secretary of State website (Tyre Decl. Ex. A is inadmissible hearsay, *see* Fed. R. Evid. 801, 802) and four lobbying forms—three listing "AT&T Inc. and its affiliates" as the filers of the forms, and one stating that "Pacific Telesis Group and its Subsidiaries, Affiliates of AT&T Inc." filed the document. *See* Opp. 5:15-8:2; Tyre Decl. Exs. A-E. These documents do not provide a basis for personal jurisdiction over AT&T Inc.

AT&T Inc. does not do any lobbying in California. Tocco Decl. ¶ 6. AT&T Inc. is listed on the forms because California law requires that the ultimate owner of the lobbying entities be disclosed. *Id.* ¶ 5. Thus, to obey the law, the holding company is listed. *Id.* This does not mean that AT&T Inc. itself lobbies in California.

Even if, contrary to fact, AT&T Inc. did lobby in California, such activities could not be the basis for personal jurisdiction. *Graziose v. American Home Products Corp.*, 161 F. Supp. 2d 1149 (D. Nev. 2001). There the plaintiff alleged that a trade association's lobbying activities and testimony before state legislators and government officials subjected the association to personal jurisdiction. *Id.* at 1152-53. The court rejected this claim, reasoning that to ground personal jurisdiction on a party's lobbying activities or other government contacts would chill the First Amendment right to petition the government:

> It would chill constitutionally protected rights of free speech and governmental contacts to expose every person, who addressed a state legislature or public official, to jurisdiction over claims that did not arise out of such conduct. This Court joins with the Second Circuit in holding that personal jurisdiction may not be founded upon any kind of lobbying or "government contacts" such as "getting information from or giving information to the government, or getting the government's permission to do something." The "government contacts" doctrine arises out of a constitutional right protected by the First Amendment to "petition the Government for redress of grievances." To do otherwise would jeopardize public participation in government. This right has been protected by numerous courts.

*Id.* at 1153 (citations omitted) (quoting *Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 51 (2d Cir. 1991)).

Other federal courts have likewise held that personal jurisdiction cannot be based upon lobbying efforts or contacts with a government entity. *See, e.g., Lamb v. Turbine Designs, Inc.*, 240 F.3d 1316 (11th Cir. 2001); *Mgmt. Insights, Inc. v. CIC Enterprises, Inc.*, 194 F. Supp. 2d 520, 529 (D. Tex. 2001); *Sullivan v. Tagliabue,* 785 F. Supp. 1076 (D.R.I. 1992). The cases applying this "government contacts" doctrine generally hold that:

> A basic premise of this exception is that the right to petition government, local or national, is a right which cannot be abridged by local governments. Using government contacts to establish personal jurisdiction directly undermines the right to petition as guaranteed by the Constitution.

*Sullivan*, 85 F. Supp. at 1080 (citations omitted).

The cases cited by Plaintiffs provide paltry support for disregarding the "government contacts" doctrine. Two pertain to the same tobacco trade association and expressed uncertainty when declining to apply the doctrine.[6] The third held that to meet the

[6] *Chamberlain v. Am. Tobacco Co.*, No. 1:96-CV-02005-PAG, 1999 WL 33994451, 1999 U.S. Dist. LEXIS 22636 (N.D. Ohio Nov. 19, 1999) (dicta); *State of Maine v. Phillip Morris, Inc.*, No. CV-97-134, 1998 Me. Super. LEXIS 240 (Sept. 30, 1998) (stating that whether the "government contacts" doctrine "should be applicable is an unsettled question," and noting the decisions related to "the spate of cases involving states suing tobacco companies."). In both, the lobbying activities were directly related to the claims in the litigation, and in *Chamberlain* the association's other substantial activities created jurisdiction even if its government contacts were ignored. *Chamberlain*, 1999 WL 33994451, 1999 U.S. Dist. LEXIS 22636, at *76; *State of Maine*, 1998 Me. Super. LEXIS 240, at *13.

