Trone et al v. Peanut Corporation of America Doc. 24

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
DAVID L. ANDERSON #149604
JACOB R. SORENSEN #209134
BRIAN J. WONG #226940
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Email: bruce.ericson@pillsburylaw.com

SIDLEY AUSTIN LLP
DAVID W. CARPENTER (admitted *pro hac vice*)
DAVID L. LAWSON (admitted *pro hac vice*)
BRADFORD A. BERENSON (admitted *pro hac vice*)
EDWARD R. McNICHOLAS (admitted *pro hac vice*)
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8010
Facsimile: (202) 736-8711
Email: bberenson@sidley.com

Attorneys for Defendants
AT&T CORP. and AT&T INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AT&T CORP., AT&T INC. and DOES 1-20, inclusive,<br><br>Defendants. | No. C-06-0672-VRW<br><br>**REPLY MEMORANDUM OF DEFENDANT AT&T CORP. IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date: June 23, 2006<br>Time: 9:30 a.m.<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker |



Dockets.Justia.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

**A.** Plaintiffs' Claims Should Be Dismissed On Grounds Of Statutory Immunity. ..... 1

**B.** The FAC Fails To Plead The Absence Of Absolute Common-Law Immunity. ..... 7

**C.** The FAC Establishes AT&T's Qualified Immunity As A Matter Of Law. ..... 11

**1.** Qualified immunity is available to private corporations. ..... 11

**2.** Qualified immunity is available against plaintiffs' statutory claims. ..... 12

**3.** Qualified immunity applies as a matter of law in this case. ..... 13

**D.** Plaintiffs Lack Standing. ..... 14

**1.** Plaintiffs have not alleged facts sufficient to establish "injury in fact." ..... 14

**2.** The state secrets privilege bars plaintiffs from establishing standing. ..... 16

III. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

## CASES

*Bartell v. Lohiser*,
12 F. Supp. 2d 640 (E.D. Mich. 1998), *aff'd* 215 F.3d 550 (6th Cir. 2000) ............ 11

*Benford v. America Broad. Co.*,
554 F. Supp. 145 (D. Md. 1982) ............ 13

*Berry v. Funk*,
146 F.3d 1003 (D.C. Cir. 1998) ............ 13

*Bibeau v. Pacific Nw. Research Found. Inc.*,
188 F.3d 1105 (9th Cir. 1999) ............ 11

*Blake v. Wright*,
179 F.3d 1003 (6th Cir. 1999) ............ 13

*Collins v. Jordan*,
110 F.3d 1363 (9th Cir. 1996) ............ 13

*Craska v. New York Tel. Co.*,
239 F. Supp. 932 (N.D.N.Y. 1965) ............ 10

*Crawford-El v. Britton*,
523 U.S. 574 (1998) ............ 5

*DeVargas v. Mason & Hanger-Silas Mason Co.*,
844 F.2d 714 (10th Cir. 1988) ............ 11, 12

*Eastland v. United States Servicemen's Fund*,
421 U.S. 491 (1975) ............ 10

*Ellis v. City of San Diego*,
176 F.3d 1183 (9th Cir. 1999) ............ 11

*Ellsberg v. Mitchell*,
709 F.2d 51 (D.C. Cir. 1983) ............ 17

*FDIC v. Meyer*,
510 U.S. 471 (1994) ............ 11

*Fowler v. Southern Bell Tel. & Tel. Co.*,
343 F.2d 150 (5th Cir. 1965) ............ 10

*Halkin v. Helms*,
598 F.2d 1 (D.C. Cir. 1978) ............ 17

*Halkin v. Helms*,
690 F.2d 977 (D.C. Cir. 1982) ............ 17, 18

*Halperin v. Kissinger*,
424 F. Supp. 838 (D.D.C. 1976), *rev'd on other grounds*,
606 F.2d 1192 (D.C. Cir. 1979) ....................7, 10

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) .................... 11

*Jacobson v. Rose*,
592 F.2d 515 (9th Cir. 1978) .................... 8

*Kasza v. Browner*,
133 F.3d 1159 (9th Cir. 1998).................... 8

*Laird v. Tatum*,
408 U.S. 1 (1972) .................... 15

*Little v. Barreme*,
6 U.S. (2 Cranch) 170 (1804).................... 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................... 14

*Mejia v. City of New York*,
119 F. Supp. 2d 232 (E.D.N.Y. 2000)....................11, 12

*Mullis v. United States Bankr. Ct. Dist. of Nev.*,
828 F.2d 1385 (9th Cir. 1987).................... 10

*O'Shea v. Littleton*,
414 U.S. 488 (1974) .................... 15

*Olagues v. Rusbinello*,
797 F.2d 1511 (9th Cir. 1986), *vacated as moot*, 484 U.S. 806 (1987) .................... 15

*Owen v. City of Independence*,
445 U.S. 622 (1980) ....................12, 13

*Peavy v. Dallas Independent Sch. Dist.*,
57 F. Supp. 2d 382 (N.D. Tex. 1999).................... 13

*Presbyterian Church v. United States*,
870 F.2d 518 (9th Cir. 1989) ....................14, 15

*Pulliam v. Allen*,
466 U.S. 522 (1984) .................... 10

*Richardson v. McKnight*,
521 U.S. 399 (1997) .................... 12

*Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*,
413 F.3d 1163 (10th Cir. 2005).................... 11

*In re Sealed Case*,
310 F.3d 717 (Foreign Intel. Surv. Ct. of Rev. 2002) .................... 6

*Sherman v. Four County Counseling Ctr.*, 987 F.2d 397 (7th Cir. 1993) ........ 11

*Smith v. Nixon*, 606 F.2d 1183 (D.C. Cir. 1979) ........ 7, 9

*In re State Police Litig.*, 888 F. Supp. 1235 (D. Conn. 1995) ........ 13

*Supreme Court v. Consumers Union*, 446 U.S. 719 (1980) ........ 10

*Tapley v. Collins*, 211 F.3d 1210 (11th Cir. 2000) ........ 9, 13

*United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984) ........ 15, 16

*United States v. First City Nat'l Bank of Houston*, 386 U.S. 361 (1967) ........ 2

