Trone et al v. Peanut Corporation of America Doc. 245

PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov
RENÉE S. ORLEANS
renee.orleans@usdoj.gov
ANDREW H. TANNENBAUM
andrew.tannenbaum@usdoj.gov
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 514-4263/(202) 514-4504
Fax: (202) 616-8460/(202) 616-8202/(202) 318-2461

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TASH HEPTING, GREGORY HICKS
CAROLYN JEWEL and ERIK KNUTZEN
on Behalf of Themselves and All Others
Similarly Situated,

Plaintiffs,

v.

AT&T CORP., AT&T INC. and
DOES 1-20, inclusive,

Defendants.

Case No. C-06-0672-VRW

**UNITED STATES' REPLY IN SUPPORT OF THE ASSERTION OF THE MILITARY AND STATE SECRETS PRIVILEGE AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT BY THE UNITED STATES**

Judge: The Hon. Vaughn R. Walker
Hearing Date: June 23, 2006
Time: 9:30 a.m.



Dockets.Justia.com

## (U) TABLE OF CONTENTS


Page

**(U)** INTRODUCTION . . . . . 1

**(U)** ARGUMENT . . . . . 3

I. **(U)** PLAINTIFFS HAVE NOT ESTABLISHED AND CANNOT ESTABLISH THE FACTS NECESSARY TO DEMONSTRATE STANDING OR TO PROVE THEIR CLAIMS. . . . . . 3

A. **(U)** Plaintiffs' Claim That They Have Established a *Prima Facie* Case is Both Irrelevant and Incorrect . . . . . 3

B. **(U)** Plaintiffs' Claim that They Can Establish Standing is Erroneous. . . . . . 6

C. **(U)** Information in the Public Domain Does Not Preclude the Assertion of the State Secrets Privilege. . . . . . 8

D. **(U)** Plaintiffs Contradict their Position by Demanding Discovery into the Underlying Facts . . . . . 11

E. **(U)** The United States' Public Filings Relating to the Assertion of the State Secrets Privilege Are Sufficient . . . . . 12

II. **(U)** THE STATE SECRETS PRIVILEGE APPLIES HERE, AND CONGRESS HAS IN NO WAY ATTEMPTED TO ABROGATE THAT PRIVILEGE . . . . . 13

A. **(U)** The State Secrets Privilege Reflects the President's Constitutional Authority over National Security and Foreign Affairs, and Thus is Constitutionally Based . . . . . 13

B. **(U)** The Existence of Statutory Rights of Action and Constitutional Claims Does Not Make the State Secrets Privilege Inapplicable . . . . . 15

C. **(U)** Section 1806(f) of the FISA Does Not Abrogate the Executive's Authority to Protect National Security through Invocation of the State Secrets Privilege . . . . . 18

D. **(U)** Congress Also Has Not Abrogated the Statutory Provisions Protecting Against Disclosure of NSA Activities . . . . . 24

**(U)** CONCLUSION . . . . . 25

**(U)** The United States respectfully submits this Reply in support of the United States' Assertion of the Military and State Secrets Privilege and Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion to Dismiss").[1]

## (U) INTRODUCTION

**(U)** There are several fundamental flaws with Plaintiffs' Opposition to the United States' Assertion of the Military and State Secrets Privilege and Motion to Dismiss or, in the Alternative, for Summary Judgment. We demonstrate those flaws, and respond to various arguments in Plaintiffs' brief, below. In doing so, the United States reiterates that, as its *in camera, ex parte* filings demonstrate, this case must be dismissed because Plaintiffs cannot establish that they have standing and cannot prove the merits of their statutory or constitutional claims because resolution of those legal issues depends entirely on facts that, in light of their highly classified nature, cannot be made the subject of litigation. Indeed, the most basic factual allegation necessary for Plaintiffs' case—whether defendant AT&T has engaged in certain conduct at the behest of the National Security Agency ("NSA")—can neither be confirmed nor denied by AT&T or the United States. As the *in camera, ex parte* submissions demonstrate, the state secrets assertion precludes Plaintiffs from making out a prima facie case on any of their claims; AT&T cannot present the facts that would constitute its defenses; and the "very subject matter" of the case is a state secret. *See Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir.) ("notwithstanding the plaintiffs' ability to produce nonprivileged evidence" case should be dismissed "solely on the invocation of the state secrets privilege" where the "'very subject matter of the action is a state secret'") (quoting *United State v. Reynolds*, 345 U.S. 1, 11 n. 26 (1953)), *cert denied*, 525 U.S. 967 (1998).

**(U)** Plaintiffs do not contest that the United States, through the Director of National Intelligence ("DNI"), has properly invoked the state secrets privilege. Nor do they seriously

---

[1] **(U)** Plaintiffs have not opposed the United States' Motion to Intervene, filed on May 13, 2006. *See* Docket No. 122.

contest that disclosure of the information over which the DNI has asserted the privilege would cause harm to national security. Instead, Plaintiffs primary and off-repeated argument is that they already have "established" violations of the statutory and Constitutional provisions on which they base their claims. But that argument confuses assertions and allegations with established facts. Plaintiffs merely assert various facts in their Complaint and through declarations, and on key points they entirely rely on speculation and hearsay. As a result of the state secrets privilege, the United States and AT&T cannot publicly respond to Plaintiffs' claims of fact, but this obviously does not mean that those claims are correct.

**[REDACTED TEXT]**

**(U)** Unable to seriously contest the effect of the United States' assertion of the state secrets privilege, Plaintiffs make a broadside attack on the privilege, arguing that it lacks any constitutional basis and that Congress can, and has here, abrogated that privilege. Again, Plaintiffs are wrong. The state secrets privilege embodies central aspects of the Executive's responsibilities under Article II of the Constitution as Commander-in-Chief and as the Nation's organ for foreign affairs. As demonstrated below, Congress plainly has not restricted the Executive's authority to protect foreign intelligence gathering through assertion of the state secrets privilege—nothing in the text or history of the FISA (or any other related statute) provides even the slightest indication that Congress meant to and did attempt to abrogate the Executive's well-recognized authority to invoke this privilege. And as further demonstrated below, Section 1806(f) of the FISA, the primary statutory provision on which Plaintiffs rely, is wholly inapplicable to this dispute.

## (U) ARGUMENT

### I. (U) PLAINTIFFS HAVE NOT ESTABLISHED AND CANNOT ESTABLISH THE FACTS NECESSARY TO DEMONSTRATE STANDING OR TO PROVE THEIR CLAIMS.

#### A. (U) Plaintiffs' Claim That They Have Established a *Prima Facie* Case is Both Irrelevant and Incorrect.

**(U)** Plaintiffs' entire opposition is premised on their claim that they already have established, as a result of facts that are in the public domain, violations of the FISA and other statutes, as well as the Fourth Amendment.[2] As a result, Plaintiffs contend, the Court can proceed to consideration of their legal claims notwithstanding the United States' assertion of the state secrets privilege. That contention misstates the law. While Plaintiffs have not remotely established a *prima facie* case, dismissal or summary judgment would be required even if they had.

