Trone et al v. Peanut Corporation of America Doc. 264 Att. 1

had furnished the room with sophisticated storage hardware. Klein Decl., ¶ 35. This indicates that at least for some period of time electronic communications data was stored in the room. What is more, the [redacted] Configuration was itself connected to a separate and distinct network called the [redacted] Backbone. *Id.* On these facts, it is highly likely that communications entering the [redacted] Room were being stored by AT&T for the NSA. Indeed, based on Executive Order 12968, the [redacted] Room itself, furnished by AT&T, is controlled by those acting on behalf of, or to assist, the NSA. This evidence thus establishes the predicate facts of a violation of Section 2702(A)(1). The government's admissions establish violation of Section 2702(A)(3) – this includes the gathering of "lists of calls" and of data-mining (Statement of Facts, *supra,* at 9). Any remaining doubts as to the factual basis for Plaintiffs' disclosure claims can be resolved by targeted discovery to determine whether the [redacted] Backbone is for AT&T's sole use, or whether it is being used to send any communications (whether the content of communications or non-content data) to another person. For purposes of these claims, it is irrelevant whether that other person is the government.[17]

AT&T's disclosure of call data records, as reported by *USA Today*, is also a violation of the Stored Communications Act because AT&T stores that data in an enormous database, nick-named "Daytona," before disclosure to the government. As discussed above, Congress declared such action illegal, and has given Plaintiffs the power to take discovery to enforce their rights.

In sum, a wealth of non-privileged evidence supports Plaintiffs' claims. Plaintiffs are also entitled to take discovery concerning the legality of the surveillance at issue, and are empowered to take discovery of other non-privileged matters as well. Dismissal is unwarranted.

### D. The Constitutional Claims

Almost 40 years ago, the Supreme Court held that the Fourth Amendment applies with full force to prevent the government from indiscriminate surveillance of private communications. *Katz v. U.S.*, 389 U.S. 347, 352 (1967); *Berger v. N.Y.*, 388 U.S. 41, 58-59 (1967). Indeed,

---

[17] The only exception is 18 U.S.C. § 2702(a)(3) (Count VI).



Dockets.Justia.com

"[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping devices." *Id.* at 63. The threat is to speech as well as privacy, causing First Amendment harm. *United States v. U.S. Dist. Ct. (Plamondon)*, 407 U.S. 297, 314 (1972) ("The price of lawful public dissent must not be a dread of subjection to an unchecked surveillance power.").[18] Because of the "grave constitutional questions" posed by electronic communications surveillance, courts bear "a heavier responsibility" in supervising the fairness of such procedures. *Osborn v. U.S.*, 385 U.S. 323, 329 n.7 (1966).

The warrant requirement of the Fourth Amendment unquestionably applies to electronic surveillance of purely domestic electronic communications. *Plamondon*, 407 U.S. at 321-22 (1972). Here there is no dispute that the government has proceeded in the absence of a warrant. The evidence already in the record supports the conclusion that domestic-to-domestic transmissions were intercepted by AT&T and provided to the government. The question of "state action" also does not turn on information that might fall within the ambit of the "state secrets" privilege. The state secrets privilege creates no impediment to Plaintiffs' Fourth Amendment claim.

### 1. The Constitution Requires That The Government Obtain A Warrant Based On A Particularized Showing Of Probable Cause

The Fourth Amendment requires that the government or its agents act pursuant to a warrant based on probable cause before engaging in electronic surveillance. *Plamondon*, 407 U.S. at 316; *Keith*, 407 U.S. at 321-322 (holding warrant requirement applies with equal force to domestic national security surveillance); *Berger*, 388 U.S. at 59 (holding probable cause requirement intended "to keep the state out of constitutionally protected areas until it has reason to believe that a specific crime has been or is being committed."). The need for particularity, which the warrant requirement addresses, " is especially great in the case of eavesdropping"

---

[18] Such fear currently deters plaintiff Jewel's speech and associational activity. Jewel Decl., ¶8 (refraining from Internet research on certain topics and curtailing association with Muslim correspondent in Indonesia).

because of the inevitable interception of intimate communications unrelated to the legitimate investigation. *Berger*, 388 U.S. at 56; *cf. Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (holding Fourth Amendment requirements must be applied with "scrupulous exactitude" where First Amendment rights implicated).

The wholesale surveillance alleged here complies with none of the core warrant requirements, and is unconstitutional on these grounds alone. It constitutes an unlawful seizure under the Fourth Amendment. *Berger,* 388 U.S. at 41. As the Supreme Court found in *Berger,* "a roving commission to 'seize' any and all conversations" is unconstitutional. *Id.* (holding unconstitutional the monitoring of conversations of "any and all persons coming into the area covered by" surveillance device would "be seized indiscriminately and without regard to their connection with the crime under investigation"). AT&T's decision to disclose the contents of its "Daytona" database – the call data records of millions of customers – is equally indiscriminate and unlawful. Nor can the mass surveillance alleged here, which reveals the contents of private communications, internet activities, and the associational relationships of millions of Americans, possibly be "narrowly tailored" to achieving any compelling government interest. *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). It therefore also violates the First Amendment.

