### B. Title 18 U.S.C. § 2511(2)(a)(ii) Provides For Disclosure Of Certifications Where The Underlying Surveillance Has Been Established Using Non-Classified Evidence

Whether AT&T acted illegally cannot be a secret. The government cannot use the state secrets privilege to hide illegal activities. *See*Section I.A.1, *supra* (citing *Black*, 62 F.3d at 1119-20; Exec. Order No. 13292 (2003) (amending Exec. Order No. 12958)). Markman Decl., Ex. 7. Rather than providing for "secret certifications," the provisions in 18 U.S.C. § 2511(2)(a)(ii) require quite the opposite – disclosure of the surveillance itself subject to "legal process". If the surveillance is subject to disclosure, then the certification that authorized it cannot be a secret.

This point is underscored by the briefs filed by the government and by AT&T on May 24, 2006. There, the government and AT&T identified only one reason why the certifications could be classified as a secret: to protect the confidentiality of AT&T's participation in the surveillance program. *See* Gov't May 24, 2006 Br. at 17; AT&T May 24, 2006 Br. at 15-19; *see also* Gov't Mem. at 21-23. Because that very fact – the existence of the surveillance program and AT&T's participation – is subject to the disclosure provisions of Section 2511(2)(a)(ii), the contention that the certifications themselves must be kept secret falls of its own weight.

To the degree that "legal process" contemplated by the statute is qualified by a concern over protecting confidential government information, the phrase is best understood in light of 50 U.S.C. § 1806(f). As noted above, that provision balances the government's interest in maintaining confidentiality with the private rights of action created by statute by giving the Court discretion to disclose the allegedly confidential information regarding the surveillance to the "aggrieved person" subject to appropriate safeguards. *See* Section I.B.2, *supra*.

Where the information at issue is not the surveillance itself but merely the certification authorizing the surveillance, such "safeguards" need not be so stringent as to exclude counsel for a party, and access should be granted liberally. Indeed, where the existence of the surveillance program has been established through non-classified information, the statutory scheme provides no reason to maintain the secrecy of the alleged certifications.

Finally, the government and AT&T advance the Catch-22-inspired notion that if there is no proof of an order or certification, then Section 2511(2)(a)(ii)(B) does not apply and therefore its disclosure provision is inapplicable. Gov't May 24, 2006 Br. at 17; Gov't Mem. at 21-23; AT&T May 24, 2006 Br. at 15-19. That puts matters backwards. The statute requires that AT&T have a certification before permitting electronic surveillance. Without it, AT&T would be in violation of the law. If AT&T wants to accept the benefits of a certification defense then it must accept the disclosure requirements that are written into the statutory provision that creates that defense.

### C. The Certifications Cannot Be Classified As A "Secret" For Purpose Of Maintaining the Secrecy Of AT&T's Surveillance Activities When Such Activities Are Already Established By Record Evidence

While the government argues that the existence or non-existence of a certification would tend to prove or disprove whether AT&T was involved in the alleged surveillance activities, whatever force that argument might have in some other context collapses here in light of the fact that AT&T's disclosure of its customers communications to the NSA are already set forth in non-secret record evidence. The Klein and Marcus evidence fully establishes the fact of AT&T's participation surveillance on behalf of the NSA. It is one thing for the government to bootstrap "state protection" for certifications on the theory that it is necessary to protect intelligence activity that might be a secret. It is quite another for the government to attempt such a bootstrapping maneuver where the underlying activity has already been established on the basis of non-secret evidence.

## IV. STANDING CAN BE ESTABLISHED WITHOUT IMPLICATING FACTS PROTECTED BY THE STATE SECRETS PRIVILEGE

The government also seeks dismissal on the grounds that Plaintiffs cannot establish standing without seeking discovery that will run afoul of the state secrets privilege. As set forth in Plaintiffs' Opposition to AT&T Corporation's Motion to Dismiss (at 4-7), facts sufficient to establish standing have been adequately pleaded. The government's additional contention that the state secrets privilege precludes Plaintiffs from establishing standing rests on a misapprehension of Plaintiffs' claims. Plaintiffs' standing relies, like the rest of their case, on

non-privileged evidence. Plaintiffs' standing is based on what AT&T did with Plaintiffs' electronic communications and data about those communications – not on what the government did with it.

