PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov
ANDREW H. TANNENBAUM
andrew.tannenbaum@usdoj.gov
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 514-4263
Fax: (202) 616-8460/(202) 616-8202

*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T CORP., AT&T INC. and DOES 1-20, inclusive,<br><br>Defendants. | Case No. C-06-0672-VRW<br><br>**RESPONSE OF THE UNITED STATES TO THE ORDER TO SHOW CAUSE**<br><br>Judge: The Hon. Vaughn R. Walker<br>Hearing Date: August 8, 2006<br>Time: 2:00 p.m. |

**INTRODUCTION**

The Court has ordered the parties to show cause in writing by July 31, 2006 as to why the Court should not appoint an expert pursuant to Federal Rule of Evidence ("FRE") 706 to assist the Court in determining whether disclosing particular evidence would create a "reasonable danger" of harming national security. *See Hepting v. AT&T Corp.*, No. C-06-672,



Dockets.Justia.com

2006 WL 2038464, at *34-35 (N.D. Cal. July 20, 2006) (hereafter "Order"). In addition, the Court requested the parties' views "regarding the means by which the court should review any further classified submissions." *Id.* Finally, the Court directed the parties to state their position as to "what portions of this case, if any, should be stayed if this order is appealed" pursuant to 28 U.S.C. § 1292(b). *Id.*

As set forth herein, it is the position of the United States that all further proceedings in this case should be stayed pending a determination by the Court of Appeals on whether to review the Court's Order pursuant to 28 U.S.C. § 1292(b) — and, if the Court of Appeals accepts review, pending conclusion of that appeal.[1] Any future proceedings in this case are dependent on the issues to be addressed and resolved by the Court of Appeals, should it review the Court's Order. If the Court's conclusion that this case need not be dismissed on state secrets grounds is reversed by the Court of Appeals, such a result would obviate the need for any further proceedings. In particular, any further proceedings hinge on the Court's view that the state secrets privilege does not preclude AT&T from confirming or denying certain information. *See* Order at *19. That question is the very issue on which the United States has sought appellate review. The United States respectfully disagrees with the Court's view as to whether and to what extent the state secrets privilege precludes AT&T from providing any information in this case. Thus, unless stayed, further proceedings are likely to give rise to precisely the same state secret privilege issues that the Court has certified for appellate review.

The United States also urges the Court to defer consideration of whether to appoint an "expert" under FRE 706 until the stay and appellate issues are resolved. Otherwise, the United States must oppose such an appointment.[2] The decision on whether to grant access to classified

---

[1] The United States filed its petition for interlocutory appeal with the Court of Appeals for the Ninth Circuit on July 31, 2006.

[2] While this Court has suggested that it appoint an "expert" pursuant to Fed. R. Evid. 706, the United States assumes the Court is not suggesting adherence to the literal requirements of that rule—which provides, for example, that any materials reviewed by the expert (in this case, classified materials) be subject to discovery—but rather envisions having the expert play the role

information rests with the Executive Branch, and any order by the Court appointing such an expert to review and assess the status of classified information would raise profound separation of powers concerns that should be avoided. Moreover, the law contemplates that state secrets privilege assertions will be resolved by Article III federal judges who, by virtue of their Constitutional office, may receive access to classified information in order to address questions before them. We are not aware of any case involving the state secrets privilege in which an expert was appointed to assist the Court in addressing the central question to be decided—whether the disclosure of certain information would harm national security.

To the extent the Court wishes to probe the Government's assertion of the state secrets privilege further or engage in consultations about the matter, the appropriate course is for the Court to look to the United States to address whatever issues and questions the Court may have. Current officials of the Executive Branch are not only charged with special responsibility to protect national security, but have the particular expertise and full, current background of information as a basis on which to advise the Court. No one outside the Executive Branch, including former officials—even ones who previously were cleared at high levels and undoubtedly remain trustworthy—possess the authority or full range of expertise to make current judgments about harms to national security.

