PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
DAVID L. ANDERSON #149604
JACOB R. SORENSEN #209134
MARC H. AXELBAUM #209855
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

SIDLEY AUSTIN LLP
DAVID W. CARPENTER (admitted *pro hac vice*)
DAVID L. LAWSON (admitted *pro hac vice*)
BRADFORD A. BERENSON (admitted *pro hac vice*)
EDWARD R. MCNICHOLAS (admitted *pro hac vice*)
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8010
Facsimile: (202) 736-8711

Attorneys for Defendant
AT&T CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AT&T CORP., AT&T INC. and DOES 1-20, inclusive,<br><br>Defendants. | Case No. C-06-0672-VRW<br><br>AT&T CORP'S MOTION FOR A STAY OF PROCEEDINGS PENDING APPEAL<br><br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker<br>Date: September 14, 2006<br>Time: 2:00 p.m. |



Dockets.Justia.com

TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The balance of harms favors a stay pending appeal .......... 2

B. The appeal raises serious legal questions .......... 6

III. CONCLUSION .......... 14

## TABLE OF AUTHORITIES

Cases

Admiral Insur. Co. v. United States Dist. Court,
881 F.2d 1486 (9th Cir. 1989) ........ 3

Artukovic v. Rison,
784 F.2d 1354 (9th Cir. 1986) ........ 1

CIA v. Sims,
471 U.S. 159 (1985) ........ 5, 13

Dellums v. Smith,
577 F. Supp. 1456 (N.D. Cal. 1984) ........ 4

Edmonds v. United States Dep't of Justice,
323 F. Supp. 2d 65 (D.D.C. 2004) ........ 12

Ellsberg v. Mitchell,
709 F.2d 51 (D.C. Cir. 1983) ........ 4, 13

El-Masri v. Tenet,
No. 1:05cv1417, 2006 WL 1391390, 2006 U.S. Dist. LEXIS 34577
(E.D. Va. May 12, 2006) ........ 8, 9

Fitzgibbon v. CIA,
911 F.2d 755 (D.C. Cir. 1990) ........ 8, 9

Gentex Corp. v. United States,
58 Fed. Cl. 634 (2003) ........ 2, 4

Halkin v. Helms,
598 F.2d 1 (D.C.Cir. 1978) ........ 4, 11, 13, 14

Halkin v. Helms,
690 F.2d 977 (D.C. Cir. 1982) ........ 5, 8, 14

Hudson River Sloop Clearwater, Inc. v. Department of the Navy,
891 F.2d 414 (2d Cir. 1989) ........ 9

In re Ford Motor Co.,
110 F.3d 954 (3d Cir. 1997) ........ 3

In re Pacific Gas & Elec. Co.,
No. C-02-1550, 2002 WL 32071634, 2002 U.S. Dist. LEXIS 27549
(N.D. Cal. Nov. 14, 2002) ........ 1, 3

In re United States,
872 F.2d 472 (D.C. Cir. 1989) ........ 2, 5

Kasza v. Browner,
133 F.3d 1159 (9th Cir. 1998) ........ 5, 13

Lopez v. Heckler,
713 F.2d 1432 (9th Cir. 1983) .......... 1

Medhekar v. United States Dist. Court,
99 F.3d 325 (9th Cir. 1996) .......... 3

Military Audit Project v. Casey,
656 F.2d 724 (D.C. Cir. 1981) .......... 8, 11

National Lawyers Guild v. Attorney Gen.,
96 F.R.D. 390 (S.D.N.Y. 1982) .......... 12

Northrop Corp. v. McDonnell Douglas Corp.,
751 F.2d 395 (D.C. Cir. 1984) .......... 5

Salisbury v. United States,
690 F.2d 966 (D.C. Cir. 1982) .......... 11

SG Cowen Secur. Corp. v. United States Dist. Court,
189 F.3d 909 (9th Cir. 1999) .......... 3

Sterling v. Tenet,
416 F.3d 338 (4th Cir. 2005) .......... 5, 13

Thomas v. City of Evanston,
636 F. Supp. 587 (N.D. Ill. 1986) .......... 6

Totten v. United States,
92 U.S. 105 (1875) .......... 11

United States Surgical Corp. v. Origin Medsystems, Inc.,
No. C-92-1892, 1996 U.S. Dist. LEXIS 2793 (N.D. Cal. Feb. 3, 1996) .......... 6

