T r o n e e t a l v . P e a n u t C o Đ p o c

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
DAVID L. ANDERSON #149604
JACOB R. SORENSEN #209134
MARC H. AXELBAUM #209855
BRIAN J. WONG #226940
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Email: bruce.ericson@pillsburylaw.com

SIDLEY AUSTIN LLP
DAVID W. CARPENTER (admitted *pro hac vice*)
DAVID L. LAWSON (admitted *pro hac vice*)
BRADFORD A. BERENSON (admitted *pro hac vice*)
EDWARD R. McNICHOLAS (admitted *pro hac vice*)
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8010
Facsimile: (202) 736-8711

Attorneys for Defendants
AT&T CORP. and AT&T INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AT&T CORP., AT&T INC. and DOES 1-20, inclusive,<br><br>Defendants. | No. C-06-0672-VRW<br><br>**AT&T CORP.'S RESPONSE TO JULY 20, 2006 ORDER TO SHOW CAUSE REGARDING APPOINTMENT OF EXPERT**<br><br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker |



D o c k

Table of Contents


Page

I. INTRODUCTION. .......... 1

II. ARGUMENT. .......... 1

A. The Court should not appoint an expert or advisor at this stage of the case. .......... 1

B. Expert assistance is not appropriate when considering the state secrets privilege. .......... 2

C. If the Court decides to enlist expert assistance, it should only do so by appointing a technical advisor, rather than a Rule 706 expert. .......... 6

D. Proposed technical advisors .......... 7

III. CONCLUSION. .......... 8

## I. INTRODUCTION.

The Court's July 20, 2006 Order (Dkt. 308, "Order") requires the parties to show cause why the Court should not appoint an expert pursuant to Rule 706 of the Federal Rules of Evidence ("Rule 706"). A Rule 706 expert is not necessary or advisable in this action. Such an expert, who must be available to testify pursuant to Rule 706, could not perform the duties envisioned by the Court in a manner consistent with the protection of state secrets. The contemplated role of a Rule 706 expert in this case is also inconsistent with the law governing review of the government's assertion of the state secrets privilege and impossible for a third-party to fulfill. In the context of state secrets, courts may probe the executive's national security determinations to ensure they are not arbitrary or unreasonable, but should not make their own determinations. And the impact on national security of disclosing state secrets is not a matter that any private person outside the government has the necessary current knowledge or expertise to assess.

Even if the Court determines that it is both appropriate and necessary to seek the assistance of a third-party to analyze evidence in light of the state secrets privilege, it is premature to appoint such a person at this stage of the case in light of the anticipated appeals of the Order to the Ninth Circuit by both AT&T Corp. ("AT&T") and the government. Even if outside aid were permitted, given that this case involves classified information pertaining to national security, Rule 706 is not the appropriate procedural vehicle for the Court to obtain the assistance it seeks. If the Court decides to enlist the assistance of a third-party, it should be from a "technical advisor" who could assist the Court with difficult technical evidence but who would not constitute an additional, independent source of evidence or testimonial opinions susceptible to discovery requests from the parties, as a Rule 706 expert would be.

## II. ARGUMENT.

### A. The Court should not appoint an expert or advisor at this stage of the case.

For the reasons discussed in AT&T's motion for stay, which is being filed concurrently, this entire action should be stayed pending the government's and AT&T's

appeals pursuant to 28 U.S.C. § 1292(b). There is no reason to proceed with the selection of an expert when the action, including discovery, should be stayed pending resolution by the Ninth Circuit of the threshold state secrets question. If the petitions for permission to appeal under Section 1292(b) are denied and the case is returned to the Court, the propriety of and procedure for selection of an expert may be taken up in due course.

It is also premature to take up the question of whether to appoint an expert because it is possible that this case may soon be transferred to another court by the Judicial Panel on Multidistrict Litigation ("JPML") for consolidated or coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. The JPML heard the matter on July 27, 2006, and the issue is under submission. A ruling is expected in a matter of weeks. Whether this Court or another court is selected as the transferee court, the decision whether to appoint an expert or advisor should be made by the MDL court.