"continuous and systematic" standard, "the defendant's forum activities must be constant and occur at regular intervals," and stated that, among other things, the ways in which defendant promoted itself in the state and the fact that defendant's "lobbying activities far exceeded those of most local businesses" indicated that it invited personal jurisdiction. *Shepherd Invs. Int'l, Ltd. v. Verizon Communications Inc.*, 373 F. Supp. 2d 853, 863, 866 (E.D. Wis. 2005). Plaintiffs have not made such a showing as to AT&T Inc., nor can they.[7]

As in *Graziose*, the issues in this case are completely unrelated to any lobbying activities in California that could be attributed to AT&T Inc., and Plaintiffs do not argue otherwise. AT&T Inc.'s lobbying activities in California are non-existent; its name appears on the forms simply because state law demands that parents be listed. But even if AT&T Inc. were engaged in lobbying efforts in California, the law dictates that it not be subjected to personal jurisdiction for engaging in constitutionally protected activity.

**3. AT&T Inc. has not consented to the Court's jurisdiction.**

Plaintiffs erroneously assert that in *RLH Indus., Inc. v. SBC Communications, Inc.*, 133 Cal. App. 4th 1277 (2005), "the court noted that SBC conceded the jurisdiction of the California court." Opp. 11. In fact, the Court of Appeal simply noted that the plaintiff was claiming that jurisdiction had been conceded; the Court of Appeal observed: "On the other hand, we *stop short* of endorsing RLH's claim that because SBC concedes personal jurisdiction, no issues arise from applying California law to SBC's out-of-state conduct." 133 Cal. App. 4th at 1293 (emphasis added). There was no "concession." To the contrary, SBC Communications Inc. had contested jurisdiction by filing a motion to quash service of

---

[7] Plaintiffs contend that "[a]lthough other courts have also adopted a government contacts exception, the better view is that it should be applicable only in the District of Columbia since lobbying there may be seeking to influence the federal government, whereas lobbying in a state is seeking to influence that state's policies and legislation." Opp. 7 n.8 (citing *Shepherd Invs.*, 373 F. Supp. 2d at 865-66). The attempt of the *Shepherd Invs.* court to limit the government contacts exception to inside the beltway is misguided at best. The point of the exception is to avoid penalizing speech protected by the First Amendment. That danger exists whether a party is attempting to influence federal legislation or state legislation. As such, the far "better view" (representing the weight of authority) is the one set forth in *Graziose* and the other authorities cited above.

the complaint. *See* Request for Judicial Notice (filed herewith), Ex. A. The trial court ultimately exercised jurisdiction, but only over the objections of SBC Communications Inc.

Although SBC intervened in *Brand X Internet Servs. v. FCC,* 345 F.3d 1120 (9th Cir. 2003), it did so only to challenge an FCC ruling. *Brand X* involved national litigation against a federal agency consolidated in the Ninth Circuit: "Seven different petitions for review of the Commission's ruling were filed in the Third, Ninth, and District of Columbia Circuits. . . . On April 1, 2002, the Judicial Panel on Multidistrict Litigation transferred the related petitions for review to this court for consolidation with Brand X's petition" *Id.* at 1127. SBC's decision to intervene in appellate proceedings consolidated in a federal appeals court with jurisdiction in nine states plus several U.S. territories—an intervention designed to support the interests of its various subsidiaries nationwide—hardly confers general personal jurisdiction over AT&T Inc. in California.[8]

**B. Plaintiffs cannot establish specific jurisdiction over AT&T Inc.**

Plaintiffs repeatedly cite this Court's opinion in *Autodesk, Inc. v. RK Mace Engineering, Inc.*, No. C-03-5128 VRW, 2004 WL 603382 (N.D. Cal. Mar. 11, 2004), which has nothing to do with jurisdiction over holding companies. (The issue there was a Missouri corporation's willful infringement of a California corporation's copyrighted software—the Missouri corporation admitted that "we may have violated [plaintiff's license agreement]." *Autodesk,* 2004 WL 603382, at *2.) In *Autodesk,* this Court noted that to find specific jurisdiction over a defendant, plaintiff must "establish that defendant had *some* contact with the forum state." *Id.* at *3 (emphasis in original). Here, there cannot be specific jurisdiction because AT&T Inc. has *no* contact with California.