*United States v. King*, 478 F.2d 494 (9th Cir. 1973) ........ 6

*United States v. The Paquete Habana*, 189 U.S. 453 (1903) ........ 8

*United States v. Texas*, 507 U.S. 529 (1993) ........ 8

*Warren v. Fox Family Worldwide*, 328 F.3d 1136 (9th Cir. 2003) ........ 4

*Webster v. Doe*, 486 U.S. 592 (1988) ........ 7

## DOCKETED CASES

*ACLU v. NSA*, Civ. 06-10204 (E.D. Mich. filed Jan. 17, 2006) ........ 3

*Center for Constitutional Rights v. Bush*, Civ. 06-313 (S.D.N.Y. filed Feb. 28, 2006) ........ 3

## CONSTITUTION AND STATUTES

U.S. Cont. art. 1 § 6 cl. 1 ........ 10

Pub. L. No. 107-40, 115 Stat. 224 (2001) ........ 6

18 U.S.C. § 2511 ........ 1, 5, 7
18 U.S.C. § 2520 ........ 1
18 U.S.C. § 2703(e) ........ 7

42 U.S.C. § 1983 ........ 10

47 U.S.C. § 605 .......... 10
50 U.S.C. § 1809(a) .......... 6

**LEGISLATIVE HISTORY**

H.R. Rep. No. 99-647 (1986) .......... 2
S. Rep. No. 99-541 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555 .......... 1, 4

## I. INTRODUCTION.

Plaintiffs' opposition to AT&T Corp.'s motion to dismiss is largely an exercise in misdirection. It relies on a combination of mischaracterization of AT&T's arguments, inapposite authority, and a blending of concepts that are legally distinct to try to muddy the waters sufficiently to persuade this Court to allow the case to proceed. The First Amended Complaint ("FAC") utterly fails to allege facts that could overcome AT&T's statutory and common law immunities from suit for its alleged cooperation with authorized government surveillance activities, and it nowhere alleges that plaintiffs themselves have been harmed in a sufficiently concrete and direct manner to satisfy Article III of the Constitution.

## II. ARGUMENT.

### A. Plaintiffs' Claims Should Be Dismissed On Grounds of Statutory Immunity.

Plaintiffs' opposition never cites, much less comes to grip with, the key statutory language that is the basis for AT&T's motion to dismiss on statutory immunity grounds. As set forth in AT&T's motion, in defining the cause of action for a violation of 18 U.S.C. § 2511, Congress stated that "*[e]xcept as provided in section 2511(2)(a)(ii),*" any person whose communication is intercepted may receive relief in a civil action, 18 U.S.C. § 2520(a) (emphasis added). By using this language in creating the cause of action, Congress made clear that to state a claim, a plaintiff must allege facts demonstrating that § 2511(2)(a)(ii) immunity does not exist. The legislative history confirms this. S. Rep. No. 99-541 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555 expressly recognizes that "the defendant can move to dismiss the complaint for failure to state a claim upon which relief can be granted" if the complaint fails to allege, among other things, that the communications service provider "acted without a facially valid court order or certification." *Id.* at 26, *reprinted in* 1986 U.S.C.C.A.N. at 3580. And because § 2511 immunity applies to all potential causes of action arising from activities undertaken pursuant to appropriate governmental authorizations, 18 U.S.C. § 2511(2)(a)(ii)(B), plaintiffs' failure to make the required allegations is fatal to all of their claims. Unable to

refute this central legal proposition, plaintiffs are left only to try to confuse the issue by mischaracterizing AT&T's argument and by conflating various merits defenses with the entirely different threshold immunity provided by § 2511.

Plaintiffs' argument that ECPA does not impose a "'heightened pleading'" standard (Opp. at 9-11) is directed at a straw man. AT&T makes no such claim. AT&T's assertion is that the inclusion of the phrase "'[e]xcept as provided in section 2511(2)(a)(ii)'" in the definition of the cause of action in § 2520(a), the structure of the statute, and its legislative history all demonstrate that a plaintiff must allege that § 2511(2)(a)(ii) immunity does not exist in order to state a claim. *See* AT&T Motion to Dismiss ("AT&T Mot.") at 7-8. AT&T, accordingly, does not rely on a heightened pleading standard; we simply argue that a plaintiff must plead all elements of his or her cause of action. Because plaintiffs have not done so, and cannot do so, the complaint should be dismissed.

The only authority on which plaintiffs rely for their assertion that the absence of certification is not an element of their claim – a snippet of legislative history, Opp. at 11 – deals solely with the good faith defense in 18 U.S.C. § 2520(d), which is a defense on the merits that is wholly separate from § 2511(2)(a)(ii)'s threshold immunity. *See* H.R. Rep. No. 99-647, at 50 (1986). Indeed, the designation of "good faith reliance" as a "defense" indicates that § 2511(2)(a)(ii) does not describe an affirmative defense but rather delineates a threshold immunity that must be overcome in order to state a § 2520(a) claim.

Plaintiffs next argue that § 2511(2)(a)(ii) immunity must be an affirmative defense because *other* exceptions to Title III have been characterized as affirmative defenses. Opp. at 11-12. Plaintiffs' argument is a *non sequitur*. As even plaintiffs recognize, *each* case they cite deals with exceptions *other* than § 2511(2)(a)(ii).[1] None of those other exceptions

---

[1] *See* Opp. at 11-12 (citing *Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005) (§ 2511(2)(d)), *In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003) (§ 2511(2)(d)), *United States v. Jones*, 839 F.2d 1041, 1050 (5th Cir. 1988) (§ 2511(2)(c)), *United States v. Harvey*, 540 F.2d 1345, 1352 n.9 (8th Cir. 1976) (§ 2511(2)(a)(i))). Plaintiffs' citation to *United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 366 (1967) (Opp. 11) is irrelevant; it addresses who bears a burden of proof, not elements required for pleading.

is, like § 2511(2)(a)(ii), carved out of the cause of action defined in § 2520(a). Both the text and the structure of the statute thus confirm that § 2511(2)(a)(ii) immunity is in a different legal category from the merits defenses on which plaintiffs rely. *See* AT&T Mot. at 7. Plaintiffs cite no authority to the contrary.