**(U)** Contrary to Plaintiffs' argument, "Ninth Circuit precedent" does not "require[]" that, when the state secrets privilege is asserted and upheld, the case nonetheless "'goes forward based on evidence not covered by the privilege.'" Plts. Opp. at 10 (citing *Kasza*, 133 F.3d at 1166). *Kasza* described that outcome as only one of three possible "effects" of a valid privilege assertion, depending on the circumstances of the case. *Kasza*, 133 F.3d at 1166. The Court of Appeals went on to identify the two other potential effects of a valid assertion, and the circumstances that trigger them: (1) where the privilege deprives the defendant of the use of information necessary to its defense, "'the court may grant summary judgment to the defendant,'" *id.* (internal citation omitted); and (2) "*notwithstanding the plaintiffs' ability to produce nonprivileged evidence*, if 'the very subject matter of the action' is a state secret, then the court should dismiss the plaintiffs' action based solely on the invocation of the state secrets privilege." *Id.* (quoting *Reynolds*, 345 U.S. at 11 n.26) (emphases added). As the United States

---

[2] **(U)** *See generally* Plaintiffs' Opposition to Motion to Dismiss or, In the Alternative, for Summary Judgment by the United States of America Based on the State Secrets Privilege ("Plts. Opp.").

has shown in its Motion to Dismiss, both of those circumstances are present here—and would continue to be present even if a *prima facie* case had been established.

**(U)** Indeed, Plaintiffs' own arguments confirm that showing. They persistently confuse speculative allegations and untested assertions for established facts. Plaintiffs rely entirely on declarations by Mark Klein and J. Scott Marcus that contain numerous opinions,[3] and various media reports, *see*, *e.g.*, Plts. Opp. at 37 (citing to *USA Today* article),[4] which obviously do not establish facts in a court of law.[5] In normal litigation, AT&T and the United States would have the full opportunity to respond to these assertions by contesting them and introducing actual evidence.

**(U)** As a result of the assertion of the state secrets privilege, however, neither AT&T nor the United States can either admit or rebut the most basic elements of the allegations made by Klein and Marcus. For the reasons we gave in our Motion to Dismiss, AT&T cannot even confirm or deny the key factual premise underlying Plaintiffs' entire case —that AT&T has provided any assistance whatsoever to NSA regarding foreign-intelligence surveillance. Indeed, in the formulation of *Reynolds* and *Kasza*, that allegation is "the very subject matter of the

---

[3] **(U)** Plaintiffs imply that we do not contest the Marcus and Klein declarations. *See, e.g.,* Plts. Opp. at 2. However, we were never asked to, and never did, review the declarations. We only reviewed the three documents the declarations rely upon, and only for the purpose of determining that they are not classified. Plaintiffs obviously seek to obscure what the Government reviewed by conflating the three documents and the declarations as the "Klein materials." *See id.*

[4] **(U)** Plaintiffs appear to suggest, without any support, that we are required to deny media reports or they will be deemed admitted. *See, e.g.,* Plts. Opp. at 9 ("The government has never denied the existence of a broader program that intercepts or collects records regarding purely domestic communications. Plaintiffs have alleged and provided evidence of such a broader program, which has also been widely reported in the press.").

[5] **(U)** The problems with Plaintiffs' approach is well-illustrated by their use of one of those media reports. Plaintiffs state in their brief that "Homeland Security Secretary Michael Chertoff confirmed that the government has employed 'data-mining,'" Plts. Opp. at 9, but the article actually stated that "[w]hile *refusing to discuss* how the highly classified program works, Chertoff *made it pretty clear* that it involves 'data-mining.'" *Id*. (cited exhibit). No Court would ever accept this type of statement in a newspaper article as establishing a fact.

action." That allegation, as well as many of Plaintiffs' other various assertions, is a necessary element of each of their causes of action, but none can be accepted as an established actual fact given that AT&T and the United States simply cannot respond to them.

**(U)** Plaintiffs' contention that their sealed submission somehow distinguishes this case from state secrets cases in which the claims were dismissed is thus untenable. Indeed, the plaintiffs in many of the cases Plaintiffs cite had submitted far more record evidence than Plaintiffs have presented here, but dismissal was still required. For example, in *Halkin v. Helms* (*Halkin I*), 598 F.2d 1 (D.C. Cir. 1978), the plaintiffs challenged the legality of NSA programs involving the interception and copying of all international telegrams leaving or entering the United States between 1945 and 1975, and the use of "watchlists" (which specifically included some of the plaintiffs) to specifically monitor and report on the communications of U.S. persons intercepted either through the telegram program (code-named SHAMROCK) or other foreign signals intelligence activities (code-named MINARET). *See id.* at 4. A great deal of information about these programs had been publicly acknowledged during the course of congressional hearings, including the number of U.S. persons monitored through watchlists (about 1,200 from 1967 to 1973), the number of intelligence reports issued by the NSA with regard to watchlisted individuals (about 1,900 from 1967 to 1973), the specific telecommunications companies that assisted the NSA with these activities (RCA Global, ITT World Communications, and Western Union International), and the number of telegrams per month reviewed by NSA analysts (about 150,000 from 1969-1972).[6] In light of this publicly available information, the district court had ruled that the state secrets privilege could not protect the fact of whether the plaintiffs had been monitored under these programs. But the D.C. Circuit reversed on that precise point, upheld the privilege, and the relevant claims were ultimately

[6] **(U)** *See Halkin I*, 598 F.2d at 4, 10; Final Report of the Select Committee to Study Governmental Operations with Respect to Intelligence Activities, S. Rep. No. 94-755, 94th Cong., 2d Sess., Book III at 765 (Apr. 23, 1976); Hearings Before the Select Committee to Study Governmental Operations with Respect to Intelligence Activities, 94th Cong., 1st Sess., Vol. 5 at 12 (Oct. 29, 1975) (testimony of Lt. Gen. Lew Allen, Jr., Director, National Security Agency).

dismissed for the inability to prove standing. *See id.* at 5, 9-10; *Halkin v. Helms* (*Halkin II*), 690 F.2d 977, 999-1001 (D.C. Cir. 1982). The same result is required here, where far less detailed information about the alleged NSA activities has been officially confirmed or denied.

**(U)** Finally, a review of the *in camera, ex parte* submissions of the United States demonstrate why Plaintiffs' assertion that they have presented a *prima facie* case cannot be addressed, even if that assertion were legally relevant.

**[REDACTED TEXT]**

B. **(U)** Plaintiffs' Claim that They Can Establish Standing is Erroneous.

**(U)** Plaintiffs' assertion that they can establish the "injury in fact" needed to support standing with the mere allegation that AT&T "increased the risk" that the NSA could intercept their communications, *see* Plts. Opp. at 48-51, is flawed on multiple levels. Plaintiffs cannot establish the factual predicate for their argument, and, even if they could, such a showing would be insufficient to establish their standing.