The question of "reasonableness," which the government suggests must be answered under *Halkin II*, is of no moment. The warrantless surveillance at issue in *Halkin II* – where all that was known about the government's surveillance was that they had created watchlists of individuals associated with Vietnam War protest groups – is not remotely comparable to this case. 690 F.2d at 1000. This case involves the interception and disclosure of truly massive volumes of communications and data about those communications. Klein Decl. ¶¶ 34-35. This includes "all or substantially all" of the AT&T [redacted] email traffic for the entire San Francisco Bay Area. Marcus Decl., ¶ 104. While the government may be compiling watchlists based on those millions of communications and that mountain of data, such watchlists are not the basis for Plaintiffs' claims. Plaintiffs' claims are based on the indiscriminate interception and disclosure of those communications and that data by AT&T.

### 2. No Exception To The Warrant Requirement Exists In This Case

The government incorrectly argues that the purported foreign surveillance and special needs exceptions to the warrant requirement bar Plaintiffs' Fourth Amendment claims here. Plaintiffs allege that AT&T has captured purely domestic-to-domestic communications and data for the government, and members of foreign governments (and terrorist groups like al Qaeda) are excluded from Plaintiffs' class.

#### a. The purported "foreign surveillance" exception, which has not been recognized by the Supreme Court, is inapplicable

The Supreme Court has never held that the President may authorize warrantless surveillance for national security purposes or otherwise. Indeed, the Court rejected that argument in the context of domestic surveillance for purposes of national security. *Plamondon*, 407 U.S. at 321 ("A prior warrant establishes presumptive validity of the surveillance …. By no means of least importance will be the reassurance of the public generally that indiscriminate wiretapping and bugging of law-abiding citizens cannot occur"). The Supreme Court's reasoning applies to surveillance within the United States for purposes of foreign intelligence. *Id.* at 320-21 (noting risks to "privacy of speech" from unregulated surveillance, judicial competence to review "difficult issues," and minimal disclosure risks in *ex parte* warrant proceeding).

This case is also far outside the foreign surveillance powers of the executive for at least two additional reasons. First, Plaintiffs allege, and the evidence shows, that AT&T is acquiring electronic communications indiscriminately. *See* Statement of Facts, *supra,* at 6-7. Even were it the government's intent to actually listen in only on communications of the suspected agents of foreign powers, the totally indiscriminate nature of the seizure by AT&T on behalf of the government bars any "foreign surveillance" exception. *See Halperin v. Kissinger*, 807 F.2d 180, 185 (D.C. Cir. 1986) (Scalia, Circuit J. for the court) ("It is now clear that [the warrant] requirement attaches to national security wiretaps that are not directed against foreign powers or suspected agents of foreign powers").

Second, a "foreign surveillance exception to the Fourth Amendment" warrant requirement, were it recognized by the Supreme Court, would have to be narrowly drawn in light of FISA's statement of Congressional intent. In FISA, Congress has directly and specifically spoken on the question of domestic warrantless wiretapping, including during wartime. Congress comprehensively regulated all electronic surveillance in the United States, authorizing such surveillance only pursuant to specific statutes designated as the "exclusive means by which electronic surveillance ... and the interception of domestic wire, oral, and electronic communications may be conducted." 18 U.S.C. § 2511(2)(f) (emphasis added).

When Congress enacted this language, it repealed an earlier Title III provision providing that "[n]othing contained in this chapter or in section 605 of the Communications Act of 1934 shall limit the constitutional power of the President ... to obtain foreign intelligence information deemed essential to the security of the United States." 18 U.S.C. § 2511(3) (1976).[19] Congress properly concluded that:

> the basis for this legislation is the understanding -- concurred in by the attorney general -- that even if the president has an "inherent" constitutional power to authorize warrantless surveillance for foreign intelligence purposes, congress [h]as the power to regulate the exercise of this authority by legislating a reasonable warrant procedure governing foreign intelligence surveillance.

S. Rep. No. 95-604(I), at 16, 1978 U.S.C.C.A.N. at 3917.

Congress exercised its power with the intent to control executive power to employ electronic surveillance. The basis for this legislation is the understanding – shared by the Attorney General – that even if the President has an "inherent" constitutional power to authorize warrantless surveillance for foreign intelligence purposes, Congress has the power to regulate the exercise of this authority by legislating a reasonable warrant procedure governing foreign intelligence surveillance. *Id.*; *see also id.* at 4, 1978 U.S.C.C.A.N. at 3905-06 (Attorney General Bell's testimony regarding Administration's position); S. Rep. No. 95-701, at 6-7, 1978 U.S.C.C.A.N. at 3975.