### A. State Secrets Are Not Necessary To Establish Plaintiffs' Injury In Fact

As explained in further detail in Plaintiffs' Opposition to AT&T Corporation's Motion to Dismiss, Plaintiffs' burden to establish standing need only be proven "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan*, 497 U.S. at 889). As noted in Section II above, Plaintiffs allegations concerning their actual injury rests on AT&T's non-classified conduct.

The four named plaintiffs have standing in part because all have used AT&T's services. First Amended Complaint, ¶¶ 13-16. Two of them – Carolyn Jewel and Erik Knutzen, were AT&T WorldNet subscribers and users. *Id.* Jewel remains one to this day. As alleged in the First Amended Complaint, as a result of being AT&T WorldNet subscribers and users they were subject to the invasion of their privacy rights through AT&T's disclosure of their communications. First Am. Compl. ¶¶ 13-16 and 48-64.

To the degree that a look at the record evidence is appropriate at this early stage, the non-privileged record establishes standing, at a minimum, because all or substantially all of the electronic communications sent and received by Carolyn Jewel (who resides in the San Francisco Bay Area in Petaluma, California) were intercepted and disclosed by AT&T. Specifically, Mr. Marcus' non-privileged expert testimony, based on a probing analysis of Mark Klein's testimony and the documents he provided to Plaintiffs, explains that "the traffic that was diverted represented <u>all, or substantially all</u>, of AT&T's [redacted] traffic in the San Francisco Bay Area." Marcus Decl., ¶ 104 (emphasis added); Klein Decl., ¶¶ 29-34.

Further, a "substantial fraction" of electronic transmissions sent and received by Erik

Knutzen, of Los Angeles, California, were also intercepted and disclosed while he was a WorldNet subscriber. Plaintiffs' expert testified that "[t]he traffic intercepted at the [redacted] [redacted] facility probably represented a substantial fraction of AT&T's total national [redacted] traffic ...." *Id.*, ¶ 107. Not only that, but Mr. Marcus also offered his opinion that the evidence "*implies that a substantial fraction, probably well over half, of AT&T's purely domestic traffic was diverted, representing all or substantially all of the AT&T traffic handed off to other providers.*" *Id.*, ¶ 124 (emphasis in original). Based on his analysis of the Klein testimony and documents, Mr. Marcus also offered his opinion that one could infer "either that: (1) all of the networks with which AT&T [redacted] in San Francisco had their traffic intercepted, or else (2) any AT&T [redacted] partners whose traffic was not intercepted most likely were small networks that exchanged very little traffic with AT&T." *Id.*, ¶ 106. Indeed, Plaintiffs' expert concludes that "half of all internet traffic was likely intercepted (at least, at a physical level) for *all* AT&T customers. Moreover, it means that about 10% of all U.S. internet traffic was physically intercepted for *all* U.S. internet users, including non-AT&T customers. *Id.*, ¶ 126. The evidence reveals no effort by AT&T to filter out purely domestic-to-domestic electronic communications. Marcus Decl., ¶¶ 109-112. "A fiber [redacted], in its nature, is not a selective device – <u>all</u> the traffic on the [redacted] circuit was diverted or copied. *Id.*, ¶ 109.

Proof of AT&T's interception of electronic communications alone would be sufficient to establish standing. *See Berger v. New York*, 388 U.S. 41, 51, 59 (1967) (finding "the statute's failure to describe with particularity the conversations sought gives the officer a roving commission to 'seize' any and all conversations" and holding capturing a conversation sent over a telephone line is a Fourth Amendment search). Notably, Plaintiffs need not allege that AT&T has actually redirected copies of their electronic communications into the [redacted] Room. Plaintiffs need only allege that AT&T has increased the risk of such interception by installing the room. *Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000) ("An increased risk of harm can itself be injury in fact sufficient for standing."); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000)

("Threats or increased risk thus constitutes cognizable harm"). On the evidence established to date alone, Plaintiffs have, if nothing else, established the strong likelihood that their communications were intercepted, enough to easily survive the motion to dismiss standard and enable discovery.