Finally, to the extent this case proceeds, the need for additional security measures, including whether the Court should travel to Washington (as suggested by the Court, *see* Order at * 34), can be addressed between the Government and the Court, if necessary, as circumstances arise.[3/]

---

of a "technical advisor." *See, e.g.*, *Renaud v. Martin Marietta Corp., Inc.*, 972 F.2d 304, 308 n.8 (10th Cir. 1992) (finding that because "experts were . . . more technical advisors to the Court than expert witnesses as contemplated by Fed. R. Evid. 706, . . . depositions and cross-examination were inappropriate").

[3] The United States further addresses the Court's question regarding appropriate procedures for the protection of classified information in an *ex parte*, *in camera* submission filed herewith.

## ARGUMENT

### I. FURTHER PROCEEDINGS IN THIS CASE SHOULD BE STAYED PENDING APPEAL OF THE COURT'S JULY 20, 2006 ORDER.

A stay of this Court's July 20, 2006 Order pending appellate interlocutory review is appropriate.[4] Whether to grant a stay pending appeal is governed by the familiar test that weighs both the likelihood of success on the merits and the relative equities regarding irreparable injury. To obtain a stay, the moving party must demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Artukovic v. Rison*, 784 F.2d 1354, 1355 (9th Cir. 1986) (citing *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir.), *rev'd in part on other grounds*, 463 U.S. 1328 (1983)); *see also Beltran v. Meyers*, 677 F.2d 1317, 1320 (9th Cir. 1982). These tests "represent the outer reaches of a single continuum." *Artukovic*, 784 F.2d at 1355; *see also Benda v. Grand Lodge of Int'l Ass'n of Machinists*, 584 F.2d 308, 314 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937 (1979). In addition, the Ninth Circuit considers "'strongly' the public interest as an additional factor." *Artukovic*, 784 F.2d at 1355.

A stay pending appeal is plainly warranted here. In certifying the case for interlocutory review, the Court already recognized that this case presents serious questions. In addition, further proceedings necessarily hinge on acceptance of the Court's view that the state secrets privilege does not prevent certain additional disclosures. *See* Order at *19. The very issues on which the United States seeks appellate review are whether the Court properly found that this case should not be dismissed, and whether any information that might tend to confirm or deny any involvement by AT&T in assisting the government to intercept the content of

---

[4] Because the Court has requested the parties' views on whether its Order should be stayed, this response should, to the extent necessary, be treated as a motion for a stay pending appeal. *See* Fed. R. App. P. 8(a)(1)(A). There is no apparent reason why the matter should now be calendared as a separate motion. Indeed, should the Court reject the Government's position set forth herein as to why a stay pending appeal is necessary, any motion on the matter would obviously be impracticable and, therefore, unnecessary before seeking such relief in the Court of Appeals. *See id*., Rule 8(a)(2)(A)(i).

communications can be disclosed. Until those questions are resolved, the United States believes that no information can be disclosed at any "level of generality" without risking severe irreparable harm both to the Government's position and to national security. Indeed, where the issue on appeal concerns the disclosure of information, proceedings should be stayed until a determination is made regarding these threshold questions.

Since the Court of Appeals may disagree with this Court's view that the case can proceed at all, any attempt to proceed now risks the very disclosures that an appeal is intended to address and the potential harm to national security at stake— effectively destroying appellate court jurisdiction by mooting the significant issues on appeal.

**A. The Questions at Issue Are of Such Serious Weight That a Stay Pending Appeal Is Warranted.**

To obtain injunctive relief pending appeal, the moving party need not convince the district court, which has just ruled against it on the very question at issue, that it was wrong to have done so. Rather, as to the merits of the matter being appealed, it is sufficient to show that the appeal presents serious legal questions. *Artukovic*, 784 F.2d at 1355; *see also Population Institute v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) ("'[I]t will ordinarily be enough that the plaintiff has raised serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation and thus for more deliberative investigation.'") (quoting *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)). On this factor, it should be dispositive to note that the Court itself has observed that "a substantial ground for difference of opinion" exists regarding whether the state secrets privilege bars further proceedings in this case. *See* Order at *35.