United States v. Griffin,
440 F.3d 1138 (9th Cir. 2006) .......... 3

United States v. Marchetti,
466 F.2d 1309 (4th Cir. 1972) .......... 13

United States v. Reynolds,
345 U.S. 1 (1953) .......... 5, 10

Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,
559 F.2d 841 (D.C. Cir. 1997) .......... 7

Washington Post v. United States Dep't of Def.,
766 F. Supp. 1 (D.D.C. 1991) .......... 9

## Statutes and Codes

United States Code
Title 28, section 1292(b) ........ 1, 6, 7

## Rules and Regulations

Federal Rules of Evidence
Rule 706 ........ 5

**NOTICE OF MOTION**

**AND MOTION TO STAY PROCEEDINGS PENDING APPEAL**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, September 14, 2006, at 2:00 p.m., before the Honorable Vaughn R. Walker, United States District Chief Judge, in Courtroom 6, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, defendant **AT&T CORP.** will move and hereby does move to stay further proceedings pending appeal.

This motion is made on the grounds that a stay pending appeal is warranted, and is filed in response to this Court's July 20, 2006 Order (Dkt. 308, "Order") directing the parties to "describe what portions of this case, if any, should be stayed if this order is appealed." Order at 71:13-14. This motion is based on this notice of motion and motion, the memorandum that follows, all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on this motion. Additionally, on July 27, 2006, AT&T filed an administrative motion asking this Court to grant an interim stay of proceedings until the Court rules on this stay motion.

**ISSUE TO BE DECIDED**

Should this Court grant a stay of proceedings pending appeal where the interlocutory appeal certified by this Court raises serious legal questions and any further proceedings are likely to prejudice the appeal and risk disclosures the United States has asserted would cause exceptionally grave damage to the nation's security?

## I. INTRODUCTION.

The Court's July 20, 2006 Order (Dkt. 308, "Order") directs the parties to "describe what portions of this case, if any, should be stayed if this order is appealed." Order at 71:13-14. Defendant AT&T Corp. ("AT&T") respectfully requests a stay of further proceedings in this litigation pending appeal.

A stay pending appeal is warranted where the stay applicant demonstrates that the appeal raises "serious legal questions" and that "the balance of hardships tips sharply" in favor of a stay. *Artukovic v. Rison*, 784 F.2d 1354, 1355 (9th Cir. 1986) (citing *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir.), *rev'd on other grounds*, 463 U.S. 1328 (1983)). Of particular importance here, "the public interest is a factor to be strongly considered," *Lopez*, 713 F.2d at 1435, in assessing the balance of harms. By certifying the state secrets issue for interlocutory appeal under 28 U.S.C. § 1292(b), Order at 70:26-27, the Court has already recognized that the appeal raises serious legal questions.

The conclusion that the balance of harms strongly favors a stay of proceedings is likewise inescapable for at least two reasons. First, "the quintessential form of prejudice justifying a stay" exists where, as here, the appeal may be "rendered moot" unless a stay is entered. *In re Pacific Gas & Elec. Co.*, No. C-02-1550, 2002 WL 32071634, at *2, 2002 U.S. Dist. LEXIS 27549, at *8 (N.D. Cal. Nov. 14, 2002). The United States has represented to the Court that this case should be dismissed because "any attempt to proceed in the case will substantially risk the disclosure of" privileged state secrets. *See* Public Declaration of John D. Negroponte, Director of Nat'l Intelligence ("Public Negroponte Decl."), ¶ 9 (Dkt. 124). Because the Order contemplates both the disclosure of specific information that the government seeks to protect and further proceedings that risk additional disclosures of information that the government asserts is privileged under the state secrets doctrine, failure to stay the Order would cause precisely the harm that the appeal seeks to prevent, effectively rendering the appeal moot, at least in part. Disclosures once made cannot be recalled; that is why courts routinely stay proceedings pending appeal of orders rejecting confidentiality and privilege claims, even where the disclosures at issue

implicate only confidential commercial and fiduciary information that has no national security implications.

Second, the harm to the nation's security that the United States reasonably anticipates if this case is litigated itself amply justifies a stay pending appeal. Whatever the Court's current view of the danger to national security arising from the disclosures and further proceedings contemplated by the Order, courts are obligated to "err on the side of caution" when faced with "national defense concerns," *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 655 (2003). That is particularly true here, because, as the Court recognizes, it "is hardly in a position to second-guess the government's assertions" about threats to national security. Order at 26:11-12. In these circumstances, the proper course is to err on the side of protecting national security and stay proceedings while the court of appeals considers the state secrets issues.