**B. Expert assistance is not appropriate when considering the state secrets privilege.**

The Court has suggested that it may appoint an expert pursuant to Rule 706 to assist the Court in determining what evidence, if produced by AT&T, "would create a 'reasonable danger' of harming national security." Order at 69:10-11. Rule 706 provides for court appointment of expert witnesses who are in all other respects similar to party-retained experts. Court-appointed experts are hired to review the evidence in the case, reach opinions based on that evidence, and furnish testimony, through deposition and at trial, regarding the bases for their conclusions. *See generally FTC v. Enforma Natural Prods.*, 362 F.3d 1204, 1213 (9th Cir. 2004). Such a role is inconsistent with the duties envisioned by this Court and does not provide appropriate protection for state secrets.

This action deals with significant issues of national security relating to alleged ongoing counterterrorism surveillance programs. As the Court acknowledges, no court has ever utilized a Rule 706 expert, or any other type of expert or advisor, in determining whether information is entitled to the absolute protection afforded by the state secrets

privilege.[1] Order 69:16-17. Instead, it is settled that when a court must make state secrets privilege determinations, it should defer to the reasonable judgments of executive officers. The use of an expert or advisor to evaluate those judgments implies a far more intrusive standard of judicial review than the law allows and would compound the problem by impermissibly delegating evaluation of privilege assertions by the executive to a private party with no legitimate public authority.

As the Supreme Court has expressed, "it is the responsibility of [the intelligence community], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process." *Central Intelligence Agency v. Sims*, 471 U.S. 159, 180 (1985); *see also United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir. 1972) ("The courts . . . are illequipped [sic] to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area."). Courts must instead examine the assertions made by the executive, test those assertions through careful examination (if the plaintiff has made a strong showing of necessity), and then afford the judgments of the executive the "utmost deference." *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998). Courts should not substitute their judgment – or that of a third-party – for that of the executive branch regarding the national security implications of disclosing evidence the government deems a state secret. Only if a court is convinced that the executive's determinations are arbitrary or irrational should it reject them. Such a deferential review should not and does not require the assistance of third-parties who wield no form of public authority.

---

[1] The Second Circuit has suggested in dicta that an expert might be used to analyze materials that the government claims are state secrets. *Clift v. United States*, 597 F.2d 826, 829 (2d Cir. 1979) ("[W]hile we sympathize with the judge's admission that she would be unable to understand the significance of the documents without the aid of an independent expert, efforts could be made to locate such an expert with appropriate clearances."). Despite this observation, *Clift* nevertheless affirmed the district court's order denying the plaintiff's discovery motion, on the ground that the state secrets privilege applied to the discovery sought by the plaintiff. *Id*. The district court came to that conclusion without the assistance of an expert (or *in camera* review). *Id.*

In *Hayden v. NSA*, 608 F.2d 1381 (D.C. Cir. 1979), the court rejected the argument that the National Security Agency could safely disclose those channels it was known to monitor and observed:

> The Agency states that to reveal which channels it monitors would impair its mission . . . . This is precisely the sort of situation where Congress intended reviewing courts to respect the expertise of the agency; for us to insist that the agency's rationale here is implausible would be to overstep the proper limits of the judicial role . . . .

*Id.* at 1388 (citations omitted). The *Ellsberg* case, which the Court cites in support of the need to "disentangle sensitive information from nonsensitive information," Order 69:3-7, states that although a trial judge should not abdicate its role in applying the state secrets privilege to executive officers, the judge "should accord considerable deference to recommendations from the executive department." *Ellsberg v. Mitchell*, 709 F.2d 51, 58 (D.C. Cir. 1983). In *Ellsberg*, the D.C. Circuit anticipated that a trial court considering the state secrets privilege would rely on the recommendations of the executive branch, not the testimony of expert witnesses identified by the parties or a court. If the Court has doubts about the national security implications of disclosing a particular piece of evidence, it should obtain further input from executive branch officials, not from private third-parties. Only this approach will allow the Court to undertake review in the manner contemplated by *Hayden* and *Ellsberg*.