As acknowledged by Plaintiffs (Opp. 16:8-16), there are three prerequisites to

---

[8] Plaintiffs claim that "if AT&T (then SBC) really is a pure holding company, as it claims in the pending motion, then AT&T should have had no interest in the merits. Plaintiffs understand fully why ***telecommunications*** companies had a significant interest in the FCC ruling and subsequent court proceedings." Opp. 12 (emphasis plaintiffs'). Plaintiffs seem to misunderstand fundamentally the nature of a holding company, which of course takes an interest in the business and operations of the subsidiaries in which it owns stock. That does not mean that it ceases to be a holding company.

finding that AT&T Inc. is subject to the specific jurisdiction of this Court:

> (1) The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
>
> (2) The claim must be one which arises out of or results from the defendant's forum-related activities.
>
> (3) Exercise of jurisdiction must be reasonable.

*Doe*, 248 F.3d at 923 (citing *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831-32 (9th Cir. 1996)).[9] To establish specific jurisdiction over AT&T Inc., Plaintiffs must meet all three of these requirements. They cannot satisfy a single one.

**1. The website does not show AT&T Inc. purposefully availed itself of the privilege of conducting business in California.**

Plaintiffs insist that AT&T Inc. targets California through the website, www.att.com, thereby subjecting itself to the specific personal jurisdiction of courts in California. Opp. 17:3-18:11. Plaintiffs contend that although AT&T Inc. "has said that the web site is maintained by an unnamed subsidiary, . . . it cannot be disputed that the subsidiary maintains the web site for and on behalf of AT&T itself as well as many other subsidiaries." Opp. 18:1-3. Because plaintiffs provide no actual evidence to support this contention, it can indeed "be disputed." What is undisputed is that AT&T Inc. neither maintains nor administers the www.att.com site. *See* Meyerkord Decl. ¶ 17.

In support of their jurisdiction-by-website theory, plaintiffs cite three cases: *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (1997); and *Jamba Juice Co. v. Jamba Group, Inc.*, No. C-01-4846 VRW, 2002 WL 1034040, 2002 U.S. Dist. LEXIS 9459 (N.D. Cal. May 15, 2002). Each is distinguishable because the defendants in those cases actually maintained the

---

[9] Plaintiffs cite *Bancroft & Masters Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000) for the same proposition. It is distinguishable, as are all of plaintiffs' cases, because the defendant in that case actually engaged in acts in the forum state.

websites at issue.[10] In two, the court declined to exercise jurisdiction over the defendant.[11] The dealings of O'Brien and Rubinger with the website does not change the analysis. Both dealt with subsidiaries, not with AT&T Inc. *See* part II.A.1.b above.

**2. The supposedly "unrebutted" allegations have been rebutted.**

Plaintiffs point to two allegations in the FAC (Dkt. 8, ¶¶ 62-63) and one in the Klein Declaration (Dkt. 31, ¶ 11), claim that these allegations are unrebutted and argue that they demonstrate "forum-related activities." Opp. 18:3-21. Not so.

FAC ¶ 62 alleges that AT&T Inc. is integrating SBC's telecommunications network with that of AT&T Corp. and intends to use AT&T Corp.'s IP network in place of arrangements it currently has with third parties. These allegations are vague, but if construed to mean that AT&T Inc. has a telecommunications network of its own, they are false. AT&T Inc. is a holding company, pure and simple. Meyerkord Decl. ¶ 4. It owns no networks of any kind; all it owns is stock. Meyerkord Decl. ¶¶ 4, 5; Reply Meyerkord Decl. ¶ 4. None of FAC ¶ 62's allegations can properly be attributed to AT&T Inc. Reply Meyerkord Decl. ¶¶ 3-4.

FAC ¶ 63 alleges that "the facilities and technologies of AT&T Corp." "are being or will imminently be used by AT&T Inc. to transmit the communications of its customers . . . ." Opp. 19. But AT&T Inc. does not and will not transmit any customer communications because it has no network or customers. Meyerkord Decl. ¶¶ 3, 4. Any claim related to "the facilities and technologies of AT&T Corp." should be directed at AT&T Corp., not AT&T Inc.

---

[10] *See Panavision*, 141 F.3d at 1319 (defendant created websites using plaintiff's trademarks, then attempted to extort plaintiff); *Cybersell*, 130 F.3d at 415-16 (defendant created web page that was alleged to infringe plaintiff's trademark); *Jamba Juice*, 2002 WL 1034040, at *1-2 (defendant operated website that was center of dispute).