Ultimately, plaintiffs fall back on an argument that the absence of certification cannot be an element of their claims because they cannot allege it. Opp. at 13. Preliminarily, plaintiffs are wrong to suggest that if the absence of certification must be alleged, there can never be a § 2511 claim. Section 2511 broadly prohibits disclosure to "any other person"; thus, in virtually any § 2511 case involving a disclosure to someone other than a governmental official, a plaintiff might reasonably allege the absence of § 2511(a)(2)(ii) immunity. Even in cases involving disclosure to the government, there are circumstances where plaintiffs could, consistent with Rule 11, allege that no certification exists – for example, where the government denies that it has authorized surveillance. Here, all allegations are to the contrary. In this situation, it is true that plaintiffs cannot reasonably assert the absence of certification, but it does not follow that they must be entitled to sue anyway. The ECPA reflects clear congressional intent to immunize carriers from suit when they are merely alleged to have cooperated with government-authorized national security surveillance. Requiring suits making such claims to be dismissed at the threshold due when a plaintiff cannot plead lack of certification is wholly consistent with the scheme Congress enacted. Plaintiffs seeking to challenge such programs may attempt to sue the government directly, as many have done in relation to the NSA program,[2] but they may not sue allegedly cooperating carriers. Plaintiffs' complaint is not really with AT&T but with the United States. The statutory scheme providing immunity for telecommunications carriers who are alleged to have cooperated with the government is entirely consistent with Congress' intent that such claims be brought, if at all, against the

---

[2] *See, e.g.*, *ACLU v. NSA*, Civ. 06-10204 (E.D. Mich. filed Jan. 17, 2006); *Center for Constitutional Rights v. Bush*, Civ. 06-313 (S.D.N.Y. filed Jan. 17, 2006).

government.

Plaintiffs next argue that if they were required to plead the absence of a certification, they have done so. Any fair reading of the complaint reveals that this is incorrect.

First, plaintiffs assert that because they pled bad faith, they stated a claim under § 2511. This is an incorrect reading of the statute, which requires an allegation that the defendant lacked the required government authorization – irrespective of mental state. *See* AT&T Mot. at 5-13. The issue of bad faith arises under the merits defense in § 2520(d) and is considered only if § 2511 immunity is absent. Moreover, plaintiffs have misread even the legislative history. Plaintiffs quote the Senate Report, S. Rep. No. 99-541, at 26, *reprinted in* 1986 U.S.C.C.A.N. at 3580, and focus on the word "or," claiming on that basis that Congress intended that a plaintiff can always survive a motion to dismiss in a § 2520 case by alleging bad faith. Opp. at 14. The Senate Report, however, simply lists factual circumstances in which a pleading in a § 2520 case might be adequate. For example, in a case not involving disclosures to government officials, a complaint alleging bad faith and disclosure might be sufficiently pled, while in cases involving disclosures to government officials, a complaint must allege the absence of certification or court order. The Report cannot be interpreted, as plaintiffs do, to mean that a plaintiff can always state a claim by alleging that the cooperating provider acted in bad faith.

Second, plaintiffs argue that they alleged the absence of a certification "by alleging that AT&T acted without 'lawful authorization.'" Opp. at 14 (quoting FAC ¶ 81). This is not a factual allegation, but a legal conclusion that is not deemed true for purposes of deciding a motion to dismiss, *see Warren v. Fox Family Worldwide*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). In addition, the context of FAC ¶ 81 makes plain that it is not a factual allegation that no certification exists: it references the "above-described acts" and claims that they occurred without "lawful authorization," FAC ¶ 81, and then is immediately followed by an allegation that "at all relevant times, the government instigated, directed and/or tacitly approved all of the above-described acts of AT&T Corp.," *id.* ¶ 82.

Plaintiffs' theory in their complaint (and in their briefs) is that any governmental authorization that exists could not be "lawful" and therefore sufficient to immunize AT&T from suit because the Program is, in their view, obviously unlawful. This theory is self-validating and wrong as a matter of law, as the next section explains. But more critically here, in the absence of "specific nonconclusory factual allegations" that AT&T, if it acted, lacked a certification, *see Crawford-El v. Britton*, 523 U.S. 574, 598 (1998), AT&T's statutory immunity protects it from suit. For identical reasons, plaintiffs' bare allegation of an "illegal collaboration" with the government, FAC ¶ 8, is insufficient. In sum, there is no factual allegation in the FAC that can be contorted into an allegation that defendants did not receive a § 2511(2)(a)(ii) certification.

Finally, plaintiffs argue that "no amount of government authorization can immunize AT&T from liability for the illegal surveillance activities alleged in the complaint." Opp. at 15. This is really the heart of plaintiffs' submission, but it is an argument based on ideology, not law.