**(U)** Plaintiffs' contention that AT&T 'increased the risk" of NSA interception rests entirely on their allegation that AT&T is cooperating to some extent with NSA's intelligence collection activities. For the reasons noted above and in our Motion to Dismiss, however, Plaintiffs cannot establish whether or not such cooperation exists because that factual question is itself a state secret. Without that necessary link between AT&T and the NSA, Plaintiffs cannot establish that there is any "risk" that they are suffering injury as a result of AT&T's actions.

**(U)** Moreover, Plaintiffs err in contending that *any* increase in the risk of interception qualifies as an injury-in-fact sufficient to satisfy Article III. The environmental cases upon which Plaintiffs rely simply demonstrate that a litigant must establish a significant risk of harm to his or her own interests to have standing to sue.[7] Plaintiffs cannot make such a showing.

[7] **(U)** In the environmental context, a plaintiff may establish an injury in fact "by showing a connection to the area of concern" that is "sufficient to make credible the contention that . . . [the plaintiff] has or will suffer in his or her degree of aesthetic or recreational satisfaction" "if the area in question remains or becomes environmentally degraded" by the defendant's actions. *See Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000).

**(U)** First, Plaintiffs cannot establish any risk, let along a substantial risk, that their communications will be intercepted by the NSA under the Terrorist Surveillance Program ("TSP") that has been publicly described by the President. The President has disclosed that the TSP intercepts communications that originate or terminate outside the United States if the communication involves members or agents of Al Qaeda or affiliated terrorist organizations, *see* Motion to Intervene at 2, but Plaintiffs have not alleged that they are, or have communicated with, such persons. In fact, Plaintiffs expressly *exclude* from their putative class any persons who knowingly prepare for or engage in international terrorism. *See* Am. Compl. ¶ 70; *see also* Motion of Dismiss at 18 n.8. Plaintiffs have therefore pleaded that they are at *no* risk of having their communications intercepted under the TSP.

**(U)** To the extent that Plaintiffs allege a risk of interception from surveillance broader than that disclosed by the President, their allegations run headlong into the state secrets

---

That showing is necessary because a plaintiff must establish an individual-specific injury that is derivative of the "injury to the environment" resulting from the challenged action. *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160-61 (4th Cir. 2000) (en banc). Because "[t]hreatened environmental injury is by nature probabilistic," "[t]hreats or increased risk" to a plaintiff's use or enjoyment of the environment may constitute an injury in fact. *See id*.

**(U)** Both *Pacific Lumber* and *Gaston Copper* illustrate the substantial showing needed to establish standing. The *Pacific Lumber* plaintiffs established that actual runoff from the challenged facilities flowed into a one-mile long stretch of creek that the plaintiffs used for recreation. *See* 230 F.3d 1131, 1144-45, 1150. In *Gaston Copper*, the record was "replete with evidence" showing hundreds of unlawful discharges of specific chemicals and their deleterious effect on 16.5 miles of waterway that included an area owned an used by the individual whose standing was at issue. *See* 204 F.2d at 152-53, 158-159. Both cases reflect that an environmental plaintiff must establish standing by showing a "significant risk" to his or her own interests from the past or imminent actions of a defendant. *See Central Delta Water Agency v. United States*, 306 F.3d 938, 948 (9th Cir. 2002) (applying *Pacific Lumber* and *Gaston Copper*); *see also NRDC v. EPA*, 440 F.3d 476, 483-84 (D.C. Cir. 2006) (rejecting contention that "an increase in probability itself constitutes an 'actual or imminent' injury;" ruling that a plaintiff must establish "a 'substantial probability' of harm" and "'demonstrate a realistic danger of sustaining a direct injury as a result'" of the challenged action). Thus, even if these environmental cases would apply to this case, they do not advance Plaintiffs' cause.

privilege. In order to establish a risk that their communications will be intercepted by such surveillance, Plaintiffs would have to demonstrate the scope of any alleged surveillance and prove that their communications would likely fall within its ambit. For all of the reasons previously demonstrated, Plaintiffs cannot do so: all information concerning the existence, scope, or functions of any such program is protected by the state secrets privilege and would cause grave harm to the Nation's security if disclosed in this litigation.

C. **(U)** Information in the Public Domain Does Not Preclude the Assertion of the State Secrets Privilege.

**(U)** Plaintiffs also are mistaken in their contention that the state secrets privilege does not apply here because the information necessary to their suit is already in "the public domain." Even when alleged facts have been the "subject of widespread media and public speculation" based on "[u]nofficial leaks and public surmise," those alleged facts are not actually established in the public domain. *See Afshar v. Department of State*, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983). To the contrary, even where such public speculation is widespread, forcing an "official acknowledgment [or denial] by an authoritative source" that can "cause damage to the national security." *Id.*; *see also, e.g.*, *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 421-22 (2d Cir. 1989) (speculation of retired Admiral based on his considerable military experience does not constitute official disclosure that would preclude Government from withholding information); *Fitzgerald v. Penthouse Intern., Ltd.*, 776 F.2d 1236, 1242-43 (4th Cir. 1985) (affirming dismissal based on state secrets privilege where libel suit involved public article purporting to disclose scientist's actions relating to military program because, while "fact that this program exists is unclassified," its details were not and could not be addressed in suit without doing harm to national security); *National Lawyers Guild v. Attorney General*, 96 F.R.D. 390, 402-03 (S.D.N.Y. 1982) (explaining in state secrets context that official "disclosure of an intelligence method or goal in a generalized way does not preclude protection of an intelligence method or goal which relates to a particular time and place and a particular target"); *El-Masri v. Tenet*, No. 1:05cv1417, 2006 WL 1391390, at *3-7 (E.D. Va. May 12, 2006) (explaining in the

state secrets context distinction between acknowledged existence of program and classified details of program which must be protected).