---

[19] FISA § 201(c), 92 Stat. 1797.

The need to comply with FISA for the collection of foreign intelligence information through electronic surveillance is reiterated in Executive Order No. 12333 ("United States Intelligence Activities" (December 4, 1981), as amended), Section 2.5, dealing with Attorney General approval required for certain collection techniques:

> 2.5 Attorney General Approval. The Attorney General hereby is delegated the power to approve the use for intelligence purposes, within the United States or against a United States person abroad, of any technique for which a warrant would be required if undertaken for law enforcement purposes, provided that such techniques shall not be undertaken **unless the Attorney General has determined in each case that there is probable cause to believe that the technique is directed against a foreign power or an agent of a foreign power. Electronic surveillance, as defined in the Foreign Intelligence Surveillance Act of 1978, shall be conducted in accordance with that Act, as well as this Order.**

Exec. Order No. 12333 § 2.5 (1981) (emphasis added) (attached as Markman Decl., Ex. 8).

The decision of the FISA court in *In re Sealed Case*, 310 F.3d 717, 742 (U.S. F.I.S. Ct. Rev. 2002), an *ex parte* proceeding, is not to the contrary. Where Congress has exercised its constitutional authority and thereby has withdrawn electronic surveillance, as defined by FISA, from the "zone of twilight" between Executive and Legislative constitutional authorities, the President's asserted inherent authority to engage in warrantless electronic surveillance is thereby limited. The *In re Sealed Case* court did not address this important issue.

**b. The "special needs" exception is inapplicable**

Nor are AT&T's alleged actions excused by the "special needs" doctrine, which permits "minimal intrusions" on privacy rights, sometimes including warrantless, suspicionless searches when the existence of "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring); *see also Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (finding that "minimal intrusions" may be allowed in certain circumstances). This case is not one involving a high-speed police chase, border checkpoints,[20] sobriety checkpoints,[21] or drug

---

[20] *U.S. v. Martinez-Fuerte*, 428 U.S. 543 (1976).

testing programs.[22] Indeed, no court has applied the "special needs" exception to permit suspicionless wiretapping or communications surveillance of any kind, much less the indiscriminate, mass surveillance alleged and described here. *See Edmond*, 531 U.S. at 44 ("We cannot sanction stops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime"). The ongoing interception and divulgence of millions of private communications over the course of years cannot reasonably be described as a minimal intrusion.

In essence, the government argues that the legality of AT&T's surveillance cannot be evaluated under our most fundamental Fourth Amendment principles because facts about "special needs" – the government's justification – cannot be revealed. The government's assertion would insulate from judicial review every possible mass surveillance program so long as the government can allege a fact-based defense like "special needs." Were this Court to accept the government's position "at this high level of generality," in spite of the record evidence demonstrating indiscriminate, mass electronic surveillance, "the Fourth Amendment would do little to prevent such intrusions from becoming a routine part of American life." *City of Indianapolis v. Edmond*, 531 U.S. 32, 42 (2000); *id.* at 56 (Thomas, J., dissenting) ("I rather doubt that the Framers of the Fourth Amendment would have considered 'reasonable' a program of indiscriminate stops of individuals not suspected of wrongdoing"). The Court's choice is simple: turn electronic surveillance into a Fourth Amendment-free zone, or hold that the Constitution imposes a meaningful burden of accountability upon the government.

---

[21] *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444 (1990).

[22] *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656 (1989) (government employees); *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602 (1989) (railway workers after train accidents); *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646 (1995) (student-athletes); *Bd. of Educ. v. Earls*, 536 U.S. 822 (2002) (high school students).

### 3. Proving AT&T's Violation Of The Fourth Amendment Does Not Require Probing State Secrets

#### a. The evidence establishes a violation of the warrant requirement

As explained above, Plaintiffs have already alleged and introduced evidence that amply establishes a *per se* Fourth Amendment violation. The Klein Evidence and Marcus' expert analysis establish that AT&T has engaged in wholesale, suspicionless surveillance of millions of private communications. The government's public statements establish that this was perpetuated without a warrant. RJN, ¶¶ 6-7. Indeed, no court could ever issue a constitutionally valid warrant for this kind of surveillance, because it is a "general search" forbidden by the Fourth Amendment. *See* Section II.D.1, *supra.* Particular intelligence gathering methods, the names of individual targets, or the content of intercepted communications are all unnecessary to plaintiffs' case.