**B. State Secrets Are Not Necessary To Establish Causation**

This evidence also establishes the "causation" prong of the standing inquiry. On Plaintiffs' allegations and evidence, AT&T is acting as an agent or instrumentality of the government, and AT&T's actions have caused them injury. *Lujan*, 504 U.S. at 561-562 (explaining challenges to government action when the plaintiff is an object of the action rarely pose causation questions). The [redacted] Room is only accessible by those with an NSA clearance. Klein Decl., ¶¶ 14, 16-18. Indeed, a leak in a "large industrial air conditioner in the [redacted] Room" that "was leaking water through the floor and onto [redacted]'s equipment downstairs" could not be repaired for some days because no one with an NSA clearance was available to fix it. *Id.*, ¶ 18. By Executive Order, an NSA clearance is only available to those who are performing or assisting in a "lawful and authorized governmental function." Exec. Order No. 12968, §§ 1.1(g) and (h) (1995), Markman Decl., Ex. 1.

Finally, the government argues that Plaintiffs cannot demonstrate "prudential standing." Gov't Mem. at 17. Prudential standing exists when the injury asserted by a plaintiff arguably falls within the zone of interests to be protected or regulated by the statute in question. *FEC v. Akins*, 524 U.S. 11, 20 (1998). Title III and FISA were clearly intended to protect against unlawful surveillance, and Congress specifically provided in Title III and FISA that an aggrieved person may bring a civil action for violations of these statutes. 18 U.S.C. § 2520; 50 U.S.C. § 1810; *cf. Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) (holding explicit grant of authority to bring suit "eliminates any prudential standing limitations and significantly lessens the risk of unwanted conflict with the Legislative Branch"). The factual predicates for establishing those

statutory violations are discussed in detail in Section II.B above.[24]

### C. Plaintiffs May Take Discovery To Further Establish Standing

Were it necessary, Plaintiffs could develop further non-secret evidence through discovery from AT&T to show additional facts to demonstrate standing. *Lujan*, 504 U.S. at 561. As noted in Section V, below, discovery of non-privileged materials will further support Plaintiffs' standing. Plaintiffs submit that it will reveal the interception and disclosure of domestic telephone communications, and of call data collected by AT&T in its "Daytona" database – which will necessarily include data regarding all calls made by Plaintiffs – and provided in total to the government. These are questions that AT&T can answer with no danger to national security. *See* Section V, *infra*.

## V. SUMMARY JUDGMENT IS PREMATURE ON THIS RECORD

### A. The State Secrets Privilege Applies Only To Concrete Evidentiary Disputes And Should Not Be Applied Prematurely

The government's invocation of the state secrets privilege is premature because it is entirely divorced from the discovery context. Plaintiffs have sought no discovery from the government. Plaintiffs have propounded a Rule 30(b)(6) request to AT&T, regarding the existence of a certification to which no privilege can attach. *See* Section I.B.2.b, *supra*. The government thus raises this evidentiary privilege in the abstract, before any individualized discovery dispute has ripened. The vast weight of authority reveals that the privilege is applied in the context of specific discovery disputes, and not in the abstract.[25]

---

[24] The Art. III concern for "generalized grievances" also poses no barrier to plaintiffs' standing. *See* Gov't Mem. at 17. That harm is widely shared is irrelevant to Art. III. The harm should not be abstract. *Akins*, 524 U.S. at 24 (using example of large numbers of individuals injured by a widespread mass tort). The interception of all or substantially all of a customer's domestic emails, telephone calls, and call data records – along with those of potentially hundreds of thousands of other customers – is far from abstract.

[25] *See, e.g., Northrop Corp. v. McDonnel Douglas Corp.*, 751 F.2d 395, 396 (D.C. Cir. 1984) (privilege invoked in response to a subpoena *duces tecum*); *Linder v. Nat'l Security Agency*, 94 F.3d 693, 694 (D.C. Cir. 1996); *Molerio*, 749 F.2d at 819 (privilege invoked in response to motion to compel after "Defendants answered the complaint, and complied with discovery requests, although redacting many of the documents produced"); *In re Under Seal*, 945 F.2d

Mere assertions by the government or AT&T that AT&T may have a valid defense are insufficient to require dismissal. If AT&T at any point in this litigation has a defense that it believes implicates state secrets, it should be presented to the Court for review, one category of discovery at a time. The Court should decide initially whether the defense truly does implicate state secrets, and, if so, whether the defense is valid and meritorious. Only then would it even be appropriate to consider whether any of Plaintiffs' claims must be dismissed because the evidence at issue is absolutely vital to its survival. *See In re United States*, 872 F.2d at 476. Such is not (and Plaintiffs' submit never will be) the case here.