Beyond this, the matters at issue on appeal are of obvious weight: whether further proceedings in this case might entail or risk the disclosure of information that would cause exceptionally grave harm to U.S. national security. In its Order, the Court has applied—and, in our view, substantially limited—a long-standing line of Supreme Court precedent holding that "public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and

respecting which it will not allow the confidence to be violated." *Totten v. United States,* 92 U.S. (2 Otto) 105, 107, 23 L.Ed. 605 (1875); *Tenet v. Doe*, 544 U.S. 1 (2005). Plaintiffs' allegations put squarely at issue whether the United States and AT&T have a relationship pursuant to which AT&T assists the United States with respect to the intelligence activities alleged in the Complaint. Contrary to the Court's view, *see* Order at *14, the *Totten* doctrine has not been applied solely to preclude adjudication of alleged espionage agreements between the parties thereto. *See Weinberger v. Catholic Action of Haw./Peace Ed. Project*, 454 U.S. 139, 146-147 (1981) (citing *Totten* in holding that whether or not the Navy has complied with the National Environmental Policy Act to the fullest extent possible is beyond judicial scrutiny, where, due to national security reasons, the Navy could "neither admit nor deny" the fact that was central to the suit— that it proposed to store nuclear weapons at a facility); *see also Kasza v. Browner*, 133 F.3d 1159, 1170 (9th Cir.) (relying in part on *Totten* to dismiss case even though a classified espionage relationship was not at issue but facts about an Air Force facility), *cert. denied*, 525 U.S. 967 (1998). In any event, a serious question exists on this point.

Further, the Court's determination that *Tenet* and *Totten* are inapplicable here, and that the "very subject matter" of this action is not a state secret because certain statements made by AT&T and the Government tend to confirm a relationship relevant to this case, *see* Order at *15, *17, are quite far from being free of doubt—indeed, we submit were wrongly decided. The Government has never confirmed or denied a relationship with AT&T regarding the activities alleged by the Plaintiffs. *See* Public Declaration of John D. Negroponte, Director of National Intelligence, ¶¶ 11-12. The Court's inference of such a relationship based on general statements by AT&T describing a history of cooperation with the Government and noting that it has acted lawfully in doing so; or an acknowledgment by the Government of the mere existence of the TSP; or the prominence of AT&T as a telecommunications provider is, in our view, unfounded speculation.

In addition, the Court failed to apply the proper standard of review in deciding whether the very subject matter of a case is a state secret, which turns not on whether public statements

bear upon the allegations in the case, but on whether actual proof necessary to decide the merits of the claims would risk or implicate the disclosure of state secrets. *See Kasza*, 133 F.3d at 1170 (finding the very subject matter of the case to be a state secret by examining whether the evidence needed for plaintiffs to establish a *prima facie* case and any further proceeding, including trial, would jeopardize national security); *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1237 (4th Cir. 1985) ("due to the nature of the question presented in this action *and the proof required* by the parties to establish or refute the claim, the very subject of this litigation is itself a state secret") (emphasis added). Indeed, in finding that the very subject matter of this case is not a state secret, the Court "declined to decide" the issues necessary to make that determination. *See* Order at *17 (declining to deciding whether the case should be dismissed because the state secrets assertion will preclude the evidence necessary for the plaintiffs to establish a prima facie case or AT&T to defend). There is at least a serious question as to whether the Court decided this fundamental threshold question properly, thus warranting further review.

**B. The Balance of Harms Tips Decidedly in Favor a Stay Pending Appeal.**

The question of whether a stay pending appeal should issue turns ultimately on the balance of hardships, which tips squarely in favor of the United States here. In any matter of privilege, but particularly one involving the state secrets privilege to which the "utmost deference" is due, *Kasza*, 133 F.3d at 1166, a stay is required to avoid "disclosure of the very thing the privilege is designed to protect." *See United States v. Reynolds*, 345 U.S. 1, 8 (1953).