The paramount public interest in protecting national security outweighs any private interests of the plaintiffs in avoiding a stay pending appeal. Indeed, it is doubtful that it would ever be proper to consider sacrificing national security interests to a plaintiff's desire for speedier prosecution of private litigation. *See In re United States,* 872 F.2d 472, 476 (D.C. Cir. 1989) ("the balance has already been struck in favor of protecting secrets of state over the interests of a particular litigant"). In any event, despite plaintiffs' vague allegations, there is no reliable basis in the record to conclude that plaintiffs will, in fact, be subject to a real and immediate threat of concrete injury while the appeal is pending. *A fortiori*, plaintiffs have not asserted any harm that could outweigh the real, immediate and concrete threat of irreparable damage that disclosures of state secrets could cause to national security.

## II. ARGUMENT.

### A. The balance of harms favors a stay pending appeal.

The balance of harms tips sharply in favor of a stay pending appeal. First, it is well settled that an order that contemplates or risks disclosure of information claimed to be privileged or confidential should be stayed pending appeal for the obvious reason: "there

exists a 'real possibility . . . that privileged information would be irreparably' leaked . . . if it turns out that the district court erred." *United States v. Griffin*, 440 F.3d 1138, 1142 (9th Cir. 2006) (first omission in original).[1] Thus, absent a stay, the appeal may be "rendered moot," which is "the quintessential form of prejudice justifying a stay." *Pacific Gas*, 2002 WL 32071634, at *2, 2002 U.S. Dist. LEXIS 27549, at *8.[2]

The government contends that any information tending to confirm or deny AT&T's participation in any of the intelligence activities alleged in the plaintiffs' First Amended Complaint ("FAC," Dkt. 8) is privileged.[3] The Order contemplates disclosure by AT&T of such information, Order at 40:9-13. The government also contends that any further litigation of the matters raised in the FAC would inherently risk the disclosure of other state secrets.[4] AT&T must now decide whether in answering the FAC it must confirm or deny the existence of all of the intelligence activities there alleged. AT&T must confront the same issue in making initial Rule 26 disclosures and in pleading affirmative defenses, some of which might be based on additional factual allegations. In the current posture of this case, it is unclear at the very least how AT&T can defend itself without making factual statements covered by the government's state secrets assertion. In these circumstances, the appeal that the Court authorized in the Order easily could be mooted, at least in part.

---

[1] *See also Admiral Insur. Co. v. United States Dist. Court*, 881 F.2d 1486, 1491 (9th Cir. 1989) (granting a "petition for a writ of mandamus and request for an emergency stay" relating to a district court order requiring disclosure of allegedly privileged documents); *In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir. 1997) (granting appeal before final judgment of privilege issues because "[a]ppeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials. At best, on appeal after final judgment, an appellate court could send the case back for re-trial without use of the protected materials. At that point, however, the cat is already out of the bag.").

[2] *See also SG Cowen Secur. Corp. v. United States Dist. Court,* 189 F.3d 909, 914 (9th Cir. 1999) ("[A] petitioner is damaged or prejudiced if his claim will be moot on appeal. Compliance with a discovery order moots an appeal of that order. . .", (citing *Medhekar v. United States Dist. Court*, 99 F.3d 325, 326-27 (9th Cir. 1996)).

[3] Mot. to Dismiss Or, In the Alternative, For Summ. J. By the United States of America at 17:14-18:3 (Dkt. 124).

[4] Mot. to Dismiss Or, In the Alternative, For Summ. J. By the United States of America at 16:10-19.

Although the prejudice arising from disclosures that might moot the appeal is alone sufficient to demonstrate substantial harm, it is far from the sole harm that justifies a stay. The public interest weighs heavily in any stay determination,[5] but it has particular significance here: when faced with "national defense concerns" where "vital interests are at stake," courts have an obligation to "err on the side of caution." *Gentex Corp.*, 58 Fed. Cl. at 655; *see also Halkin v. Helms*, 598 F.2d 1, 7 (D.C.Cir. 1978) ("*Halkin I*") (courts "must be especially careful not to order any dissemination of information asserted to be privileged state secrets"). That cautious approach is especially important where, as here, the government has asserted that the dissemination of any information related to the subject matter of the FAC would result in "grave" harm. In light of the risks, the entry of a stay pending appeal serves important public interests that would otherwise be irreparably harmed.