An additional factor militating against the Court's use of an expert or advisor is the lack of any qualified individuals who could serve in that role. The only individuals qualified to assess the likely impact on the nation's security of disclosing particular pieces of information pertaining to counterterrorism programs are government officials currently working inside the executive branch. Such determinations require a current appreciation of the entire national security and intelligence picture, including an understanding of: the programs at issue, how they work, and where they have gaps or vulnerabilities; the value of those programs in protecting national security, and the ways in which information derived from them may be producing actionable intelligence; the awareness and mindset of the

nation's enemies, including their modes of communication, risk tolerances and beliefs regarding the country's capabilities; and the implications that disclosures may have on the government's relationships with foreign governments and intelligence services.

Only incumbent officials with information about the current status of the United States' intelligence, defense and diplomatic situations can make these sorts of complex and nuanced assessments in real-time. Even former high-ranking officials who once held top security clearances lack the requisite up-to-the-minute awareness of such matters. That is precisely why the Supreme Court has required that the invocation of the state secrets privilege be made only by the incumbent head of an executive department or agency after personal consideration of the matter. *See Reynolds v. United States*, 345 U.S. 1, 7-8 (1953). As the Fourth Circuit recently observed in *Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005), "[o]nly the Director [of the intelligence agency] has the expertise to attest – as he has – to this larger view." *Id.* at 347. Given the dynamic nature of the government's ongoing intelligence activities, only executive officials charged with the defense of the nation have the broad understanding referenced in *Sterling*, and their expertise, not that of a third-party with no current public responsibilities, should inform the Court's consideration of the national security implications of disclosing certain pieces of evidence. No third-party could presume to opine competently on those matters.

Finally, as discussed at greater length below, the role of a Rule 706 expert witness is inconsistent with the duties envisioned by the Court. Because a Rule 706 expert is an expert *witness*, who must be available for deposition, testimony and cross-examination on the matters she has evaluated and the opinions she has formed, *see Enforma Natural Prods.*, 362 F.3d at 1213, such an expert is entirely unable to advise the court in a confidential manner about state secrets determinations. *Ex parte* contacts with a Rule 706 expert are generally improper, and such an expert could not, consistent with the rules governing the examination of experts, review and form opinions about evidence that no other party in the case may ever be entitled to view. For this reason, too, the Court should not appoint a Rule 706 expert to assist it in making state secrets determinations.

### C. If the Court decides to enlist expert assistance, it should only do so by appointing a technical advisor, rather than a Rule 706 expert.

The Court seeks assistance "in determining whether disclosing particular evidence would create a 'reasonable danger' of harming national security." Order at 69:9-11. As explained above, AT&T does not believe the Court should appoint any expert. If the Court chooses to do so, however, it should not create the risk of disclosure of state secrets through discovery and depositions, as could occur with a Rule 706 expert. Instead, the Court should obtain the assistance it seeks by appointing a technical advisor, rather than a Rule 706 expert.

"In those rare cases in which outside technical expertise would be helpful to a district court, the court may appoint a technical advisor. . . ." *Ass'n of Mexican-American Educators v. California ("AMAE")*, 231 F.3d 572, 590 (9th Cir. 2000) (*en banc*) (finding that technical advisor appointed by the district court had not been a source of evidence for the court and, therefore, was not a court-appointed expert witness pursuant to Rule 706). In *Enforma Natural Products*, the Ninth Circuit described a technical advisor as a "'tutor' who aids the court in understanding the 'jargon and theory' relevant to the technical aspects of the evidence." 362 F.3d at 1213 (citing *Reilly v. United States*, 864 F.2d 149, 158 (1st Cir. 1988)). Technical advisors do not supply additional evidence, but instead help courts interpret and understand the evidence presented by the parties. *Id.*. When a court is in need of guidance in dealing with issues requiring specialized expertise, a technical advisor may be the source of such guidance. Such an advisor should not, however, offer opinions on legal issues disputed by the parties; that role must remain that of the district judge at all times. When a court appoints a technical advisor, it must impose significant safeguards to ensure that the proper role of each is maintained in order to avoid the "risk that some of the judicial decision-making will be delegated to the technical advisor." *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1379 (Fed. Cir. 2002).