[11] *See Cybersell*, 130 F.3d at 415 (finding that Arizona district court did not have jurisdiction where defendant had "no contacts with Arizona other than maintaining a home page that is accessible to Arizonans"); *Jamba Juice*, 2002 WL 1034040, at *2-3 (the "fact that defendant operates a website, which may be accessed anywhere in the United States . . . does not . . . establish that venue is proper in the Northern District").

Klein Declaration ¶ 11 states that Mr. Klein toured "a building that was then operated by SBC Communications, Inc. (now known as AT&T Inc.)." Opp. 19:20-21. Mr. Klein does not provide any facts to support his conclusion, which is wrong. AT&T does not own or lease any real estate in California, including the building referred to by Mr. Klein. Meyerkord Decl. ¶ 12. Neither AT&T Inc. nor SBC Communications Inc. ever "operated" that building, or any other building in California. Reply Meyerkord Decl. ¶ 5.

To repeat: AT&T Inc. is not an operating business; it is a holding company. It has engaged in no activity in California. Any acts performed in California under the AT&T brand are performed by its subsidiaries, not by the holding company. AT&T Inc. has not – and could not have – performed acts in California giving rise to Plaintiffs' claims.

**3. Exercise of jurisdiction over AT&T Inc. is not reasonable.**

Even if the first two requirements for specific jurisdiction were met, this Court must also determine whether exercise of jurisdiction is reasonable. Plaintiffs correctly note that courts look to seven factors when making this determination. Opp. 20:6. Those factors are: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternate forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). Here, exercising jurisdiction over AT&T Inc. would not be reasonable.

*First*, AT&T Inc. has not interjected itself – purposefully or otherwise – into California. *Second*, AT&T Inc., which is incorporated in Delaware and has its principal place of business in Texas (Meyerkord Decl. ¶¶ 2-3; *see also* FAC ¶ 18), would be burdened by having to defend a suit in the Northern District. *Third*, sovereignty concerns are not implicated by the FAC's assertion of a claim under California law (Cal. Bus. & Prof. Code § 17200) because that claim is based on the same allegations as the federal claims. As noted in the *Panavision* case cited by Plaintiffs, sovereignty is not implicated

where "[t]he allegations in support of [plaintiff's] state law claim and those in support of it federal claim . . . require the same analysis." 141 F.3d at 1323. *Fourth*, California has no special interest in adjudicating this matter: This is a purported class action brought on behalf of a national class. FAC ¶ 65. *Fifth*, plaintiffs concede that "it cannot yet be known where many witnesses and much evidence may be located." Opp. 20:28-21:1. Any witnesses or evidence of AT&T Inc. would likely be based in Texas, where AT&T Inc. is headquartered. *Sixth*, plaintiffs' argument as to convenient and efficient relief fails for the same reason as the fourth factor. A purported class action brought on behalf of a national class does not have any particular ties to California. Indeed, at least 20 copycat suits have been filed in courts across the country. *Seventh*, as conceded by Plaintiffs, there are alternative forums where jurisdiction would lie as to AT&T Inc., namely Texas and Delaware.[12]

Considering all of these factors, exercise of specific jurisdiction over AT&T Inc. would be unreasonable. But such an analysis is unnecessary because AT&T Inc. has neither purposefully availed itself of the privilege of conducting business in California nor engaged in any activities in California.

---

[12] Indeed, other actions alleging similar facts have been filed against AT&T Inc. in Texas. *See Harrington v. AT&T Inc.*, No. A06CA374-LY (W.D. Tex); *Trevino v. AT&T Corp. and AT&T Inc.*, No. 2:06-cv-00209 (S.D. Tex.).

## III. CONCLUSION.

For the foregoing reasons, defendant AT&T Inc. respectfully submits that this action should be dismissed as to it for lack of personal jurisdiction.

Dated: June 16, 2006.

SIDLEY AUSTIN LLP
DAVID W. CARPENTER
DAVID L. LAWSON
BRADFORD A. BERENSON
EDWARD R. McNICHOLAS
1501 K Street, N.W.
Washington, D.C. 20005

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
DAVID L. ANDERSON
JACOB R. SORENSEN
MARC H. AXELBAUM
BRIAN J. WONG
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

By /s/ Bruce A. Ericson
Bruce A. Ericson

Attorneys for Defendants
AT&T CORP. and AT&T INC.