As an initial matter, this argument depends on the notion that a facially valid certification cannot be relied upon by a carrier alleged to be assisting the government unless the carrier conducts some independent assessment of the underlying legality of the surveillance being authorized. This interpretation of § 2511(2)(a)(ii) directly contravenes the plain language of the statute and Congress's purpose in providing carriers with absolute immunity. The statute specifically provides that carriers are immune from suit for assisting with warrantless surveillance if they have "been provided with" a written certification from certain specified persons attesting to the need for and legality of such surveillance. The wording of the statute, which requires no particular mental state or determination by the carrier, is incompatible with the notion that the carrier is obligated to look behind the certification. Indeed, the immunity language itself expressly states that "no cause of action" may be maintained against a carrier for actions taken "in accordance with the terms of a . . . certification," 18 U.S.C. § 2511(2)(a)(ii), emphasizing that carriers may rely on the "terms" of a certification. There is no requirement of verification; indeed, in most

circumstances there would be no way for a carrier to investigate the facts or legal judgments underlying a certification. And on the logic of plaintiffs' argument, providers would similarly be obligated to look behind court orders, which are referenced in the same section. Any such requirement would be absurd, and would chill providers' ability to provide swift cooperation to the United States, which is the obvious purpose of the immunity. *See also* AT&T Mot. at 6-7.

Moreover, plaintiffs' argument that any certification in this case would necessarily be unlawful because permissible warrantless surveillance is "strictly cabined to four situations" specified in ECPA and FISA, Opp. at 15, is wrong as a legal matter.[3] Most obviously, FISA itself recognizes that Congress may authorize electronic surveillance by statutes other than FISA. *See* 50 U.S.C. § 1809(a) (prohibiting any person from intentionally "engag[ing] in electronic surveillance under color of law except as authorized by statute"). The United States has indeed argued that the post-9/11 Authorization for Use of Military Force, Pub. L. No. 107-40, § 2(a), 115 Stat. 224 (2001), is one such statute. Moreover, plaintiffs ignore the President's inherent constitutional authority to gather intelligence to assist in the conduct of the nation's foreign and military affairs. *See, e.g., In re Sealed Case*, 310 F.3d 717, 742 (Foreign Intel. Surv. Ct. of Rev. 2002) (collecting cases). This constitutional power, too, could serve as a lawful basis upon which the Attorney General could render a certification outside the four narrow statutory circumstances acknowledged by plaintiffs.[4]

In sum, plaintiffs' claim that any certification received by defendants would

---

[3] Plaintiffs also cite the portion of the statute authorizing carriers to provide information "to persons authorized by law to . . . conduct electronic surveillance," 18 U.S.C. § 2511(2)(a)(ii), perhaps implying that a carrier violates the statute where the persons to whom it provides the information are not acting lawfully. This phrase, however, merely defines the category of persons who are entitled to receive surveillance information.

[4] *United States v. King*, 478 F.2d 494 (9th Cir. 1973), relied on by plaintiffs, Opp. at 16 & n.18, is irrelevant, because *King* involved only an issue of statutorily-required suppression of the fruits of an improper Title III wiretap in a criminal context. That case had nothing to do with carrier liability, foreign intelligence surveillance, or certifications for warrantless interception.

necessarily be unlawful is irrelevant to the critical point – that plaintiffs must plead the absence of certification as an element of their claim and did not. But in any event, plaintiffs' irrelevant claim has the additional problem of being wrong. Plaintiffs' failure to plead that AT&T did not receive a statutory authorization is fatal to their claims.[5]

### B. The FAC Fails To Plead The Absence Of Absolute Common-Law Immunity.

In its opening memorandum (at 13-15), AT&T showed that it has absolute common-law immunity from this suit under court decisions that recognized the importance of insulating telecommunications carriers that cooperate with foreign intelligence or law enforcement investigations. *See Smith v. Nixon*, 606 F.2d 1183, 1191 (D.C. Cir. 1979); *Halperin v. Kissinger*, 424 F. Supp. 838, 846 (D.D.C. 1976), *rev'd on other grounds*, 606 F.2d 1192 (D.C. Cir. 1979). Plaintiffs' contrary arguments are unavailing.

Plaintiffs' initial argument against absolute common-law immunity, like their initial argument against statutory immunity, is directed at a straw man. Defendants are not claiming official immunity as "essential actor[s] in our constitutional system of government." Plaintiffs' arguments based on official immunity cases are therefore wholly beside the point. Opp. at 19-21. Rather, defendants are asserting the specific immunity for telecommunications carriers assisting the government in conducting foreign intelligence or law enforcement investigations recognized in *Smith* and *Halperin.*[6]

---

[5] Plaintiffs assert that, assuming § 2511(2)(a)(ii) immunizes defendants from statutory claims, it cannot preclude plaintiffs' constitutional claims. Plaintiffs' argument is that Congress must clearly evince its intent for constitutional claims to be precluded, Opp. at 17 n.19, but there could hardly be a stronger statement of intent to preclude than that contained in the statutes protecting telecommunications providers at issue "[n]o cause of action shall lie in any court . . . ." 18 U.S.C. § 2511(2)(a)(ii); *id.* § 2703(e). The statutory text in *Webster v. Doe*, 486 U.S. 592 (1988), which merely committed certain employment decisions to the discretion of the CIA Director and did not expressly preclude judicial review at all, is utterly dissimilar.

[6] Plaintiffs claim without further explanation that the "parallels are manifest" between the immunity that defendants assert here and the immunity that the Supreme Court rejected in *Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804). Putting aside the two hundred years of intervening law on qualified and official immunity and the analysis in *Smith* and *Halperin*, the Supreme Court's denial of immunity to "a naval officer acting in a war zone

(continued…)

With respect to the immunity that defendants *are* asserting, plaintiffs dispute its existence on two grounds. First, plaintiffs erroneously contend that the Ninth Circuit "necessarily, and properly, rejected" the common-law immunity in *Jacobson v. Rose*, 592 F.2d 515 (9th Cir. 1978). Opp. at 22. But *Jacobson* did not involve a claim of common-law immunity, and the court did not address, much less reject, the immunity. In *Jacobson*, the Ninth Circuit rejected the telephone company's argument that it did not violate Title III as a statutory matter simply because "none of its employees actually listened to tapped conversations," 592 F.2d at 522, but then reversed a verdict against the company, holding that it was entitled based on the facts of the case to an instruction on the statutory good faith defense. *See id.* at 522-24. Plaintiffs claim that the Ninth Circuit held "that Congress intended the statutory good faith defense of 18 U.S.C. § 2520 to be the exclusive means by which a telecommunications provider may raise its cooperation with the government as a defense to liability." Opp. at 22. But the case says no such thing; *Jacobson* did not even address, let alone decide, the exclusivity of the statutory good faith defense or the availability of common law immunity. The court merely cited the § 2520 defense to refute the carrier's concern that the court's interpretation of the statute could result in liability for a carrier's compliance with a court order.