**(U)** Plaintiffs' reliance on the district court's decision in *Spock v. United States*, 464 F. Supp. 510 (S.D.N.Y. 1978), is unavailing. Plts. Opp. at 29. *Spock* involved a complaint whose allegations concerned a surveillance program that had terminated years before the court's decision. *See id.* at 513 n.4, 517. The Government specifically conceded that all of the complaint's allegations about the defunct program had become "a matter of public knowledge," except for the allegation that the plaintiff's own communications had been intercepted. *Id.* at 519. Concluding that the state secrets privilege was "rooted in the constitutional separation of powers" and "in the Article II powers of the executive," the court largely upheld the Executive's invocation of the privilege based on its *in camera, ex parte* review of a governmental affidavit. *Id.* at 518 & n.10. The court, however, accepted the plaintiff's assertion that the "one factual admission or denial" concerning whether the plaintiff's own communications were intercepted would "reveal no important state secret" and that the Government's concern about "disclos[ing] additional information as the action progressed [was] somewhat premature" since the plaintiff indicated he could move for summary judgment if that single allegation were admitted. *Id.* at 519, 520. The court thus declined to dismiss the case where the "only" disclosure at issue was the bare admission or denial of a single allegation that, in the court's view and in the particular circumstances of that case, would not have caused harm to the national security.[8]

---

[8] **(U)** To the extent that the district court's decision in *Spock* could be read to imply that dismissal of a civil action is not a valid remedy to protect state secrets, such a notion has clearly been rejected by later cases, including in the circuit where *Spock* was decided. *See Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991) (dismissal is "require[d]" in cases where invocation of the state secrets privilege "precludes access to evidence necessary for the plaintiff to state a prima facie claim," or "hampers the defendant in establishing a valid defense"); *accord Kasza*, 133 F.3d at 1166.

**(U)** Likewise, the legal basis for the district court's conclusion that admitting or denying whether the *Spock* plaintiff had been surveilled is not clear from its opinion. The court's *in camera*, *ex parte* review of the government's affidavit may underlie its ruling that "no important state secret" was involved with respect to this particular individual and a defunct, publicly

**(U)** This case is very different from *Spock,* wholly aside from the question of whether that case was correctly decided. Here, by contrast, plaintiffs challenge the operation of an entire, ongoing program and allege that millions of communications are being intercepted, not merely a single intercept from a defunct program. The *in camera, ex parte* submissions demonstrate why confirming or denying whether or not Plaintiffs' communications have been the subject of surveillance by the Government, and, if so, whether defendant AT&T had anything to do with such surveillance, would reveal important state secrets and cause grave harm to the national security.

**(U)** The other cases on which Plaintiffs relay are similar inapposite. *McGehee v. Casey* stands for the obvious proposition the CIA's contractual agreement with its employees not to publish classified information does "not extend to unclassified materials or to information obtained [by the employee] from public sources." *See* 718 F.2d 1137, 1141 & n.9 (4th Cir. 1983).[9] *Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303 (1983), is no better for Plaintiffs. Writing as a Circuit Justice (and not for the Supreme Court as Plaintiffs' citation suggests), Justice Brennan there granted an application to stay an order that permanently enjoined the press

---

disclosed program. *See* 464 F. Supp. at 519. However, to the extent *Spock* might be read as ruling that newspaper reporting of an alleged fact renders the state secret privilege inapplicable to that fact, *id.* at 519, 520, *Spock* was wrongly decided. Such a rule would improperly place national security decisions in the hands of reporters whose sources often speculate as to government activity and whose reporting in any event will not always be presumed accurate or reliable by the public, and would require the United States to officially confirm or deny such reporting when the Government has not previously done so. That outcome would largely eviscerate the state secret privilege and is contrary to more recent, authoritative decisions which affirm the Government's right to protect national security information if the Government has not officially disclosed the precise information to the public. *See, e.g., Afshar*, 702 F.2d at 1130-31; *Hudson River*, 891 F.2d at 421-22; *Fitzgerald*, 776 F.2d at 1242-43.

[9] **(U)** Indeed, the Government's prepublication reviews of such articles, books, and other materials "do not constitute official disclosures" because that review neither confirms nor denies the accuracy of the text, *see Schlesinger v. CIA*, 591 F. Supp. 60, 66 (D.D.C. 1984) (citing authority), and, for that reason, the factual assertions in such publications are not entitled to any "presumption of reliability." *See Washington Post v. Department of Defense*, 766 F. Supp. 1, 11-12 (D.D.C. 1991).

from publishing the names of the jurors in a criminal trial even though the court had discharged the jury when the trial completed. *Id.* at 1304. Because neither party sought the injunction against disclosure, the names of the jury had been disclosed in open court, and the state had "suggested no concern specific to th[e] case in support of [the] order," Justice Brennan granted the stay. *Id.* at 1305, 1307. As Justice Brennan observed, the Supreme Court has not "permitted restrictions on the publication of information that would have been available to any member of the public *who attended an open proceeding in a criminal trial*." *See id.* at 1306 (emphasis added). That principle is obviously irrelevant here.

### D. **(U)** Plaintiffs Contradict their Position by Demanding Discovery into the Underlying Facts.

**(U)** Plaintiffs directly contradict their argument that they are able to establish a prima facie case on public facts by claiming that it will be necessary and appropriate for them to take discovery as this case proceeds in the way they envision. *See, e.g.*, Plts. Opp. at 37 (indicating Plaintiffs' belief that they are "entitled to take discovery concerning the legality of the surveillance at issue."), 57-58. As demonstrated in our *in camera, ex parte* submissions, such discovery would be wholly inappropriate. Numerous factual matters that bear on whether Plaintiffs have standing, whether AT&T has actually provided data to NSA, and the nature of the Government's actions simply cannot be inquired into as a result of the state secrets privilege.

**(U)** Plaintiffs nevertheless contend that dismissal of their case is improper until they have had the opportunity to take discovery. This claim is belied by other state secret cases. For example, in *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 548 (2d Cir. 1991), the Second Circuit expressly rejected a claim that discovery should proceed despite the court's conclusion that assertion of the state secrets privilege precluded the litigation from continuing. And, the courts of appeals have in various cases affirmed dismissal in light of the state secrets privilege without any discussion of whether discovery has taken place or could continue. See, *e.g.*, *Black v. United States*, 62 F.3d 1115 (8th Cir. 1995), *cert. denied*, 517 U.S. 1154 (1996); *Bareford v. General Dynamics Corp.*, 973 F.2d 1138 (5th Cir. 1992); *Fitzgerald*, 776 F.2d at

1236.

**(U)** Moreover, Plaintiffs' contentions that the state secrets privilege applies only "in the context of specific discovery disputes," and that an assertion of the privilege may not be made or adjudicated before an "individualized discovery dispute has ripened," Pls. Mem. at 52, is wrong for an additional reason as well. If AT&T's Motion to Dismiss were denied, AT&T would be obligated to file an Answer to the Complaint in which it would be expected to admit or deny Plaintiffs' allegations. But because the very subject matter of this action involves privileged state secrets, AT&T is foreclosed from admitting or denying most of those allegations. That foreclosure would require dismissal of the case even if Plaintiffs had pledged to seek no discovery at all.