#### b. AT&T's actions as an agent of the government are not protected by the state secrets privilege

To be liable for violations of the Fourth Amendment AT&T must have been acting as an instrument or agent of the government in effecting this surveillance. *United States v. Walther*, 652 F.2d 788, 792 (9th Cir.1981) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971)). The two critical factors in determining whether the defendants were acting as the "instrument[s] or agent[s]" of the government are: (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends. *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982). Both the Klein Evidence and the purported certifications establish these points – and both are outside the state secrets privilege.

The Klein Evidence establishes that the government knew of and acquiesced in AT&T's design and implementation of the [redacted] Room to capture myriad private communications traversing their backbone network. An NSA agent personally interviewed and cleared one of AT&T's technicians to install equipment in the [redacted] Room, and ordinary AT&T technicians were not permitted there. See Klein Decl., ¶ 17. The available facts further indicate

not only that the government is highly likely to have access to the communications captured by the [redacted] Room, but that it is highly unlikely that AT&T had any independent reason to design and construct the room. *See* Marcus Decl. ¶¶ 128-139.

Separate from the Klein Evidence, any certifications that AT&T may have obtained will indicate its role as an agent of the state. As noted in Section III, below, such certifications cannot constitute a "state secret" given the statutory scheme enacted by Congress. Any evidence related to AT&T's purported certification will establish the presence of "state action" without the need for secret evidence.

## III. THE ALLEGED SECRET CERTIFICATION DEFENSE DOES NOT PROVIDE THE BASIS FOR DISMISSING THIS CASE

The government argues that even if Plaintiffs can make out their affirmative case, AT&T may have received a certification from the government that would constitute a statutory defense.[23] Title III provides that the government may authorize a communication service provider or other person to assist in communications interception under Title III or electronic surveillance under FISA. 18 U.S.C. § 2511(2)(a)(ii).

The government further asserts that "the existence or non-existence of any certification or authorization by the Government relating to any AT&T activity would be information tending to confirm or deny AT&T's involvement in any alleged intelligence activity," and is therefore within the state secrets privilege. Gov't May 24, 2006 Br. at 24. The government contends that dismissal (or summary judgment) in AT&T's favor is appropriate because the state secrets privilege "deprives the defendant of information that would otherwise give the defendant a valid defense to the claim." Gov't Mem. at 15.

This position must be rejected for three reasons. First, to prohibit disclosure of the

---

[23] The governmental admissions to date show that there has been no signed court order satisfying 18 U.S.C. § 2511(2)(a)(ii)(A). *See* RJN at 6-7, 9. The only question, therefore, is whether there has been extra-judicial authorization that satisfies § 2511(2)(a)(ii)(B). Such a certification is only available in four specific instances, and the procedures of Title III and FISA are the "exclusive means" by which interceptions and electronic surveillance may be conducted. *See* Opposition to AT&T Corporation's Motion to Dismiss, filed June 6, 2006, at 15-17.

certification provided by FISA to constitute the basis for dismissal would effectively repeal the private rights of action provided by that very statute. Second, Congress has by statute expressly provided for disclosure of evidence of such certifications pursuant to ordinary "legal process." Third, the government's contention that the existence of the certifications must remain a secret because they might confirm or deny AT&T's participation in surveillance carries no weight in a case where the record evidence already establishes that AT&T actually did participate, and the protection is sought to hide ongoing and broad constitutional violations.

### A. "Secret Certifications" Would Eliminate The Private Rights Of Action Created By Congress

Congress created enforceable private rights of action when it enacted FISAand a mechanism to allow an aggrieved party to gather evidence to support a claim. *See* Section I.B.2.a, *supra*. Congress specifically allowed "legal process" as a basis to disclose the existence of the interception or surveillance or the device used to accomplish the interception or surveillance. 18 U.S.C. § 2511(2)(a)(ii). The certification provision thereby creates a possible defense to the private rights created by the other provisions of that same statute, and provides a mechanism by which the defense can be raised (or lost), pursuant to "legal process." While the parties disagree about the scope of the "legal process" disclosure provision (*see* Section I.B.2.b, *supra*), one point is indisputable: the statute could not decree that the certifications themselves were a "state secret" without thereby eliminating both the private rights of action created by FISA and the possible defense that a certification provides.

The government's argument demonstrates this point all too clearly. According to the government, the fact that the certifications are an alleged "secret" means that the case cannot go forward without violating AT&T's due process rights. Gov't May 24, 2006 Br. at 17; Gov't Mem. at 21-23; AT&T May 24, 2006 Br. at 15-19. Thus, **if** the statute contemplated that the certifications were themselves a secret, then all causes of action brought under FISA would need to be dismissed at the threshold. Congress would have nonsensically created "illusory" causes of action. *Halpern,* 258 F.2d at 44.