Tellingly, the government's cases did not involve dismissal at the pleadings stage. For example, the government relies on *Kasza* for the proposition that "if plaintiff cannot make out a *prima facie* case in support of its claims about the excluded state secrets, the case must be dismissed." Gov't Br. at 15. In *Kasza*, however, the Ninth Circuit held that this determination is made not at the pleadings stage, but after "further proceedings." 133 F.3d at 1166. There, the privilege was invoked only "[o]nce discovery got underway," and the government refused to provide evidence specifically "with respect to the disclosure of certain categories of national security information associated with the operating location near Groom Lake, specifically including 'security sensitive environmental data.'" *Id.* at 1163. The framing of the dispute in that specific context was crucial, because "whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter." *Id.* at 1166 (quoting *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983)). Such is not the case here,

---

1285 (4th Cir. 1991) (privilege invoked "[a]fter several depositions and other preliminary matters were conducted," in response to a "motion to compel answers to questions that had been asked but unanswered during the deposition proceedings"); *DTM Research L.L.C. v. A.T. & T. Corp.*, 245 F.3d 327, 330 (4th Cir. 2001) (privilege invoked in response to particular discovery requests); *Bowles v. U.S.*, 950 F.2d 154, 156 (4th Cir. 1991) (privilege invoked in response to plaintiffs' discovery requests); *Heine v. Raus*, 399 F.2d 785, 787 (4th Cir. 1968) (privilege invoked during discovery); *Tilden v. Tenet*, 140 F.Supp.2d 623, 625 (E.D. Va. 2000) (privilege invoked after "Plaintiff's counsel made several discovery requests on the CIA for the production of documents and files").

where Plaintiffs have sought no discovery from the government and have thus far sought only a single category of non-privileged information from AT&T.

The government's reliance on the *Halkin* decisions (*Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978) ("*Halkin I*"), and 690 F.2d 977 (D.C. Cir. 1982) ("*Halkin II*"), and on *Fitzgerald*, 776 F.2d at 1241-42, are equally misplaced. Neither involved a motion to dismiss at the pleading stage. *Halkin* involved extensive discovery. The court remanded the case for further proceedings to determine if plaintiffs could prosecute some of their claims without resort to the suppressed evidence. *Halkin I*, 598 F.2d at 11. And in *Fitzgerald*, 776 F.2d at 1241-42, the government intervened to assert the privilege only on the eve of trial in specific response to the plaintiff calling witnesses to testify whether a weapons system was classified. *Id.* at 1237-38.

The government also relies on *Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983), as a case counseling dismissal. But in *Ellsberg*, the case was not dismissed at the pleadings stage either. Rather, the plaintiffs submitted interrogatories to the government defendants, asking for "detailed information" regarding the wiretaps at issue. *Id.* at 54. Even then, the state secrets privilege was no blunt hammer used to deprive the plaintiffs of a judicial forum. Rather, the government "admitted to two wiretaps," and selectively asserted the privilege only in response to certain other discovery requests. *Id.* The court scrutinized the application of the privilege to specific evidence, and held that only partial dismissal was necessary. *Id.* at 236.

Finally, the Court may consider careful and creative solutions to manage discovery. *See Halpern v. U.S.*, 258 F.2d 36, 43 (2nd Cir. 1958); *Loral Corp. v. McDonnell Douglas Corp.*, 558 F.2d 1130 (2nd Cir. 1977); *Spock v. U.S.*, 464 F. Supp. 510, 520 (S.D.N.Y. 1978). The Court may exercise discretion in tailoring the application of the privilege, if it applies at all, to address national security concerns without denying Article III review of the statutory and Constitutional transgressions of a public telephone company.