It remains the United States' position that: (i) the very subject matter of this case is a "state secret," *see Kasza*, 133 F.3d at 1166; (ii) that further litigation is precluded by the *Totten/Tenet* doctrine; (iii) that state secrets are essential to—and, thus, are at risk of disclosure in—any adjudication of the claims on the merits; and, in particular, (iv) that any role AT&T may (or may not) have in assisting the Government in intercepting the content of communications under the TSP cannot be disclosed. The United States does not intend to change its position on these matters in any further proceedings until appellate review has been exhausted. Yet the

Court envisions that further disclosures related to these threshold facts are possible.

> The court concludes that the state secrets privilege will not prevent AT&T from asserting a certification-based defense, as appropriate, regarding allegations that it assisted the government in monitoring communication content. The court envisions that AT&T could confirm or deny the existence of a certification authorizing monitoring of communication content through a combination of responses to interrogatories and *in camera* review by the court. Under this approach, AT&T could reveal information at the level of generality at which the government has publicly confirmed or denied its monitoring of communication content. This approach would also enable AT&T to disclose the non-privileged information described here while withholding any incidental privileged information that a certification might contain.

*See* Order at *19. The United States disagrees with the Court's views as to what AT&T can and cannot say with respect to any alleged certification without disclosing information properly held privileged. Indeed, a disclosure "at the level of generality at which the government has publicly confirmed or denied its monitoring of communication content" would appear to require a confirmation of denial of the existence of a certification with respect to this activity. Any attempt to go down this road implicates disclosing information subject to the state secrets privilege when the United States' position on appeal is that any such disclosure is improper. Even if some purportedly non-confirmatory statements could be developed at a "level of generality," the risk is great that proceeding as the Court envisions would nonetheless indirectly confirm or deny classified facts, and thus risk the disclosure of information that the United States believes is properly privileged.

Courts are "not required to play with fire and chance further disclosure — inadvertent, mistaken, or even intentional — that would defeat the very purpose for which the privilege exists." *Sterling v. Tenet*, 416 F.3d 338, 344 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1052 (2006). Neither, of course, should the Government be required to take such a chance. The law is clear, moreover, that where the very issue on appeal is whether information should be protected, further proceedings that might disclose that information should not be conducted. Where a movant has "raised 'specific privilege claims,'" such as here, "and there exists a 'real possibility . . . that privileged information would be irreparably leaked' . . . if it turns out that the district court erred," the movant has "shown a 'real possibility' that he will be irreparably

harmed by the disclosure . . . pursuant to the district court's order." *United States v. Griffin*, 440 F.3d 1138, 1142 (9th Cir. 2006); *see also Center for National Security Studies v. U.S. Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (finding that "disclosure of the names of the detainees and their lawyers" pursuant to the Freedom of Information Act "would effectively moot any appeal," and therefore granting a stay pending appeal); *Providence Journal Company v. FBI*, 595 F.2d 889 (1st Cir. 1979) (granting stay pending appeal to preserve status quo of not disclosing information at issue in FOIA case). This Court itself has previously noted that, if an appeal will be rendered moot, such circumstances present "'the quintessential form of prejudice' justifying a stay." *In re Pacific Gas & Electric*, No. C-02-1550 VRW, 2002 WL 32071634, at *2 (N.D. Cal. Nov. 14, 2002) (citation omitted).

In this case, the Court expressly contemplates that "the state secrets privilege will not prevent AT&T from asserting a certification defense," *see* Order at *19 — a matter implicating privileged information that the United States seeks to contest on appeal. Thus, the very "real possibility" exists that further proceedings would risk the disclosure of privileged information and irreparably harm the interests of the United States absent a stay of the Court's July 20 Order pending appeal.