Here, two very senior Executive officers who have been entrusted with safeguarding our national security have declared that, in their expert judgment, any further proceedings in this litigation would risk disclosure of information that "would cause *exceptionally grave damage* to the national security" of the United States.[6] Although the Court did not agree, it acknowledged the gravity and importance of the issue with its certification for interlocutory appeal and expressly recognized that it "is hardly in a position to second-guess the government's assertions in this matter."[7] The Court also acknowledged "the extraordinary

---

[5] *Lopez*, 713 F.2d at 1435 ("the public interest is a factor strongly to be considered"); *see also Dellums v. Smith*, 577 F. Supp. 1456, 1458 (N.D. Cal. 1984) (the "most critical factor for determining whether a stay should be granted is the effect of a stay on the public interest"), *rev'd on other grounds*, 797 F.2d 817 (9th Cir. 1986).

[6] Mot. to Dismiss Or, In the Alternative, For Summ. J. By the United States of America at 13:9-13 (emphasis added) (citing declarations of Director of National Intelligence, John D. Negroponte, and Director of the National Security Agency, Keith T. Alexander); Public Negroponte Declaration ¶ 12 ("any further elaboration on the public record concerning these matters would reveal information that could cause the very harms my assertion of the state secrets privilege is intended to prevent").

[7] Order at 26:11-12; *see also, e.g., Ellsberg v. Mitchell*, 709 F.2d 51, 58 (D.C. Cir. 1983) ("[T]he probability that a particular disclosure will have an adverse effect on national security is difficult to assess, particularly for a judge with little expertise in this area."); (continued…)

security concerns raised by the government here" in proposing the appointment of an expert under Fed. R. Evid. 706. Order at 69:7. Although AT&T does not concur with the suggestion that such an expert should be appointed, it seems clear that the factors that led the Court to consider that extraordinary step would also, and first, justify a stay pending appeal.[8]

In light of the government's assertion that a state secrets dismissal is necessary to avoid the risk of grave harm to the nation's security, it is far from clear that the private interests asserted by plaintiffs are even relevant to whether a stay should be granted pending appeal. The Supreme Court has determined that the state secrets privilege is absolute and that courts may not balance the national security interests it is designed to protect against the interests of private litigants, no matter how compelling. *See United States v. Reynolds*, 345 U.S. 1, 11 (1953). When national security and "the greater public good," *Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998), are implicated, private interests necessarily must give way.[9]

But even if private interests could be considered in determining whether a stay pending appeal should be entered, clearly plaintiffs' interests in prosecuting this litigation during the appeal do not outweigh the public interest in ensuring that the appellate court has

---

(…continued)
*CIA v. Sims*, 471 U.S. 159, 180 (1985) ("It is the responsibility of [the intelligence community], not that of the judiciary to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the. . . intelligence-gathering process.").

[8] Harm from disclosures of sensitive information cannot be cured by special procedures designed to protect such information, because "such procedures, whatever they might be, still entail considerable risk." *Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1052 (2006). "At best, special accommodations give rise to added opportunity for leaked information. At worst, that information would become public." *Id*. In any event, a stay of proceedings pending appeal would obviate the need for the Court to appoint an expert.

[9] *See In re United States*, 872 F.2d at 475 ("[T]he 'balance has already been struck' in favor of protecting secrets of state over the interests of a particular litigant." (quoting *Halkin v. Helms*, 690 F.2d 977, 990 (D.C. Cir. 1982)); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984) (national security interests protected by the state secrets privilege "cannot be compromised by any showing of need on the part of the party seeking the information.").

an opportunity to make its own judgment whether the subject matter of this lawsuit is so sensitive that the private litigation must be dismissed before potentially damaging disclosures occur. All record evidence (as distinct from calculatedly vague allegations in the FAC) indicates that plaintiffs are not harmed by the Terrorist Surveillance Program, because that program collects only "certain 'one-end foreign' communications where one party is associated with the al Qaeda terrorist organization,"[10] and plaintiffs have alleged that they fall outside that group, *see* FAC ¶ 70 (excluding from plaintiffs' class "anyone who knowingly engages in sabotage or international terrorism, or activities that are in preparation therefore [sic]"). At worst, the harm to plaintiffs is a delay in the proceedings related to other alleged "communication content" activities the government has not confirmed and which plaintiffs contend may chill their use of certain communications channels. To minimize these highly speculative potential harms, AT&T supports an expedited schedule on appeal.