In contrast to the consulting function of a technical advisor, a Rule 706 expert provides testimony or serves as an independent source of evidence. *AMAE*, 231 F.3d at

591. The Order suggests that the Court is not seeking an individual who will provide evidence in addition to that which the parties will submit, nor should it do so in a case where the very questions and issues about which the Court appears to seek advice involve significant matters of national security and state secrets. Rather, the Court appears to be seeking someone to assist the Court in understanding "the risks associated with disclosure of certain information, the manner and extent of appropriate disclosures and the parties' respective contentions." Order at 70:5-8. The procedural requirements of Rule 706, which provide for depositions of and testimony by the Rule 706 expert, do nothing to further the Court's goals as set forth in the Order. If any third-party is to be appointed to assist the Court,[2] a technical advisor would better suit the Court's needs and would avoid the complications that would arise from the use of a Rule 706 expert.[3]

**D. Proposed technical advisors**

While the Court has sought advice with respect to the identity of a potential advisor or expert, AT&T respectfully suggests that, if such a person exists (as noted above, AT&T does not believe anyone working outside the government is suited to the task), only the government can make suggestions as to who may receive appropriate clearances and could bring the appropriate expertise to bear with respect to the full range of national security issues implicated by the proposed appointment.

---

[2] The Court should take the following steps before appointing a technical advisor: "(1) utilize a fair and open procedure for appointing a neutral technical advisor; (2) address any allegations of bias, partiality, or lack of qualification; (3) clearly define and limit the technical advisor's duties; (4) make clear to the technical advisor that any advice he gives to the court cannot be based on any extra-record information; and (5) make explicitly, either through an expert's report or a record of *ex parte* communications, the nature and content of the technical advisor's advice." *AMAE*, 231 F.3d at 611-14 (Tashima, J., dissenting), *cited in Enforma Natural Prods.*, 362 F.3d at 1214-15.

[3] One such complication would be that any party could probe an expert's knowledge of state secrets if that expert were to testify or be deposed (under Rule 706). *See Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1242-43 (4th Cir. 1985) (refusing to allow an ordinary, non-Rule 706 expert witness to testify who "had personal knowledge of highly classified military secrets relevant to the subject matter of the litigation" because "[i]n examining witnesses with personal knowledge of relevant military secrets, the parties would have every incentive to probe dangerously close to the state secrets themselves").

## III. CONCLUSION.

For the foregoing reasons, defendant AT&T Corp. respectfully submits that the Court should not appoint an expert or advisor to deal with state secrets issues in discovery. If the Court determines that it will seek assistance in applying the state secrets privilege, it should appoint a technical advisor, rather than a Rule 706 expert, to provide that assistance. But in any event, the Court should wait until after the Ninth Circuit has decided the anticipated appeals by the government and AT&T before making such an appointment.

Dated: July 31, 2006.

SIDLEY AUSTIN LLP
DAVID W. CARPENTER
DAVID L. LAWSON
BRADFORD A. BERENSON
EDWARD R. McNICHOLAS
1501 K Street, N.W.
Washington, D.C. 20005

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
DAVID L. ANDERSON
JACOB R. SORENSEN
MARC H. AXELBAUM
BRIAN J. WONG
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

By /s/ Jacob R. Sorensen
Jacob R. Sorensen

Attorneys for Defendants
AT&T CORP. and AT&T INC.