Second, plaintiffs' contention that any common-law immunity was displaced by subsequent statutory provisions is equally meritless. Plaintiffs ignore the fundamental principle that courts presume that Congress intended to preserve and supplement the common law, absent an express legislative statement to the contrary. AT&T Mot. at 13; *see United States v. Texas*, 507 U.S. 529, 534 (1993); *Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998). Plaintiffs do not even attempt to demonstrate that any statute contains an

(…continued)
at the direction of the Commander in Chief," Opp. at 21, does not control the question whether a civilian telecommunications carrier that provides technical assistance to a government-run investigation is entitled to immunity. Moreover, in *United States v. The Paquete Habana*, 189 U.S. 453 (1903), Justice Holmes expressly limited *Little*, holding that, precisely as is alleged to be the case here, "when the act of a public officer is authorized or has been adopted by the sovereign power, whatever the immunities of the sovereign, the agent thereafter cannot be pursued." *Id.* at 465.

express legislative statement that satisfies this exacting standard; and no such statement exists. *Cf. Tapley v. Collins*, 211 F.3d 1210, 1216 (11th Cir. 2000) ("[t]he Federal Wiretap Act lacks the specific, unequivocal language necessary to abrogate the qualified immunity defense"). Accordingly, the common-law immunity asserted by defendants survived the enactment of the statutory civil liability provisions and supplements the statutory immunities that Congress created.

Plaintiffs are left to impugn the immunity recognized in *Smith* and *Halperin* as "a fiction," an "*ad hoc*" defense, and "*ipse dixit*," Opp. at 22-23 – transparent attempts to avoid the courts' clear holdings. *Smith* and *Halperin* remain good law, never having been overruled, narrowed, or questioned by any court. While the immunity has only infrequently been invoked, this reflects the fact that few plaintiffs have sued carriers for allegedly cooperating with authorized government surveillance. Plaintiffs' related assertion that *Smith* and *Halperin* established "some variety of good faith defense that had to be pled and proven," rather than an immunity, is clearly wrong. Opp. at 23. *Smith* affirmed the district court's *dismissal* of an action against the telephone company on the ground that the allegations against the company could not "'give rise to liability for any statutory or constitutional violation.'" 606 F.2d at 1191 (quoting *Halperin*, 424 F. Supp. at 846). This is immunity from suit, not a defense on the merits that the carrier had to prove.

Notably, plaintiffs have virtually no response to AT&T's showing that the FAC pleads a classic situation for applying the common-law immunity. AT&T Mot. at 14-15. The FAC pleads facts alleging that AT&T had only a limited technical role in facilitating *the government's* surveillance and that AT&T believed that its actions were authorized. *Id.* If these prerequisites exist – as they are alleged to do – the carrier is entitled to immunity. Plaintiffs' observation that the FAC alleges that AT&T "actively" transmits the call records and communications of its customers to the government is an irrelevant word game unsupported by the cases they cite, Opp. at 24, because the availability of the common-law

immunity does not turn on the illusory distinction between whether the carrier's assistance to the government is "passive" or "active" – however those terms might be defined.[7]

Finally, contrary to plaintiffs' suggestion, Opp. at 18, there is no rule that all forms of absolute immunity bar damages actions only. Many forms of absolute immunity bar claims for declaratory and injunctive relief, including the absolute immunity afforded by the Constitution's Speech or Debate Clause, art. I, § 6, cl. 1, *see Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503 (1975); the common law immunity of state officials for legislative acts, *see Supreme Court v. Consumers Union*, 446 U.S. 719, 732-33 (1980); and (contrary to plaintiffs, *see* Opp. at 18) absolute judicial immunity in § 1983 suits, *see* 42 U.S.C. § 1983 (overruling in substantial part, *Pulliam v. Allen*, 466 U.S. 522 (1984), plaintiffs' principal authority).[8]

The absolute common-law immunity recognized in *Smith* and *Halperin* is in this category. *Smith* and *Halperin* contain no indication that the immunity is limited to damages claims. Indeed, *Halperin* involved claims for declaratory and injunctive relief, as well as damages, *see* 424 F. Supp. at 840, and the court recognized the telephone company's immunity against all such claims. Moreover, the purposes of the common-law immunity would be undermined if carriers faced lawsuits for equitable relief based on cooperation with the government. Such lawsuits impose significant monetary and public relations costs on carriers, and would therefore make carriers reluctant to comply with requests for

---

[7] Plaintiffs' attempts to distinguish *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150 (5th Cir. 1965), and *Craska v. New York Tel. Co.*, 239 F. Supp. 932 (N.D.N.Y. 1965), are equally unpersuasive. *See* Opp. at 23 n.20. Their argument about *Fowler* is a straw man. Defendants are not relying on the *official immunity* for federal officers under the Federal Tort Claims Act, but on *Fowler*'s recognition of a defense to civil liability for carriers that cooperate with government officials. 343 F.2d at 156-57. With respect to *Craska*, plaintiffs assert that the common-law immunity may not have survived the enactment of the civil liability provision of 47 U.S.C. § 605. But as demonstrated *supra*, courts presume that statutes preserve the common law absent express Congressional statement to the contrary; plaintiffs do not even attempt to make the necessary showing.