E. **(U)** The United States' Public Filings Relating to the Assertion of the State Secrets Privilege Are Sufficient.

**(U)** Plaintiffs also continue to claim that the United States did not provide a sufficient explanation for its assertion of the state secrets privilege on the public record. *See* Plts. Opp. at 55. Obviously, however, because Plaintiffs do not know the details of the classified material, they cannot know how much or how little can be revealed through a public record. As we previously explained, requiring any more detailed showing here would be improper because it would "force 'disclosure of the very thing the privilege is designed to protect.'" *Ellsberg v. Mitchell*, 709 F.2d 51, 63 (D.C. Cir. 1983) (quoting *Reynolds*, 345 U.S. at 8; *see also* 709 F.2d at 63 (noting the court's "[f]ear" that "an insufficient public justification resulting in denial of the privilege entirely might induce the government's representatives to reveal some material that, in the interest of national security, ought not to be uncovered"; further noting the "considerable variety in the situations in which a state secrets privilege may be fairly asserted"); *see* United States' Response to Plaintiffs' Memorandum Of Points and Authorities in Response to Court's May 17, 2006 Order, at 17-20 (Docket No. 145).

## II. (U) THE STATE SECRETS PRIVILEGE APPLIES HERE, AND CONGRESS HAS IN NO WAY ATTEMPTED TO ABROGATE THAT PRIVILEGE.

**(U)** Unable to show that their case can proceed in light of the United States' assertion of the state secrets assertion, Plaintiffs mount a broadside attack on the privilege itself. Advancing arguments that no court has credited— for example, that the privilege has no constitutional basis, and that Congress overrode the privilege in enacting FISA— Plaintiffs contend that the privilege is wholly inapplicable here. These arguments betray a basic misunderstanding of the state secrets privilege and a fundamental misreading of FISA.

### A. **(U)** The State Secrets Privilege Reflects the President's Constitutional Authority over National Security and Foreign Affairs, and Thus is Constitutionally Based.

**(U)** The Supreme Court has made clear that the "authority to protect [national security] information falls on the President as head of the Executive Branch and as Commander in Chief" of the Nation's Armed Forces. *See Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988). Indeed, the Court has specifically emphasized that the Executive's authority to "control access to information bearing on national security" "exists quite apart from any explicit congressional grant" of power because it flows primarily from the "constitutional investment of power in the President" found in Article II of the Constitution. *Id.*; *see also* U.S. Const., Art. II, § 1 ("The executive power shall be vested in [the] President"); *id.* § 2 ("The President shall be Commander in Chief of the Army and Navy of the United States"); *cf. In re Sealed Case*, 310 F.3d 717, 742 & n.26 (Foreign Intel. Surv. Ct. of Rev. 2002) ("tak[ing] for granted" that President has inherent constitutional authority to collect electronic surveillance without warrant to obtain foreign intelligence information, and noting that all "courts to have decided the issue" had agreed); *United States v. Truong*, 629 F.2d 908, 914 (4th Cir. 1980) (rooting that authority in separation of powers and the Executive Branch's primacy in foreign affairs; citing cases).

**(U)** The authority to invoke the state secrets privilege to protect national security information from disclosure in judicial proceedings is merely one aspect of the Executive's broader Article II power to control the dissemination of such highly sensitive information. *See*

*United States v. Nixon*, 418 U.S. 683, 710 (1974). The *Nixon* decision repeatedly contrasts the general constitutional privilege for Presidential communications "inextricably rooted in the separation of powers" with the Executive's more focused constitutional privilege "to protect military, diplomatic, or national security secrets" in concluding that the general Executive privilege does not enjoy the same legal standing as the state secrets privilege. *See id.* at 706, 708, 710-11 (explaining that the Supreme Court had never "extended th[e] high degree of deference" applicable to the state secrets privilege "to a President's generalized interest in confidentiality" of his communications). In fact, it is precisely because the privilege for "military or diplomatic secrets" is grounded in "areas of Art. II duties," which the Executive alone can exercise, that "courts have traditionally shown the upmost deference" to the Executive's discharge of these "Presidential responsibilities" regarding state secrets. *See id.* (discussing *United States v. Reynolds*, 345 U.S. 1 (1953), as illustrative example).[10]

**(U)** The constitutional foundation for the state secrets privilege is reflected in its place at the apogee "of the various privileges recognized in our courts." *See Halkin I*, 598 F.2d at 7;[11] *see also, e.g.*, *El-Masri v. Tenet*, No. 1:05cv1417, 2006 WL 1391390, at *3-7 (E.D. Va. May 12, 2006) ("Given the vitally important purposes it serves, it is clear that while the state secrets privilege is commonly referred to as 'evidentiary' in nature, it is in fact a privilege of the highest dignity and significance."). While Plaintiffs argue that the privilege has no constitutional underpinnings because it finds its origin in the common law, they fail to recognize that common

---

[10] **(U)** That deference reflects the constitutional foundation for the state secrets privilege and the practical realities of national security decisions under a constitutional regime of separated powers. Because of the Executive Branch's particular sphere of constitutional responsibility, it alone has "the necessary expertise in protecting classified information" both to make the "[p]redictive judgment[s]" underlying a decision to invoke the state secret privilege and to determine "what constitutes an acceptable margin of error in assessing the potential risk." *See Egan*, 484 U.S. at 529.

[11] **(U)** *Cf. id.* at 14 n.9 (statement of Bazelon, J.) (noting that the "constitutional basis of the state secrets privilege" lies in "separation of powers" or "the President's Article II duties as Commander in Chief and his responsibility for the conduct of foreign affairs").

law privileges can also be rooted in the Constitution. *See, e.g.*, *United States v. Hubbell*, 530 U.S. 27, 51-53 (2000) (Thomas, J., concurring) (discussing common law origins of privilege against self-incrimination). In fact, the state secrets privilege's existence at English common law simply underscores its practical importance in a system of government where executive and judicial power are exercised by separate governmental organs.

**(U)** The Ninth Circuit's decision in *Kasza*, on which Plaintiffs rely heavily, is fully consistent with this view. Because the Court concluded that nothing in enactment of the Resource Conservation and Recovery Act suggested any "Congressional intent to replace the government's evidentiary privilege to withhold sensitive information in litigation," *Kasza*, 133 F.3d at 1167-68, the Court never had occasion to—and did not— address whether Congress could, in fact, abrogate the state secrets privilege.

**(U)** Plaintiffs' remaining grounds for claiming that the state secrets privilege does not have a constitutional basis are also meritless. Plaintiffs rely on the statements of two Justices for the suggestion that Congress might modify the *Totten* rule, *see Tenet v. Doe*, 544 U.S. 1, 11 (Stevens, J., concurring). But *Tenet* itself made clear that *Totten*'s categorical prohibition against litigation involving clandestine contracts is distinct from the state secrets privilege. *See id.* at 7-10; *see also id.* at 11. And Plaintiffs' bare reference to Congress's authority "to declare war," U.S. Const., Art. I, § 8, cl. 11, *see* Plts. Opp. at 12, similarly does not support their apparent contention that Congress may therefore diminish the Executive's power to take necessary actions incident to his constitutional role as Commander in Chief and head of state for foreign relations to protect national security.

**(U)** In sum, there is no doubt that the state secrets privilege is solidly rooted in Article II and the separation of powers embodied in our Nation's Constitution.