### B. The Government Must Provide A Reasonable Explanation For The Specific Basis Of Its Assertion Of The State Secrets Privilege On The Public Record Before Summary Judgment Could Be Appropriate

The government has given the Court no basis to determine if and how the state secrets privilege ought to be applied to the facts of this case, and given Plaintiffs no basis on which to truly evaluate that contention. The state secrets privilege will only apply to shield information from discovery once the government "publicly explain[s] in detail the kinds of injury to national security it seeks to avoid and the reason those harms would result from revelation of the requested information." *Ellsberg,* 709 F.2d. at 63. If the government cannot reveal even this much information, it must then "indicate why such an explanation would itself endanger national security." *Id.* at 63-64. If the government makes an inadequate showing on the public record, its claim for privilege should be denied. *Kinoy v. Mitchell*, 67 F.R.D. 1, 9-10 (S.D.N.Y. 1975) (rejecting government's claim of privilege as to warrantless wiretapping of domestic communications due to "insufficiently specific" public declarations).

The government has met neither requirement here, discussing in its publicly filed, redacted brief and affidavits statements so general and vague that they might relate to any assertion of the state secrets privilege. Rather, the government merely repeats its conclusion – that some information ought to be privileged.[26]

As this Court noted in its Order of June 6, 2006 in deciding to review the government's *in camera, ex parte* submissions, "the Court may later require the government to provide a more specific public explanation why the state secrets privilege must be invoked". June 6, 2006 Order at 3:24-26. The government should do so now. In *Kasza,* 133 F.3d at 1182, the government provided a detailed public declaration, explaining how environmental information including

---

[26] For example, the declaration of DNI Negroponte states that "sources, methods, relationships, or targets" could cause harm by alerting "…adversaries that certain communications channels are secure…" Negroponte Decl. at ¶ 12. Looking behind this inadequate disclosure, as the Court is empowered to do, it would appear that the harm is already realized given that Qwest has openly disclosed that it refused to cooperate with the government because they concluded the government's request was illegal, making it plausible that an adversary "is alerted" to Qwest as a possible "secure channel." Markman Decl., Ex. 6.

chemical soil composition from a secret Air Force base could reveal activities, military capabilities, and the base location. The government explained the categories of information it sought to protect, and the harm that might result if the privilege was not invoked. At a minimum, the government must provide similar information here.

### C. Congress Has Provided For Discovery In Electronic Surveillance Cases

This case should be allowed to move forward with non-privileged discovery, allowing the government an opportunity to object to particular discovery if and when it implicates specific state secret information. By objecting to specific discovery requests, the government may publicly specify how the request implicates state secrets and how those secrets might harm national security, if discovered.

By Act of Congress, Plaintiffs may take discovery, subject to all appropriate safeguards, to ascertain the legality of the electronic surveillance alleged in the Amended Complaint. 50 U.S.C. § 1806(f), 1845(f); *see* Section I.B.2.c, *supra*. This includes "contents" of the surveillance – that is, "any information concerning the <u>identity of the parties to such communication</u> or the <u>existence</u>, substance, purport, or meaning of that communication." 50 U.S.C. §1801(n). Section 1806(f), therefore, gives Plaintiffs the right to take discovery about the legality of electronic surveillance of all of the alleged data-sources in this case (telephone content, call data records, and internet messages). This includes not only Plaintiffs' allegations concerning interception and disclosure of internet messages, but also concerning telephone calls and call data records (i.e., AT&T's disclosure of the "Daytona" database, including data about millions of calls made by AT&T customers, to the government). Plaintiffs' discovery will not be extensive – it will be enough to establish what AT&T did and whether it was illegal. And it can be done as needed pursuant to protective order, to avoid the disclosure of AT&T trade secrets.