**C. The Public Interest Also Favors a Stay Pending Appeal.**

Finally, the public interest weighs in favor of a stay pending appeal. At issue is nothing less than the disclosure of information that might cause exceptionally grave harm to national security. While the Court and Plaintiffs may disagree with that assessment, it remains the matter in dispute on appeal, not only as to whether the Government can confirm or deny AT&T's role in the allegations, but whether the very subject matter of this case implicates state secrets. "[N]o governmental interest is more compelling than the security of the nation," *Haig v. Agee*, 453 U.S. 280, 307 (1981), and that is what remains at issue here on appeal. Moreover, where courts have found that, upon an assertion of the state secrets privilege, the "greater public good" may lie in dismissal of the case, *see Kasza*, 133 F.3d at 1167, the public interest is best served by staying further proceedings until the Court of Appeals decides that very question.

## II. APPOINTMENT OF AN EXPERT TO ASSIST THE COURT IN ITS CONSIDERATION OF THE STATE SECRETS PRIVILEGE SHOULD BE DEFERRED TO AVOID SERIOUS SEPARATION OF POWERS CONCERNS.

While the issue of whether there will be appellate review of the Court's Order is pending, the United States urges the Court to defer consideration of the appointment of an expert to assist the Court on state secrets matters. Nonetheless, if the Court elects to address the issue now, the Government opposes such an appointment.[5/] The authority to grant access to classified material belongs to the President, through his Executive branch designees. It would be improper for this Court to appoint an expert or technical advisor to assist it in the course of further proceedings with the review of classified information to assess the state secrets privilege, its implications for this case, and whether there is a reasonable danger that disclosure of certain information would harm national security.

It is well established that, under the separation of powers established by the Constitution, the Executive Branch is responsible for the protection and control of national security information. *See Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988). The Supreme Court has held:

> [The President's] authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant.

*Id.* By Executive Order, therefore, the President has instructed Executive agencies to strictly control classified information in their possession and to ensure that such information is disclosed only where an agency is able to determine that doing so is "'clearly consistent with the interests of the national security.'" *See* Exec. Order No. 12,958, 60 Fed. Reg. 19825 (Apr. 17, 1995), *as amended by* Exec. Order No. 13,292, 68 Fed. Reg. 15315 (Mar. 25, 2003); *see also Dorfmont v.*

---

[5] If the Court does appoint an expert pursuant to FRE 706, the United States requests, apart from any independent ground for review, that the Court certify any such order for immediate appellate review under 28 U.S.C. § 1292(b).

*Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990) (quoting *Egan*, 484 U.S. at 528), *cert. denied*, 499 U.S. 905 (1991). Accordingly, the decision to grant or deny access to such information lies within the discretion of the Executive. *See Egan*, 484 U.S. at 529; *Dorfmont*, 913 F.2d at 1401 ("The decision to grant or revoke a security clearance is committed to the discretion of the President by law."); *see also Webster v. Doe*, 486 U.S. 592, 601 (1988); *Dorfmont*, 913 F.2d at 1401; *Guillot v. Garrett*, 970 F.2d 1320, 1324 (4th Cir. 1992) (noting that President has "exclusive constitutional authority over access to national security information").

Thus, any order by the Court that purports to grant access to classified information to an expert or technical advisor, or that directs the United States to do so, would raise serious separation of powers questions—questions that can be avoided here. The United States has provided the Court with access to classified information, *in camera*, *ex parte*, to assist the Court in reviewing privilege assertions. Even as to such disclosures, the Supreme Court has cautioned that the court itself "should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers." *See Reynolds*, 345 U.S. 1 at 10. This admonition readily extends to the appointment of an expert by the Court.

Indeed, the same consideration has led courts to reject requests by counsel for plaintiffs for access to classified information. "Our nation's security is too important to be entrusted to the good faith and circumspection of a litigant's lawyer . . . or to the coercive power of a protective order." *Ellsberg v. Mitchell* 709 F.2d 51, 61 (D.C. Cir. 1983) (rule denying private counsel access to classified information is "well settled"); *see also Halkin v. Helms ("Halkin I")*, 598 F.2d 1, 7 (D.C. Cir. 1978) ("It is not to slight judges, lawyers, or anyone else to suggest that any such disclosure carries with it the serious risk that highly sensitive information may be compromised.") (quoting *Knopf, Inc. v. Colby*, 509 F.2d 1362 (4th Cir. 1975)); *Weberman v. NSA*, 668 F.2d 676, 678 (2d Cir. 1982) (risk presented by giving private counsel access to classified information outweighs benefit of adversarial proceedings); *Jabara v. Kelly*, 75 F.R.D. 475, 486 (E.D. Mich. 1977) ("plaintiff and his legal representative should be denied access to