In assessing the supposed harm to plaintiffs, it should also be remembered that the appeal will proceed under 28 U.S.C. § 1292(b). If the Ninth Circuit does not grant permission to appeal, then (subject to the government's and AT&T's decision whether to seek *certiorari*) any delay will be short. And if the Ninth Circuit *does* grant permission to appeal, that decision would itself be a substantial factor weighing in favor of a stay.

**B. The appeal raises serious legal questions.**

A party seeking a stay pending appeal "is not required to convince the court that its own order was incorrect, otherwise no district court would ever grant a stay." *United States Surgical Corp. v. Origin Medsystems, Inc.*, No. C-92-1892, 1996 U.S. Dist. LEXIS 2793, at *9 (N.D. Cal. Feb. 3, 1996). Rather, where, as here, the balance of harms favors a stay, the stay applicant need only show that the appeal raises "serious legal questions." *Id.*[11] That

---

[10] Public Negroponte Decl. ¶ 11.

[11] *See also Thomas* v. *City of Evanston*, 636 F. Supp. 587, 590 (N.D. Ill. 1986) ("Obviously, we think an appeal will probably fail; we have reviewed our opinion and stand by it. Had we thought an appeal would be successful, we would not have ruled as we did in the first (continued…)

standard is unquestionably satisfied here, as the Court's certification of its state secrets ruling for interlocutory appeal under 28 U.S.C. § 1292(b) confirms.

The Order's holding that public statements about the Terrorist Surveillance Program foreclose dismissal of this lawsuit on state secrets grounds raises a number of serious legal questions. For example, senior government officials have determined that disclosure of *any* information tending to confirm or deny whether AT&T was involved in any of the alleged "communications content" activities would endanger national security. The Order recognizes that such disclosures could have precisely that effect: "if this litigation verifies that AT&T assists the government in monitoring communication records, a terrorist might well cease using AT&T and switch to other, less detectable forms of communication." Order at 25:21-24. Alternatively, if this litigation reveals that AT&T did not participate in the alleged communications record activities, "then a terrorist who had been avoiding AT&T might start using AT&T if it is a more efficient form of communication." *Id.* at 25:26-27.[12] The Order nonetheless rules that the government may not protect this information from disclosure, because general contours of the alleged communication content program have been publicly disclosed.

Whether this ruling is correct is, at minimum, a serious legal question. With respect, the Court's decision that "the government has opened the door for judicial inquiry by publicly confirming and denying material information about its monitoring of communication content," Order at 40:3-5, is unprecedented. The courts have consistently held that public disclosure of some aspects of a government intelligence program—short of

---

(…continued)
place. But a party seeking a stay need not show that it is more than 50% likely to succeed on appeal; otherwise, no district court would ever grant a stay. It is enough that the [stay applicant] have a substantial case on the merits."); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1997) (where balance of harms strongly favors a stay, the movant need only show that it will raise serious questions on appeal).

[12] *See also* Order at 26:5-8 ("[a] terrorist who operates with full information is able to communicate more securely and more efficiently than a terrorist who operates in an atmosphere of uncertainty").

official confirmation of the information for which state secrets protection is sought—provides no basis to deny a state secrets dismissal. As another district court recently explained:

> [any] argument that government officials' public affirmation of the existence of a rendition program undercuts the claim of privilege misses the critical distinction between a general admission that a rendition program exists, and the admission or denial of the specific facts at issue in this case. A general admission provides no details as to the means and methods employed in these renditions, or the persons, companies or governments involved. . . [T]he government seeks to protect from disclosure the operational details of the extraordinary rendition program, and these details are validly claimed as state secrets.