[8] *Pulliam* also does not apply to *federal* officials sued in *Bivens* actions. *See Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1394 (9th Cir. 1987) ("The judicial or quasi-judicial immunity available to federal officers is not limited to immunity from damages, but extends to actions for declaratory, injunctive and other equitable relief").

cooperation. And like damages claims, suits for equitable relief would, contrary to the intent of Congress, leave carriers caught in the middle of disputes that should be between plaintiffs and the government. Accordingly, common-law immunity bars plaintiffs' claims for injunctive and other equitable relief, as well as their claims for damages.

### C. The FAC Establishes AT&T's Qualified Immunity As A Matter Of Law.

#### 1. Qualified immunity is available to private corporations.

In opposing AT&T's claim of qualified immunity, plaintiffs first assert that qualified immunity is available only to private individuals, not corporations. Opp. at 24-25. But Plaintiffs base their proposed rule solely on cases involving individuals and municipal liability. The authority on point, which plaintiffs fail to acknowledge, is to the contrary: numerous decisions hold that qualified immunity is available to private corporations.[9]

The vast majority of cases discussing qualified immunity speak in terms of individuals because, historically, the doctrine developed to protect government *officials* from liability. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Government *entities* are generally shielded by sovereign immunity, *see FDIC v. Meyer*, 510 U.S. 471 (1994), and have no need for qualified immunity. The general statements in these cases indicate little about whether private corporations may receive qualified immunity.

---

[9] *See, e.g., Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.* 413 F.3d 1163, 1166 (10th Cir. 2005) ("there is no bar against a private corporation claiming qualified immunity."); *Sherman v. Four County Counseling Ctr.*, 987 F.2d 397, 403 n.4 (7th Cir. 1993) (finding "no persuasive reason to distinguish between a private corporation and a private individual" in analyzing qualified immunity); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 723 (10th Cir. 1988) (the policy reasons for qualified immunity "apply equally to all private defendants…whether individuals or corporations"); *Mejia v. City of New York*, 119 F. Supp. 2d 232, 268 (E.D.N.Y. 2000) (qualified immunity is available to courier service enlisted by law enforcement to make an allegedly unlawful arrest); *Bartell v. Lohiser*, 12 F. Supp. 2d 640, 645-46 (E.D. Mich. 1998) (qualified immunity is available to private contractor "performing a discrete public service task at the express direction and close supervision of government officials"). The Ninth Circuit has not decided the issue, but has both appeared to assume that qualified immunity can cover corporations, *see Bibeau v. Pacific Nw. Research Found. Inc.*, 188 F.2d 1105 (9th Cir. 1999) (finding that a research firm was not entitled to qualified immunity under *Richardson* without addressing entity immunity), and also stated in dictum that it cannot, *see Ellis v. City of San Diego*, 176 F.3d 1183, 1191 (9th Cir. 1999).

Likewise, the Supreme Court's analysis in *Owen v. City of Independence*, 445 U.S. 622 (1980), is driven by the unique factors relating to municipal liability and has little bearing on the liability of private corporations. The reasoning of that case, which derives from the inhibiting effect fears of financial liability can have on individuals, as opposed to governmental entities, indeed supports the availability of qualified immunity for private corporations, which are subject to similar incentive effects. *See id.* at 652-56.

Qualified immunity cases distinguish between governmental defendants and other defendants – not between individuals and entities. *See DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 723 (10th Cir. 1988). The availability of qualified immunity for a private party depends on the two-factor test articulated in *Richardson v. McKnight*, 521 U.S. 399, 407 (1997), which can be satisfied by an entity, and is satisfied by AT&T here.[10] The FAC's allegations essentially claim that AT&T is "serving as an adjunct to government in an essential governmental activity" and "acting under close official supervision." *Id.* at 413. AT&T's alleged conduct is thus eligible for qualified immunity under the *Richardson* test. Conducting surveillance to prevent hostile foreign attacks is a traditional governmental function of the highest importance that, in an electronic era, may require the facilities of private companies. These companies should be entitled to qualified immunity, lest the threat of corporate monetary liability introduce "unwarranted and unconscionable consideration" into the cooperation process, potentially paralyzing the government's ability to conduct efficient electronic surveillance. *Owen*, 445 U.S. at 656.

**2. Qualified immunity is available against plaintiffs' statutory claims.**

Plaintiffs next contend that qualified immunity does not apply to their statutory

---

[10] Plaintiffs' argument that telecommunications carriers generally have no general common-law immunity from tort actions, *see* Opp. at 25-27, is irrelevant. AT&T claims a specific immunity based on the actions alleged in the FAC – cooperation with government officials who are conducting foreign intelligence surveillance. In *Mejia*, 119 F. Supp. 2d at 261, for example, the court analyzed whether a private courier had common-law immunity when enlisted by law enforcement to make an allegedly unlawful arrest, because the suit was precipitated by the courier's alleged participation in such an arrest. The court did not analyze whether there is a common-law immunity for being a private courier; that was not the function at issue in the case.

claims. Opp. at 27-28. Plaintiffs rely on the sparse reasoning in *Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998). In *Berry*, the D.C. Circuit essentially held that Congress "occupied the field" by creating a good faith defense to ECPA claims, leaving no room for pre-existing common-law qualified immunity. *Id.* There are two flaws in this reasoning. First, it ignores the established principle that Congress must specifically abrogate an immunity that is firmly rooted in the common law and supported by strong policy reasons. *See Owen*, 445 U.S. at 637. Since *Berry*, two courts of appeal have disagreed with its holding, finding that qualified immunity survives in the ECPA context because Congress did not clearly indicate that it wished to abolish the immunity by creating a good faith defense. *Tapley v. Collins*, 211 F.3d at 1216; *Blake v. Wright*, 179 F.3d 1003, 1012 (6th Cir. 1999).[11] Second, *Berry*'s holding that the creation of a good faith defense supplants qualified immunity is illogical, because qualified immunity provides more protection than a good faith defense.[12]

**3. Qualified immunity applies as a matter of law in this case.**

Where, as here, qualified immunity is available, a two-part analysis determines whether a defendant is entitled to it. The court must determine: (1) "whether the plaintiff has alleged a violation of a right that is clearly established"; and (2) "whether, under the facts alleged, a reasonable official could have believed that his conduct was lawful." *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996). As demonstrated by the past six months of public, scholarly, and policy debate, the legality of the government's surveillance program – and correspondingly, whether the government violated any legal norms – are the subjects of reasonable disagreement. And, because there is no clear law establishing that

---

[11] Numerous lower courts have also recognized that qualified immunity can be available in Title III cases. *See, e.g., In re State Police Litig.*, 888 F. Supp. 1235, 1266-67 (D. Conn. 1995); *Benford v. American Broad. Co.*, 554 F. Supp. 145, 153-54 (D. Md. 1982); *Peavy v. Dallas Indep. Sch. Dist.*, 57 F. Supp. 2d 382, 390-91 (N.D. Tex. 1999).