### B. **(U)** <u>The Existence of Statutory Rights of Action and Constitutional Claims Does Not Make the State Secrets Privilege Inapplicable</u>.

**(U)** Plaintiffs also claim that the state secrets privilege is inapplicable to this case because they rely on statutory causes of action and constitutional claims. *See* Plts. Opp. at 17-19. This

argument plainly lacks merit.

**(U)** It is obvious that the state secrets privilege is not made inapplicable to a dispute simply because a plaintiff relies on a statutory cause of action. Private parties can sue *only* when Congress has provided them by statute with a cause of action. *See, e.g., Sosa v. Alvarez-Machain*, 542 U.S. 692, 726 (2004) ("[T]his Court has recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases."); *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."). Plaintiffs' proposed rule that anytime a plaintiff relied on a statutory cause of action, the state secrets privilege would not apply clearly is not the law. The same is true for constitutional claims. *See, e.g., Kasza*, 133 F.3d at 1163 (court dismissed statutory claims based on state secrets privilege); *Sterling v. Tenet*, 416 F.3d 338, 346-47 (4th Cir. 2005) (court found that there was "no way for [plaintiff] to prove employment discrimination [under Title VII] without exposing at least some classified details of the covert employment that gives context to the claim," and dismissed the case). The state secrets privilege is similarly applicable when a plaintiff alleges constitutional claims. *See, e.g., Halperin v. Kissinger*, 807 F.2d 180, 188 (D.C. Cir. 1986) (the state secrets privilege applicable to national security matters sometimes "ma[kes] it impossible for [plaintiffs] to go forward with their claims for damages based on statutory and constitutional violations" because they cannot obtain "access to the facts.") (quoting *Halkin II,* 690 F.2d at 990 (other citations omitted) *See, e.g., Halperin v. Kissinger,* 807 F.2d 180, 188 (D.C. Cir. 1986) (finding state secrets privilege applicable to national security matters sometimes "ma[kes] it impossible for [plaintiffs] to go forward with their claims for damages based on statutory and constitutional violations" because they cannot obtain "access to the facts.") (quoting *Halkin v. Helms*, 690 F.2d 977, 990 (D.C. Cir. 1982) (other citations omitted); *El-Masri v. Tenet*, No. 1:05cv1417, 2006 WL 1391390, at *3-7 (E.D. Va. May 12, 2006) (court dismissed constitutional tort claims because the state secrets in the form of details about a classified

rendition program were the "very subject of litigation"); *Edmonds v. U.S. Dept. of Justice*, 323 F. Supp. 2d 65, 67-68 (D.D.C. 2004) (court dismissed the plaintiff's statutory and constitutional claims based on the Government's assertion of the state secrets privilege), *aff'd*, 161 Fed. Appx. 6 (D.C. Cir.), *cert. denied*, 126 S. Ct. 734 (2005).

**(U)** Plaintiffs appear to argue that the availability of the state secrets privilege in cases like this one, where the challenged conduct is alleged electronic surveillance activities, would essentially nullify the statutory causes of action contained in FISA, the Electronic Communications Privacy Act of 1986 ("ECPA"), and Title III. *See* Plts. Opp. at 17-19. But this argument assumes that those causes of action apply only in circumstances in which the state secrets privilege would apply. That is simply wrong. Numerous cases brought under these statutes proceed without the invocation of the state secrets privilege by the Government. *See, e.g.*, *In re: Grand Jury Proceedings of the Special April 2002 Grand Jury*, 347 F.3d 197, 203-06 (7th Cir. 2003) (appellant claimed that his presence before a grand jury was procured through information gained in illegal FISA surveillance, and requested discovery and a hearing on the legality of the surveillance; court reviewed FISA material *in camera, ex parte* under Section 1806(f) and upheld the legality of the surveillance); *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 167 (3d Cir. 2005) (finding a private right of action under ECPA where defendants had, "without authorization, intercepted a plaintiff's encrypted satellite television broadcast"); *Adams v. City of Battle Creek*, 250 F.3d 980, 985-86 (6th Cir. 2001) (considering "whether the police department may tap a police officer's pager without a warrant or notice to the officer," and remanding to the district court for further factual development to determine whether the defendant municipality violated 18 U.S.C. § 2520). There is simply no inconsistency between Congress's creation of certain causes of action, on the one hand, and the applicability of the state secrets privileges to certain disputes where it must be raised.

C. **(U)** Section 1806(f) of the FISA Does Not Abrogate the Executive's Authority to Protect National Security through Invocation of the State Secrets Privilege.

**(U)** Plaintiffs also argue that Section 1806(f) of FISA precludes the invocation of the state secrets privilege in this case. *See* Plts. Opp. at 16-23. Again, this argument is wrong for a number of reasons.

**(U)** 1. As a preliminary matter, and as explained by the United States in its Response to Plaintiffs' Memorandum Of Points and Authorities in Response to Court's May 17, 2006 Order, at 17-20 (Docket No. 145), because of the invocation of the state secrets privilege, Plaintiffs will be unable to demonstrate that Section 1806(f)— or for that matter, Section 1810, FISA's cause of action— have been triggered. Sections 1806(f) and 1810 are available only to "[a]n aggrieved person." *See* 50 U.S.C. §§ 1806(f), 1810. But Plaintiffs cannot demonstrate that they are aggrieved persons under the FISA because the state secrets privilege assertion here covers any information tending to confirm or deny: (a) the alleged intelligence activities; (b) whether AT&T was involved with any such activity; and (c) whether a particular individual's communications were intercepted as a result of any such activity. *See* U.S. Opp. at 17-18. Thus, because basic information necessary to demonstrate that they are aggrieved persons under the FISA is not available to Plaintiffs, they cannot demonstrate the applicability of Sections 1806(f) and 1810.[12]

**(U)** 2. In an attempt to overcome this fundamental problem, Plaintiffs argue that Section 1806(f) provides that, when any person asserts that he or she may have been subjected to unlawful electronic surveillance, a court can direct disclosure of materials relating to the surveillance. Plts. Opp. at 21-22. This, Plaintiffs contend, demonstrates Congress' intent to abrogate the state secrets privilege.

---

[12] **(U)** Section 1806(f) is applicable only where "[a]n aggrieved person" has been unlawfully subject to "an electronic surveillance." *See* 50 U.S.C. § 1810; *see also id.* § 1806(f). But, the invocation of the state secrets privilege precludes Plaintiffs' ability to show that electronic surveillance as defined by FISA actually occurred, and also destroys AT&T's ability to defend itself against such a cause of action.