Further, 50 U.S.C. §1845(f) gives Plaintiffs the right to discover information regarding pen registers or trap and trace devices used in AT&T's activities. Plaintiffs allege that AT&T is using such a device. *See* Amended Complaint ¶¶ 138–14 (Count VII). Information about the legality of AT&T's use of such devices goes to Plaintiff's claims regarding AT&T's interception

and disclosure of domestic telephone calls and email. Section 1845(f) also empowers the Court to permit Plaintiffs to take discovery regarding whether AT&T is providing a "live" feed of call data records to third parties like the government. This non-privileged discovery can and should proceed forthwith so that the Court can assess the ultimate issue in this case – the legality of the alleged electronic surveillance by AT&T.[27]

### D. Specific Non-Secret Discovery Should Proceed

If the Court does not deny the government's alternative motion for summary judgment outright, the motion should be stayed under Fed. R. Civ. P. 56(f) until Plaintiffs have been allowed to adduce additional evidence through discovery. Of course, "Where … a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." *Burlington N. & Santa Fe Ry. Co. v. The Assiniboine*, 323 F.3d 767, 773 (9th Cir. 2003); *Metabolife Int'l v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). Given that discovery has not yet even commenced, this is such a case.

In the declaration submitted herewith, Plaintiffs make "(a) a timely application, which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists," under Rule 56(f) and thereby satisfy the Ninth Circuit's requirements for a stay of a summary judgment motion pending Rule 56(f) discovery. *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986); Markman Decl., ¶¶ 10-20. The Rule 56(f) declaration sets out with specificity the non-secret discovery that Plaintiffs should be permitted to pursue in this case. Granting Plaintiffs' alternative Rule 56(f)

---

[27] Nor is the statutory regime created by Congress regarding discovery relating to electronic surveillance a one-way street. It also inures to the benefit of AT&T. Pursuant to 50 U.S.C. § 1806(f) and 1845(f), AT&T is permitted to engage in discovery relating to the legality of the surveillance in which it has played the central role. Given the law drafted by Congress and the availability of discovery subject to appropriate safeguards regarding the legality of the surveillance, dismissal is not a viable option.

motion would allow the discovery of further non-privileged evidence in the case, which may moot the government's assertion of the state secrets privilege.

The government may contend that some portions of such discovery are blocked by the state secrets privilege. Even assuming that is so, it is for the Court to determine, in the context of specific and concrete discovery disputes, whether and to what degree the state secrets privilege can be invoked to prevent a full adjudication of the substantial violations of basic rights that are at issue in this case. The government cannot so expand the state secrets privilege so that it eliminates without further inquiry all meaningful judicial review of Plaintiffs' claims.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny the government's motion to dismiss, and its alternative motion for summary judgment.

DATED: June 8, 2006

Respectfully submitted,

HELLER EHRMAN LLP
ROBERT D. FRAM (SBN 126750)
robert.fram@hellerehrman.com
MICHAEL M. MARKMAN (SBN 191388)
michael.markman@hellerehrman.com
ETHAN C. GLASS (SBN 216159)
SAMUEL F. ERNST (SBN 223963)
NATHAN SHAFROTH (SBN 232505)
ELENA DIMUZIO (SBN 239953)
333 Bush Street
San Francisco, CA 94104
Telephone: 415/772-6000
415-772-6268 (fax)

______________________________
ROBERT D. FRAM

Attorneys for Plaintiffs

ELECTRONIC FRONTIER FOUNDATION
CINDY COHN
LEE TIEN
KURT OPSAHL
KEVIN S. BANKSTON
CORYNNE MCSHERRY
JAMES S. TYRE
454 Shotwell Street
San Francisco, CA 94110
Telephone: 415/436-9333

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
REED R. KATHREIN
JEFF D. FRIEDMAN
SHANA E. SCARLETT
MARIA V. MORRIS
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
ERIC ALAN ISAACSON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LAW OFFICE OF RICHARD R. WIEBE
RICHARD R. WIEBE
425 California Street, Suite 2025
San Francisco, CA 94104
Telephone: 415/433-3200
415/433-6382 (fax)

TRABER & VOORHEES
BERT VOORHEES (137623)
bv@tvlegal.com
THERESA M. TRABER (116305)
tmt@tvlegal.com
128 North Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: 626/585-9611
626/ 577-7079 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the following non-CM/ECF participants:

David W. Carpenter
Sidley Austin Brown & Wood LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60600

David L. Lawson
Sidley Austin Brown & Wood
172 Eye Street, N.W.
Washington, DC 20006

By /s/

Cindy A. Cohn, Esq. (SBN.145997)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x108
Facsimile: (415) 436-9993
cindy@eff.org