classified in camera exhibits submitted in support of the [privilege] claims"); *Salisbury v. United States*, 690 F.2d 966, 973-74 & n.3 (D.C. Cir. 1982) ("In any FOIA case in which considerations of national security mandate *in camera* proceedings, the District Court may act to exclude outside counsel when necessary for secrecy or other reasons.").

A different outcome is not warranted for a court-appointed expert. The issue is not the trustworthiness of the individual but, rather, the need to avoid the further risk of disclosure. *See Colby v. Halperin*, 656 F.2d 70, 72 (4th Cir. 1981) ("Disclosure to one more person, particularly one found by the CIA to be a person of discretion and reliability, may seem of no great moment, but information may be compromised inadvertently as well as deliberately" and, thus, "*no one* should be given access to such information who does not have a strong, demonstrated need for it") (emphasis added).

In addition, it is the judgment and expertise of *current* Executive Branch officials that matters in resolving whether a disclosure would harm national security. For example, in *Halperin v. National Security Council*, 452 F. Supp. 47, 51 (D.D.C. 1978), *aff'd without opinion*, 612 F.2d 586 (D.C. Cir. 1980), the court rejected reliance on the expertise of the plaintiff, a former official of the National Security Council, who offered "his own impressive credentials as a scholar and actor in the field of foreign policy and national security" to demonstrate the "flaws in the reasons given by the several incumbents for their opinions and classifications"—officials who were "constitutionally responsible for the conduct of United States foreign policy as to the proper classification of [certain information]." *See also Snepp v. United States*, 444 U.S. 507, 512 (1980) (per curiam) (finding that current CIA officials have a "broader understanding of what may expose classified information" than does a former CIA agent); *see also Egan*, 484 U.S. at 529 (the protection of classified information must be committed to the broad discretion of the agency responsible). [6]

---

[6] In FOIA actions, for example, courts are to "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record" because "the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [*sic*] might occur as a result of public disclosure of a particular

Particularly in a state secrets privilege context, where, under the applicable standard of review, the burden is on the government to make a showing of need to protect certain information, *see Reynolds*, 345 U.S. at 11, the obligation and right to make that showing to the Court resides with current Executive Branch officials, who are fully aware of the panoply of intelligence information at issue and the risks at stake from any disclosure. Moreover, these are judgments to which the Court owes to the Executive the "utmost deference." *Kasza*, 133 F.3d at 1166. As compared to the reasoned judgment of the Executive Branch, the views of an outside expert are entitled to no deference at all, however thoughtful, experienced, and trustworthy that individual may be.

Thus, the appropriate course if the Court needs assistance with addressing an assertion of the state secrets privilege is to make further inquiry of the Government regarding whatever issues of questions the Court may have. That is the course taken by the district court in *Edmonds v. U.S. Department of Justice*, 323 F. Supp. 2d 65 (D.D.C. 2004), *aff'd*, 161 Fed. Appx. 6, 045286 (D.C. Cir. May 6, 2005) (*per curiam*), *cert. denied*, 126 S. Ct. 734 (2005), following the court's initial review of the classified declarations submitted by the Government. After the Government asserted the state secrets privilege, the court issued an Order requiring the Government to detail specifically why it was not possible to disentangle sensitive information from nonsensitive information to permit the plaintiff's claims to go forward and for the Government to defend against the claims in that case. *See id. at* 78-79. The Government subsequently submitted an additional classified declaration in that case which addressed the court's questions and concerns, ultimately leading the court to uphold the state secrets assertion and dismiss the case. *See id.* Through such a process, the Government itself may address questions or concerns raised by the Court in a secure fashion. *See also Terkel v. AT&T Corp.*, No. 06-2837, 2006 WL 2088202, (N.D. Ill. July 25, 2006) at * 5, n.2.