*El-Masri v. Tenet*, No. 1:05cv1417, 2006 WL 1391390, at *5, 2006 U.S. Dist. LEXIS 34577, at *18 (E.D. Va. May 12, 2006).[13]

Here, too, the United States seeks state secrets protection for information relating to the operational details of, including the means and methods employed and the persons and companies involved in, the alleged NSA intelligence activities. The Order suggests that AT&T could, without implicating state secrets, reveal information confirming or denying its participation in the alleged communication content activities "at the level of generality at which the government has publicly confirmed or denied its monitoring of communication content." Order at 40:14-16. But the government has neither confirmed nor denied the participation of AT&T (or any other carrier) in any such activities at any level of generality. And thus, as the Order elsewhere recognizes, "uncovering whether and to what extent a certification [authorizing AT&T to assist in the alleged activities] exists might reveal information about AT&T's assistance to the government that has not been publicly

---

[13] *See also Halkin v. Helms*, 690 F.2d 977, 994 (D.C. Cir. 1982) ("*Halkin II*") ("disclosure of an overseas CIA station's existence is a far cry from disclosure of the activities carried on by that station (and whether they were carried on with knowledge, acquiescence, or active participation of local intelligence agencies")); *Military Audit Project v. Casey*, 656 F.2d 724, 752 (D.C. Cir. 1981) (rejecting claim that "because some information about the project ostensibly is now in the public domain, nothing about the project in which the appellants have expressed an interest can properly remain classified"); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) ("the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations").

disclosed." *Id.* at 38:5-7. In short, nothing that government officials have said publicly provides any basis for rejecting the government's claim that any further information regarding the alleged activities, including any information tending to confirm or deny AT&T's assistance in the alleged activities, remains privileged. Because maintenance of the suit would inevitably require disclosure of such information, immediate dismissal is required.

The Order reaches the contrary conclusion only by relying upon inapposite statements by, and general characteristics of, AT&T. But, "[i]t is self-evident that a private party's allegations purporting to reveal the conduct of the United States' intelligence services . . . are entirely different from the official admission or denial of those allegations." *El-Masri*, 2006 WL 1391390, at *5, 2006 U.S. Dist. LEXIS 34577, at *19. Thus, even if AT&T had expressly confirmed or denied its participation in any of the alleged intelligence activities—and AT&T has categorically done neither, instead respecting the government's admonition that AT&T would violate the law if it did—that could not serve as a basis for rejecting the government's state secrets privilege and requiring AT&T to disclose information that would reveal the existence or nonexistence of *official* government certifications relating to any of the alleged intelligence activities.[14]

---

[14] *Fitzgibbon*, 911 F.2d at 765 ("acknowledg[ing] the fact that in the arena of intelligence and foreign relations there can be a critical difference between official and unofficial disclosures."); *Hudson River Sloop Clearwater, Inc. v. Department of the Navy*, 891 F.2d 414, 421-22 (2d Cir. 1989) (holding that public disclosure of information by retired Navy General did not affect the Navy's classification of that information as secret) ("Officials no longer serving with an executive branch department cannot continue to disclose official agency policy, and certainly they cannot establish what *is* agency policy through speculation, no matter how reasonable it may appear to be."); *Washington Post* v. *United States Dep't of Def.*, 766 F. Supp. 1, 9-10 (D.D.C. 1991) (holding with respect to a FOIA request that "information in the public domain may be withheld" if 1) "the agency asserts in its declarations that the information being withheld is not exactly the same as the information being withheld and that release of the more detailed information in the document poses a threat to the national security"; 2) "although the information withheld is exactly the same as information in the public realm, revealing the context in which the information is discussed would itself reveal additional information, release of which is harmful to the national security"; or 3) "if the information in the public domain was not officially disclosed, official confirmation or acknowledgement of that information may be harmful to national security.").

Moreover, even if a private party's public confirmation or denial of its participation in alleged government intelligence activities could effectively waive the government's state secrets privilege to protect from public disclosure information that would tend to provide *official* confirmation or denial, *but see Reynolds*, 345 U.S. at 7, there would be no basis for any such finding here. Neither AT&T nor the government has made any such disclosures with respect to any of the intelligence activities alleged in this lawsuit. The Order nonetheless concludes that "AT&T and the government have for all practical purposes already disclosed that AT&T assists the government in monitoring communication content." Order at 29:5-7. The Order reasons that: (i) the communications content program admitted by government officials could not exist "without the acquiescence and cooperation of *some* telecommunications provider," *id.* at 29:20-21 (emphasis added), (ii) because AT&T is a large telecommunications carrier, its "assistance would greatly help the government implement this program" and, indeed, it is "unclear" whether the program "could even exist" without AT&T's participation, *id.* at 29:26-28 - 30:1-4, and, (iii) AT&T has admitted that it has *some* classified government contracts and that "[i]f and when" it is asked to help the government, it does so "strictly within the law," *id.* at 30:14-15 - 31 (emphasis omitted).