[12] *See Blake*, 179 F.3d at 1012 ("police officers and public officials performing governmental functions should not lose their qualified immunity because of an affirmative defense which might or might not protect them but would, in all events, require they be subject to extended litigation and deprive them of the benefits of qualified immunity.").

the government acted improperly, *a fortiori*, no established law forbade AT&T's alleged assistance. Moreover, plaintiffs' allegations about the President's approval of the program establish that any company assisting in the alleged program would have had a reasonable belief that its actions were lawful. Accordingly, AT&T is entitled to qualified immunity on the facts as alleged, shielding AT&T from liability for civil damages.[13]

**D. Plaintiffs Lack Standing**.

Plaintiffs have not and cannot establish standing. They have not alleged facts sufficient to establish "injury in fact." And, in light of the state secrets privilege invoked by the United States, Plaintiffs *cannot* establish standing.

**1. Plaintiffs have not alleged facts sufficient to establish "injury in fact."**

To establish constitutional standing, plaintiffs must allege specific facts demonstrating (among other things) that they suffered "an injury in fact" that is "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 550-61 (1992). Plaintiffs' only claim is that they have met this requirement, arguing that "[at] its core, the Complaint alleges that AT&T is, *as a factual matter*, subjecting plaintiffs and millions of other innocent Americans to illegal surveillance and disclosure of private records." Opp. at 8 (emphasis added).[14] In search of that "factual matter," plaintiffs focus on a single sentence in the FAC, which alleges that: "'[o]n information and belief,'" AT&T has been "'intercepting and disclosing to the government the contents of its customers communications as well as detailed communications records about millions of its customers, *including Plaintiffs and class members*.'" Opp. at 4 (quoting FAC ¶ 6). But plaintiffs' unsubstantiated "belief" that their communications have been intercepted or that

---

[13] The Ninth Circuit has held that qualified immunity precludes liability for civil damages, but does not foreclose equitable relief. *See Presbyterian Church v. United States*, 870 F.2d 518, 527 (9th Cir. 1989). As a result, a determination that AT&T is entitled to qualified immunity would not by itself result in dismissal of the entire case.

[14] Similarly, Plaintiffs do not dispute that they must establish prudential standing by alleging facts showing that their situation differs from that of the public generally. Yet Plaintiffs assert nothing more than a generalized, conclusory grievance that they allege is shared by millions of Americans.

their communications records have been disclosed is insufficient to establish "injury in fact." Plaintiffs may not establish "injury in fact" with "generalized and nonspecific" allegations that they have been subjected to unlawful surveillance. *See United Presbyterian Church v. Reagan*, 738 F. 2d 1375, 1380-81 (D.C. Cir. 1984) (rejecting as insufficient allegations that a plaintiff "discerns a long-term pattern of surveillance of its members," "has reason to believe that for a long time, its officers . . . have been subjected to government surveillance," or "has been informed on numerous occasions of instances of mail being intercepted").

Plaintiffs allege no specific facts suggesting that their personal communications have been intercepted or their records targeted for acquisition by government agencies, or even any reason based on their conduct why that would be likely. Indeed, statements by the Attorney General, referenced by Plaintiffs (FAC ¶¶ 33-35) and attached as Ex. J to AT&T Corp.'s Request for Judicial Notice (Dkt. 87), indicate that the Terrorist Surveillance Program is limited to monitoring communications involving members of al Qaeda or those affiliated with or assisting al Qaeda. The FAC expressly excludes from the purported class "anyone who knowingly engages in sabotage or international terrorism, or activities that are in preparation thereof." FAC ¶ 70. By their own allegations, Plaintiffs are not targets of the Terrorist Surveillance Program and have failed to establish "injury in fact."[15]

Plaintiffs' statutory claims add nothing. *See O'Shea v. Littleton,* 414 U.S. 488, 495 n.2 (1974) ("[S]tatutes do not purport to bestow the right to sue in the absence of any indication that invasion of the statutory right has occurred or is likely to occur"). True, plaintiffs allege that various statutes have been violated. *See* Opp. at 5-6. But again plaintiffs fail to allege any facts to establish that *their* statutory rights have been violated.

---

[15] Plaintiffs cannot establish "injury in fact" by claiming that their First Amendment rights have been chilled. *See* Opp. at 7. Subjective allegations of "chill" are no substitute for allegations of specific harm and cannot establish standing. *See Laird v. Tatum,* 408 U.S. 1, 13-15 (1972). In both cases cited by plaintiffs on this point, the plaintiffs specifically alleged that they had been subject to government surveillance. *See Olagues v. Rusbinello,* 797 F.2d 1511, 1518-19 (9th Cir. 1986), *vacated as moot,* 484 U.S. 806 (1987); *Presbyterian Church* 870 F.2d at 520-23.