**(U)** Plaintiffs' argument completely misinterprets Section 1806(f). In Section 1806(f), Congress established a procedure for a court to follow when deciding the legality of a particular electronic surveillance that has *already been disclosed* by the Government. Section 1806(f)'s applicability only to such circumstances is demonstrated by the fact that by its very terms, Section 1806(f) applies only to three specific contexts in which an aggrieved person has already been notified of the surveillance: *first*, when a governmental entity gives notice under Section 1806(c) or (d) that it intends to use evidence obtained from such surveillance against the aggrieved person; *second*, when the aggrieved person seeks to suppress that evidence under Section 1806(e); and *third*, when the aggrieved person moves or requests "to discover or obtain" FISA "applications, orders or other materials" related to the surveillance or the evidence or information derived from the surveillance. *See* 50 U.S.C. § 1806(f); *cf. id.* § 1804(a) (FISA applications); *id.* § 1805 (orders); *id.* § 1804(c), (d) (discussing other materials related to surveillance).

**(U)** Section 1806(f) thus applies only when there has been acknowledged surveillance under FISA. In those circumstances, and "if" the Attorney General, the Deputy Attorney General or a designated Assistant Attorney General certifies that disclosure or a hearing would damage national security, Section 1806(f) requires the district court, "notwithstanding any other law to the contrary," to conduct an *ex parte* and *in camera* proceeding to review the materials relevant to this determination ex parte and in camera. Section 1806(f) is thus an affirmative grant of authority that allows the district court to conduct *in camera, ex parte* proceedings at the request of the Attorney General, notwithstanding any other law that might preclude such proceedings, but *only* in those limited circumstances in which Section 1806(f) applies.

**(U)** The text of Section 1806 accordingly shows that it has nothing to do with a case such as this. The clear purpose of the section is to authorize a procedure for *in camera, ex parte* review when requested by the government after discovery is sought as to a particular known FISA surveillance. It is a mechanism authorized by Congress to consider classified information

in that particular setting—not the exclusive means of addressing disputes involving classified surveillance activities. This should be apparent when one considers that a state secrets assertion is far more than a procedure for resolving discovery disputes as to classified matters, but reflects a constitutional determination by the Executive that state secrets that are necessary to resolve the entire case cannot be disclosed. Here, wholly apart from the procedures for addressing discovery, the fact remains that AT&T could not file an Answer that would admit or deny Plaintiffs' allegations because the very subject matter of the action involves a state secret, and the court—even if it were to find unlawfulness upon *in camera*, *ex parte* review—could not then proceed to adjudicate the very question of awarding damages because to do so would confirm Plaintiffs' allegations.

**(U)** 3. Beyond this, nothing in Section 1806(f) demonstrates a clear intention on the part of Congress to abrogate the state secrets privilege. It is well-established that when Congress seeks to restrict or regulate the constitutionally-based powers of the Executive through legislation, it must make that intention clear. *See Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (recognizing that there must be "affirmative evidence" that Congress intended to restrict Executive power); *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) (Congress must make a "clear statement" in order to "restrict[] or regulat[e] presidential action," because "[l]egislation regulating presidential action . . . raises 'serious' practical, political, and constitutional questions") (citing *United States v. Bass*, 404 U.S. 336, 350 (1971)); *see also Public Citizen v. Dep't of Justice*, 491 U.S. 440, 466 (1989) ("[W]e are loath to conclude that Congress intended to press ahead into dangerous constitutional thickets in the absence of firm evidence that it courted those perils."). As the Supreme Court has noted, "[i]n traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the

judicial decision." *Bass*, 404 U.S. at 350.[13] Moreover, even if Plaintiffs were correct that the state secrets privilege is "just" a common law privilege, courts have repeatedly held that statutes will not be read to overcome the common law without a clear congressional expression of an intent to do. As the Supreme Court has instructed, "[i]t is a well-established principle of statutory construction that '[t]he common law ··· ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose.'" *Norfolk Redevelopment and Housing Authority v. Chesapeake and Potomac Telephone Co. of Norfolk*, 464 U.S. 30, 35-36 (1983) (citation omitted); *see also United States v. Texas*, 507 U.S. 529, 533 (1993) ("In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law.") (internal citations omitted). Nowhere in Section 1806(f) is there any indication, let alone a clear statement, that Congress had intended to restrict the applicability of the state secrets privilege in cases like this. The text of the statute, like the rest of FISA, contains no mention of the state secrets privilege, and certainly no indication that Congress intended to limit it. Indeed, we are aware of no discussion, or even mention, of the state secrets privilege in the legislative history of FISA—let alone an affirmative statement by Congress that it intended to restrict the Executive's authority to assert the privilege to protect foreign intelligence surveillance activities. *See, e.g.,* H.R. Report No. 95-1273 (1978); H.R. Conf. Rep 95-1720 (1978); S. Rep. No. 95-701 (1978); S. Rep. No. 95-604 (1977).

**(U)** Plaintiffs' only argument to the contrary is that Congress must have been aware of the state secrets privilege when it enacted the FISA. *See* Plts. Opp. at 19. But that is a non sequitur. Congress may have been aware of the privilege without intending to abrogate it, and Plaintiffs' argument falls well short of demonstrating a clear intent by Congress to attempt to

---

[13] **(U)** This clear statement rule makes perfect sense in the context of the legislative process provided in the Constitution; if Congress has made plain in a bill that it intends to restrict or abrogate Executive power, the President is placed on notice and has the ability to determine whether to veto the bill. Without a clear statement, Executive power could be abrogated through stealth legislation that the President had no reason to think was meant to encroach on his powers.

restrict the Executive's ability to protect foreign intelligence surveillance through invocation of that privilege. Plaintiffs' assertion that Congress can restrict Executive authority through such an unarticulated implication is simply contrary to established law.[14]

**(U)** 4. Finally, Plaintiffs claim that the availability of the state secrets privilege in a case involving a challenge to the legality of electronic surveillance under the FISA would essentially nullify the judicial review provision of Section 1806(f). *See* Plts. Opp. at 22. Like Plaintiffs' argument that the state secrets privilege is inconsistent with statutory causes of action relating to electronic surveillance, *see supra*, this argument is mistaken.

**(U)** Plaintiffs' argument again assumes that Section 1806(f) applies only in circumstances in which the state secrets privilege would apply—an assumption that is simply wrong. Section 1806(f) is very much a viable provision that is often utilized where an "aggrieved person" challenges the legality of electronic surveillance. In a typical Section 1806(f) proceeding, an individual is notified that the Government intends to use the results of FISA surveillance against him in a criminal or other proceedings (as the Government must do in certain circumstances), *see* 50 U.S.C. § 1806(c); the individual files a motion to suppress or other similar motion to suppress or seek disclosure of the FISA material, *id* § 1806(e), (f); and the court reviews the legality of the surveillance under the FISA, *id*. § 1806(f).

---

[14] **(U)** Even if the FISA could somehow be interpreted to attempt implicitly to preclude the Executive's ability to assert the state secrets privilege over matters possibly covered by FISA, the statute should not be interpreted in that manner because doing so would pose a very serious constitutional question about the validity of the statute in light of the Executive's powers under Article II of the Constitution. *See Public Citizen*, 491 U.S. at 466) ("It has long been an axiom of statutory interpretation that 'where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress'") (quoting *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988))*; Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems.") (quoting *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001)) (citation omitted).