At the very least, the Court should avoid the significant constitutional issues raised by the

---

classified record." *See* S. Rep. No. 1200, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6290.

appointment of an expert to review classified information until the point at which it is clearly necessary. Even if the case proceeds, the Court may find that any questions concerning whether disclosure of information might reasonably harm national security may be resolved through consultations with the Government itself. An analogous situation arose in *Stillman v. Central Intelligence Agency*, 319 F.3d 546, 548-49 (D.C. Cir. 2003), a case involving a challenge to the Government's pre-publication review requirements designed to ensure that former Government officials do not disclose classified information. The district court desired the assistance of plaintiff's counsel in evaluating classified information, and ordered that he be given a security clearance. *Id.* at 548. The D.C. Circuit reversed, instructing the district court that it should first attempt to resolve questions concerning the classification of information on its own through an *ex parte* process. *Id.* If such questions could not be resolved in that manner, "then the court should consider whether its need for such assistance outweighs the concomitant intrusion upon the Government's interest in national security." *Id.* at 549. The D.C. Circuit added that, only after the district court determined that it could not resolve a classification issue without assistance should it enter an order requesting assistance by clearing counsel, and the Government could then appeal to resolve the weighty constitutional question presented by such an order. *Id.* In short, given the sensitivity of classified information, the risk to national security from additional disclosures, and the significant separation of powers concerns, the D. C. Circuit in *Stillman* required that any need for assistance on a particular matter clearly be ripe. Such an approach makes sense in cases, such as this, where significant interests are at stake. Indeed, to our knowledge, no court considering a state secrets privilege claim has ever proposed that an expert be cleared by the Government in order to assist the court in determining whether there was a reasonable danger that a disclosure would harm national security.[7/]

[7] In *In re U.S. Dept. of Defense*, 848 F.2d 232 (D.C. Cir. 1988), a FOIA case involving a review of over 2000 classified documents totaling 14,000 pages, the district court's decision to appoint a special master to assist in such a voluminous review was upheld, but only where the district court had limited the master's role to summarizing the position of each party and barred him from making any recommendation on the merits of whether classified information was protected from disclosure. Where the special master's role was "carefully cabined," the D.C

Finally, given the standard of review as to state secrets claims, the need for an "expert" is not apparent or appropriate. The Ninth Circuit has held that an assertion of the state secrets privilege must be accorded the "'utmost deference,' and the court's review of the claim of privilege is narrow." *See Kasza*, 133 F.3d at 1165-66. Aside from ensuring that the privilege has been properly invoked as a procedural matter, the sole determination for the Court is whether, "under the particular circumstances of the case, 'there is a *reasonable danger* that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.'" *See Kasza*, 133 F.3d at 1166 (quoting *Reynolds*, 345 U.S. at 10). The Court's task is simply to determine if those who have expertise as to intelligence matters in the Executive Branch have articulated a reasonable basis for their position that harm would flow from disclosure. These are necessarily the kind of predictive judgments that can properly be made based on "complex political, historical, and psychological" considerations. *See Central Intelligence Agency v. Sims*, 471 U.S. 159, 176 (1985). These are not matters given to "expert" analysis, because they are ultimately policy judgments appropriately made by those charged with the responsibility to protect national security and who have the range of information necessary to inform their judgments. Such review— which is akin to rational basis review— "'is not a license for courts to judge the wisdom, fairness, or logic'" of governmental policies. *Heller v. Doe*, 509 U.S. 312, 319 (1993). Rather, a judgment must be upheld if there is "any reasonably conceivable state of facts" that supports it. *See Heller*, 509 U.S. at 320; *see also McGehee v. Casey*, 718 F.2d 1137, 1148-49 (D.C. Cir. 1983) (courts "should defer to [the Executive Branch's] judgment as to the harmful results of publication" as long as the