This presumption hardly establishes, much less constitutes official confirmation of, AT&T's participation in the *particular* intelligence activities that are alleged in this lawsuit and as to which the government has asserted the state secrets privilege. As the Order notes, "[a] remaining question is whether, in implementing the 'terrorist surveillance program'" that the government has disclosed— of which neither the named plaintiffs nor the class they claim to represent are even potential targets— "the government ever requested the assistance of AT&T." Order at 31:17-19. The very "existence" of the far broader communications content surveillance alleged in the FAC "and AT&T's involvement, if any, remains far from clear." *Id.* at 35:25-26.

Certainly, neither AT&T's size nor its unremarkable assertions that it operates within the law and responds appropriately to lawful government requests for assistance

provides any basis to *presume* that AT&T received such a request in this instance or was involved in the intelligence activities alleged in this lawsuit. With no public information about the nature, purposes, targets, methods, or other operational details of any NSA intelligence activities, there is no possible basis to conclude that AT&T was asked to participate in such activities or that any such activities required AT&T's participation. AT&T has forthrightly informed the public that when the government asks for, and AT&T can lawfully provide, help in protecting American security, it does so. This in no way means that AT&T was asked to participate or has participated in the NSA intelligence activities alleged in the FAC. Nor do the facts that AT&T (like many other carriers) has some classified government contracts or (like all other carriers that have been sued) has argued that it would be immune from suit for assisting the government as alleged here provide any basis for concluding that AT&T, in fact, provided such assistance. In any event, even where public information establishes the likelihood of a fact that the government seeks to protect from disclosure, that public information provides no basis for a court to presume the fact and then rely upon that presumption to deny the government's request for a dismissal on national security grounds. *See, e.g., Totten v. United States,* 92 U.S. 105 (1875) (dismissing a suit alleging a secret espionage agreement between William Lloyd and the United States government where Lloyd's estate itself asserted that the relationship existed).[15]

---

[15] *See also, e.g., Halkin I*, 598 F.2d at 11 (rejecting claim that case should not be dismissed on state secrets grounds because fact that plaintiffs communications were intercepted could be presumed from the presence of their names on a publicly disclosed "watchlists"); *Military Audit Project*, 656 F.2d at 745 (the "key premise on which the appellants base their argument that 'the cat is already out of the bag' is unsupported by the record and contrary to the government's affidavits. The government's affidavits are entitled to substantial weight") *Salisbury v. United States*, 690 F.2d 966, 971 (D.C. Cir. 1982) (upholding NSA's refusal to comply with FOIA request in part because despite agency's prior disclosure of related information, "owing to the mosaic-like nature of intelligence gathering, and to our desire to avoid discouraging the agency from disclosing such information about its intelligence function as it feels it can without endangering its performance of that function, we will not hold in this case that such limited disclosures as have been made require the agency to make the disclosures sought here") (internal quotation and citation omitted); *Edmonds v. United States Dep't of Justice*, 323 F. Supp.

(continued…)

At bottom, the Order rests on the Court's determination that "AT&T's assistance in national security surveillance is hardly the kind of 'secret' that the *Totten* bar and the state secrets privilege were intended to protect or that a potential terrorist would fail to anticipate." Order at 31:22-25. The Court has apparently concluded that "public disclosures . . . indicate that AT&T is assisting the government to implement *some* kind of surveillance program," *id.* at 34:2-4 (emphasis added), and that the high government officials responsible for protecting national security are wrong in contending that official confirmation of AT&T's participation (or lack thereof) in the *particular* NSA intelligence activities alleged in the FAC "creates a 'reasonable danger' of harming national security," *id.* at 35:14-15.[16] AT&T respectfully submits that this is the type of judicial second-guessing of government national security determinations that the state secrets privilege forbids.[17]

In *Hayden v. NSA*, 608 F.2d 1381 (D.C. Cir. 1979), the court rejected the plaintiff's argument that "some channels monitored by NSA are well known to be closely watched, and that no foreign government would send sensitive material over them; hence NSA can safely disclose material" regarding those channels. *Id.* at 1388. Instead, the court correctly ruled that "[t]he Agency states that to reveal which channels it monitors would impair its mission" and that "[t]his is precisely the sort of situation where Congress intended reviewing courts to respect the expertise of the agency; for us to insist that the Agency's

(…continued)
2d 65, 76 (D.D.C. 2004) ("That privileged information has already been released to the press or provided in briefings to Congress does not alter the Court's conclusion" that government's invocation of state secrets privilege requires dismissal), *aff'd*, 161 Fed. App'x 6 (D.C. Cir.), *cert. denied*, 126 S. Ct. 734 (2005); *National Lawyers Guild v. Attorney Gen.*, 96 F.R.D. 390, 402 (S.D.N.Y. 1982) ("[D]isclosure of a type of information similar to that presently sought will not vitiate the state secrets privilege.") .