Noticeably absent is any quotation of factual allegations in the FAC showing injury to them personally. No such allegations exist.[16]

This is a case like *United Presbyterian*, 738 F.2d at 1380, where the plaintiffs alleged that "some of them have been or are currently subjected to unlawful surveillance." In *United Presbyterian*, one of the plaintiffs alleged that it "discerns a long-term pattern of surveillance of its members"; another plaintiff alleged that it "has reason to believe that for a long time its officers. . . have been subjected to government surveillance"; and yet another alleged that it "has been informed on numerous occasions of instances of [its] mail" being intercepted. *Id.* at 1381. But the Court of Appeals affirmed dismissal of the complaint in *United Presbyterian*, because "[m]ost, if not all of the allegations on that score are in any event too generalized and nonspecific to support a complaint." *Id.* at 1380. Here, even these factual allegations are non-existent.

At bottom, plaintiffs suggest it is likely that they "*have already been* ensnared" in the Program, simply because the Program allegedly "'intercepts millions of communications'" and "'collects … a vast amount of communications traffic data.'" Opp. at 2. Plaintiffs claim that there has been "indiscriminate[ ]" surveillance of AT&T customers (*id.* at 4 n.4), but they do not allege facts establishing that they themselves have been the subject of surveillance or that their communications have been intercepted.

**2. The state secrets privilege bars plaintiffs from establishing standing.**

The United States has invoked the state secrets privilege and demonstrated why plaintiffs will be unable to prove that they have standing without state secrets information. *See* Dkt. 124, at 16-20. The United States invokes the state secrets privilege with respect to "any information tending to confirm or deny (a) the alleged intelligence activities, (b) whether AT&T was involved with any such activity, and (c) whether a particular

[16] Plaintiffs miss the point in arguing that the statutes confer standing on "anyone whose communications have been intercepted or subjected to electronic surveillance," regardless of whether the communications have been listened to. Opp. at 7 n.8. Plaintiffs' own argument assumes the very "injury in fact" that the FAC itself fails to allege with specificity: that plaintiffs' communications have been intercepted.

individual's communications were intercepted as a result of any such activity." *Id.* at 17-18. The United States correctly explains that "[w]ithout these facts – which should be removed from the case as a result of the state secrets assertion – Plaintiffs cannot establish any alleged injury that is fairly traceable to AT&T." *Id.* at 18.

Plaintiffs' opposition only underscores the validity of the government's point by making a number of assertions that implicate information that is at the core of the state secrets privilege. It asserts, for example, that "AT&T is indiscriminately surveilling the communications of all its customers," that there is an NSA surveillance program which "'intercepts millions of communications,'" and that AT&T is "intercepting and disclosing to NSA" the communications transmitted via its facilities and is "disclosing the contents of its entire database of phone call and Internet records." Opp. at 2, 4 n.4. But plaintiffs cannot prove any of these assertions without information covered by the state secrets privilege. They therefore cannot establish standing. *See Halkin v. Helms* (*"Halkin I"*), 598 F.2d 1, 11 (D.C. Cir. 1978); *Halkin v. Helms* (*"Halkin II"*), 690 F.2d 977, 997 (D.C. Cir. 1982); *Ellsberg v. Mitchell*, 709 F.2d 51, 565 (D.C. Cir. 1983).

The *Halkin* decisions are dispositive. Two separate NSA operations were at issue. 598 F.2d at 4. One was Operation "MINARET," conducted by the NSA "as a part of its regular signals intelligence activity in which foreign electronic signals were monitored." *Id.* The district court held that the state secrets privilege covered Operation MINARET. *Id.* at 5. It dismissed the plaintiffs' claims because they were predicated upon the acquisition by NSA of plaintiffs' communications: because of the state secrets privilege, "the ultimate issue, the fact of acquisition, could neither be admitted nor denied." *Id.* at 5. In *Halkin I,* the Court of Appeals affirmed.[17] *Id.* at 5, 11. In *Halkin II,* it said:

> On a prior appeal, this court upheld a claim of the state secrets privilege by the Secretary of Defense and held that NSA was not

[17] In the course of its analysis, the Court of Appeals observed: "In the case before us the acquisition of the plaintiffs' communications is a fact vital to their claim. No amount of ingenuity in putting questions on discovery can outflank the government's objection that disclosure of this fact is protected by privilege." 598 F.2d at 7.

> required to disclose in discovery whether it had intercepted any of plaintiffs' communications. As a result of that ruling, plaintiffs' claims against the NSA and several individual officials connected with that agency's monitoring activities could not be proved, and the complaint as to those defendants was dismissed.

690 F.2d at 984 (internal citation omitted). In *Halkin II*, the Court of Appeals also considered whether the plaintiffs could bring a claim against the CIA for submitting "watchlists" to NSA, which presumably resulted in interception of communications by persons named on the watchlists. *Id.* at 984, 997. The Court of Appeals held that in light of the state secrets privilege, the plaintiffs could not demonstrate standing in this context either: "[T]he absence of proof of actual acquisition of [the plaintiffs'] communications is fatal to their watchlisting claims." *Id.* at 999-1000. These aspects of *Halkin* are directly controlling. Here, plaintiffs cannot succeed without proof that their communications have been intercepted and disclosed by AT&T to the NSA. But the state secrets privilege bars plaintiffs from proving any such interception. The list of the targets of the alleged NSA program would naturally be one of the most sensitive secrets associated with the program. This flaw is fatal to all of their claims.

## III. CONCLUSION.

For the foregoing reasons, the Amended Complaint should be dismissed.

Dated: June 16, 2006.

PILLSBURY WINTHROP
SHAW PITTMAN LLP
BRUCE A. ERICSON
DAVID L. ANDERSON
JACOB R. SORENSEN
BRIAN J. WONG
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

By /s/ Bruce A. Ericson
Bruce A. Ericson

SIDLEY AUSTIN LLP
DAVID W. CARPENTER
DAVID L. LAWSON
BRADFORD A. BERENSON
EDWARD R. MCNICHOLAS
1501 K Street, N.W.
Washington, D.C. 20005

By /s/ Bradford A. Berenson
Bradford A. Berenson

Attorneys for Defendants AT&T CORP. and AT&T INC.