**(U)** For example, in *United States v. Hammoud*, 381 F.3d 316, 331-32 (4th Cir. 2004), *vacated and remanded on other grounds*, 543 U.S. 1097 (2005), the defendant moved to suppress recorded telephone conversions that were obtained through a FISA wiretap. Pursuant to Section 1806(f), the court reviewed the FISA applications and supporting materials *in camera* and concluded that there was probable cause to believe that the defendant was an agent of a foreign power and denied the motion to suppress. *Id.* And in *United States v. Squillacote*, 221 F.3d 542, 552 (4th Cir. 2000), *cert. denied*, 532 U.S. 971 (2001), the defendants sought to suppress the fruits of the FISA surveillance. *Id.* at 553. Pursuant to Section 1806(f), the Attorney General filed an affidavit under oath that disclosure or an adversarial hearing would harm the national security of the United States, and the district court reviewed the applications and other materials *in camera* without disclosing the material to the defendants. *Squillacote,* 221 F.3d at 553-54. The court found the surveillance lawful, and the Fourth Circuit agreed after reviewing the matter *de novo*. *Id*. at 554. *See also, e.g., United States v. Johnson*, 952 F.2d 565, 571-73 (1st Cir. 1992) (court upheld legality of FISA surveillance used against defendants at trial). In none of these cases did the United States assert the state secrets privilege.

**(U)** Thus, Section 1806(f) is often utilized by the courts, and the applicability of the state secrets privilege to some cases in no way negates the purpose of this provision or any other provision of the FISA, as Plaintiffs claim. That should not be surprising, for this case is far from the typical case brought under the FISA. Plaintiffs assert a broad attack on the legality of an entire surveillance program instituted in the wake of September 11, 2001, over which the United States has properly asserted the state secrets privilege to avoid grave harm to national security. Section 1806(f) simply has no applicability in this context, and certainly does not evidence a clear Congressional intent to abrogate the state secrets privilege.

D. **(U)** <u>Congress Also Has Not Abrogated the Statutory Provisions Protecting Against Disclosure of NSA Activities</u>**.**

**(U)** Even if Plaintiffs were correct that FISA wholly abrogates the applicability of the state secrets privilege in this case (they are not), as the United States demonstrated in its Motion to Dismiss, two different statutory privileges—Section 6 of the NSA Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note, and Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1)—preclude disclosure of the information at issue in this case and therefore require dismissal.[15] Plaintiffs argue in passing that these statutory protections do not conflict with Plaintiffs' reading of FISA, and that if they did, FISA would govern. *See* Plts. Opp. at 24-26. Plaintiffs' arguments are contrary to the plain language of both statutes and, with respect to the NSA Act, also are contrary to the well-established rule that when two statutory provisions potentially conflict, the more specific provision should prevail. *See Morton v. Mancari*, 417 U.S. 535, 550 (1974) ("[A] specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.").

**(U)** Section 6 of the National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note, could not be more explicit:

> ***[N]othing in this Act or any other law*** . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of persons employed by such agency.

*Id*. This unequivocal and precise language, which Plaintiffs simply disregard, is fatal to their argument. By the plain terms of this provision, FISA—which is "any other law"—cannot be construed to require the disclosure of *any* information with respect to the activities of the NSA. *See Linder v. Nat'l Security Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996) ("The protection afforded by section 6 is, by its very terms, absolute."); *Founding Church of Scientology v. Nat'l Security*

[15] **(U)** Plaintiffs do not contest that these statutory privileges were properly asserted, nor do they contest that the statutory privileges cover the information at issue in this case.

*Agency*, 610 F.2d 824, 828 (D.C. Cir. 1979) (noting that Section 6 reflects the "congressional judgment that in order to preserve national security, information elucidating the subjects specified ought to be safe from forced exposure"). Plaintiffs cite no authority that FISA trumps Section 6 and could require the disclosure of NSA information, nor do they cite any authority involving statutory construction in the area of national security information. Indeed, because Section 6 is a more specific statute—relating to information only about the NSA, and not to other agencies that utilize FISA—to the extent that there is any conflict between Section 6 and FISA, Section 6 must apply.

**(U)** Similarly, Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1) precludes the disclosure of information necessary to adjudicate this case. This statute requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). No provision of the FISA preempts the DNI's authority to protect against the disclosure of this type of information in this case.

## (U) CONCLUSION

**(U)** For the foregoing reasons as well as those provided in the Assertion of the State Secrets Privilege and Motion to Dismiss or, in the Alternative, for Summary Judgment by the United States, the Court should:

**(U)** 1. Uphold the United States' assertion of the military and state secrets privilege and exclude from this case the information identified in the Declarations of John D. Negroponte, Director of National Intelligence of the United States, and Keith B. Alexander, Director of the National Security Agency; and

**(U)** 2. Dismiss this action because adjudication of Plaintiffs' claims risks or requires the disclosure of protected state secrets and would thereby risk or cause exceptionally grave harm to the national security of the United States.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

*s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov

*s/ Renée S. Orleans*
RENÉE S. ORLEANS
renee.orleans@usdoj.gov

*s/ Andrew H. Tannenbaum*
ANDREW H. TANNENBAUM
Trial Attorneys
andrew.tannenbaum@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20001
Phone: (202) 514-4782/(202) 514-4263/(202)514-4504
Fax: (202) 616-8460/(202) 616-8202

DATED: June 16, 2006

Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **UNITED STATES' REPLY IN SUPPORT OF THE ASSERTION OF THE MILITARY AND STATE SECRETS PRIVILEGE AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT BY THE UNITED STATES, Case No. C 06-0672-VRW** will be served by means of the Court's CM/ECF system, which will send notifications of such filing to the following:

Electronic Frontier Foundation
Cindy Cohn
Lee Tien
Kurt Opsahl
Kevin S. Bankston
Corynne McSherry
James S. Tyre
545 Shotwell Street
San Francisco, CA 94110

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
Reed R. Kathrein
Jeff D. Friedman
Shana E. Scarlett
100 Pine Street, Suite 2600
San Francisco, CA 94111

Traber & Voorhees
Bert Voorhees
Theresa M. Traber
128 North Fair Oaks Avenue, Suite 204
Pasadena, CA 91103

Pillsbury Winthrop Shaw Pittman LLP
Bruce A. Ericson
David L. Anderson
Patrick S. Thompson
Jacob R. Sorensen
Brian J. Wong
50 Freemont Street
PO Box 7880
San Francisco, CA 94120-7880

Sidley & Austin LLP
David W. Carpenter
Bradford Berenson
Edward R. McNicholas
David L. Lawson
1501 K Street, NW
Washington, DC 20005

*s/ Andrew H. Tannenbaum*