---

Circuit found the case was "*sui generis*" and declined to enter a writ of mandamus. *See id* at 239. The Government did not raise a separation of powers objection in that case and, hence, the constitutional implications of the matter were not addressed. In this case, there is not yet any issue regarding the review of an extremely large volume of documents. Also, the Court has proposed that the court-appointed expert specifically assist in determinations as to whether a disclosure poses a reasonable danger to national security, *see* Order at * 34, and the United States does specifically object to the appointment on constitutional grounds.

explanations offered to demonstrate a logical connection between the information withheld and the reasons for classification); *Washington Post v. U.S. Dep't of Defense*, 766 F. Supp. 1, 6-7 (D.D.C. 1991) ("[s]ubstantive review of classification decisions is quite deferential [because it involves an evaluation of national security]" and "little more than a showing that the agency's rationale is logical" meets "this lenient standard"). This is especially so where courts have recognized that the disclosure of small bits of seemingly innocuous information, in the proper context, "'can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate.'" *Kasza*, 133 F.23d at 1166 (quoting *Halkin I*, 598 F.2d at 8); *see also United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir.), *cert. denied*, 409 U.S. 1063 (1972). Such judgments are not matters for expert scrutiny, but are inherently within the discretion of the Executive Branch, to which great deference is due, and should be upheld if some reasoned basis supports them.

Notwithstanding the United States' objection to the naming of an expert on classification issues, the Court has ordered the Government to propose a nominee for this position. The United States objects to doing so, and does so only because it has been ordered to at this stage. Without waiving its objection to the appointment of an expert, and solely to comply with the Court's Order, the United States proposes the Honorable Laurence H. Silberman, Senior Circuit Judge, United States Court of Appeals for the District of Columbia Circuit. Judge Silberman has previously served as Co-Chairman of the Commission on the Intelligence Capabilities of the United States Regarding Weapons of Mass Destruction, and on the Foreign Intelligence Surveillance Court of Review.

**III. SECURITY CLASSIFICATION PROCEDURES.**

The Court is referred to the United States' *ex parte, in camera* submission addressing the topic of security classification procedures. Beyond this, to the extent this case proceeds, it is the United States' position that the need for additional security measures, including the need for any travel by the Court to Washington, *see* Order at * 34, can be addressed between the Government and Court, if necessary, as circumstances arise. The United States requests an opportunity to

reply to any procedures proposed by the parties regarding the submission of classified information.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

*s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov

ANDREW H. TANNENBAUM
Trial Attorneys
andrew.tannenbaum@usdoj.gov

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20001
Phone: (202) 514-4782/(202) 514-4263
Fax: (202) 616-8460/(202) 616-8202

DATED: July 31, 2006

*Attorneys for the United States of America*

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **RESPONSE OF THE UNITED STATES TO ORDER TO SHOW CAUSE, Case No. C 06-0672-VRW**, will be served by means of the Court's CM/ECF system, which will send notifications of such filing to the following:

Electronic Frontier Foundation
Cindy Cohn
Lee Tien
Kurt Opsahl
Kevin S. Bankston
Corynne McSherry
James S. Tyre
545 Shotwell Street
San Francisco, CA 94110

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
Reed R. Kathrein
Jeff D. Friedman
Shana E. Scarlett
100 Pine Street, Suite 2600
San Francisco, CA 94111

Traber & Voorhees
Bert Voorhees
Theresa M. Traber
128 North Fair Oaks Avenue, Suite 204
Pasadena, CA 91103

Pillsbury Winthrop Shaw Pittman LLP
Bruce A. Ericson
David L. Anderson
Patrick S. Thompson
Jacob R. Sorensen
Brian J. Wong
50 Freemont Street
PO Box 7880
San Francisco, CA 94120-7880

Sidley & Austin LLP
David W. Carpenter
Bradford Berenson
Edward R. McNicholas
David L. Lawson
1501 K Street, NW
Washington, DC 20005

*s/ Anthony J. Coppolino*