[16] *See also* Order at 38:2-4 ("it is not a secret for purposes of the state secrets privilege that AT&T and the government have *some* kind of intelligence relationship") (emphasis added).

[17] It is worth noting that much of the state secrets jurisprudence recognizing the limited role of the judiciary and the need for utmost deference to the government officials responsible for safeguarding the nation's security was developed during times when the external threats to domestic U.S. security were far less concrete and immediate than they are today.

rationale here is implausible would be to overstep the proper limits of the judicial role." *Id.* Here, at a minimum, the Order's contrary ruling raises a substantial legal question, because as the Order recognizes, the Court "is not in a position to estimate a terrorist's risk preferences, which might depend on facts not before the court." Order at 41:21-23.[18]

Finally, the Order's rejection of AT&T's motions to dismiss on standing grounds also raises substantial legal issues. The Order contends that the FAC cannot be dismissed at the pleading stage, because the plaintiffs have *alleged*, "upon information and belief," the creation by AT&T of "a dragnet that collects the content and records of its customers' communications." Order at 48:12-13. But this misapprehends both the governing legal standard in a state secrets case and a critical aspect of AT&T's standing argument. AT&T's argument is that, regardless of what the plaintiffs have pled in the FAC, their case must be dismissed, because the government has asserted state secrets protection over any information tending to confirm or deny the fact of acquisition of any of plaintiffs' communications—an irreducible element of the plaintiffs' standing burden. The courts have universally accepted the assertion of the state secrets privilege with respect to information that would confirm or deny the fact of acquisition of particular communications

---

[18] As the Ninth Circuit has cautioned, even "seemingly innocuous information" could be "part of a classified mosaic," *Kasza*, 133 F.3d at 1166, and "what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *Sims*, 471 U.S. at 178 (alteration omitted). "Only the Director [of the intelligence agency] has the expertise to attest—and he has—to this larger view." *Sterling*, 416 F.3d at 347; *see also Ellsberg*, 709 F.2d at 58 ("the probability that a particular disclosure will have an adverse effect on national security is difficult to assess, particularly for a judge with little expertise in this area"); *Halkin I*, 598 F.2d at 8 ("It requires little reflection to understand that the business of foreign intelligence gathering in this age of computer technology is more akin to the construction of a mosaic than it is to the management of a cloak and dagger affair. Thousands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate."); *United States* v. *Marchetti*, 466 F.2d 1309, 1318 (4th Cir. 1972) ("The significance of one item of information may frequently depend upon knowledge of many other items of information. What may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context. The courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area.").

through a classified surveillance program (as well as the means, methods and operational details of the program that might indirectly provide such information). The Order provides no basis for any contrary conclusion, and, where, as here, the plaintiffs will be unable to prove standing, the complaint must be dismissed regardless of its allegations. *See, e.g.*, *Halkin I*, 598 F.2d 1, 8-11 (affirming dismissal on standing grounds where "identification of the individuals or organizations whose communications have or have not been acquired presents a reasonable danger that state secrets would be revealed"); *Halkin II*, 690 F.2d 977, 999 & n.23 ("Appellants have alleged, but *ultimately cannot show*, a concrete injury," notwithstanding allegations of "vacuum cleaner" surveillance).

## III. CONCLUSION.

For these reasons, the Court should enter a stay of all aspects of this litigation pending appeal.

Dated: July 31, 2006.

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
DAVID L. ANDERSON
JACOB R. SORENSEN
MARC H. AXELBAUM
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

SIDLEY AUSTIN LLP
DAVID W. CARPENTER
DAVID L. LAWSON
BRADFORD A. BERENSON
EDWARD R. MCNICHOLAS
1501 K Street, N.W.
Washington, DC 20005

By /s/ Marc H. Axelbaum
/s/ Marc H. Axelbaum
Attorneys for Defendant
AT&T CORP.